FILED

FEB 04 2002

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THE ALASKA CONSTITUTIONAL LEGAL    )
DEFENSE CONSERVATION FUND, INC.,   )
et al.,                            )
                                   )
              Plaintiffs,          )
                                   )
       vs.                         )
                                   )
BRUCE BABBITT, in his capacity as  )
Secretary of the Interior, et al., )
                                   )  No. A00-0167-CV (HRH)
              Defendants.          )
_____)

O R D E R

Motion to Dismiss

Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure.[1] Plaintiffs oppose the motion.[2] Oral argument has not been requested.

Facts

Plaintiffs are the Alaska Constitutional Legal Defense Conservation Fund, Inc. (ACLDCF),[3] and the following individuals: Dale Bondurant, Warren Olson, James P. Jacobson, Daniel A. Devereux,

---

[1] Clerk's Docket No. 21.

[2] Clerk's Docket No. 26.

[3] ACLDCF is a non-profit corporation organized under the laws of Alaska.

- 1 -

EXHIBIT 3
Page 1 of 16

(32)

Shannon Farrah, W. Tom Minter, and Gary Younkin. Bondurant, Olson, Jacobson, and Devereux are residents of Alaska. Farrah, Minter, and Younkin are residents of Arizona, Florida, and Virginia, respectively. Defendants, in their official capacities, are: Gale Norton, Secretary of the United States Department of the Interior;[4] Ann Veneman, Secretary of the United States Department of Agriculture;[5] Kathleen Clarke, Director of the United States Bureau of Land Management;[6] Dale Bosworth, Chief of the United States Forest Service;[7] Thomas H. Boyd, Assistant Regional Director of Subsistence Management, United States Forest Service, Alaska Region; and Ken Thompson, Regional Subsistence Program Leader, United States Forest Service, Alaska Region.

Plaintiffs' complaint is one seeking declaratory and injunctive relief. The complaint alleges that through the enactment, enforcement, application, and implementation of the rural preference for subsistence hunting and fishing on Federal lands found in Title VIII of the Alaska National Interest Lands Conservation Act (hereinafter ANILCA), plaintiffs have been harmed. Plaintiffs' complaint asserts the following causes of action: (1) a

---

[4] The party is substituted pursuant to Rule 25(d), Federal Rules of Civil Procedure, for former Secretary Bruce Babbitt.

[5] The party is substituted pursuant to Rule 25(d), Federal Rules of Civil Procedure, for former Secretary Daniel Glickman.

[6] The party is substituted pursuant to Rule 25(d), Federal Rules of Civil Procedure, for former Director Tom Fry.

[7] The party is substituted pursuant to Rule 25(d), Federal Rules of Civil Procedure, for former Director Michael Dombeck.

violation of the Equal Footing Doctrine, the Submerged Lands Act of 1953, and the Alaska Statehood Act;[8] (2) a violation of the Tenth Amendment of the Constitution and the Enumerated Powers Doctrine;[9] (3) a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution;[10] and (4) a violation of the Administrative Procedure Act[11]. Attached to plaintiffs' complaint are numerous exhibits apparently meant to support the allegations in the complaint. These include administrative decisions, petitions for administrative relief, correspondences and photocopies of permit applications.

Plaintiffs have provided specific examples of alleged harm to the named individuals. The complaint alleges that non-resident plaintiffs Farrah, Minter, and Younkin and resident plaintiff Devereux were injured when the Federal Subsistence Board revoked state-issued permits to hunt sheep on federal public lands in 1998.[12] The complaint also alleges that Alaska resident plaintiff Jacobson, who is a licensed guide in Alaska, had to cancel his pre-booked guided hunts "as the state-issued permits were unilaterally

---

[8] Complaint at 13-14, ¶¶ 29-35.
[9] Id. at 14-16, ¶¶ 36-40.
[10] Id. at 16-17, ¶¶ 41-44.
[11] Id. at 17-18, ¶¶ 45-52.
[12] Id. at 8-10, ¶¶ 18-21.

restricted by the Federal Subsistence Board."[13] The complaint also alleges that Alaska resident plaintiffs Bondurant and Olson have applied for permits to hunt and fish on federal lands and waters and have been denied permits because they were classified as "urban residents."[14]

Defendants move to dismiss all counts of plaintiffs' complaint on the following grounds: lack of jurisdiction, failure to state claims upon which relief can be granted, failure to comply with the statute of limitations, and by operation of res judicata-collateral estoppel. Defendants have supported their motion with exhibits such as court orders, decisions, and judgments from prior cases; pleadings, motions, and briefs from those prior cases; official government correspondence; administrative materials; and ACLDCF's articles of incorporation.

### Discussion

A motion to dismiss should not be granted unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A motion to dismiss under Rule 12(b)1 asserts a lack of jurisdiction over the subject matter. A motion to dismiss under Rule 12(b)(6) asserts a failure to state a claim upon which relief can be granted. Although the material

---

[13] Id. at 8, ¶ 17. In conjunction, the complaint alleges that Jacobson was denied a permit to hunt sheep in Game Management Unit 23 because he was not a resident of Game Management Unit 23.

[14] Id. at 10, ¶ 23.

factual allegations of the complaint are generally accepted as true, Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), a motion to dismiss brought under Rule 12(b)(1) can attack the substance of a complaint's jurisdictional allegations, and thus rely on affidavits or other evidence properly before the court. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (citing Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)). Similarly, a court may take judicial notice of matters of public record without converting the motion to one for summary judgment. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (citing Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953), and Phillips v. Bureau of Prisons, 591 F.2d 966, 969 (D.C. Cir. 1979)).

Here, both parties have submitted extraneous materials. These materials do not affect the court's consideration of dismissal under Rule 12(b)(1), nor are they the type that dictate converting a motion brought under Rule 12(b)(6) to one for summary judgment under Rule 56. Therefore, the court considers defendants' motion, in its entirety, as one for dismissal and not one for summary judgment.

### Lack of Standing: Counts One and Two

Counts One and Two of plaintiffs' complaint present an amalgam of vaguely asserted violations of federal law and doctrine. Counts One and Two allege causes of action under the Equal Footing Doctrine, the Alaska Statehood Act, the Submerged Lands Act, and the

Tenth Amendment. These doctrines, statutes, and constitutional provisions address sovereign rights of states <u>qua</u> states. They do not pertain to the rights of individuals such as plaintiffs.

For example, the Equal Footing Doctrine is a doctrine acknowledging that all states have the same rights, sovereignty, and jurisdiction over the shores of and lands underneath navigable waters. <u>Pollard's Lessee v. Hagan</u>, 3 How. 212, 229 (1845). The term "equal footing" stems from the United States Supreme Court's recognition that "[b]ecause all subsequently admitted States enter the Union on an 'equal footing' with the original 13 States, they too hold title to the land under navigable waters within their boundaries upon entry into the Union." <u>Utah Div. of State Lands v. United States</u>, 482 U.S. 193, 195 (1987) (citing <u>Pollard's Lessee</u>, 3 How. at 229 (1845). The doctrine applies to the rights and sovereignty of states in relation to the federal government. <u>See also</u>, <u>Stearns v. Minnesota</u>, 179 U.S. 223, 245 (1900); <u>United States v. Gardner</u>, 107 F.3d 1314, 1318-19 (9th Cir. 1997). It does not bear upon the rights of individuals. Thus, plaintiffs themselves do not have a private right of action to sue under the Equal Footing Doctrine.

Likewise the Submerged Lands Act, 43 U.S.C. §§ 1301, <u>et seq.</u>, addresses rights of the states as states, and not those rights held by individual citizens. 43 U.S.C. § 1311 (title to and ownership of lands beneath navigable waters vested in and assigned to the respective states, with some narrowly tailored exceptions). Although the Submerged Lands Act does contain provisions protecting

private rights to submerged lands acquired prior to its enactment, 43 U.S. § 1311(a), plaintiffs have not pled that they have been granted any such rights or interests. Plaintiffs themselves do not have a private right of action to sue under the Submerged Lands Act.

The Tenth Amendment operates to restrain the Federal Government from acting on matters reserved to the states. New York v. United States, 505 U.S. 144, 156-57 (1992). The language in the Tenth Amendment embodies the concept of dual sovereignty, expressly establishing and protecting the sovereign rights of states. Printz v. United States, 521 U.S. 898, 918-19 (1997). When a claim is brought under the Tenth Amendment, parties other than states or their officers have no individual standing to sue. See Tennessee Electrical Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 144 (1936); accord Nance v. EPA, 645 F.2d 701, 716 (9th Cir. 1981). Plaintiffs here are neither the State of Alaska nor officers of the State. Plaintiffs themselves do not have a private right of action to sue under the Tenth Amendment.

Under certain narrowly tailored circumstances, a litigant may be permitted to bring actions on behalf of third parties. Powers v. Ohio, 499 U.S. 400, 410-411 (1991). However, plaintiffs do not assert that they are proper third-party litigants bringing claims on behalf of the State of Alaska. Moreover, defendants have presented persuasive authority as to why plaintiffs are not proper third-party litigants in this instance. Instead, plaintiffs argue that they have standing to sue the United States as "public trust

litigants" under the Public Trust Doctrine.[15] The argument is without merit.

The Public Trust Doctrine addresses lands held in trust by a state for the benefit of its citizens. See Illinois Central R. Co. v. Illinois, 146 U.S. 387, 452-54 (1982). The doctrine imposes certain restrictions on a state's authority to dispose of such lands. Id. In Alaska, the doctrine is embodied in the Common Use Clause of the Alaska Constitution. Owsicheck v. State, 763 P.2d 488, 491-93 (Alaska 1988) (state has a public trust duty with regard to the management of fish, wildlife, and waters). However, the duties under the doctrine are those held by a state and owed to its citizenry. The State of Alaska is not a defendant in this lawsuit. What is more, plaintiffs have provided no authority for the proposition that the Public Trust Doctrine allows individuals to sue the federal government. Accordingly, plaintiffs do not have standing to assert the claims in Counts One and Two of their complaint and those counts are dismissed.

### Count Three

Count Three of plaintiffs' complaint alleges a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution. The Fourteenth Amendment applies to the actions of states, not the actions of the federal government. The claim is properly raised under the Fifth Amendment, which prohibits discrimination by the federal government that is so unjustifiable as to vio-

---

[15] Opposition to Motion to Dismiss at 9, Clerk's Docket No. 26.

late due process.  Schneider v. Rusk, 377 U.S. 163, 168 (1964); Frontiero v. Richardson, 411 U.S. 677, 680 n.5 (1973).[16]  That said, defendants have raised various arguments as to why Count Three should be dismissed.  These include a failure to comply with the statute of limitations, failure to state a claim upon which relief can be granted, and res judicata.

Defendants first argue that because plaintiffs are asserting claims against the United States, the generic six-year statute of limitations found in 28 U.S.C. § 2401 applies.  Defendants argue that because plaintiffs' claim was filed over seventeen years after ANILCA was enacted, the court should dismiss the claim on statute of limitations grounds.

Defendants' argument assumes that plaintiffs raise an equal protection challenge on the face of ANILCA.  However, it is not entirely clear to the court that plaintiffs challenge ANILCA on its face.  Plaintiffs assert that they are not facially challenging the constitutionality of ANILCA, but rather that they are challenging its "continuing application."[17]  Plaintiffs do not explain what they mean by "continuing application."  Thus, it has been left to the court to discern what type of claim plaintiffs actually raise.

---

[16]  The Fifth Amendment Due Process Clause has been construed as having the same significance as the Equal Protection Clause in the Fourteenth Amendment.  Hampton v. Mow Sun Wong, 426 U.S. 88, 100 (1975).  Thus, courts may apply "equal protection" analysis to claims appropriately brought under the Fifth Amendment.

[17]  See Opposition to Motion to Dismiss at 6, Clerk's Docket No. 26.



One possibility is that plaintiffs are challenging ANILCA "as-applied". An "as-applied" challenge is one which addresses how a statute which is constitutional on its face is unconstitutional as it is applied to a particular plaintiff or plaintiffs. Plaintiffs' complaint alleges that specific enforcement acts by the federal government have harmed at least some of them. These acts include the issuance and subsequent revocation of hunting permits based upon the rural subsistence priority. These alleged injuries occurred within the six-year statute of limitations.

The other possibility is, as defendants suggest, that plaintiffs challenge ANILCA on its face. Plaintiffs arguably challenge Title VIII of ANILCA as it applies to everyone, not just them. Other courts have deemed such challenges as facial attacks upon the statute itself. See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5 (1982) ("A facial challenge, in this context, means a claim that the law is invalid in toto--and therefore incapable of any valid application.").

For purposes of the instant motion, the court assumes that plaintiffs may have attempted to state both an as-applied and a facial challenge of ANILCA. The court concludes for purposes of defendants' motion to dismiss that plaintiffs have adequately pled an as-applied challenge to the statute. As to a facial challenge of ANILCA, the six-year statute of limitations, 28 U.S.C. § 2401, has expired, and that claim is barred. To the extent plaintiffs' challenge is a facial one, it is late.

Defendants' motion to dismiss is denied as to Count III to the extent that it makes an as-applied challenge. The motion is granted to the extent that plaintiffs sought to make a facial challenge to ANILCA.

Defendants next argue that Count Three should be dismissed for failure to state a claim under Rule 12(b)(6). Defendants assert that no set of facts could possibly entitle plaintiffs to the relief that they request. Defendants also argue that the equal protection analysis applied by this court in an October 7, 1992, order in McDowell shows as much.[18] Plaintiffs contend that they should be allowed to address the merits of their claim at the summary judgment level. On this point, the court agrees with plaintiffs.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the formal sufficiency of the stated claim for relief. Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987). The Supreme Court has held that a complaint should not be dismissed unless it appears "beyond doubt" that plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of his or her claim. Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974).

---

[18] See McDowell v. United States, No. 92-0531-CV (HRH) (D. Alaska Oct. 7, 1992) (Order).

Here, plaintiffs have presented a sufficient as-applied equal protection challenge to ANILCA. It should be addressed on its merits. Moreover, the portion of the October 7, 1992, McDowell order upon which defendants rely was subsequently vacated. Accordingly, defendants' failure to state a claim argument as to Count Three fails.

Defendants also argue that the Alaska resident plaintiffs (Bondurant, Jacobson, and Olson) should be barred on res judicata grounds from presenting the equal protection claim in Count Three. Defendants assert that the case Alaska v. Babbitt, No. A92-0264-CV (HRH) (D. Alaska), has a res judicata effect upon plaintiffs' equal protection claim. A federal action may be barred by the doctrine of res judicata where an earlier lawsuit: (1) involved the same claim as the present suit; (2) reached a final judgment on the merits; and (3) involved the same parties or their privies. See Blonder-Tongue Laboratories v. Univ. of Ill. Found., 402 U.S. 313, 323-324 (1971).

Plaintiffs in this case were not plaintiffs in Alaska v. Babbitt. Also, in Alaska v. Babbitt, the State did not raise an equal protection challenge to ANILCA. Defendants nonetheless argue that plaintiffs were a party in privity with the State of Alaska under what is known as the "common public rights doctrine." In City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 340-41 (1958), the Supreme Court explained that a final state court judgment rendered against a state "was effective not only against the State but also against its citizens...." Id. The court stated that this was

- 12 -

EXHIBIT 3
Page 12 of 16

because "they, in their common public rights as citizens of the State, were represented by the State in those proceedings, and like it, were bound by the judgment." Id.

There are two problems with defendants' reliance upon City of Tacoma. First, defendants have not provided the court with any authority for the proposition that the right to equal protection fits within the ambit of "common public rights" enunciated in City of Tacoma. Second, and perhaps more importantly, even if the right to equal protection did fit within the ambit of "common public rights," there is no judgment on an equal protection claim to which plaintiffs must be bound.[19] Defendants' motion to dismiss Count III on res judicata grounds is denied.

### Count Four

Count Four of plaintiffs' complaint asserts a violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551, et seq. It appears that plaintiffs have abandoned this claim, as they do not provide opposition to defendants' motion to dismiss. Under local rules, failure to oppose a motion may be deemed an admission that the motion is well taken. D. Ak. L.R. 7.1(d). The court so concludes and dismisses Count Four of plaintiffs' complaint.

---

[19] On this point, defendants argue that the State of Alaska could have raised such a claim and that "res judicata bars not only claims that were actually litigated but also all claims that could have been asserted in the prior action." Int'l Union of Operating Engineers-Employees Const. Indus. Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993). The State could not have brought the "as-applied" challenge to ANILCA that plaintiffs herein raise, as such a challenge would not have been ripe at the time the State brought its case against then-Secretary Babbitt.

### Standing of the Corporate Plaintiff as to All Counts

Defendants argue that the Alaska Constitutional Legal Defense Conservation Fund, Inc., lacks standing to bring any of the claims alleged against defendants. Defendants argue that plaintiffs' complaint fails to allege that ACLDCF is a membership organization, that plaintiffs fail to offer proof that it is a membership organization, and that plaintiffs' complaint fails to allege ACLDCF was itself injured by any of defendants' acts. Plaintiffs argue that ACLDCF is a membership organization whose stated purposes are to guarantee the protection of Alaska's natural resources and to preserve them for the common good of all people.

Under certain circumstances, an organization can have standing to sue on behalf of its members. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); National Wildlife Federation v. Burford, 871 F.2d 849, 852 (9th Cir. 1989). However, plaintiffs' complaint does not allege that ACLDCF is a member organization or that it is suing on behalf of its members. Therefore, its standing must be based on injuries to ACLDCF itself. Warth v. Seldin, 422 U.S. 490, 511 (1975). Although plaintiffs in their briefing argue that ACLDCF is a membership organization suing on behalf of its members, that is not what the complaint reads. Further, plaintiffs have not adequately alleged any injury to ACLDCF as a membership organization. For these reasons, ACLDCF is dismissed from this action with leave to amend the complaint.

### Plaintiff Bondurant's Standing as to All Counts

Defendants argue that plaintiff Bondurant lacks standing to sue because, at the time this suit was filed, Bondurant was a rural resident for purposes of ANILCA. Plaintiff Bondurant is a resident of Soldotna, Alaska. This complaint was filed on June 6, 2000. Regulations found in 36 C.F.R. § 242.23 imply that Soldotna is considered rural of purposes of ANILCA, but those regulations were promulgated on June 30, 2000, after plaintiffs had filed their complaint. See also, 65 Fed. Reg. 40730, 40734 (June 30, 2000). Also, since the filing of the complaint, Soldotna has again been reclassified as urban by the Federal Subsistence Board.[20]

Defendants are correct in arguing that jurisdiction over this action depends on the facts that existed at the time this action was commenced. Keene Corp. v. United States, 508 U.S. 200, 208 n.3 (1993). However, defendants have not shown that Bondurant lacked standing to sue when plaintiffs' complaint was filed. To the contrary, the regulations upon which they rely, by expression and implication, show that Bondurant was not deemed a rural resident until after plaintiffs' complaint was filed; and since that time, Bondurant's status has been redesignated as urban. Plaintiff

---

[20] See Declaration of Kenneth M. Lord, attached as Exhibit 27 to Defendants' Reply, Clerk's Docket No. 28.

Bondurant does not lack standing. Bondurant is not dismissed from this action.[21]

## Conclusion

For the foregoing reasons, defendants' motion to dismiss Counts One and Two is granted. Defendants' motion to dismiss Count Three is denied to the extent that plaintiffs' constitutional challenge to ANILCA is an as-applied challenge. Defendants' motion to dismiss Count Four is granted. Defendants' motion to dismiss the corporate plaintiff ACLDCF as to all counts is granted with leave to amend. Defendants motion to dismiss plaintiff Bondurant is denied.

DATED at Anchorage, Alaska, this 4 day of February, 2002.

/s/ H. Russel Holland
H. Russel Holland, Judge
District of Alaska

```
A00-0167--CV (HRH)
-----------------------------------------------
R. ERWIN
C. DANIEL
D. DUNSMORE (AUSA)
```

---

[21] There is also some discussion of a potential Federal Tort Claims Act (FTCA) claim. Plaintiffs have not alleged a cause of action under the FTCA in their complaint and, in their opposition briefing, further disavow the existence of any such claim.