IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KATIE JOHN, GERALD NICOLIA, ALASKA )
INTER-TRIBAL COUNCIL, AND NATIVE   )
VILLAGE OF TANANA,                 )
                                   )
                    Plaintiffs,    )
                                   )
     vs.                           )
                                   )
UNITED STATES OF AMERICA, GALE     )
NORTON, et al.,                    )
                                   )
                    Defendants.    )
_____)
                                   )
STATE OF ALASKA,                   )
                                   )
                    Plaintiff,     )
                                   )
     vs.                           )  No. 3:05-cv-0006-HRH
                                   )   (Consolidated with
GALE NORTON, Secretary of the      )  No. 3:05-cv-0158-HRH)
INTERIOR, et al.,                  )
                                   )
                    Defendants.    )
_____)

O R D E R

Motion for Partial Summary Judgment

Defendants Gale Norton, Secretary of the Interior, and Mike Johanns, Secretary of Agriculture, move for summary judgment on Count IV of the State of Alaska's complaint.[1]  This motion is

---

[1] Clerk's Docket No. 20.

opposed.[2]  Oral argument was not requested and is not deemed necessary.

## Background

On January 6, 2005, the State of Alaska filed a complaint[3] challenging regulations that were promulgated by defendants on January 8, 1999.[4]  The 1999 rulemaking was the product of three separate proceedings.  First, pursuant to the decision in State of Alaska v. Babbitt, 72 F.3d 698, 704 (9th Cir. 1995), defendants designated navigable waters that are public lands for purposes of the subsistence use priority set forth in Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. § 3113.  The 1999 rulemaking also addressed two petitions for rulemaking submitted by individual Alaska Natives and Alaska Native entities.  See 64 Fed. Reg. 1276, 1276-77 (Jan. 8, 1999).  One of the petitions requested that

> the Secretaries initiate rulemaking to (1) establish that they have authority to regulate hunting and fishing on non-public lands to protect the subsistence priority afforded on public lands by Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), and (2) determine that lands selected by, but not yet conveyed to, Native Corpora-

---

[2]   Clerk's Docket No. 28.

[3]   Clerk's Docket No. 1 in Case No. 3:05-cv-0158-HRH.  The State filed its complaint in the United States District Court for the District of Columbia.  The State's action was subsequently transferred to this court and consolidated with the previously filed case of John v. United States, Case No. 3:05-cv-0006-HRH.

[4]   The challenged regulations are codified at both 36 C.F.R. Part 242 and 50 C.F.R. Part 100.  This order cites only the version of the regulations found in 50 C.F.R. Part 100.

> tions and the State of Alaska be treated as
> public lands subject to the ANILCA subsistence
> priority.

60 Fed. Reg. 6466, 6466 (Feb. 2, 1995). Defendants solicited public comment on this petition. Id.

In an advance notice of proposed rulemaking, defendants advised:

> This advance notice of proposed rulemaking would unambiguously delegate to the Federal Subsistence Board the authority to regulate hunting, fishing and trapping activities on non-public lands in Alaska which interfere with subsistence activities on the public lands to such an extent as to result in a failure to provide the subsistence priority. The Secretaries expect that the Board would exercise this authority sparingly.

61 Fed. Reg. 15014, 15016 (April 5, 1996). However, when the actual regulation was proposed, defendants chose not to delegate this authority to the Federal Subsistence Board (FSB). Instead, the proposed rule provided that the FSB could

> [e]valuate whether hunting, fishing, or trapping activities which occur on lands or waters in Alaska other than public lands interfere with subsistence hunting, fishing, or trapping on the public lands to such an extent as to result in a failure to provide the subsistence priority, and after appropriate consultation with the State of Alaska, the Regional Councils, and other Federal agencies, make recommendation to the Secretaries for their action[.]

62 Fed. Reg. 66216, 66225 (Dec. 17, 1997). In response to public comment that "ANILCA does not authorize the extension of Federal jurisdiction off of Federal lands", id. at 66217, defendants responded:

> The Federal courts have long ruled that the Federal government may extend jurisdiction off of Federal lands in order to protect the interests and purposes of those Federal areas. This document clarifies that the Secretaries will retain that authority. The Board, located in Alaska and much more familiar with the unique situations there, will evaluate the situation and make recommendations to the Secretaries for their action.

Id.  Defendants then proposed the following language as part of section 10(a) of the proposed regulations:

> The Secretaries, however, retain their existing authority to restrict or eliminate hunting, fishing, or trapping activities which occur on lands or waters in Alaska other than public lands when such activities interfere with subsistence hunting, fishing, or trapping on the public lands to such an extent as to result in a failure to provide the subsistence priority.

Id. at 66224.

When the final rule was published, defendants recognized that some commentators disagreed with the above statement. Specifically, defendants noted:

> Several commentors disagreed with the language of § __.10(a) of the Proposed Rule which stated that the Secretaries retain their existing authority to restrict or eliminate hunting, fishing, or trapping activities which occur on lands or waters other than the lands identified in the applicability and scope section of the regulation. We did not modify this section. The authority of the Secretaries to restrict or eliminate activities off Federal public lands has been confirmed in cases as Kleppe v. New Mexico(426 U.S. 529) and Minnesota v. Block (660 F.2d 817). This regulation does not expand or diminish the Secretaries' authority, it only states that it exists. This authority has rarely been exercised and is not exercised in this Final Rule.  One commentor recommended that the Secretaries should delegate to the

> Federal Subsistence Board authority to extend jurisdiction beyond Federal lands. Extension of Federal jurisdiction is a significant policy decision, only applied in very rare circumstances, and the Secretaries have chosen not to delegate that authority to the Board.

64 Fed. Reg. 1276, 1281 (Jan. 8, 1999). The final rule as codified at 50 C.F.R. § 100.10(a) reads:

> The Secretaries, however, retain their existing authority to restrict or eliminate hunting, fishing, or trapping activities which occur on lands or waters in Alaska other than public lands when such activities interfere with subsistence hunting, fishing, or trapping on the public lands to such an extent as to result in a failure to provide the subsistence priority.

In Count IV of its complaint, the State challenges this regulation as an improper assertion of extraterritorial jurisdiction. The State alleges that defendants have "improperly extended Federal jurisdiction to waterways that have no connection to Federal lands, [conservation system units] or National Forests."[5] The State further alleges that "[a]ny hunting, fishing or trapping activities occurring 'off the public lands' is subject to the duly promulgated laws and regulations of the State of Alaska and Title VIII does not extend Federal preemptive authority to supersede the State's authority to regulate fish and wildlife 'off the public lands.'"[6] Finally, the State alleges that defendants' improper assertion of extraterritorial jurisdiction "diminish[es] the State's sovereign

---

[5] Complaint at 18, ¶ 68, Clerk's Docket No. 1 in Case No. 3:05-cv-0158-HRH.

[6] Id. at ¶ 69.

authority contrary to ANILCA § 1314(a) and also illegally expands Federal preemptive authority in violation of ANILCA § 1314(b)."[7]

Defendants now move for summary judgment dismissing Count IV of the State's complaint on the grounds that the State lacks standing to bring Count IV and that the claim asserted in Count IV is not ripe.

## Discussion

### Standing

"The standing doctrine, like other Article III doctrines concerning justiciability, ensures that a plaintiff's claims arise in a 'concrete factual context' appropriate to judicial resolution." Arakaki v. Lingle, 423 F.3d 954, 965 (9th Cir. 2005) (quoting Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)).

> To satisfy Article III's standing requirements, a plaintiff must show (1) [it] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Bernhardt v. County of Los Angeles, 279 F.3d 862, 868-69 (9th Cir. 2002) (quoting Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).  The plaintiff bears the burden of establishing standing.  Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005).

---

[7] Id. at ¶ 70.

The State argues that defendants' assertion of extraterritorial authority has caused it to suffer an injury in fact. The State contends that its regulatory process has been impacted and effected by defendants' assertion of extraterritorial authority because the State's traditional authority to regulate hunting and fishing on non-public lands has been preempted by the regulation. The State contends that the continuing threat of preemption arising from § 100.10(a) "hangs over and ripples through the State's fish and wildlife policy and rulemaking" and creates tangible uncertainties for the Boards of Fisheries and Game.[8]

The State has failed to show that it has suffered an injury in fact that is fairly traceable to the challenged regulation. The State makes vague allegations that its regulatory process is being impacted by the challenged regulation, but the State offers no affidavits or other evidence to support these allegations. There is nothing before the court that demonstrates that the State's hunting and fishing regulatory scheme is being impacted by the challenged regulation in any way. At the summary judgment stage of the proceedings, the plaintiff cannot merely rely on the allegations in its complaint to establish standing. Walker v. City of Lakewood, 272 F.3d 1114, 1124 (9th Cir. 2001). At this stage of the proceedings, the plaintiff must "'set forth' by affidavit or other evidence 'specific facts,' which for purposes of summary judgment motion will be taken to be true." Lujan v. Defenders of Wildlife,

---

[8] State of Alaska's Opposition to Federal Defendants' Motion for Partial Summary Judgment at 10, Clerk's Docket No. 28.

504 U.S. 555, 561 (1992) (quoting Fed. R. Civ. P. 56(e)). There is simply nothing before the court that demonstrates that the State has suffered a concrete and particularized injury as a result of the challenged regulation. The State points to no instance where defendants have actually asserted extraterritorial jurisdiction or even threatened to assert extraterritorial jurisdiction. In fact, the evidence currently before the court shows that when defendants were requested to do so in 2004, they chose not to assert extraterritorial jurisdiction.[9] At best, the State has suggested that its regulatory process <u>may be</u> impacted if and when defendants ever chose to assert the extraterritorial jurisdiction claimed in the challenged regulation. In other words, the State has shown that it may suffer an injury at some indeterminate time in the future. This is not an actual or imminent injury but rather a conjectural or hypothetical injury, the very type of injury that is insufficient to establish Article III standing. Because the State has failed to show that it has suffered an actual, concrete, and particularized injury, the State does not have Article III standing to bring Count IV, and Count IV must be dismissed.

<u>Ripeness</u>

Because the State lacks standing to bring Count IV, it is not necessary to reach the issue of whether Count IV is ripe. Were

---

[9] <u>See</u> Declaration of Thomas H. Boyd, Exhibit 1, Defendants Motion for Partial Summary Judgment -- Count IV in Case No. A05-0158-CV (HRH), Clerk's Docket No. 20.

the court to reach this issue, it would conclude that Count IV is not ripe.

"The constitutional component of ripeness is a jurisdictional prerequisite." United States v. Antelope, 395 F.3d 1128, 1132 (9th Cir. 2005).

> "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

Natural Resources Defense Council v. Abraham, 388 F.3d 701, 705 (9th Cir. 2004) (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003)). "All of that, in turn, requires a court 'to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" Id. (quoting Nat'l Park Hosp. Ass'n, 538 U.S. at 808).

> "Absent [a statutory provision providing for immediate judicial review], a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [Adminstrative Procedure Act (APA)] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him. (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately...."

Nat'l Park Hosp. Ass'n, 538 U.S. at 808 (quoting Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 891 (1990)).

"The fitness element requires that the issue be primarily legal, need no further factual development, and involve a final agency action." Dietary Supplemental Coalition, Inc. v. Sullivan, 978 F.2d 560, 562 (9th Cir. 1992). Although the issue raised in Count IV is primarily legal and there is no doubt that the final rule constitutes final agency action, this is a situation where further factual development is needed. Defendants' final rule, 50 C.F.R. § 100.10(a) requires nothing of the State of Alaska. Defendants have taken no action to apply this rule to anyone; and as discussed above, the State has shown no harm to have been suffered or to be imminent. The fitness element is not met here.

Even if the fitness requirement were met, the State has not shown that it meets the hardship requirement. "To meet the hardship requirement, a litigant must show that 'withholding review would result in a 'direct and immediate' hardship and would entail more than possible financial loss." Western Oil and Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1291 (9th Cir. 1990) (quoting Winter v. Cal. Medical Review, 900 F.2d 1322, 1324 (9th Cir. 1990)). The hardship element "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." Natural Resources Defense Council v. Abraham, 388 F.3d 701, 706 (9th Cir. 2004).

The State argues that the challenged regulation imposes a significant practical harm upon it by diminishing its traditional

- 10 -

authority over non-public lands and vesting preemptive, superseding power in defendants. The State contends that withholding judicial review will impose a significant practical harm upon it because the challenged regulation is hanging over it "like the sword of Damocles, ready to drop at a moment's notice."[10]

The State will suffer no practical hardship if review of the challenged regulation is withheld. The challenged regulation

> "do[es] not command anyone to do anything or to refrain from doing anything; [it] do[es] not grant, withhold, or modify any formal legal license, power, or authority; [it] do[es] not subject anyone to any civil or criminal liability; [and it] create[s] no legal rights or obligations."

Nat'l Park Hosp. Ass'n, 538 U.S. at 809 (quoting Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998)). The challenged regulation does not create any legal rights or obligations as the State contends. The regulation merely states the defendants' position that they have certain authority over non-public lands. If defendants have the authority they claim in the regulation, they have it whether or not the regulation exists.

As discussed above, the State has not shown that its hunting and fishing regulatory scheme is affected in any way by the regulation. While the State may have some uncertainty about whether or not the regulation is valid, that type of uncertainty is not sufficient to demonstrate hardship. Id. at 811-12. Were the court to review the regulation challenged in Count IV at this time, it

---

[10] State of Alaska's Opposition to Federal Defendants' Motion for Partial Summary Judgment at 14, Clerk's Docket No. 28.

would be entangling itself in an abstract disagreement over an administrative policy, the very kind of entanglement that the ripeness doctrine is designed to prevent.

## Conclusion

Defendants' motion for summary judgment as to Count IV is granted.  Count IV is dismissed without prejudice.

DATED at Anchorage, Alaska, this 10th day of March, 2006.

>                          /s H. Russel Holland
>                          United States District Judge