DEAN K. DUNSMORE
Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone: (907) 271-5452
Facsimile: (907) 271-5827
Email: dean.dunsmore@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| KATIE JOHN, GERALD NICOLIA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:05-cv-0006-HRH |
| | ) | (CONSOLIDATED) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, DIRK KEMPTHORNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |


BRIEF OF THE UNITED STATES

TABLE OF CONTENTS

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . -1-

    A. Katie John #1. . . . . . . . . . . . . . . . . . -1-

    B. Implementation of Katie John #1. . . . . . . . . . -4-

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . -8-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . -9-

I.   A DEFERENTIAL STANDARD OF REVIEW IS APPLIED IN ASSESSING THE
     VALIDITY OF THE AGENCIES' REGULATIONS . . . . . . . . -9-

II. THE STATE'S CLAIMS ARE WITHOUT MERIT . . . . . . . . -11-

    A.   The State's Claim that the Agencies were without
        authority to issue the 1999 Rule should be rejected.
        . . . . . . . . . . . . . . . . . . . . . . . -12-

        1.   The State is barred from now arguing that the
            agencies were without authority to issue the 1999
            Rule identifying navigable waterways with
            federally reserved water rights. . . . . . -13-

        2.   The State Failed to Exhaust Administrative
            Remedies. . . . . . . . . . . . . . . . . -17-

        3.   There is no merit to the State's contention that
            reserved water rights must be judicially
            adjudicated before any rule making can occur  -20-

            a.   An adjudication would frustrate the orders of
                the Court . . . . . . . . . . . . . . -21-

            b.   A judicial adjudication is not required by
                principles of administrative law or water
                law. . . . . . . . . . . . . . . . . . -24-

            c.   The rule making furthers the purposes of
                ANILCA and does not exceed the Secretaries'

statutory authority absent an adjudication.
. . . . . . . . . . . . . . . . . . . . . -27-

B.    The agencies properly applied the reserved rights
doctrine in promulgating the 1999 regulations . .  -29-

1.    The Federal Reserved Rights Doctrine . . . .  -30-

2.    Quantification is unnecessary. . . . . . . .  -34-

3.    The agencies properly identified the purposes of
the federal reservations and the need for water to
fulfill these purposes  . . . . . . . . . .  -35-

C. INLAND WATERS ARE PROPERLY DEFINED  . . . . . . .  -40-

D.    The 1999 Regulations Properly Limit FRWRs to those
waterways within or adjacent to federal reservations
. . . . . . . . . . . . . . . . . . . . . -44-

1.    The regulations exclude waters that are outside of
and not adjacent to a federal reservation. .  -45-

2.    Waters on selected but not yet conveyed lands are
properly deemed to be subject to the Title VIII
Priority . . . . . . . . . . . . . . . . .  -46-

CONCLUSION  . . . . . . . . . . . . . . . . . . . . .  -50-

Defendants United States et al. respond herein to the Plaintiff State of Alaska's Opening Brief Regarding What Rules of Law Govern Establishment of Federal Reserved Water Rights in Alaska and Determinations of "Public Lands" (Docket Entry No. 68), hereinafter referred to as "Plf's Brief." The State of Alaska in Case No. 3:05-cv-00158-HRH seeks judicial review of the Final Rule jointly promulgated by the Secretaries of the Interior and Agriculture at 64 Federal Register 1276, 1286-1313 (Jan. 8, 1999). For the reasons that follow, the State's contentions should be rejected.

## STATEMENT

The State's action is a continuation of proceedings that resulted in the decisions in *State of Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996), *adhered to en banc following remand sub nom.*, *John v. United States*, 247 F.3d 1032 (9th Cir. 2001). These decisions and their proceedings will hereinafter be referred to as *Katie John #1*. As will be shown herein, the State of Alaska is now making contentions that were previously rejected in *Katie John #1*, are contrary to the representations previously made by the State, were waived or not timely presented to the agencies, and are contrary to established law.

**A. Katie John #1.** Sections 803 and 804 of Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3113-3114, require that certain Federally owned lands

defined as "public lands" in 16 U.S.C. § 3102(3) be administered so as to provide a priority for the taking of fish and wildlife by "rural Alaska residents" for "subsistence uses." At the time of the commencement of the original *Katie John v. United States* case, No. A90-484 Civil, the Secretaries of the Interior and Agriculture had determined that navigable waters, except where they were above submerged lands held by the United States, were not public lands for purposes of the ANILCA priority. The *Katie John* plaintiffs brought suit to compel the United States to recognize that all navigable waters in Alaska were public lands for purposes of the federal subsistence use priority created by 16 U.S.C. §§ 3113-3114, and to enjoin the State of Alaska from interfering with that federally granted right.

The State of Alaska subsequently brought its own action in this Court--*State of Alaska v. Bruce Babbitt et al.*, No. A92-0264-CV(HRH). The State's action was consolidated with the *Katie John* case. In its action, the State presented two basic claims: (1) that the navigable waters are not public lands for purposes of the federal subsistence use priority; and (2) that the federal government was not permitted under the statute, 16 U.S.C. §§ 3111-3126, to implement the federal subsistence use priority. Implementation of the Title VIII priority was alleged by the State to be by the State under the Court's direction.

For simplicity, the basic underlying issues raised by the *Katie John* plaintiffs and the State of Alaska were denominated as

the "who" and "where" issues. The "who" issue was the State's contention that federal government had no authority to implement the federal subsistence use priority. The "where" issue was whether and to what extent navigable waters are public lands for purposes of the federal priority.

This Court rejected the State's "who" issue contentions, and that claim was subsequently dismissed with prejudice. With respect to the "where" issue, federal defendants were initially allied with the State of Alaska in opposition to the claim of the *Katie John #1* plaintiffs. However, on March 18, 1994, the federal defendants changed their position and agreed that navigable waters in which the United States held a reserved water right were public lands for purposes of the federal subsistence use priority. The *Katie John #1* plaintiffs contended that this priority extended by operation of the navigational servitude to all waters. This Court agreed with the *Katie John #1* plaintiffs. On interlocutory appeal, however, the Court of Appeals agreed with the contentions of the federal defendants and reversed in part the decision of this Court. *State of Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996).

The Court of Appeals recognized the two diametrically opposed positions of the *Katie John #1* plaintiffs and the State of Alaska. 72 F.3d at 702. The Court of Appeals rejected both of these contentions. *Id.* 702-03. The Court of Appeals agreed with federal defendants' contention and held:

By virtue of its reserved water rights, the United
States has interests in some navigable waters.
Consequently, public lands subject to subsistence
management under ANILCA include certain navigable
waters.

For these reasons, we hold to be reasonable the
federal agencies' conclusion that the definition of
public lands includes those navigable waters in which
the United States has an interest by virtue of the
reserved water rights doctrine. We also hold that the
federal agencies that administer the priority are
responsible for identifying those waters. (Footnote
omitted)

*Id.* at 703-04. The court also expressed the "hope that the

federal agencies will determine promptly which navigable waters

are public lands subject to the federal subsistence management."

*Id.* at 704.

Following remand, this Court entered a final judgment in

the *Katie John #1* proceedings. The State appealed from that

judgment, sought further review of the prior decisions, and again

sought to limit the scope of navigable waters that are public

lands for purposes of the ANILCA subsistence use priority. The

Court of Appeals sitting en banc adhered to the prior panel

decision:

A majority of the en banc court has determined that the
judgment rendered by the prior panel, and adopted by
the district court, should not be disturbed or altered
by the en banc court.

*John v. United States*, 247 F.3d 1032, 1033 (9th Cir. 2001).

**B. Implementation of Katie John #1**. The Secretaries

published proposed regulations to implement the *Katie John #1*

panel decision on December 17, 1997, 62 Federal Register 66216, 66222-23, 13 AR Tab 270.[1]/ Congress delayed promulgation and implementation of final regulations through a series of appropriation act restrictions. Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321, 1321-210; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009, 3009-222; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543, 1592; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681, 2681-251.

Following expiration of the last restriction, a final rule was published on January 8, 1999, 64 Federal Register 1276, 1286-88, 18 AR Tab 413. This rule was made effective October 1, 1999. *Id*. at 1276. In this rule the Secretaries determined that waters were public lands "where the Federal Government holds a water right or holds title to the waters or submerged lands."[2]/ *Id*. at 279. All navigable waters and non-navigable waters within and inland waters[3]/ adjacent to the specifically listed areas were

---

[1]/    "AR" refers to the Administrative Record, certified to the court on October 3, 2005. Defendants' Notice of Filing of Certified Index of the Administrative Record (Docket Entry No. 17). References to this record will be to the volume and Tab number of the documents.

[2]/    The State agrees that waters overlying federal lands are public lands. *Katie John et al v. United States*, No. 00-35121 (9th Cir.), En Banc Reply Brief for Appellants State of Alaska and Frank Rue at 21, Exhibit 1 hereto: "The State agrees that waters overlying federal lands are included in "public lands."

[3]/    Inland waters were defined in 50 C.F.R. § 100.4 as:

(continued...)

deemed to be public lands. *Id*. at 1286-87, codified at 36 C.F.R. § 242.3(b), 50 C.F.R. § 100.3(b)(2005).[4]/ The regulations also acknowledged that these determinations were subject to change. 64 Federal Register at 1287, 50 C.F.R. § 100.3( c).

Proposed amendments to the January 1999 final rule were published on December 8, 2004, 69 Federal Register 70940-44,[5]/ to "revise and clarify the jurisdiction of the Federal Subsistence Management program in coastal areas in southwestern Alaska." *Id*. at 70940. As stated therein, the purpose of the proposal was to exclude "saltwater embayments" that "were never intended to fall under subsistence management jurisdiction." *Id*. Following public review and comments on this proposal, a final rule was published in 70 Federal Register 96400-08 (December 27, 2005). As stated

---

[3]/    (...continued)
        "[T]hose waters located landward of the mean
        high tide line or the waters located upstream
        of the straight line drawn from the headland
        to headland across the mouths of rivers or
        other waters as they flow into the sea.
        Inland waters include, but are not limited
        to, lakes, reservoirs, ponds, streams, and
        rivers.

[4]/    The regulations are identical but separately codified. The Department of the Interior's regulations are codified at Title 50 of the Code of Federal Regulations, Part 100; the Department of Agriculture's are codified at Title 36 of the Code of Federal Regulations, Part 242. Hereinafter, references will be made only to the regulations found in Title 50.

[5]/    This proposal proceeded the filing of and is referenced in the State's Complaint for Declaratory and Injunctive Relief ¶¶ 33, 54.

therein:

> This rule revises and clarifies the jurisdiction of
> the Federal Subsistence Management Program for certain
> coastal areas in Alaska in order to further define, in
> part, certain waters that may never have been intended
> to fall under the Subsistence Management Program
> jurisdiction.

*Id*. at 76400. The preamble to this final rule, particularly in

response to public comments, clarifies and further explains the

scope of the 1999 regulations. *Id*. at 76402-404. It also further

clarifies that the United States was not claiming to hold

reserved water rights in marine waters.[6]/ *Id*. at 76401, 76403,

and that marine water are public lands only if they are above

submerged lands that were reserved in the United States at the

time of Alaska statehood. *Id*. at 76402, 76403.

The 2005 final rule separately lists the categories of

waters deemed to be public lands. Section ___.3(b)[7]/ identifies

those areas in which the marine waters are determined to be

public lands by reason of pre-statehood reservations. *Id*. at

76405, 76407. Section ___.3( c) lists those areas where marine

waters are not included, but where the regulations apply to all

---

[6]/   Marine waters are defined in 50 C.F.R. § 100.4, as:

> [T]hose waters located seaward of the mean
> high tide line or the waters located seaward
> of the straight line drawn from headland to
> headland across the mouths of rivers or other
> waters as they flow into the sea.

[7]/   To be codified respectively in the Code of Federal
Regulations, Title 36 and 50.

inland waters both navigable and non-navigable. *Id*. at 76405, 76407-08. The preamble also sets forth an extensive list of marine waters within certain wildlife refuges that are now excluded from the jurisdiction of the Federal Subsistence Management Program. *Id*. at 76404-05. Where lands have not been withdrawn from the public domain for specific purposes (*e.g.* "unassociated BLM lands"), the regulations apply only to non-navigable waters on federal lands. *Id*. at 76405.

The 2006 final rule once again acknowledged that the public lands waters determinations remain subject to change. *Id*. at 76408, section ___.3(e). Subsequently, a proposal to determine that certain waters in the Makhnati Island area are also public lands based on a pre-statehood reservation was published. 71 Federal Register 25528-31 (May 1, 2006). A rule finalizing that determination, effective September 25, 2006, was published on August 24, 2006. 71 Federal Register 49997.

## SUMMARY OF ARGUMENT

The principle contention of the State is that defendants may not determine in a rule making under 5 U.S.C. § 503, that reserved water rights are held by the United States in any waters. The State contends that this determination can only be made in a judicial, adjudicative proceeding, or in a State administrative adjudication in which both the existence of the water right and a quantification of the right is allegedly required. Defendants will show that the State's contentions are

contrary to and barred by the determinations in the *Katie John #1* case, and that these contentions are contrary to established law. Federal reserved water rights are vested rights existing independent of any adjudication.

<div align="center">**ARGUMENT**</div>

I.  **A DEFERENTIAL STANDARD OF REVIEW IS APPLIED IN ASSESSING THE VALIDITY OF THE AGENCIES' REGULATIONS**

The State agrees that judicial review is governed herein by the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Plf's Brief at 4. Pursuant to 5 U.S.C. § 706, judicial review is limited to whether the agency's decision was arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with law, and whether the agency complied with all applicable procedural requirements. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971); *Pyramid Lake Paiute Tribe v. United States Department of the Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990). Under the arbitrary and capricious standard, courts are to engage in a substantial inquiry, but should not substitute their judgment for that of the agency. *Citizens to Preserve Overton Park*, 401 U.S. at 415-16; *Arizona v. Thomas*, 824 F.2d 745, 748 (9th Cir. 1987). An agency's action would be arbitrary and capricious:

> [I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the

product of agency expertise.

*Motor Vehicle Manufacture's Ass'n v. State Farm Mutual Automobile Ins.*, 463 U.S. 29, 43 (1983). *Accord United States v. Clark*, 912 F.2d 1087, 1090 (9th Cir. 1990).

A very heavy burden is placed on those who seek to overturn a regulation. *Ramirez v. Immigration & Naturalization Service*, 550 F.2d 560, 563 (9th Cir. 1977). The presumption is that the administrative action is correct. *Wilderness Public Rights Fund v. Kleppe*, 608 F.2d 1250, 1254 (9th Cir. 1979): "There is a judicial presumption favoring the validity of administrative action." *Accord Independence Acceptance Co. v. State of California*, 204 F.3d 1247, 1251 (9th Cir. 2000)(The standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.").

ANILCA provides that the Secretaries of the Interior and Agriculture "shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this subchapter." 16 U.S.C. § 3124.[8]/ When agencies are assigned by Congress this type of broad implementing responsibility, the review of implementing regulations is particularly deferential, and limited to ensuring that the regulations are "reasonably related to the purposes" of the enabling legislation:

---

[8]/    Secretary is defined in ANILCA to be either the Secretary of the Interior or the Secretary of Agriculture depending on the land unit at issue. 16 U.S.C. § 3102(12).

> Where the empowering provision of a statute states
> simply that the agency may "make...such rules and
> regulations as may be necessary to carry out the
> provisions of this Act," we have held that the validity
> of a regulation promulgated thereunder will be
> sustained so long as it is "reasonably related to the
> purposes of the enabling legislation."

*Mourning v. Family Publications Service*, 411 U.S. 356, 369

(1973), quoting *Thorpe v. Housing Authority of City of Durham*,

393 U.S. 268, 280-81 (1969). *Accord Baelelo v. Baldrige*, 724

F.2d 753, 760 (9th Cir. 1984), *cert. denied* 467 U.S. 1252 (1984);

*American Hospital Management Corp. v. Harris*, 638 F.2d 1208, 1212

(9th Cir. 1981)("Our review . . . is limited to determining

whether the regulation is reasonably related to the purpose of

the relevant enabling legislation, as well as to the more

particular purpose through which the particular regulation

implements those objectives in a particular area.").

Judicial review is confined to the administrative record

before the agency. *Florida Power & Light Co. v. Lorion*, 470 U.S.

729, 743 (1985); *Friends of the Earth v. Hintz*, 800 F.2d 822,

828-29 (9th Cir. 1986). A court may consider material not in the

record to obtain background information. *ASARCO, Inc. v. EPA*, 616

F.2d 1153, 1159-60 (9th Cir. 1980). However, consideration of

extra-record material to determine the correctness or wisdom of

an agency's decision is not permitted. *Id*. at 1160.

## II. THE STATE'S CLAIMS ARE WITHOUT MERIT

The State argues that the process used in promulgating the

1999 Rule was deficient. First, the State argues that the

Secretaries were without authority to proceed with the rule making without first having reserved water rights "established by proper adjudication" in a "proper federal or state forum."  Plf's Brief at 44. Second, the State argues (apparently in the alternative) that the Secretaries improperly applied the reserved water rights doctrine in issuing the 1999 Rule because they allegedly failed to identify the purposes of the federal reservations, the need for water for each reservation, and the precise quantity of water reserved.  *Id*. at 27-31.  Finally, the State raises a number of issues concerning the application of the 1999 Rule to marine waters and to areas selected but not yet conveyed to the State or Native Corporations within federal reservations.

In the sections below, each of the State's arguments is addressed.  The State's overarching claim – that the Secretaries were without authority to issue the 1999 Rule – is not only without merit but is also barred under doctrines of estoppel and the State's failure to exhaust administrative remedies. The remaining claims, even if under the Order (Docket Entry No. 66), filed April 26, 2006, were properly before the Court at this stage of the proceedings, are premised either on a misunderstanding of the 1999 Rule or on an incorrect interpretation of the reserved water rights doctrine or ANILCA.

**A.    The State's Claim that the Agencies were without authority to issue the 1999 Rule should be rejected.**

The State contends that no determination that waters are

public lands by reason of reserved water right can be made in a rule making proceeding. The State contends this determination can be made only after an adjudicative proceeding which culminates in a determination that there are reserved water rights and a quantification of those rights.

There is no dispute that the 1999 final rule was not an adjudication. It was a rule making pursuant to 5 U.S.C. § 553. It was not an adjudicative proceeding under 5 U.S.C. § 554.

Defendants will show below that the Court of Appeals in *Katie John #1* not only contemplated, but required defendants to proceed to determine in a rule making proceeding the waters that are public lands by reason of a reserved water right. The State is precluded by reason of this prior decision from contending otherwise. Defendants will also show that the State's present contentions were not presented to the agencies during the rule making process and may not be presented for the first time to this Court. Finally, Defendants will show that even if the argument could be asserted, the State's contentions are baseless – the Secretaries had the duty and authority to issue the 1999 Rule without undertaking an unnecessary, expensive (to all parties), and time consuming judicial adjudication of reserved water rights.

1.  **The State is barred from now arguing that the agencies were without authority to issue the 1999 Rule identifying navigable waterways with federally reserved water rights.**

The issue the State now raises has already been litigated

and decided. The Secretaries' authority, and indeed direction, to determine by rule making the waters that are public lands by reason of Federal reserved water rights (FRWRs) has been established in litigation to which the State was a party. That decision is binding on and not subject to re-litigation by the State.

In the *Katie John #1* litigation, the litigation challenged the validity of the 1992 implementing regulations, with the plaintiffs arguing that the regulations improperly defined "public lands" so as to exclude navigable waterways.  In addition, the State argued that the Secretaries were without authority to issue regulations at all.  In response to the latter argument, the district court held that Title VIII of ANILCA authorizes the federal agencies to promulgate regulations to manage subsistence fishing and hunting on public lands in the absence of Alaska laws implementing the subsistence priority. *See Katie John I*, 72 F.3d at 700 n.2.  On appeal, the parties stipulated to dismissal with prejudice of that issue so that "the district court's holding on this issue stands."  *Id.*

Accordingly, the Ninth Circuit stated that the "sole issue remaining in this appeal concerns the meaning of the definition of public lands in §102 of ANILCA."  *Id.* at 700. This issue arose, as noted above, in the context of whether the existing 1992 regulations were overly narrow. Thus, when the Ninth Circuit held that "the federal agencies that administer the priority are

responsible for identifying those waters," 72 F.3d at 700 & 704,[9]/ it was making that holding specifically in the context of what was required in the Secretaries' rule making.

That the Court of Appeals ordered the identification to be made in a rule making, rather than after some adjudicatory process, is also evidenced by the briefs filed in the appeal. For example, the federal government specifically stated that on remand the Secretaries would need to undertake further rule making:

> The case should therefore be remanded with instructions to remand it to the Secretaries for further rulemaking to implement ANILCA Section 804 on navigable waters in Alaska in which the United States holds an appropriate interest, either through ownership of the bed of the waters or pursuant to the federal reserved waters rights doctrine.

*Katie John v. United States*, No. 94-35481 (9th Cir) Appellate Brief of the United States, at 18, Exhibit 2 hereto.

The State has also acknowledged that in promulgating the challenged January 1999 final rule, the Secretaries were complying with the decision of the Court of Appeals. In response to the Government's contention that the promulgation of this final rule mooted the State's second appeal (i.e., the *en banc* appeal), the State responded in part:

---

[9]/    This holding was specifically affirmed following final judgment by the Court of Appeals sitting en banc. *John v. United States*, 247 F.3d 1032, 1033 (9th Cir. 2001).

> Here, the regulations simply <u>implement</u> the legal ruling
> from which the State has properly appealed. *** The
> final judgment in this case incorporated that decision,
> which both held that the federal agencies must regulate
> fishing on Alaska's navigable waters and ordered them
> to issue regulations. If the judgment is reversed, then
> the legal basis for the regulations will no longer
> exist. (Underscoring in original)

*Katie John v. United States*, No. 00-35121 (9th Cir), En Banc
Reply Brief for Appellants State of Alaska and Frank Rue, at 39-
40, Exhibit 1. In its unsuccessful *en banc* appeal, the State
also acknowledged that the panel decision of the Ninth Circuit
"charged the federal regulators with the task of 'identifying
those waters.'" *Katie John v. United States*, No. 00-35121 (9th
Circuit), En Banc Brief for Appellants State of Alaska and Frank
Rue, at 8, Exhibit 6 hereto.

In conclusion, the issue the State now raises has already
been litigated and decided. Both this Court and the Court of
Appeals have ordered the Secretaries to identify through rule
making the navigable waters that have reserved water rights and
thus are subject to the subsistence priority, and the State –
having stipulated to the dismissal with prejudice of its claims
that the Secretaries are without authority to promulgate
implementing regulations – cannot now challenge that authority.
Issue preclusion bars re-litigation of issues adjudicated in an
earlier proceeding if: (1) the issue sought to be precluded is
the same as that involved in the prior action; (2) the first
proceeding must have ended with a final judgment on the merits;

and (3) the party against whom collateral estoppel is sought must have been a party in the prior proceeding. *Reyn's Pasta Bella v. ISA, USA*: 442 F.3d 741, 746 (9th Cir. 2006). Issues that were implicitly decided are barred as well as explicitly decided ones. *Id.* at 750; *see also Gates v. Chew*, 27 F.3d 1432, 1438 (9th Cir. 1994), *cert. denied sub nom. City of Los Angeles v. Chew*, 513 U.S. 1148 (1995). These requirements are satisfied. Thus, the State is barred from arguing that the Secretaries were without authority to identify waters with reserved water rights in the 1999 Rule.

**2. The State Failed to Exhaust Administrative Remedies.**

Even if estoppel did not bar the present claim regarding adjudication, the State failed to present this contention in the administrative proceedings, and may not present it for the first time to this Court. Following the panel decision of the Court of Appeals in *Katie John #1*, the Secretaries published an Advance Notice of Proposed Rulemaking. 61 Federal Register 15014-18 (April 4, 1996).[10]/ Notice was given of the intent to amend by rule making the scope and applicability of the federal subsistence management regulations to include subsistence activities occurring on waters in which the United States held a FRWR, *id.* at 15014-16. That notice included the proposal to designate by rule making all waters within or adjacent to

_____

[10]/   Copy of text of this notice appears as 8 AR Tab 174.

specified conservation system units as public lands.[11]/ *Id*. at 15018. Written public comments were invited on this notice. *Id*. at 15014, 15015. Public hearings were also held. 8 AR Tabs 187, 192; 62 Federal Register 66217.

Representatives of the State and the Alaska Legislature testified at these hearings, and none of these representatives objected to the Secretaries' proposal to identify the public lands subject to FRWRs in a rule making rather than an adjudication. 8 AR Tab 187 at 4123-29, 4230-32, Tab 194 at 4223-24, 4227-29, Tab 196 at 4267-69, Tab 198 at 4316-21, 9 AR Tab 200 at 4464-68, Tab 202 at 4541-45. Further, the State in its written comments presented no objection to the use of a rule making to make these determinations. 10 AR Tab 225 at 5393-423.

Subsequently, a proposed rule to implement the *Katie John #1* decision was published to designate by rule making the waters deemed to be public lands by reason of a FRWR. 62 Federal Register 66216, 66219, 66222-23. The Secretaries did not propose to make these determinations in or following an adjudication. Once again, the State neither raised the contention that it now presents to the court, nor did it object to the Secretaries' designation of the public lands waters, including waters in which a FRWR is held, in a rule making.

The State complained in its written comments that the

---

[11]/  Conservation system units are defined in 16 U.S.C. § 3102(4).

proposed rule did not sufficiently identify the waters that would be subject to federal regulation. 15 AR Tab 352 at 8436-40.[12]/ The State also objected to the definitions of "inland waters adjacent to the exterior boundaries" of federal reservations, and requested better identification of the marine waters that would be determined to be public lands and of the scope of the waters to be included. *Id*. at 8440-42. However, the State did not even suggest that the Secretaries were required to adjudicate FRWRs or that quantification of those rights was required as a perquisite for a determination of waters subject to the Title VIII priority. The State objected only that the "proposed rulemaking provides no basis for the extensive reserved water rights it claims." *Id*. at 8424. The only prerequisite for a FRWR mentioned in the State comments was that "[a] federal reserved water right exists only in particular waterways where water is necessary to fulfill a primary purpose of the reservation." *Id*. at 8450. With respect to this requirement, the State contended only that the agencies had not explained this necessity. *Id*.

The State has also not shown that any of the written comments to the proposed rule or any of the statements at hearings held on the December 1997 proposed rule contended that adjudication was required. This contentions is not described in

_____

[12]/    The State's written comments are also found at 16 AR Tab 353 at 8497-530. Tab 353 contains a copy of all written comments that were received. The comments from the State and organizations are found at pages 8494-643. Those from individuals are found at 8644-9221.

the summaries of comments received. 17 AR Tab 367. Nor is it shown in any of the summaries of the public hearing testimony. 13 AR Tab 280 at 7320-22, Tab 282 at 7458-59, Tab 287 at 7513; 14 AR Tab 289 at 7528-31, Tab 293, Tab 294 at 7657-59, Tab 301 at 7947-48, Tab 304 at 7959-60, Tab 306 at 7989-90, Tab 312 at 8051-52, Tab 325, Tab 319, Tab 320 at 8139-42; 15 AR Tab 328 at 8124a-26a, Tab 332 at 8200, Tab 334 at 8216, Tab 335 at 8222, Tab 339, Tab 304 at 8286-87, Tab 342, Tab 344.

Having failed to present this issue to the agencies, the State may not present it for the first time in this action. *Barron v. Ashcroft*, 358 F.3d 674, 676-77 (9th Cir. 2004); *Red Top Mercury Mines, Inc. V. United States*, 887 F.2d 198, 206 (9th Cir. 1989). Further, in *Universal Health Services, Inc. V. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004), *citing and quoting*, *Exxon Mobile Corporation v. U.S. Environmental Protection Agency*, 217 F.3d 1246, 1249 (9th Cir. 2000), the Court of Appeals held that parties were barred from raising issues in court that had not been presented in comments to a proposed rule.

### 3.  There is no merit to the State's contention that reserved water rights must be judicially adjudicated before any rule making can occur

The State contends that the 1999 regulations "represent an illegal, unauthorized Agency adjudication of water right claims via unilateral agency rulemaking." Plf's Brief. at 31. According to the State, prior to undertaking any rule making that would identify navigable waters subject to the subsistence

priority as required by this Court, the agencies must establish through separate judicial proceedings their entitlement to reserved water rights. *Id.* at 31-32. Earlier in its brief, the State even asserts that the determination of reserved water rights as a part of the rule making exceeds statutory authority because it violates ANILCA and "serves to diminish State authority over fish and wildlife." *Id.* at 11.

Contrary to the State's contention, there is no need for the agencies to secure a judicial decree of their reserved water rights through an adjudication. As discussed below, securing a judicial decree would frustrate the orders of this Court and the Court of Appeals, would create needless delay and expense for all parties, and is not required by principles of administrative law or water law. Moreover, the rule making undertaken by the Secretaries furthers the purposes of ANILCA and is well within statutory authority.[13]/

**a. An adjudication would frustrate the orders of the Court**

As discussed previously, the statutory method for the Secretaries to carry out their responsibilities in Title VIII is to

---

[13]/  The State is incorrect when it states, Plf's Brief at 6, that the agencies have no expertise in determining if the United States holds FRWRs. Such determinations have administratively been made with full consideration of the prerequisites for FRWRs. *E.g.* Federal Water Rights of the National Park Service, Fish and Wildlife Service, Bureau of Reclamation and Bureau of Land Management, Solicitor' Opinion M-36914, 86 Interior Dec. 553, 1979 WL 34241 (June 25, 1979); Federal Reserved Water Rights in Wilderness Areas, Solicitor's Opinion M-36914 (Supp. III), 96 Interior Dec. 211, 1988 WL 410391 (July 26, 1988).

"prescribe such regulations as are necessary." 16 U.S.C. § 3124. Therefore, determination by regulation is the lawful and established means for the Secretaries to perform their duties under Title VIII, and it is this means that the Court of Appeals approved and required. There is nothing in the Ninth Circuit's order to "identify waters" that explicitly or implicitly would require the agencies to undertake a massive judicial adjudication of its water rights.

That this is so is shown by the court's admonition: "Let us hope that the federal agencies will determine promptly which navigable waters are public lands subject to federal subsistence management." *Katie John #1*, 72 F.3d at 704. The admonition refers to the agencies, not the courts, making the determination, and its stated desire for these determinations to be made "promptly" shows that an adjudication was not intended.  The State has admitted that an adjudication would be burdensome and very time consuming, and would preclude any prompt determination of the navigable waters that are subject to the Title VIII priority: "The judicial mechanism is complex, protracted and costly, a single controversy characteristically taking years to complete."[14]/  *Katie John v. United States*, No. 94-34581 (9th

---

[14]/  Because of that complexity, the State recognized that an adjudication is typically undertaken only when there is a shortage of (an over appropriation) water for all purposes. *Katie John v. United States*, No. 00-35121 (9th Cir.), En Banc Brief for Appellants State of Alaska and Frank Rue, at 33, n. 13, Exhibit 6. The State noted that over appropriation is not the usual
(continued...)

Cir.) Brief for Appellee State of Alaska, at 17-18, Exhibit 5 hereto.

Given that all parties acknowledge that a formal, judicial adjudication of waters rights would be enormously expensive and time consuming, it defies credulity to believe that the Court of Appeals *implicitly* ordered the agencies to begin a general stream adjudication as part of the identification process.  In truth, the Court of Appeals expected and required that the Secretaries would make the determination of reserved water rights through a rule making procedure, and that is precisely what the Secretaries have done. The State's proposed judicial adjudication requirement would, as a practical matter, frustrate the intent of the orders issued in the *Katie John #1* litigation and eliminate any entitlement to that priority for years and even decades to come. This is not consistent with the statutory intent recognized by the Court of Appeals in *Katie John #1* that Title VIII of ANILCA is intended to provide a meaningful opportunity for the subsistence use priority of fishery resources by Alaska rural

---

[14]/    (...continued)
situation in Alaska. En Banc Brief for Appellants State of Alaska and Frank Rue, *supra*; Brief for Appellee State of Alaska, at 19 ("the waters in Alaska are practically untouched by appropriation...."); Kimbrell, George A., Private Instream Rights: Western Oasis or Mirage? An Examination of the Legal and Practical Impediments to Private Instream Rights in Alaska, 24 Pub. Land & Resources L. Rev. 75, 85 (2004)("less than 1% of Alaska's rivers and lakes have appropriations").

residents.[15]/ 72 F.3d at 704.

**b. A judicial adjudication is not required by principles of administrative law or water law.** The State has not pointed to any provision of administrative law that is purportedly violated by the Secretaries' administrative determination of reserved water rights. To the contrary, federal agencies are entitled, and in some instances (such as this one) even required, to make administrative determinations regarding ownership of federal property. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1084 (10th Cir. 1988)("[T]he initial determination of whether activity falls within an established right-of-way is to be made by the BLM and not the court."); *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, 757-58 (10th Cir. 2006) (recognizing that BLM may make administrative determinations concerning existence of RS-2477 rights-of-way for land-use planning purposes).

In fact, taken to its logical conclusion, the State's theory would mean that any regulation of public land equates to an adjudication of title, and that therefore the government must file a quiet title suit before an agency can manage land the government asserts to own. Obviously, this is not the law, and

---

[15]/   It has been recognized that the significant subsistence fisheries in Alaska occur in the large navigable waters of the State. *Native Village of Quinhagak v. United States*, 35 F.3d 388, 393 (9th Cir. 1994); *Katie John et al v. United States et al.*, Nos. A90-)484-CV & A92-0264-CV, Decision filed March 30, 1994, at 40-41, Exhibit 7 hereto.

there is no case to support such a proposition.

Similarly, there is no doctrine of water law that requires an adjudication before a reserved water can be administratively recognized.  Under the reserved rights doctrine, a reserved water right fully vests with the action that creates the reservation – no other administrative or judicial action is required.  *Arizona v. California*, 373 U.S. 546, 600 (1963)("We . . . agree that the United States did reserve the water rights for the Indians effective as of the time the Indian Reservations were created"); *Accord Colville Confederated Tribes v. Walton*, 647 F.2d 42, 46 (9th Cir.), cert. denied, 454 U.S. 1092 (1981)("The United States acquires a water right vesting on the date the reservation was created...."). Because the right vests without judicial or administrative action, there is no "judicial adjudication" requirement prior to administrative action.

Even in the seminal cases establishing the reserved rights doctrine, the rights were recognized without a formal water adjudication. In the case of *Winters v. United States*, 207 U.S. 564 (1908), the Supreme Court recognized that the creation of the Fort Belknap Indian Reservation in Montana impliedly reserved the waters necessary to fulfill the purposes of that reservation. 207 U.S. at 576-77. Similarly, an implied reservation of water rights in the Crow Indian Reservation in Montana was recognized in *United States v. Powers*, 305 U.S. 527, 532-33 (1939). The determination that these rights were held in the respective

waters was made without any need to further define those rights.
207 U.S. at 577; 305 U.S. at 533 ("We do not consider the extent
or precise nature of respondent's rights in waters."). No general
adjudication of water rights in Montana, or adjudication of
either the Crow or Fort Belknap FRWR, were commenced until the
1980s.[16]/

The recognition of reserved water rights in *Cappaert*
occurred not in an adjudication, but in an action for declaratory
judgment which not only determined the existence of the right,
but also imposed a limit on the water withdrawals so as to
protect one of the purposes of the reservation. Moreover, in
*Cappaert*, the Court specifically rejected the contention that the
United States must perfect this right in an adjudication
according to state law. 429 U.S. at 143.

Contrary to the State's contentions, Plf's Brief at 16, the
Court of Appeals' references in the Katie John #1 panel decision,
72 F.3d at 703, to the *Cappaert* and *New Mexico* decisions did not
suggest that the Court of Appeals intended adjudication to be a
prerequisite for waters to be public lands for purposes of Title
VIII.  Those references simply illustrated the principles
regarding federal authority to reserve water in situations where
water is necessary to fulfill the primary purposes of a federal

---

[16]/   The Montana general stream adjudication was commenced  by
the Montana Water Use Act of 1973 which required owners of water
rights to file claims for each right with the State of Montana by
April 30, 1982.

reservation.   Those principles led the Court of Appeals to
conclude:

> The United States has reserved vast parcels of land in
> Alaska for federal purposes through a myriad of
> statutes. [footnote omitted] In doing so, it has also
> implicitly reserved appurtenant waters, including
> appurtenant navigable waters, to the extent needed to
> accomplish the purposes of the reservations. By virtue
> of its reserved water rights, the United States has
> interests in some navigable waters.

72 F.3d at 703. There is simply nothing in the Court of Appeal's
discussion to suggest that a judicial adjudication is required
before the Secretaries could promulgate regulations that
identified the navigable waters subject to the subsistence
priority.

     **c. The rule making furthers the purposes of ANILCA and does
not exceed the Secretaries' statutory authority absent an
adjudication**. The State contends, Plf's Brief at 10-12, that the
determination by rule making rather than adjudication of the
waters that are public lands for purposes of ANILCA Title VIII
exceeds statutory authority and violates principles set forth in
sections 1314 (16 U.S.C. § 3202) and 1319 (16 U.S.C. § 3207) of
ANILCA. According to the State, the rule making impermissibly
impinges upon the State's "traditional authority over water and
fish and wildlife" that is preserved by ANILCA. *Id.* at 11.

     As discussed earlier, this argument is barred under
principles of collateral estoppel or res judicata since it
straightforwardly and directly attacks the ability of the federal

government to proceed with any type of rule making impacting the State's authority over water, fish and wildlife. Even if it were not barred, it is not supported by the cited provisions of ANILCA.

In relevant part section 1314 provides:

(a) Responsibility and authority of State of Alaska

Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands **except as may be provided in subchapter II of this Chapter**, or to amend the Alaska constitution,

(B) Responsibility and authority of Secretary

**Except as specifically provided by this Act**, nothing in this Act is intended to enlarge or diminish the responsibilities and authority of the Secretary over the management of the public lands,.... (Emphasis added)

16 U.S.C. § 3202. Subchapter II referred to in subsection (a) is the subsistence provisions of Title VIII, 16 U.S.C. §§ 3111-3126. Thus, Section 1314 recognizes that the State of Alaska's traditional authority may be impacted by the requirements of Title VIII. Accordingly, the section presents no barrier to Secretarial action needed to fulfill the requirements of Title VIII.

Section 1319 similarly does not prohibit the rule making process. Section 1319 is a savings clause which, in relevant part, ensures that ANILCA does not alter the existing law of water rights:

Nothing in this Act shall be construed as limiting or

restricting the power and authority of the United
States or—

> (1) as affecting in any way any law governing
> appropriations or use, or Federal right to,
> waters on lands within the State of Alaska;
>
> (2) as expanding or diminishing Federal or
> State jurisdiction, responsibility,
> interests, or rights in water resource
> development or control; or
>
> (3) as superseding, modifying, or repealing,
> except as specifically set forth in the Act,
> existing laws applicable to various Federal
> agencies which are authorized to develop or
> participate in the development of water
> resources or to exercise licensing or
> regulatory functions in relation thereto.

16 U.S.C. § 3207. As is clear from this language, ANILCA was not
intended to change any existing law regarding water rights.
Consistent with this provision, the rule making at issue applied
established principles of the federal reserved water rights
doctrine to make the required determination. Because existing law
recognizes the reservation of water with the creation of federal
reservations, nothing in Section 1319 precludes the
acknowledgment of FRWRs in Alaska or in any way requires as a
prerequisite the adjudication of those water rights.

### B.    The agencies properly applied the reserved rights doctrine in promulgating the 1999 regulations

In addition to arguing that the Secretaries were without
authority to issue the 1999 regulations, the State also argues
that the Secretaries misapplied the federal reserved rights
doctrine in making the determination of reserved rights. Plf's

Brief. at 24-33. In particular, the State argues that the Secretaries failed to limit its claims to federal reservations, failed to identify the primary purposes of the reservations and the need for water to fulfill these purposes, failed to quantify the water rights, and improperly asserted rights in "marine or tidally influenced" waters. *Id.*

As discussed below, even assuming these arguments are properly before the Court at this time, they are devoid of merit.[17]/ Many of the arguments are premised on improper interpretations of well-established principles underlying the federal reserved water rights doctrine. The other arguments are factually inaccurate. In the subsections that follow, we first provide a brief overview of the reserved rights doctrine and then dispel the arguments raised by the State.

**1.    The Federal Reserved Rights Doctrine**

Congress and congressionally authorized executive agencies have the power "to reserve waters for the use and benefit of federally reserved lands." *United States v. District Court in and for Eagle County, Colo.*, 401 U.S. 520, 522 (1971) (quoting

---

[17]/    This argument is presented to show that determinations by the Secretaries that the United State holds reserved water rights can be made in a rule making, and to respond to the procedural issues presented in Plf's Brief.  This argument is not presented to defend against any claim that the determinations for any specific waters are correct or not. Pursuant to the Order (Docket Entry No. 66) filed April 26, 2006, at 3, any such issues are to be addressed in the second "Which Waters" briefing phase, and not in Plf's Brief.

*Arizona v. California*, 373 U.S. 546, 597 (1963)). That authority stems from the Constitution's Commerce Clause, Art. I, sec. 8, cl. 3, and Property Clause, Art. IV, sec. 3, cl. 2. See *Arizona v. California*, 373 U.S. at 598 ("We have no doubt about the power of the United States under the [Commerce and Property] clauses to reserve water rights for its reservations and its property."). See also *United States v. New Mexico*, 438 U.S. 696, 698-99 (1978); *Cappaert v. United States*, 426 U.S. 128, 138 (1976).

Whether there has been a federal reservation of water is a question of legislative intent. See *New Mexico*, 438 U.S. at 699. Where Congress or the Executive makes its intent to reserve water explicit on the face of a statute, treaty, executive order, or other reservation instrument, that expression is sufficient to establish a federal water right. For instance, an express reservation of water has been recognized to exist under the Wild and Scenic Rivers Act. *Potlatch Corp. v. United States*, 134 Idaho 912, 12 P.3d 1256 (Idaho 2000).

Alternatively, when the United States reserves land for specific federal purposes, it impliedly reserves unappropriated water to the extent necessary to fulfill those purposes. The Supreme Court succinctly explained the doctrine of the implied federal reservation of water as follows:

> [W]hen the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing, the United States acquires a reserved

right in unappropriated water which vests on the date
of the reservation and is superior to the rights of
future appropriators.

*Cappaert*, 426 U.S. at 138.[18]/

In its most recent statement of this principle, the Court
said:  "Where water is necessary to fulfill the very purposes for
which a federal reservation was created, it is reasonable to
conclude, even in the face of Congress' express deference to
state water law in other areas, that the United States intended
to reserve the necessary water." *New Mexico*, 438 U.S. at 702.
The intent to reserve water "is inferred if the previously
unappropriated waters are necessary to accomplish the purposes
for which the reservation was created." *Cappaert*, 426 U.S. at
139. This inferred intent applies to the primary purposes of non-
Indian federal reservations, but does not extend to its secondary

---

[18]/    The principles of the implied reservation of water rights
doctrine were first set forth with respect to Indian Reservations
in the seminal case of *Winters v. United States*, 207 U.S. 564
(1908).  Winters, involved the Fort Belnap Indian reservation
which had been established in Montana.  The reservation, which is
bordered by a non-navigable river, had been set aside, and the
Indians settled upon it, in furtherance of the federal policy of
converting the Indians into a "pastoral and civilized" people.
Winters, 207 U.S. at 576. .  Accordingly, the United States
Supreme Court held that the federal government, by setting aside
the Indian reservation, had also impliedly reserved for the
benefit of the Indians that portion of the waters of the
adjoining stream necessary to irrigate the reservation's lands
and to provide water for other actions to "civilize" the tribe.
The Court stated that "[t]he power of the [federal] government to
reserve the waters and exempt them from appropriation under the
state laws is not denied, and could not be." *Id*. at 577.

purposes.[19]/ *New Mexico*, 438 U.S. at 714. The determination of a FRWR is not governed by state law, but derives from the purposes of the reservation. *Cappaert*, 426 U.S. at 145.[20]/

Although initially developed in connection with Indian Reservations, see *Winters*, 207 U.S. 564, the implied federal reserved rights doctrine applies to "any federal enclave," *United States v. District Court for Eagle County*, 401 U.S. 520, 522-23 (1971), including "National Recreation Areas and National Forests." *Arizona v. California*, 373 U.S. 546, 601 (1963). See also *United States v. City and County of Denver*, 656 P.2d 1, 20 (Colo. 1982) ("After Cappaert and *New Mexico*, it is clear that the implied reservation doctrine applies to all federal enclaves and that the federal government may acquire rights to

---

[19]/    While the United States Supreme Court has not yet addressed whether the "primary v. secondary" purposes distinction applies to Indian reserved water rights, other courts and commentators have declined to adopt it because of the difference between Indian reservations and federal reservations, the differing roles of the federal Government, and the differences in the applicable rules of construction. *See United States v. Adair* 723 F.2d 1394, 1408 (9th Cir. 1984); *In Re General Adjudication of All Rights to the Use of Waters in the Glia River Sys. and Source*, 35 P.3d 68, 73-74 (Ariz 2001); *State ex Rel. Greely v. Confederate Salish and Kootenai Tribes*, 712 P.2d 754, 767-68 (Mont. 1985). *See also*, N. Newton, Ed., <u>Cohen's Handbook of Federal Indian Law</u>, § 19.03[4], p. 1181 (2005 ed.).

[20]/    The Federal Government has the authority both before and after statehood to "reserve waters for the use and benefit of federally reserved lands." *United States v. District Court in and for County of Eagle,* 401 U.S. 520, 522-23 (1971). This is so even if the State has been granted title to the submerged lands. *United States v. Winans,* 198 U.S. 371, 383-84 (1905).

unappropriated water on federal lands when the land has been reserved pursuant to congressional authorization for a specific federal purpose that requires the use of water.").

### 2. **Quantification is unnecessary.**

Among other alleged defects, the State claims that the Secretaries must quantify reserved water rights as part of the rule making process. Plf's Brief. at 31. According to the State, if "the FRWR cannot be quantified, as required by *Cappaert, New Mexico, et al.*, there can be no FRWR." *Id.*

The State's contention is simply inaccurate. Numerous judicial decisions have recognized reserved water rights without quantifying them. See, e.g., *Joint Board of Control Flathead, Mission and Jocko Irrigation Districts v. United States*, 832 F.2d 1127 (9th Cir. 1987), *cert. denied sub nom.* 486 U.S. 1007 (1988); *United States v. Adair*, 723 F.2d 1394, (9th Cir.), *cert. denied sub nom*, *Oregon v. United States*, 467 U.S. 1252 (1984), and *United States v. State of Oregon*, 44 F.3d 758, 762 (9th Cir. 1994), *cert. denied sub nom. Klamath Tribe v. Oregon*, 516 U.S. 943 (1995).

Quantification is particularly not needed in this instance as the decision and remand in *Katie John #1* clearly recognized that, if the United States holds a FRWR of any amount, the waters in which that right is held are public lands. The State itself acknowledged that pursuant to the panel decision of the Court of Appeals in *Katie John #1*, which was specifically adhered to

without change *en banc*, that all waters "from bank to bank" are public for purposes of the Title VIII priority "no matter how small" that water right may be. En Banc Brief for Appellants State of Alaska, at 34, Exhibit 6. The State cannot, therefore, plausibly argue that quantification is required or intended by the *Katie John #1* decision.

### 3. The agencies properly identified the purposes of the federal reservations and the need for water to fulfill these purposes

The State alleges the Secretaries failed to properly identify the purposes of each federal reservation and failed to demonstrate that these purposes would be defeated without the reservation of water. Plf's Brief. at 27-29. While the State is correct that under the federal reserved water rights doctrine, water is reserved only to the extent needed to fulfill the primary purposes of a reservation, the State is wrong that the Secretaries have failed to identify these elements in the rule making.

As the Court of Appeals recognized in *Katie John #1,* vast areas of Alaska were reserved for federal purposes under a "myriad of statutes" that included, the Alaska Statehood Act, the Alaska Native Claims Settlement Act and ANILCA. 72 F.3d at 703. In complying with *Katie John #1 t*he Secretaries limited their determination of reserved water rights to only inland waters within such reservations, and specifically to conservation system units and National Forests. 64 Federal Register 1279 (Jan. 8,

1999); 70 Federal Register 76403 (Dec. 27, 2005).

Conservation System Units are defined in ANILCA as units in Alaska of the National Park System, National Wildlife Refuge System, National Wild and Scenic Rivers Systems, national Trails Systems, national Wilderness Preservation System or National Forest Monument System "including existing units established, designated, or expanded by or under provisions of this Act...." 16 U.S.C. § 3102(4). There can be no legitimate dispute that the primary purposes of reservations created by ANILCA would be defeated absent the reservation of a water right.

As stated in 16 U.S.C. § 3101(b):

It is the intent of Congress in this Act to preserve unrivaled scenic and geologic values associated with natural landscapes; to provide for the maintenance of sound populations of, and habitat for, wildlife species of inestimable value to the citizens of Alaska and the Nation, including those species dependent on vast relatively undeveloped areas; to preserve in their natural state extensive unaltered arctic tundra, boreal forests, and coastal rainforest ecosystems; **to protect the resources related to subsistence needs**; to protect and preserve historic and archeological sites, rivers and lands, and **to preserve the wilderness resource values and related recreational opportunities including but not limited to** hiking, canoeing, **fishing**, and sport hunting, within large arctic and subarctic wildlands and **on freeflowing rivers**; and to maintain opportunities for scientific research and undistorted ecosystems. (Emphasis added)

Further, for specific reservations created or expanded by ANILCA, the statement of the purposes of the reservations explicitly included the maintenance of habitat for fishery resources. For example, units of the National Parks System whose navigable

waters are determined to be public lands at 64 Federal Register
at 1287 [50 C.F.R. § 100.3(b)] are specifically set aside "to
protect habitat for, and populations of fish and wildlife,"
Sections 201(1)-(2), (4)(a), (6) (7), (8)(a), (9), (10) of
ANILCA, 94 Stat. 2377-82 [Aniakchak National Monument, Bering
land Bridge National Preserve, Gates of the Arctic National Park
and Preserve, Kobuk Valley National Park, Lake Clark National
Park and Preserve, Noatak National Preserve, Wrangell-Saint Elias
National Park and Preserve,[21]/ Yukon-Charlie Rivers National
Preserve]; and "to protect habitat for populations of "fish
resources," Section 201(3)[Cape Krusenstern National Monument],
94 Stat. 2378. In some instances the specific enumerated purposes
also included "to protect the viability of subsistence
resources". Sections 201(2), (3), (6), 94 Stat. 2378, 2380.
[Bering Land Bridge National Preserve, Cape Krusenstern National
Monument, Kobuk Valley National Park].

Similar purposes were stated for new National Wildlife
Refuges and additions to previous refuges. For example for the
Alaska Peninsula National Wildlife Refuge System, Becharof
National Wildlife Refuge, Innoko National Wildlife Refuge, Kanuti
National Wildlife Refuge, Koyukuk National Wildlife Refuge,
Nowitna National Wildlife Refuge, Selawik National Wildlife

---

[21]/   This Court specifically recognized in the *Katie John #1*
litigation that no one, including the State, disputed that there
was an unquantified FRWR in waters within the Wrangell-Saint
Elias National Park. Decision of March 30, 1994, at 32, Exhibit
7.

Refuge, Tetlin National Wildlife Refuge, Yukon Flats National
Wildlife Refuge, Alaska National Maritime National Wildlife
Refuge, Arctic National Wildlife Refuge, Izembeck National
Wildlife Refuge, Kenai National Wildlife Refuge, Kodiak National
Wildlife Refuge, Togiak National Wildlife Refuge, and Yukon Delta
National Wildlife Refuge,[22]/ Sections 302(1)(B)(i),(2)(B)(i),
(3)(B)(i), (4)(B)(i), (5)(B)(i), (6)(B)(i), (7)(B)(i), (8)(B)(i),
(9)(B)(i), Section 303(1)(B)(i), (2)(B)(i), (3)(B)(i), (4)(B)(i),
(5)(B)(i), (6)(B)(i), (7)(B)(i), of ANILCA, 94 Stat. 2385-88,
provide that among the specific purposes for which these refuges
were established were "to conserve fish and wildlife populations
and habitats in their natural diversity...."

The foregoing statutorily stated purposes are each primary,
not secondary, purposes of the reservation. Therefore, they
include the implied reservation of a water right necessary for
meeting these purposes.[23]/ The expressed purpose of protecting

-------

[22]/   Waters within or adjacent to these reservations were
determined to be public lands. 64 Federal Register at 1287 [50
C.F.R. § 100.3(b)].

[23]/   A reservation of an implied water right may arise from
multiple purposes. It is not limited to a single purpose or a
requirement to choose between purposes. *United States v. Adair*,
723 F.3d 1394, 1410 (9th Cir.), *cert. denied sub nom. Oregon v.
United States*, 467 U.S. 1252 (1984).  At one point, the State
appears to contend that the required purpose must be for
subsistence uses. Plf's Brief at 28-29. This contention has no
support in the established law regarding FRWRs. As long as water
is necessary for one of the primary purposes of a reservation,
the water right is implied and vests whether or not a primary
(continued...)

the habitat for fish and to conserve fish populations would clearly be defeated without that habitat: *i.e.* the water which constitutes that habitat and in which the fish must live if they are to be conserved.

Finally, the State argues at length that the Secretaries have failed to show that the primary purposes "will be 'entirely defeated' unless a FRWR is established." Plf's Brief. at 30. The State suggests that the Secretaries could never establish this element because they cannot "demonstrate the requisite 'necessity' since water in Alaska is not in short supply, that waterways are not over-subscribed . . . and there are no proposed upstream uses. *Id.* at 29. According to the State, "FRWRs can be established only where necessary – if there is no 'necessity,' there is no FRWR." *Id.*

The State's argument is based on a misstatement of the federal reserved water rights doctrine. At issue are reservations of water, not reservations of "water rights." The Supreme Court has clearly stated that the issue is whether <u>water</u> is necessary to fulfill the primary purpose of a reservation: "Intent is inferred if the previously <u>unappropriated waters are necessary </u>to accomplish the purposes for which the reservation was created." *Cappaert* at 109 (emphasis added); *see also New Mexico*, 438 U.S. at 702 ("Where <u>water</u> is necessary to fulfill the very purposes for which a federal reservation was created, it is reasonable to

---

[23]/    (...continued)
purpose of the reservation is subsistence uses or not.

conclude, even in the face of Congress' express deference to
state water law in other areas, that the United States intended
to reserve the necessary water.")(emphasis added).

The State's misplaced reliance on *Sierra Club v. Yeutter*,
911 F.2d 1405 (10th Cir. 1990) for the proposition that a lack of
a current "need" for a water <u>right</u> as protection against other
users defeats the existence of a reservation of water. In
*Yeutter*, the issue was merely whether the Forest Service was
obligated to seek adjudication of its claims for reserved water
rights in wilderness areas. The court determined that the
agency's decision not to seek adjudication at that time was not
an abuse of its discretion because there was no current risk of
conflict. Nothing in the case stands for the proposition that the
lack of conflict defeated a reservation of water.

In sum, when the issue is properly defined – i.e., is water
needed to fulfill the primary purposes of the reservations – it
is evident that water is needed to fulfill the purposes of the
reservations as the Secretaries properly determined in the rule
making.

### C. INLAND WATERS ARE PROPERLY DEFINED

The State contends that the regulations should exclude from
the definition of public lands all marine and tidally influenced
waters. Plf's Brief at 15, 33-38. The State contends that any
waters that are tidally influenced cannot be public lands.

The 1999 regulations do in fact limit the determination of

public lands to inland waters, except for those marine waters that are above pre-Statehood reservations to which title remains in the United States. 64 Federal Register 1287 (Jan. 8. 1999), 50 C.F.R. § 100.3. The regulations define "marine waters," 64 Federal Register 1287, 50 C.F.R. § 100.4, and the State has not raised an objection to that definition.

The State's complaint instead appears to be centered on the definition of "inland waters." The definition used in the regulations essentially seeks to define where marine waters end and where rivers end:

> *Inland Waters* means, for the purposes of this part, those waters located landward of the mean high tide line or the waters located upstream of the straight line drawn from headland to headland across the mouths of rivers or other waters as they flow into the sea.

64 Federal Register 1287, 50 C.F.R. 100.4.[24]/

The State now objects to the use of the "headland to headland" drawing of boundaries across bays and river mouths. Plf's Brief at 38. However, this definition of inland waters and the use of headlands-to-headlands to define these waters is identical to the definition that was proposed. 62 Federal Register 66223 (Dec. 17, 1997). The State did not object to the use of the headlands-to-headlands procedure to define where rivers ended and marine waters commenced. 15 AR Tab 352 at 8440.

---

[24]/    No changes were made in this definition or the definition of marine waters in the 2005 final rule. 70 Federal Register 76405: "Upon further review, we have determined that no modifications are necessary in the definitions of 'inland waters' and 'marine waters'...."

Nor does it appear that any other person or entity objected to this definition or to the use of the headlands-to-headlands methodology in response to the proposed rule making. 64 Federal Register 1280 (responses to comments on proposed definitions). Therefore, as shown at 20, *supra*, the State may not now raise its present objection to this definition and procedure.

An objection was raised by the State to the use of the headlands-to-headlands procedure to define waters in response to the amendments proposed in 69 Federal Register 70940 (Dec. 8, 2004), and the Secretaries addressed that objection in the final rule.[25]/ 70 Federal Register 76402. However, the 2005 final rule is not before this court and is not challenged by the State.[26]/

---

[25]/   The Secretaries explained that it had been necessary to define inland waters because reserved water rights can be held in rivers and lakes; and therefore, it is necessary "to determine where the river ends and the sea begins." 70 Federal Register 76402. As further explained: "Some rivers are tidally influenced for a significant distance above their mouths. Although submerged lands under portions of rivers which are tidally influenced may be owned by the State or other entity, those stretches are still a part of the river and remain subject to potential Federal reservation of water rights. Rivers and streams have high water marks rather than lines of mean high tide." *Id*.

[26]/   The State had ample opportunity to challenge that rule making in this action. The parties were requested to propose a schedule for proceedings in this consolidated action by Order (Docket Entry No. 18) filed October 6, 2005. The obligation to file this report was extended by the court. Order (Docket Entry No. 34) filed November 22, 2005); Order From Chambers (Docket Entry No. 57) filed April 5, 2006. A report was filed that requested a scheduling conference. Joint Report (Docket Entry No. 58) filed April 6, 2006. That conference was held on April 24, 2006, following which the court entered its Order (Docket Entry
(continued...)

Since there is no dispute that a FRWR may exist in a river, the Secretaries were clearly correct in determining they needed to define where a river ended for purposes of any Title VIII public lands determination. Many rural Alaskans have traditionally lived along or near coastal and tidal waters. The exclusion of all tidally influenced waters from the definition of public lands would eliminate for many of these rural Alaskans the opportunity for the taking of fish for subsistence uses that the Court of Appeals recognized was intended in ANILCA. *Katie John #1*, 74 F.2d at 704.

Given that a definition was needed, the only potential issue is the appropriateness of the means selected by which to make this determination. The means selected is not only reasonable but is the headlands-to-headlands methodology used internationally for this purpose: "[T]he regulations use the methodology found in the Convention on the Territorial Sea and Contiguous Zone from the United Nations Law of the Sea for closing the mouths of rivers."[27]/ 70 Federal Register 76402 (Dec. 27, 2005).

The State's contention that these determinations conflict

---

[26]/   (...continued)
No. 66) on April 26, 2004, scheduling proceedings in this case. The State could have, but did not, during this scheduling process request an opportunity to amend its complaint to seek review of the December 27, 2005 final rule.

[27]/   *See* Shalowitz, Aaron L., <u>Shore and Sea Boundaries</u>, vol 1, U.S. Dept. Of Commerce (1962), Exhibit 8 hereto, and *also generally* Ch. 3, Reed, Michael, <u>Shore and Sea Boundaries</u>, vol. 3, U.S. Dept. Of Commerce (2000), describing the determination of boundaries of bay and rivers.

with its title to lands is incorrect. The Secretaries made very clear that they were determining only the waters to which the Title VIII subsistence use priority applies, and were not determining the boundaries of federal reservations or State owned lands. 70 Federal Register 76403, 76404. Further, as shown above, there is no conflict with 16 U.S.C. § 3103 for there is no claim, except where there is a pre-statehood reservation, that any marine waters seaward of the mean high tide line are public lands subject to the Title VIII subsistence use priority.

For the foregoing reasons, the use of the headlands-to-headlands methodology to determine the boundary between inland and marine waters is appropriate and should be sustained.

**D.    The 1999 Regulations Properly Limit FRWRs to those waterways within or adjacent to federal reservations**

The State contends that the regulations improperly assert reserved water rights for waterways that flow outside of federal reservations or through inholdings within federal reservations. Plf's Brief. at 24-26 and 39-40. In fact, the regulations do exclude waterways that are not within or adjacent to federal reservations.[28]/ The State's arguments are based on an inaccurate interpretation of the 1999 regulations and an overly broad

---

[28]/    The State recognizes that waters upstream and downstream from a reservation are not determined in the regulations to be public lands. Plf's Brief at 18. The plaintiffs in *Katie John et al v. United States et al.*, No. 3:05-cv-00006, specifically challenge this non-inclusion of upstream and downstream waters as the First Cause of Action in their Complaint for Declaratory and Injunctive Relief (Docket Entry No. 1) ¶¶ 42-43.

interpretation of inholdings.

   1.   **The regulations exclude waters that are outside of
        and not adjacent to a federal reservation.**

The State sets forth examples where it alleges the 1999
regulations improperly include waters that are outside of and not
adjacent to a federal reservation. Plf's Brief at 25-26. In this
regard the State misinterprets the regulations.[29]/ Instead of
looking to the portion of the regulations that determine the
applicability and scope of federal jurisdiction, 64 Federal
Register 1286-87, § ___.3, the State refers to the Subpart D
regulations in section ____.26, which set forth the conditions
and restrictions on the taking of fish and wildlife. 64 Federal
Register 1302-13. These subpart D regulations do not define where
the restrictions apply. In fact, in discussing these regulations,
the preamble specifically states that they only apply to lands in
which there is a federal interest: "We must emphasize that these
regulations [§§ ____.26 & .27] ONLY APPLY TO FEDERAL LANDS AND
WATERS where there is Federal interest." 64 Federal Register 1284
(emphasis with all capitals in original). Thus, looking to or
relying on any subpart D regulations to define the waters that

---

[29]/   To the extent the State is contending that there are
specific adjacent waters that should not have been determined to
be public lands subject to the Title VIII priority, that issue is
not properly before the court at this time. That issue should
pursuant to the Order (Docket Entry No. 66) be presented in the
"Which Waters" briefing phase.

are subject to the Title VIII priority is clear error.

In any event, to the extent there was any ambiguity, clarifications have been made that resolve the issue. *E.g.* 70 Federal Register 13377, 13379 (March 21, 2005)(deletion of references to the Holitna River and Tuxedi Bay in the § ___.27 regulations); Exhibit 9 hereto (showing that portions of the Goodnews River outside of the boundaries of the Togiak National Wildlife Refuge are not public lands).

## 2. **Waters on selected but not yet conveyed lands are properly deemed to be subject to the Title VIII Priority**

The State raises an additional contention that is the subject of Count III of its complaint. Plf's Brief at 26, 35-36, 39-40. This is the claim that was the subject of the Order Motion for Judgment on the Pleadings (Docket Entry No. 50) filed March 10, 2006):[30]/ the claim that lands selected by the State and Alaska Native corporations that are within the exterior boundaries of conservation system units are improperly included with the lands deemed to be subject to the ANILCA subsistence use priority. Pursuant to the scheduling Order (Docket Entry No. 66),

---

[30]/   This order denied defendants' motion to dismiss Count III as barred by statute of limitations. Defendants contended that Count III was subject to the two-year statute of limitations of 43 U.S.C. § 1632(a), and not the six-year statute of limitations in 28 U.S.C. § 2401(a). In ruling on defendants' motion, the Court did not address the merits of Count III.

that claim is not properly before the court at this time, and should, accordingly, not be addressed by the court.

However, to the extent that the State is contending as a procedural matter that waters on any selected but not yet conveyed lands may not be determined to be public lands for purposes of Title VIII, that claim must fail. As already shown, waters on all lands within the federal reservations are deemed to be public lands for purposes of Title VIII. That determination is reasonable, not arbitrary or capricious, and is not contrary to established law. Those arguments are equally applicable to the selected but not yet conveyed lands. These lands are merely a potential inholding, different from existing inholdings in that the United States retains full legal title to the selected but not yet conveyed lands until such time as they may be conveyed.[31]/ Therefore, for purposes of the "What Process" issue now before the court, the arguments at 40-45, *supra*, are incorporated herein by reference.

In any event, the State erroneously describes the Secretaries' actions with respect to selected but not yet conveyed lands. The challenged regulation **does not define** selected but not yet conveyed lands as "public lands." It

---

[31]/    The State is permitted to overselect lands by up to 25%. 43 U.S.C. § 1635(f)(1). Therefore, some of the lands subject to section 906(o) may never be conveyed.

provides only that where selected but not yet conveyed lands are within the boundaries of certain listed reservations, they "shall be treated as public lands" for management purposes. 64 Federal Register 1288 (Jan. 8, 1999), 50 C.F.R. § 100.4(2):

> (2) Notwithstanding the exceptions in paragraphs 1(i) through (iii) of this definition, until conveyed or interim conveyed, all Federal lands within the boundaries of any unit of the National Park System, National Wildlife Refuge System, National Wildlife and Scenic Rivers Systems, National Forest Monument, National Recreation Area, National Conservation Area, new national forest or forest addition **shall be treated as public lands for purposes of the regulations in this part pursuant to section 906(o)(2) of ANILCA**. (Emphasis added)

The Secretaries determined that they are required to manage the selected but not yet conveyed lands by section 906(o) of ANILCA, 43 U.S.C. § 1635(o). 64 Federal Register 1280.

Section 906 of ANILCA, 94 Stat. 2437-44, *codified in part in* 43 U.S.C. § 1635, addresses lands selected by the State pursuant to the Alaska Statehood Act and by Native corporations pursuant to the Alaska Native Claims Settlement Act. Section 906(o), 43 U.S.C. § 1635(o), specifically addresses the status of these lands to the extent they lie within a conservation system unit, National Recreation Area, National Conservation Area, or new national forest or forest addition including those being created by ANILCA. Section 906(o)(2) provides how those lands are to be managed:

> (2) **Until conveyed**, all Federal lands within the boundaries of a conservation system unit, National

Recreation Area, National Conservation Area, new national forest or forest addition, **shall be administered in accordance with the laws applicable to such unit**.

Since Title VIII of ANILCA is applicable to the units referred to in section 906(o), the Secretaries determined that they are required by section 906(o) to apply the Title VIII priority to selected but not yet conveyed lands. 64 Federal Register 1280. While the State is correct in stating that the definitions in 16 U.S.C. § 3102, including the definition of "Federal land" in 16 U.S.C. § 3102(2), do not apply to Title IX of ANILCA and thus to section 906, that does not limit the requirements of section 906. As already shown, section 906(o) applies to "all Federal lands." While for purposes of Title IX that phrase is not defined in ANILCA, its ordinary meaning certainly includes all lands owned by the United States.

Therefore, it is reasonable and consistent with the statute for the Secretaries to conclude that section 906(o) requires them to apply the subsistence use priority to selected but not yet conveyed lands. To do otherwise would be to effectively write into the statute an exception that does not exist there so that section 906(o) would effectively read: "shall be administered in accordance with the laws applicable to such unit except for Title VIII of this Act...." The courts, however, are not to write into statutes that which Congress left out. *United States v. Hoflin*, 880 F.2d 1033, 1038 (9th Cir. 1989), *cert. denied sub nom.* 493 U.S. 1083 (1990).

The Secretaries' determination that they are required in their management of selected but not yet conveyed lands to provide for the Title VIII subsistence use on the priority is fully supported by the explicit language of section 906(o). The court should, therefore, reject any contention by the State that waters on selected but not yet conveyed lands within the exterior boundaries on units of the National Park System, National Wildlife Refuge System, National Wildlife and Scenic Rivers Systems, National Forest Monument, National Recreation Area, National Conservation Area, new national forest or forest addition are not subject to the ANILCA Title VIII priority.

CONCLUSION

For the foregoing reasons, the State's "Which Process" objections to the determinations of the waters that are public lands should be rejected in their entirety.

Dated this 10th day of October 2006.

<div style="margin-left: 40%;">

s/Dean K. Dunsmore
DEAN K. DUNSMORE
Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone: (907) 271-5452
Facsimile: (907) 271-5827
Email: dean.dunsmore@usdoj.gov
Attorney for Defendants

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of October 2006 a copy of the foregoing BRIEF OF THE UNITED STATES and exhibits thereto were served electronically to the following:

Heather R. Kendall-Miller
Robert T. Anderson
William F. Sherman
Randolph H. Barnhouse
Steven A. Daugherty
Joanne Grace
William P. Horn
Gregory S. Fisher
Carol H. Daniel


s/ Dean K. Dunsmore
Dean K. Dunsmore