No. 00-35121

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KATIE JOHN; DORIS CHARLES; and MENTASTA VILLAGE COUNCIL,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA; BRUCE BABBITT, in his capacity as Secretary of Interior; DANIEL GLICKMAN, in his capacity as Secretary of Agriculture; and DANIEL DEMIENTIEFF, NILES CESAR, FRAN CHERRY, ROBERT BARBEE, DAVE ALLEN, and RICK CABLES, in their capacity as members of the Federal Subsistence Board,

Defendants-Appellees,

and

STATE OF ALASKA and FRANK RUE, in his capacity as Commissioner of the Alaska Department of Fish and Game,

Defendants-Appellants.

On Appeal from the United States District Court for the District of Alaska
(No. A90-0484-CV (HRH), consolidated with No. A92-0264-CV (HRH))

**EN BANC REPLY BRIEF FOR APPELLANTS
STATE OF ALASKA AND FRANK RUE**

(Counsel listed on inside cover)

EXHIBIT 1
Page 1 of 4

*Of Counsel*:
John G. Roberts, Jr.
Jonathan S. Franklin
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5810

November 30, 2000

Bruce Botelho
*Attorney General*
Joanne M. Grace
*Assistant Attorney General*
STATE OF ALASKA
Attorney General's Office
1031 W. 4th Avenue
Anchorage, Alaska 99501
(907) 269-5100

*Counsel for Defendants-Appellants*
*State of Alaska, et al*

EXHIBIT 1
Page 2 of 6

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

I. THE CLEAR STATEMENT DOCTRINE APPLIES BECAUSE A FEDERAL TAKEOVER OF FISHERIES MANAGEMENT IN STATE WATERS USURPS A SOVEREIGN POWER THAT HAS LONG BELONGED TO THE STATES. ................................................ 3

    A. Fisheries Management is Vitally Connected to State's Sovereign Ownership of Submerged Lands, and Alaskans Have Identified This Authority as One of the State's Most Important Roles. ............. 3

    B. The Federal Government Historically Has Left Local Management of Fisheries to the States. ........................................... 12

II. THE LANGUAGE OF THE STATUTE DOES NOT "UNMISTAKABLY" INCLUDE NAVIGABLE WATERS. ..................... 18

    A. The Statute Does Not Evince An Unmistakably Clear Intent to Displace State Regulation of Its Navigable Waters. ..................... 18

    B. The Panel Majority's Deference To The Agencies' New Interpretation Was Improper. ........................................................ 25

III. THERE HAS BEEN NO KNOWING CONGRESSIONAL ENDORSEMENT OF THE PRIOR DECISION. .................................. 29

IV. THIS CASE IS NOT MOOT. .................................................................. 37

CONCLUSION ............................................................................................ 44

EXHIBIT 1
Page 3 of 6

interests in lands or waters, including those in which the United States holds less than a fee ownership, to which the Federal subsistence priority attaches ***.").

It is not true, as the federal Appellees charge, that the State reads "waters and interests therein" out of the statute. Fed. Br. at 27. The definition of "public lands" applies to thirteen titles of ANILCA, which at heart is a land conservation statute. The clear reason for including federal "interests" in the definition of "lands" is to give the Secretary authority to manage, or obtain and dispose of less than full fee interests, not to displace State fish and wildlife regulation of any lands or waters in which the federal Government has any interest. *See, e.g.*, 16 U.S.C.A. 3192(a)("[T]he Secretary is authorized *** to acquire *** any lands within the boundaries of any conservation system unit."); 16 U.S.C. 3120(d) ("[T]he head of the appropriate Federal agency may manage or dispose of public lands under his primary jurisdiction ***."). Thus, the Secretary has authority to acquire a water right or to grant an easement.

Nor does the State read "waters" out of the statute. The State agrees that waters overlying federal lands are included in "public lands." The federal interpretation itself reads "waters" out of the statute, because no one – not even the United States – holds "title" to waters. The only way the

21

EXHIBIT 1
Page 4 of 6

operations would not jeopardize threatened or endangered species was rendered moot by a subsequent decision finding that such operations would jeopardize the species.

In this case, by contrast, a decision would not be advisory. This is not a case where the agencies withdrew regulations in the face of a court challenge and issued new ones no longer suffering from an alleged legal infirmity. Here, the regulations simply <u>implement</u> the legal ruling from which the State has properly appealed. Based on its statutory interpretation of "public lands," the panel held "that the federal agencies that administer the subsistence priority are responsible for identifying [the waters subject to a federal reserved water right]," and "hope[d] that [they] will determine promptly which navigable waters are public lands subject to federal subsistence management." 72 F.3d at 704.[8] The final judgment in this case incorporated that decision, which both held that the federal agencies must regulate fishing on Alaska's navigable waters and ordered them to issue regulations. If the judgment is reversed, then the legal basis for the

---

[8] *See Proposed Rules for Subsistence Management*, 62 Fed. Reg. 66216 (Dec. 17, 1997) ("The amendments being proposed would conform the Federal subsistence management regulations to the Ninth Circuit's ruling in *Alaska v. Babbitt*. As the Ninth Circuit directed, this document identifies Federal land units in which reserved water rights exist. These are 'public lands' under the Ninth Circuit's decision in *Alaska v. Babbitt* and thus are subject to the Federal subsistence priority in Title VIII of ANILCA.")

39

EXHIBIT 1
Page 5 of 6

regulations will no longer exist. This fact does not make this appeal an improper challenge to the regulations; it remains an appeal challenging the legal ruling pursuant to which those regulations were issued.[9]

Further, the United States itself recognized that the District Court's final judgment would be subject to review and possible reversal. In 1996, the federal Appellees urged the Supreme Court not to review the panel decision on the State's petition for certiorari because the case would not be final until the District Court issued a final judgment, and suggested that the Supreme Court should wait until that time to review the case. They informed the Court that "there are compelling grounds to deny review in the hope that the parties will reach an accommodation through the administrative or political processes." Opp. Cert. at 19, Reply ER 40. The federal Appellees made clear, however, that "[i]f those efforts are unavailing, then the litigation will continue and the parties will have another opportunity to petition this Court for review." *Id.* (emphasis supplied). On

---

[9] *See Proposed Rules for Subsistence Management*, 62 Fed. Reg. 66216 (Dec. 17, 1997) ( "The amendments being proposed would conform the Federal subsistence management regulations to the Ninth Circuit's ruling in *Alaska v. Babbitt.* As the Ninth Circuit directed, this document identifies Federal land units in which reserved water rights exist. These are 'public lands' under the Ninth Circuit's decision in *Alaska v. Babbitt* and thus are subject to the Federal subsistence priority in Title VIII of ANILCA.")

40

EXHIBIT 1
Page 6 of 6