DEPT OF JUSTICE

94 OCT 18 AM 11: 49

ANCHORAGE, ALASKA

No. 94-34581

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KATIE JOHN, et al.,

        Plaintiffs-Appellees,

vs.

UNITED STATES OF AMERICA, et al.

        Defendants-Appellees

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ALASKA

BRIEF FOR APPELLEE STATE OF ALASKA

Bruce M. Botelho
Attorney General

Joanne M. Grace
Assistant Attorney General
State of Alaska
1031 W. 4th Ave, Suite 200
Anchorage, Alaska 99501
(907) 269-5100

EXHIBIT 5
page 1 of 9
10-17-9

parlance in property law. "Title" is not commonly used to describe an interest in a lease, an easement, or a right-of-way, and Congress would not have expressed its intent to include as "public lands" lands subject to an interest of the United States in this unconventional way.

The United States masks the awkwardness of its interpretation by avoiding any claim of "title" to the federal reserved water right. It claims only to "own an interest in water through the reserved water rights doctrine." See, e.g., United States Appellant Br. at 21. Its position is based on an extremely technical reading of the statute, however, and it cannot logically support its argument by substituting less awkward language than that used in § 102. In plain terms, the United States argues that Congress expressed its intent to include as "public lands" those waters in which it has "title" to the federal reserved water right, an expression based on a peculiar use of a word well understood in law.

C.  THE INHERENT PROBLEMS WITH USING THE FEDERAL RESERVED WATER RIGHT AS A GEOGRAPHIC DESIGNATION INDICATE THAT CONGRESS DID NOT INTEND TO INCLUDE THE WATERS SUBJECT TO THE RIGHT AS "PUBLIC LANDS."

Congress cannot have intended the reserved water right doctrine to be employed as a geographic delineator, because it is wholly unsuitable for this purpose. The interest is non-possessory and does not adhere to any identifiable water, and its existence and extent is uncertain and must be established on a case-by-case basis.

13

EXHIBIT 5
Page 2 of 9

The Secretary's ability to exert control over lands or waters in which the United States holds an interest requires that the interest be of a nature that adheres to a definite area. The United States contends that because "public lands" include those waters subject to a federal reserved water right, the United States must replace state management of fisheries for subsistence purposes. Designating a federal reserved water right as "public lands" cannot give the Secretary management authority over fish and wildlife as to any particular area, however, because the interest does not itself constitute identifiable lands or waters; managing fish and wildlife on such "public lands" is meaningless. Similarly, if the United States is granted a contingent remainder in a piece of property, the interest might constitute "public lands" for the Secretary to "manage" under ANILCA, e.g., to hold or convey, but the Secretary could not manage fish and wildlife on it because the interest does not constitute a definite area of lands or waters.

Even if some limited interests in lands or waters could sufficiently identify an area subject to fish and wildlife management, a non-consumptive federal reserved water right could not, because it does not entitle the United States to use any lands or waters. In a non-consumptive context, the federal reserved water right never becomes a possessory interest; the right simply entitles the United States to protect instream flows by prohibiting other appropriators from depleting the waters below a protected level. United States v. Adair, 723 F.2d 1394, 1411 (9th Cir.

1984), cert. denied, 467 U.S. 1252 (1984). An analogy as to lands would be a covenant with adjacent property owners that permits them to remove ground fill from a mountain on their property, but prohibits them from removing more than an amount sufficient to sustain a hill of a particular height.[8] This right could not effectively function to identify a geographic area because while it permits the holder to prevent a certain level of activity on the land, it is not a possessory interest and does not adhere to any identifiable land. Similarly, a non-consumptive federal reserved water right does not entitle the United States to possess or use any water and does not adhere to any particular water, and therefore could not serve to identify an area for fish and wildlife management.

Even if the waters subject to the right rather than the right itself constituted "public lands," using the federal reserved water right to determine "public lands" still would be hopelessly complex and unworkable. The right cannot serve as the basis for a geographic boundary because the waters to which it applies still would be unidentifiable. The right applies only where Congress implicitly reserved water and only to the extent absolutely necessary to fulfill the primary purpose of the reservation. Cappaert, 426 U.S. at 141. Therefore, assuming that the primary

---

[8] This interest could be established as a restrictive covenant or as a negative easement. See 3 Powell on Real Property § 34.02[2][c] at 34-16 – 34-17; see also Reed v. Reese, 374 A.2d 665 (Pa. 1976)(Based on an easement in plaintiff's deed, use of the adjacent land for purposes other than a park was held to damage the plaintiff).

15

EXHIBIT 5
Page 4 of 9

purpose of a withdrawal were to provide for sufficient in-stream flows to provide habitat for fish, the doctrine would not reserve the entire water column of a river, but only the minimal amount of water necessary for fish habitat, a difficult factual determination. Even if the minimal amount of water is quantified, that amount of water would be protected against upstream appropriation without identification of any particular waters. It is thus impossible to divide the waters in any given water column between "public lands," the minimal amount of the water reserved for fish passage, and the remaining waters, which would remain unreserved by the United States and therefore would not constitute "public lands" subject to the title VIII priority.

Congress also would not have intended the federal reserved water right to designate a geographical boundary because its existence and quantity must be established on a case-by-case basis. The federal reserved water right does not apply to all federal lands or even all federal reservations. The doctrine arises when the United States withdraws its land from the public domain and reserves it for a federal purpose, and by implication reserves appurtenant water then unappropriated. Cappaert, 426 U.S. at 138. The question of whether a particular body of water is subject to a federal reserved water right raises legal questions regarding the purpose for which a particular area of federal land has been set aside, and factual questions concerning whether any portion of the flow of a particular waterway is necessary to achieve the purposes for which the federal land has been reserved.

See Cappaert, 426 U.S. 128; Sierra Club v. Yeutter, 911 F.2d 1405, 1417 (10th Cir. 1990).

Quantification of the minimum amount of water necessary to fulfill some, but not all purposes of a particular conservation system unit in Alaska would be a complex undertaking. Teams of specialists in hydrology, geomorphology, aquatic and riparian biology, limnology, and botany would be necessary to quantify the minimum amount of water necessary to support the numerous and complex dynamics of the specific purpose or purposes for which Congress sets aside a conservation unit. Moreover, for purposes of the reserved waters doctrine, a distinction exists between the "uses" of a conservation system unit and the specific "purposes" for which it is set aside. For example, hunting and fishing are permitted uses of some national parks in Alaska, but they are not a primary purpose of the parks. See, e.g., 16 U.S.C. 410hh(9); see generally United States v. New Mexico, 480 U.S. 696 (1978). Purposes take precedence over permitted uses, and reserved water rights are available only to meet the minimum needs of the primary purposes for which federal enclaves are established.

While the broad legal principle of federal reserved water rights doctrine is easily asserted, its application has proved daunting. The doctrine is judge-made law, and courts are the only forum available to define and clarify the nature and scope of the right. Only the issues framed by each particular controversy brought to litigation are resolved, leaving further issues to be defined as new controversies arise. The judicial mechanism is

complex, protracted, and costly, a single controversy characteristically taking years to complete. Congress has not undertaken a comprehensive legislative solution, and the matter has been left to adjudication on a case-by-case basis.

Further, Congress would not have implicitly incorporated a doctrine into the "public lands" definition has had little or no application in Alaska. The record reflects that no federal agency has sought to establish, apply for, quantify, or receive federal reserved water rights in Alaska. Affidavit of Gary Prokosch, State's Supp. ER at 19.[9] Had Congress intended ANILCA's provisions to apply to navigable waters in Alaska, it would not have limited their application to those waters running through federal reservations that might be found implicitly to include water rights yet unasserted and unrecognized. Under the United States' interpretation, Congress itself could not have been certain to which waters the right might attach. As noted above, ANILCA is not primarily a subsistence statute, but is a land conservation act comprised of 15 titles and spanning 181 pages of the Statutes at Large, 91 Stat. 2371-2551. Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 549 & n. 16 (1987). Congress defined "public lands" in order to provide specific geographic boundaries to the

---

[9] The priority of a federal reserved water right is in part determined by state law, and the precise quantity of water protected must be determined in accordance with state techniques and procedures. United States v. Adair, 723 F.2d 1394, 1411 n.19 (9th Cir. 1983), cert. denied 467 U.S. 1252 (1984); In re General Adjudication of All Rights to Use Water in Big Horn River System, 835 P.2d 273, 278 (Wyo. 1992)("Federal law has not preempted state oversight of reserved water rights.").

act's application and to the jurisdiction of the Secretary.  As the Supreme Court has noted, Congress did not simply wave its hand in the general direction of Northwest North America when it defined the scope of ANILCA.  <u>Id.</u> at 548.  Congress intended it to designate a finite, specific area, <u>federally-owned lands</u>.

Congress could not have expected the Secretary to evaluate, assert, and possibly litigate federal reserved water rights for every federal reservation in Alaska to which the rights might apply, simply to establish the areas subject to federal management authority.  Unless directed by statute, the Secretary has no obligation to assert federal reserved water rights absent a threat to the purposes for which the federal reserve was established.  <u>Sierra Club v. Yeutter</u>, 911 F.2d 1405, 1418 (10th Cir. 1990).  ANILCA contains no such requirement, the waters in Alaska are practically untouched by appropriation, and the mere possibility of a reserved water right is insufficient to render the waterways "public lands" under any interpretation of § 102.  In this case, the United States made no showing before the district court of the elements required to establish the existence of a federal reserved water right.  Although the district court decision indicates that the parties agree that the waters at issue are subject to a reserved water right, the State has never conceded this and disputed the suggestion several times. <u>See</u> State's Supp. ER at 59, 64-65.  Because the United States did not assert a reserved water right, the questions of whether a right existed and if so in what amount were not ripe for judicial review.  <u>See</u>

19

EXHIBIT 5
Page 8 of 9

Yeutter, 911 F.2d 1405.

The untenable effect of the United States' interpretation of § 102 is that, given the United States' position that Congress granted the Secretary authority to manage fish and wildlife on all public lands in Alaska,[10] the Secretary would manage subsistence fishing on portions of rivers, but not necessarily on entire rivers. Congress could not have condoned such a consequence. The Katie John plaintiffs agree that this result would be undesirable; they propose that the court extend the federal reserved water right theory to the entire waterways, and into the territorial seas, regardless of where a reserved water right actually may exist. Memorandum of Katie John Plaintiffs et al. in Opposition to State's Motion for Partial Summary Judgment at 42, State's Supp. ER at 18. While theoretically a federal reserved water right might be justified upstream of a federal reservation, it could not exist downstream or in the ocean, where appropriation can have no effect on the flow within the reservation. This argument requires the Court to accept the view that although Congress specifically defined "public lands," it had no concept of a geographic limitation on the scope of ANILCA's provisions.

## II. CONGRESS DID NOT INTEND TO INCLUDE ALL NAVIGABLE WATERS IN ALASKA BY VIRTUE OF THE NAVIGATIONAL SERVITUDE.

The district court held that the navigational servitude

---

[10] The State does not agree that Congress granted the Secretaries of Interior and Agriculture authority to manage fish and wildlife on any lands in Alaska, and currently is litigating the issue in a separate appeal in this Court. State v. Babbitt, A94-35480.