RECEIVED

SEP 2 8 2000

NARF ALASKA

No. 00-35121

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KATIE JOHN; DORIS CHARLES; and MENTASTA VILLAGE COUNCIL,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA; BRUCE BABBITT, in his capacity as Secretary
of Interior; DANIEL GLICKMAN, in his capacity as Secretary of Agriculture; and
DANIEL DEMIENTIEFF, NILES CESAR, FRAN CHERRY, ROBERT BARBEE,
DAVE ALLEN, and RICK CABLES, in their capacity as members of the Federal
Subsistence Board,

Defendants-Appellees,

and

STATE OF ALASKA and FRANK RUE, in his capacity as
Commissioner of the Alaska Department of Fish and Game,

Defendants-Appellants.

On Appeal from the United States District Court for the District of Alaska
(No. A90-0484-CV (HRH), consolidated with No. A92-0264-CV (HRH))

**EN BANC BRIEF FOR APPELLANTS
STATE OF ALASKA AND FRANK RUE**

(Counsel listed on inside cover)

*Of Counsel*:
John G. Roberts, Jr.
Gregory G. Garre
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5810

Bruce Botelho
*Attorney General*
Joanne M. Grace
*Assistant Attorney General*
STATE OF ALASKA
Attorney General's Office
1031 W. 4th Avenue
Anchorage, Alaska 99501
(907) 269-5100

September 13, 2000

*Counsel for Defendants-Appellants*
*State of Alaska, et al.*

EXHIBIT 6
Page 2 of 10

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF ISSUE ON APPEAL ............................................... 1

STATEMENT OF THE CASE ............................................................. 1

STATEMENT OF FACTS ................................................................... 4

SUMMARY OF ARGUMENT ........................................................... 12

ARGUMENT ....................................................................................... 15

I.      IN ENACTING ANILCA, CONGRESS DID NOT
        INTEND TO STRIP ALASKA OF ITS
        SOVEREIGNTY OVER NAVIGABLE WATERS OR
        RIGHT TO MANAGE FISH AND WILDLIFE
        ALONG SUCH WATERS .......................................................... 15

        A.      The Long Settled Understanding Is That States
                Are Sovereign Over The Navigable Waters
                Within Their Borders And Natural Resources
                Along Such Waters .................................................... 15

        B.      ANILCA Does Not Plainly And
                Unambiguously Divest Alaska Of Its
                Sovereignty Over Navigable Waters And
                Natural Resources Along Such Waters. ...................... 19

        C.      Apart From The Absence Of Any Clear
                Statement, Other Indicia Of Congress' Intent
                Confirm That It Did Not—*Sub Silentio*—Intend
                To Extend ANILCA To Navigable Waters ................... 24

EXHIBIT 6
Page 3 of 10

**TABLE OF CONTENTS—Continued**

<u>Page</u>

D.   Neither The *Chevron* Doctrine Nor Appellees'
     Congressional Acquiescence Theory Sanctions
     The Result Reached By The Prior Panel
     Majority ............................................................................ 37

CONCLUSION ................................................................................ 43

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM:    STATUTORY PROVISIONS
             LEGISLATIVE HISTORY

CERTIFICATE OF SERVICE

EXHIBIT 6
PAGE 4 of 10

and first addressed "the fundamental issue of whether navigable waters are public lands" within ANILCA. 72 F.3d at 701.

The federal defendants defended the Title VIII regulations and, in accordance with those regulations, argued that ANILCA's definition of public lands generally *excludes* navigable waters. But in October 1993, they flip-flopped, and argued that most navigable waters are covered under ANILCA. *Id*. In March 1994 the District Court granted partial summary judgment for the private plaintiffs and held that ANILCA's definition of public lands encompasses "all navigable waterways in Alaska." 1994 WL 487830 at *18, reproduced in Record Excerpts at ER36. In so holding, the court specifically "decline[d] to use the reserved water rights doctrine as a means of determining the geographic scope of Title VIII" and, instead, held that the existence of a federal navigational servitude in Alaskan waters transformed such waters into public lands within ANILCA. *Id*. at *14, *17. The court thought that the navigational servitude theory of ANILCA's reach was "more compatible with the findings and policies of Title VIII" than one based on reserved water rights. *Id*. at *14 (footnotes omitted). The District Court certified its order for interlocutory review. *See* 72 F.3d at 701.

3.a.    On April 20, 1995, a panel of this Court reversed the District Court ruling that ANILCA extends to all navigable waters in Alaska, and

EXHIBIT 6
Page 5 of 10

flatly rejected its navigational servitude rationale. 54 F.3d at 553. But the panel held that "some navigable waters" are public lands within ANILCA. *Id.* at 552 (emphasis in original). In so holding, the panel acknowledged that ANILCA "makes no reference to navigable waters" and that its "legislative history is also unhelpful," and that, as a result, it is unclear "*which* navigable waters are public lands." *Id.* at 553 (emphasis in original). To fill this void, the panel turned to the theory—passed over by the District Court—that "the definition of public lands includes those navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine." *Id.* at 554. The court then charged federal regulators with the "extraordinary" and "complicated" task of "identifying those waters." *Id.* The panel candidly recognized that this "judicial * * * solution" was "inherently unsatisfactory," and urged Congress to "clarify both the definition of public lands and its intent." *Id.*

    b.    On August 9, 1995, the Alaska Supreme Court decided *Totemoff*. 3/ That case arose when a subsistence hunter shot a deer on federal land from a skiff in navigable waters. The State prosecuted the

---

3/    Alaska filed a petition for rehearing and suggestion for rehearing en banc from the initial panel decision. Rehearing was denied on August 8, 1995, one day before *Totemoff* was issued. On August 9, 1995, the State brought *Totemoff* to the attention of this Court, which ordered that the mandate be withheld pending further consideration.

Exhibit 6
Page 6 of 10

*Bank*, 510 U.S. 86, 100-101 (1993) ("Instead of enacting the Senate draft, which would indeed have settled [insurance industry] expectations, Congress adopted an exemption containing words of limitation. We are directed by those words, and not by the discarded draft.") (quotations and citations omitted); *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 220 (1983).

3.      The upshot of the prior panel decision is also compelling evidence that the panel majority strayed from Congress' intent. Because Congress left no hint as to which navigable waters, if any, are covered by ANILCA's definition of public lands, the panel charged "that the federal agencies that administer the subsistence priority are responsible for identifying those waters." 72 F.3d at 704. At the same time, the panel recognized that this "impose[d] an extraordinary administrative burden on federal agencies," and "complicated" an already complex "regulatory scheme." *Id.* at 704. *See id.* (recognizing that decision created a "heavy administrative burden"). In the *Totemoff* case, the Alaska Supreme Court aptly summarized the complexity of this undertaking as follows:

> Employing the reserved water rights doctrine to define the geographic scope of navigable waters covered by ANILCA would be highly impractical, perhaps even impossible. It would first require the federal agencies administering ANILCA to determine the primary purpose of each federal land reservation in Alaska at the time the reservation was created. Then, the federal agencies would have to

- 31 -

EXHIBIT 6
Page 7 of 10

none of the hundreds of Congressmen who worked on ANILCA or their staffs breathed a word of it during the lengthy process that led to its enactment.  As a matter of statutory construction, it was plainly wrong for the panel majority to so hold on the prior appeal.  See *Chisom v. Roemer,* 501 U.S. 380, 396 n.23 (1991) ("In a case where construction of legislative language such as this makes so sweeping and relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night.") (quotation omitted); *Edmonds v. Compagnie Gen. Transatlantique,* 443 U.S. 256, 266-267 (1979) (Congress' "silence is most eloquent, for such reticence while contemplating an important and controversial change in existing law is unlikely."); *see also Totemoff,* 905 P.2d at 967. 13/

---

13/     If Congress had intended to extend ANILCA to navigable waters, it is extremely unlikely that it would have done so on the basis of the reserved water rights doctrine.  In a non-consumptive context, the purpose of a water right is to prevent other appropriators from depleting the stream waters below a protected level in any area where the non-consumptive use applies.  *See Totemoff,* 905 P.2d at 965; *Alaska v. Babbitt,* 72 F.3d at 706 (Hall, J., dissenting).  No one has claimed or presented evidence that fish habitats in any of the waterways in any of these cases is being depleted by any appropriation activity.  Absent such a threat, the United States has no reason to assert a federal reserved water right.  Had Congress intended federal regulators to begin asserting such rights specifically for the purpose of defining the geographical boundaries of public lands, it would have given *some* indication of this in ANILCA, or at least in its extensive legislative history.  There is none.  Indeed, before delegating to an administrative agency the extraordinarily complicated and highly controversial task of identifying what

The panel majority's interpretation of ANILCA may also have unintended—and perhaps even more dramatic—consequences for the Act's application to land. The panel accepted the notion that public lands could be defined by the existence of an implied water right. It interpreted the existence of such implied right—no matter how small—to convert all the water in the river or lake touched by the right—from bank to bank—into public lands subject to federal subsistence management. In effect, in other words, the Court interpreted "public lands" as "lands and waters *in which the United States holds any interest.*" As the definition actually reads, however, "public lands" include only the federal "interests" in land or water, not the entire waterway, and thus under the reserved water rights theory only the water rights themselves would be "public lands," and only then if the United States actually holds "title" to them. 16 U.S.C. § 3102(2).

The term "public lands" appears throughout the various titles of ANILCA, a product of nearly a decade of political controversy and compromise. As noted, the "primary purpose" of ANILCA was "to complete the allocation of federal lands in the State of Alaska," *Amoco Prod. Co. v.*

---

navigable waters are subject to ANILCA, Congress itself would have been constitutionally obligated to provide the agency with intelligible principles as to how covered waters should be identified. Such guidance is completely lacking from the naked delegation contained in the prior panel decision.

EXHIBIT 6
Page 9 of 10

*Village of Gambell*, 480 U.S. at 549, not to regulate subsistence uses. The Act places some 106 million acres of land into conservation systems. If any federal interest in water renders an entire river "public land" within ANILCA, then under the same principle any federal interest in land renders it public land within ANILCA. This interpretation potentially reaches nearly everything Seward purchased. For example, all patents for land issued after 1890 west of the 100th meridian—nearly all non-federally owned land in Alaska—is subject to a reserved federal right-of-way for construction, 43 U.S.C. § 945. Also, the United States has agreements with the State to use state lands (*e.g.*, for military exercises), IRS liens on private property, and access rights to inholdings.

Congress could not possibly have intended every federal interest to have such a midas touch, converting all it touches into "public lands" for purposes of ANILCA and, thus, extending ANILCA to practically *all* of Alaska. Yet this result is hardly far-fetched. The government's new subsistence regulations permit the Federal Subsistence Board to identify the existence of "additional * * * Federal interests in land or waters, including those in which the United States holds less than a fee ownership, to which the Federal subsistence priority attaches, and make appropriate recommendation to the Secretaries for inclusion of those interests within the Federal Subsistence