Robert T. Anderson
Alaska Bar No. 8506043
University of Washington School of Law
Box 353020
Seattle, WA  98195-3020
Phone:  (206) 685-2861
Fax:  (206) 616-3426
Email: BobA@u.washington.edu

Counsel for Alaska Federation of Natives

Heather R. Kendall-Miller
Alaska Bar No. 9211084
Native American Rights Fund
420 K Street, Suite 500
Anchorage, Alaska  99501
Phone: (907) 276-0680
Fax: (907) 276-2466
E-mail: kendall@narf.org

Counsel for Katie John, *et al*.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| KATIE JOHN, GERALD NICHOLIA, | ) | |
| *et al*. | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:05-CV-0006-HRH |
| v. | ) | (CONSOLIDATED WITH) |
| | ) | Case No. 3:05-cv-0158-HRH |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| *et al*. | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |

BRIEF OF ALASKA FEDERATION OF NATIVES AND KATIE JOHN, *et al*.

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ....................................................................1

BACKGROUND OF THE CASE ...............................................................1

ARGUMENT ..............................................................................................6

I.    The State's Challenge to the Secretary's Authority to Determine Which Public Lands Are Subject to a Reserved Right Is Barred by Claim Preclusion and Issue Preclusion. ...................................................................................6

    A.    Claim Preclusion Bars the State's Claim that the Secretary Lacks Authority to Determine Which Waters Are Public Lands Under ANILCA. ............................................................................7

    B.    Issue Preclusion Also Bars Relitigation of Whether the Secretary Has Authority to Regulate Waters Under ANILCA. ....................................11

II.    The State Waived the Process Claim when it Failed to Raise it in its Comments to the Agencies During the Rulemaking...........................................13

III.    The Federal Agencies Properly Utilized Notice and Comment Rulemaking to Determine the Waters Subject to Federal Reserved Rights ...............................14

    A.    The Law of Federal Reserved Water Rights...........................................15

    B.    The Agencies Were Not Ordered to Adjudicate or Quantify Federal Reserved Rights .............................................................................18

    C.    The Agency Process Was Lawful. ..........................................................22

Conclusion ......................................................................................................24

i

## SUMMARY OF ARGUMENT

The State's claim that the agencies did not follow a lawful process in determining which waters are subject to federal reserved rights is: 1)  barred by claim preclusion and issue preclusion; 2) barred by the State's failure to raise the process issue in its participation in the rulemaking; and 3) wrong on the merits, since reserved water rights need not be adjudicated or quantified to exist as interests in land.  Substantial portions of the State's Brief are devoted to the question of whether particular waters were reserved and the legal standards for determining the existence and geographic extent of reserved rights.  Those issues are slated for briefing in the next step of this litigation -- the "which waters" phase.   Scheduling Order, Document No. 66 (April 26, 2006).  If the court reaches the merits, it should simply hold the agencies proceeded lawfully when they followed the court of appeals' mandate and identified through rule-making the waters in which the United States has reserved rights.

## BACKGROUND OF THE CASE

This case presents the latest attempt by the State of Alaska to limit the customary and traditional subsistence fishing rights of Alaska Natives and rural residents.  It has its genesis in regulations promulgated shortly after statehood that made subsistence fishing at the upper Copper River site known as Batzulnetas illegal.  Katie John and others with a custom and tradition of fishing at the site brought an action pursuant to § 807 of ANILCA to enforce Title VIII's priority for subsistence uses.  This court's ruling on summary judgment in Katie John's favor contemplated State rule-making to comply with the subsistence priority mandate of § 804 of ANILCA.  *See*, *Katie John, et al. v. Alaska*, No.

1

A85-698 Civil, Order on Cross Motions for Summary Judgment (D. Alaska Jan. 19,

1990).  But before the State could adopt such regulations, the intervening decision in

*McDowell v. Alaska*, 785 P.2d 1 (Alaska 1989), held that the State's "rural" preference

was unconstitutional.

Since the State could no longer provide a rural subsistence preference -- the

prerequisite for State management of subsistence uses on federal public lands -- the

federal government had the duty to enforce the priority on federal lands and waters.  *See*

16 U.S.C. § 3115(d).  That authority was asserted in 1990 on a limited basis in the hope

that the State would soon bring its laws back into compliance.  *See* 55 Fed. Reg.  27114

(June 29, 1990) ("these temporary regulations establish a Federal program that minimizes

change to the State's program consistent with meeting the Federal government's

responsibilities under Title VIII.  To do otherwise would be extremely disruptive to

subsistence users and create unnecessary chaos if and when the State is able to bring its

subsistence program back into compliance with ANILCA.").  When permanent

regulations were adopted in 1992, the federal government excluded nearly all navigable

water (and nearly all fisheries) from the ambit of the regulations.  This action resulted in

a cascade of litigation brought by Native subsistence users.[1]  The lead case was *Katie*

*John, Doris Charles and Mentasta Village Council v. United States*, No. A90-484

(HRH).  It also prompted the State to file *Alaska v. Babbitt*, No. A92-264 (HRH) (D.

---

[1]  *Kluti Kaah Native Village of Copper Center v. State of Alaska,* No. A90-0004-CV, *Fish & Game Fund v. State of Alaska Bd. of Fisheries,* No. A92-0443-CV, *Peratrovich v. United States,* No. A92-0734-CV, *Native Village of Stevens v. McVee,* No. A92-0567-CV, and *Native Village of Quinhagak v. United States,* 35 F.3d 388 (9th Cir. 1994).  *See John v. United States*, 1994 WL 487830, n. 1 (D. Alaska 1994).

2

Alaska), which alleged that the federal government was without authority to adopt a management program to implement the federal subsistence-management program on the public lands, including navigable and non-navigable waters. These cases were consolidated and thereafter jointly managed with the other pending cases. *Id*. Order (Feb. 9, 1993).

In 1994, this court granted partial summary judgment to the Native plaintiffs and against the State in the consolidated litigation, upholding the authority of the federal government to implement by regulation a subsistence-management program on the "public lands" under Title VIII.

> By ANILCA Section 814, Congress expressly authorized the Secretary to promulgate, 'such regulations as are necessary and appropriate to carry out his responsibilities under this [Title].' Congress having unequivocally given the Secretary regulatory authority, he was empowered to fill the statutory gap so as to implement not only the policy contained in ANILCA Section 802, but also effect the substantive preference established by ANILCA Section 803 for rural Alaskans." (footnotes omitted).

*Katie John v. United States*, Nos. A90-484-CV and A92-0264-CV Order at 8 (March 30, 1994), 1994 WL 487830 (D. Alaska).

Turning to the question of the scope of the public lands definition – the "where' issue, the court declined to use the reserved water rights doctrine to delineate public lands, although it noted that it was undisputed that water was reserved at Batzulnetas. *Id*. at 19. Instead, the court held that the federal defendants were required by virtue of the navigational servitude to extend the program to protect subsistence fisheries in all navigable waters in Alaska. *Id*. The State appealed and was joined by the United States seeking reversal of the holding as to the navigational servitude. The federal government

argued that the federal subsistence program should encompass those navigable waters in which the United States has reserved water rights.   Prior to oral argument in the Ninth Circuit, the State abandoned its appeal insofar as it concerned the issue of the Secretary's authority to issue regulations to administer the subsistence priority on public lands, and entered into a stipulation dismissing its appeal of that issue with prejudice.  The court of appeals accepted the stipulation of dismissal, *Alaska v. Babbitt*, 72 F.3d 698, 700 n. 2 (9th Cir. 1995) (*Katie John I*), and the Supreme Court denied petitions for *certiorari* by the Alaska Legislature and the Alaska Outdoor Council seeking intervention to resurrect the issue.  *Alaska Fish and Wildlife Federation and Outdoor Council, Inc. v. Alaska*, 516 U.S. 906 (1995).

The Ninth Circuit reversed the district court's holding as to the navigational servitude, but agreed that federally reserved waters are "public lands" under ANILCA. The court concluded that the Secretary has responsibility for identifying federally reserved waters and applying the subsistence priority to them.  *Katie John I*, 72 F.3d 698, 703-704 (9th Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996).  The district court then entered an order modifying its previous March 1994 decision so as to require the government to apply the ANILCA priority only to waters in which the United States has reserved water rights.  *Katie John, et al. v. Alaska*, Nos. A85-698-CV and A92-0264-CV Civil Order (Feb. 7, 1996).  Before the Departments could implement the court's decision, Congress intervened (at the State's behest) with a series of four consecutive "moratoria" enacted as appropriations riders, and no proceedings of substance occurred in the case for the next four years.  *See, e.g.*, Pub. L. 104-208, § 317, 110 Stat 3009, 3009-

222. [2]  Although the moratoria prevented implementation, they did not preclude the agencies from proposing regulations and seeking public comment.  *See* 142 Cong. Rec. H11926 (Sept. 28, 1996).   The agencies published proposed regulations identifying federally reserved waters in Alaska on December 17, 1997 (62 Fed. Reg. 66,215), but they did not become effective until October 1, 2000, *see* 64 Fed. Reg. 1276 (Jan. 8, 1999), when the Alaska Legislature failed to place before the electorate a proposed State constitutional amendment that would enable the State to comply with ANILCA.  *See* Pub. L. 105-277, § 339, 112 Stat. 2681-231.

After the district court entered final judgment dismissing all claims in *Katie John* in January 2000, the State appealed and was granted *en banc* review.  The State did not challenge the portion of the panel's decision that ordered the agencies to identify the waters subject to reserved rights.  Rather, it argued that the "clear statement doctrine" precluded the panel's determination that federal reserved waters were public lands. Brief for Appellee State of Alaska at 31-35, *Katie John v. United States*, 72 F.3d 698 (9th Cir. 1995) (No. 94-34580), 1994 WL 16012377.   The majority of the *en banc* court rejected the State's claim and determined that the judgment rendered by the prior panel, and adopted by the district court, should not be altered or disturbed. *Katie John v. United States*, 247 F.3d 1032 (9th Cir. 2001) (*en banc*) (*Katie John II*).   Nearly six years after the final regulations identifying federally reserved waters in Alaska became effective, the State has renewed its challenge to the federal application of the priority to federal reserved waters.

---

[2] The moratoria are reprinted in the historical note at 16 U.S.C.A. § 3102 (West 2000).

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

## ARGUMENT

I.    **The State's Challenge to the Secretary's Authority to Determine Which Public Lands Are Subject to a Reserved Right Is Barred by Claim Preclusion and Issue Preclusion.**

The State has resisted the federal government's duty under ANILCA to regulate public lands to protect rural subsistence rights since the *McDowell* decision in 1990. While the right to participate in administrative processes and challenge agency actions in court are safeguarded by the Constitution and the APA, the State is not entitled to engage in repetitive attempts to thwart implementation of the subsistence priority. Doctrines of repose, such as claim preclusion and issue preclusion (also known respectively as res judicata and collateral estoppel) share the "dual purpose of protecting litigants from the burden of litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). This Court and the court of appeals have already ruled that the federal agencies not only have the authority to implement Title VIII by regulations, but also have a specific obligation to identify federally reserved waters. For that reason, the State's process claims are barred.[3] As shown below, the State raised the same arguments it attempts to raise here in the prior litigation, and the Courts have soundly rejected those claims.

---

[3] Intervenors agree that in the second phase of the case, the State (as well as the Katie John plaintiffs) will have the opportunity to challenge the designation of, or failure to designate, particular waters as federally reserved.

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

A.    **Claim Preclusion Bars the State's Claim that the Secretary Lacks Authority to Determine Which Waters Are Public Lands Under ANILCA.**

Under the doctrine of claim preclusion a "valid and final judgment" in a previous case "operates as an absolute bar to a second suit between the same parties or their privies based on the same cause of action not only in respect of every matter actually litigated, but also as to every ground of recovery or defense which might have been presented." *Mirin v. Nevada*, 547 F.2d 91, 94 (9th Cir. 1976). "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (citations and internal quotation marks omitted). However,

> [t]he fact that res judicata depends upon an identity of claims does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated. Rather identity of claims exists when two suits arise from the same transactional nucleus of facts.

*Id*. at 1077-78 (citations and internal quotation marks omitted).

Here, there are indisputably multiple final judgments on the merits and the parties, who are identical, are obviously in privity. As shown below, there is also an identity of claims.

This Court and the Ninth Circuit have both repeatedly concluded that the Secretary is entitled to promulgate regulations to implement Title VIII of ANILCA. *Katie John v. United States*, Nos. A90-484-CV and A92-0264-CV Order at 5 (March 30, 1994), 1994 WL 487830 (D. Alaska 1994) ("[T]he Secretary has authority to adopt regulations for the purpose of implementing Sections 803, 804, and 805 of ANILCA.")

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

(footnotes omitted); *Katie John I*, 72 F.3d at 704 ("We also hold that the federal agencies that administer the subsistence priority are responsible for identifying those [federally reserved] waters"); *Katie John v. United States*, Nos. A90-0484-CV and A92-0264-CV Order of Dismissal (Jan. 6, 2000 ) ("The court now readopts all of its rulings on the merits heretofore made. Those rulings shall be deemed final for all purposes and as to all parties."); *Katie John II*, 247 F.3d at 1033 ("A majority of the *en banc* court has determined that the judgment rendered by the prior panel, and adopted by the district court, should not be disturbed or altered by the en banc court."). Having exhausted its appeals, the State is not entitled to relitigate this issue because it dislikes the result. The State's contention that the Secretary should have made the required determination by commencing numerous water right adjudications is a thinly veiled attempt to attack these prior rulings and indefinitely delay implementation of the subsistence priority for fisheries.

Moreover, the claim was squarely presented to the court of appeals in *Katie John I*. The federal government stated the issue in its opening appellate brief:

> This Court therefore should reverse the district court's conclusion that the United States holds "title" to the navigational servitude. It should affirm the district court's conclusions regarding the applicability of the federal reserved water rights doctrine to the scope of federal jurisdiction over subsistence uses of natural resources on "public lands" in Alaska. This alternative holding is consistent with the law of this Circuit and is free of the other inconsistencies infecting the navigational servitude theory, discussed below. <u>The case should therefore be remanded with instructions to remand it to the Secretaries for further rulemaking to implement ANILCA Section 804 on navigable waters in Alaska in which the United States holds an appropriate interest, either through ownership of the bed of the waters or pursuant to the federal reserved waters rights doctrine.</u>

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

Appellate Brief of the United States, 1994 WL 16058810 at 17-18 (emphasis added).[4]
The State argued in response that Congress could not have intended ANILCA's
protection of subsistence fishing to extend to reserved waters because the right would
have to be quantified at the minimal level necessary to fulfill the purpose of the
reservation.  Brief for Appellee State of Alaska at 15-17, *Katie John v. United States*, 72
F.3d 698 (9th Cir. 1995) (No. 94-34581).[5]  The State also argued that "The [reserved
rights] doctrine is judge-made law and the courts are the only forum available to define
and clarify the nature and scope of the right."  *Id.* at 17.  The court of appeals rejected the
state's argument and ordered the agencies to identify waters subject to the federal
reserved rights doctrine. The State's current case is simply another spin on the issue it
lost: whether federal agencies are empowered to regulate subsistence fishing on federal
reserved waters and have a concomitant power to define the extent of such waters by
regulation.

   This case is very similar to *Tahoe-Sierra Preservation Council*, *supra*,  in which
an association of property owners challenged an agency's environmental regulation of its
members' property.  322 F.3d at 1069.  The association's previous challenge to a 1987
regulatory plan had been dismissed on statute of limitations grounds, and, in the
subsequent action, the association purported to challenge the implementation of the plan,
rather than the plan itself.  In holding that the challenge was barred by claim preclusion,

---

[4] This court may take judicial notice of the briefs of parties.  *Reyn's Pasta Bella, LLC v. VISA USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

[5] Attached as Exhibit 5 to Brief of the United States.

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

the court noted that "the Plan's relevant legal and factual components were fixed in 1987 and were not modified after that date." *Id*. at 1079-1080. Here, the State specifically raised and litigated the question of whether federal agencies, as opposed to some other entity, may identify and regulate the waters at issue, and the contours of this legal question have not changed since the enactment of ANILCA itself. As the Ninth Circuit stated eleven years ago, "the federal agencies that administer the subsistence priority are responsible for identifying those waters." *Katie John I*, 72 F.3d at 704. The time to put this question to rest is long past. The State raised the issue of judicial determination of the rights in its brief in 1994 and could have raised it again when it successfully sought *en banc* review. Instead the State raised no objection to the court's order requiring the agencies to issue regulations identifying reserved waters. Rather, the State argued that "The final judgment in this case incorporated that decision [*Katie John I*, 72 F.3d 698], which both held that the federal agencies must regulate fishing on Alaska's navigable waters and ordered them to issue regulations." En Banc Brief for Appellants State of Alaska and Frank Rue at 39 (Nov. 30, 2000), 2000 WL 33981053. "<u>The new regulations simply carry out the panel's ruling that the federal government may regulate fishing on navigable waters in Alaska</u>, so the live controversy as to whether the federal appellees have such a power remains in full force." *Id*. at 42 (emphasis added). Furthermore, this Court appeared to contemplate that a new case, if one arose, would concern implementation of the regulations, not the federal government's very authority to make the determination in the first place. Order in Nos. A90-0484-CV and A92-0264-CV (Jan. 6, 2000) referring to the possibility that plaintiffs "may or may not have justiciable claims

10

they wish to assert . . . as regards . . . implementation of subsistence fishing rights . . . .").

> Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d at

1078. Here, the State clearly had the opportunity to contest (and did contest to some

extent) the manner in which reserved waters would be identified. The agencies followed

the mandate of the courts and the State did not object after the rules were issued. The

State's attempt to revive the process claim should be dismissed based on *res judicata*.

> **B.** **Issue Preclusion Also Bars Relitigation of Whether the Secretary Has Authority to Regulate Waters Under ANILCA.**

Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if

three requirements are met:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005).

*Reyn's Pasta Bella, LLC v. VISA USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). However,

the issue need not have been explicitly decided by the prior tribunal; relitigation of issues

that were implicitly decided is barred as well. *Id*. at 750; *see also Gates v. Chew*, 27 F.3d

1432, 1438 (9th Cir. 1994) ("Necessary inferences from the judgment, pleadings, and

evidence will be given preclusive effect") (emphasis subtracted).

The second and third factors for issue preclusion duplicate the second and third

11

factors for claim preclusion, and, as explained above, both are clearly met.  Similarly, the

issue of whether the federal agencies are the proper entities to regulate waters under

ANILCA was explicitly decided by the Ninth Circuit in 1995, which held that "the

federal agencies that administer the subsistence priority are responsible for identifying

those waters" *Katie John I*, 72 F.3d at 704.  A logical corollary of the holding that the

"federal agencies . . . are responsible for identifying those waters" is that the courts are

not responsible for identifying those waters through an adjudication.   The State's claim

that the federal agencies are not the proper entities to make this determination is

foreclosed by either claim or issue preclusion.[6]

    Whether relitigation is viewed as barred by claim preclusion, issue preclusion, or

law of the case, the law is clear that "[t]he remedy of a losing party who believes that

through oversight or impulsiveness the court has erred is to seek rehearing . . . rather than

to lie in wait and then, years later . . .  having lost on remand, to present its argument for

reconsideration in a second" proceeding.  *Vidimos, Inc. v. Wysong Laser Co., Inc.*, 179

F.3d 1063, 1065-66 (7th Cir. 1999).  Once the avenues of appeal and requests for

rehearing have been exhausted, the party's remedies are at an end.

---

[6] Finally, because this case is so closely related to the prior disputes between the parties,
the Court could hold that it is effectively part of the same case and that relitigation of the
issue is barred by law of the case.  *Gould v. Mutual Life Ins. Co.*, 790 F.2d 769, 774 (9th
Cir. 1986) (applying law of the case where plaintiff, after final judgment, instituted
separate action alleging that prior judgment was void for lack of jurisdiction).  As
explained in *Gould*, "[u]nder the law of the case doctrine[,] a decision of a legal issue or
issues by an appellate court . . . must be followed in all subsequent proceedings in the
same case . . . unless the evidence on a subsequent trial [is] substantially different."
*Gould*, 790 F.2d at 774.  Here, the court of appeals has unequivocally stated that the
federal government has the authority and duty to identify reserved waters.  The Court is
required to adhere to the Ninth Circuit's prior decision.

**II.     The State Waived the Process Claim when it Failed to Raise it in its Comments to the Agencies During the Rulemaking.**

The State's argument is also inconsistent with the position repeatedly taken by the State in the rulemaking process despite the fact that the process was announced in an advance notice of proposed rulemaking.  61 Fed. Reg. 15,014 (April 4, 1996).  In its rulemaking comments, the State never objected to the process proposed to be followed by the agencies, but simply emphasized that Alaska intended to challenge any particular assertion of reserved water rights that it thought was not justified by that doctrine.  *See, e.g*., Tab 189, AR 4114; 4129; Transcript of Hearing in Anchorage (May 13, 1996) (Statement of  Assistant Attorney General Joanne Grace);  Tab 194, AR 4223, 4224, Transcript of Hearing in Juneau (May 14, 1996) (Statement of Alaska Attorney General Bruce Botelho);  Tab 197, AR 4258, 4269 Transcript of Hearing in Sitka (May 15, 1996) (Statement of Assistant Attorney Steve White).  The State also did not object when the regulations were proposed.  *See* 62 Fed. Reg. 66,216  (Dec. 17, 1997) (proposed final rule); and 64 Fed. Reg. 1276 (Jan. 8, 1999) (final rule).

"[A] party's failure to make an argument before the administrative agency in comments on a proposed rule bar[s] it from raising that argument on judicial review." *Universal Health Services, Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004) (citing *Exxon Mobile Corp. v. EPA*, 217 F.3d 1246 (9th Cir. 2000)).  In determining that the *Exxon* holding was the law of the circuit, the *Universal Health Services* Court noted that it was "consistent with the decisions of every other circuit to have addressed the issue of waiver in notice-and-comment rulemaking." *Id*. at 1020.  The waiver rule protects an

"agency's interests in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting." *Id*. at 1021.

Application of the rule has even greater force here because the State was given *advance notice* of the proposed rulemaking. It could have alerted the agencies to Alaska's current claim that there must be a judicial quantification. Had the issue been raised, the agencies could have considered altering the proposal. Of course, the likely explanation of why the State failed to object is that the objection was plainly foreclosed by the court of appeals' ruling and otherwise lacking in merit. Thus, even if such an argument had not already been foreclosed by the prior holdings of both this Court and the Ninth Circuit, the State waived any right it had to object to the agency process by not raising the issue in the rulemaking process.

## III.    The Federal Agencies Properly Utilized Notice and Comment Rulemaking to Determine the Waters Subject to Federal Reserved Rights.

The State claims that in order for waters subject to federal reserved rights to be considered "public lands" they must be adjudicated and quantified in a "proper federal or state forum." State's Brief at 44. While the federal common law of reserved rights was developed by the courts, there is no rule that requires an adjudication or quantification before a federal agency may assert reserved rights. The court of appeals' remand in this case did not require, or even suggest that the agencies would need to undertake judicial proceedings of any sort to determine the existence of federal reserved rights. The rulemaking process followed by the agencies complied with the Administrative

14

Procedures Act and the administrative record of over 10,000 pages clearly explains the

basis for the assertion of reserved water rights in the final rule.  A brief review of the law

of reserved rights reveals a simple test for determining when reserved rights exist.

> **A.    The Law of Federal Reserved Water Rights.**

The federal reserved water rights doctrine is rooted in *Winters v. United States*,

207 U.S. 564 (1908).  In *Winters*, the Court construed a congressionally ratified

agreement between the Indians of the Fort Belknap Reservation and the United States.

Act of May 1, 1888, ch. 213, 25 Stat. 113 (1889).   Non-Indians who had settled upstream

of the reservation claimed paramount rights to use water from the Milk River based on

the state law of prior appropriation doctrine.[7]  If the Indians were to grow crops as

contemplated by the agreement creating the reservation, however, they would need water

being used by the non-Indians.  The United States filed suit and claimed that Congress

had reserved the water as of 1888 to fulfill the purpose for establishing the reservation*,

i.e*., to turn the Indians into farmers and to serve as a homeland for the tribes.

The Supreme Court ruled that the federal government had the power to exempt waters

from appropriation under State water law, and that the United States intended to reserve

the waters of the Milk River to fulfill the purposes of the agreement between the Indians

---

[7] All of the western states, including Alaska, follow some form of the prior appropriation doctrine.  *See* Alaska Stat. 46.15, *et seq*.  "Under that doctrine, one acquires a right to water by diverting it from its natural source and applying it to some beneficial use. Continued beneficial use of the water is required in order to maintain the right. In periods of shortage, priority among confirmed rights is determined according to the date of initial diversion."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 805 (1976) (footnote omitted*).  See generally*, Robert E. Beck, WATERS AND WATER RIGHTS § 12.02 (2001 Repl. ed.).

and the United States.  207 U.S. at 576-77; *see generally*, *Cohen's Handbook of Federal Indian Law* 1168-76 (Newton, *et al*. eds. 2005).   The Court accordingly upheld an injunction limiting non-Indian use to the extent it interfered with increasing needs of the tribes.  Other early to mid-20[th] Century cases also recognized implied Indian reserved water rights and similarly did not finally quantify the amount reserved.  *See Conrad Inv. Co. v. United States*, 161 F. 829 (9th Cir. 1908);  *United States v. Ahtanum Irrigation Dist.*, 236 F.2d 321 (9th Cir. 1956), *cert. denied*, 352 U.S. 988 (1957) (both recognizing reserved rights that could increase as tribal needs expanded).

In *Arizona v. California*, 373 U.S. 546 (1963) the Court applied the reserved rights doctrine to land set aside as federal reservations for non-Indian purposes.  The Supreme Court agreed that "the principle underlying the reservation of water rights for Indian Reservations was equally applicable to other federal establishments such as National Recreation Areas and National Forests."  *Id*. at 601.[8]   The Court further agreed that "the United States intended to reserve water sufficient for the future requirements of the Lake Mead National Recreation Area, the Havasu Lake National Wildlife Refuge, the Imperial National Wildlife Refuge and the Gila National Forest."  *Id*.   The case now

---

[8] In an exhaustive analysis of federal water rights, the United States Department of Justice's Office of Legal Counsel determined that the power to reserve waters for federal use does not require a federal set-aside of land, but that "the Supremacy Clause provides Congress with ample power, when coupled with the commerce power, the Property Clause, or other grants of federal power, to supercede State law."  *Federal "Non-Reserved" Water Rights*, 6 Op. Off. Legal Counsel 328, 363 (1982). The opinion "still expresses executive branch policy." John D. Leshy, *Water Rights for New Federal Land Conservation Programs:  A Turn-of-the-Century Evaluation*, 4 U. Denv. Water L. Rev. 271, 288 (2001).

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

commonly relied on for the general rule for determining the existence of federal reserved

rights is *Cappaert v. United States,* 426 U.S. 128 (1976).  There, the Court concluded that

the establishment of Devil's Hole National Monument carried with it an implied

reservation of water:

> [W]hen the Federal Government withdraws its land from the public
> domain and reserves it for a federal purpose, the Government, by
> implication, reserves appurtenant water then unappropriated to the extent
> needed to accomplish the purpose of the reservation.  In so doing the
> United States acquires a reserved right in unappropriated water which
> vests on the date of the reservation and is superior to the rights of future
> appropriators.

*Id.* at 138.  In *United States v. New Mexico*, 438 U.S. 696 (1978) the Court narrowly

construed reserved water rights for National Forests by making it clear that such rights

would only be implied where needed to fulfill the "primary purposes" of the reservation

and only if the primary purposes would be "entirely defeated" without an implied

reservation of water. [9]  It accordingly held that water was reserved in national forests "to

preserve the timber or to secure favorable water flows for private and public uses under

state law."  *Id.* at 718.  *See* 1 GEORGE CAMERON COGGINS AND ROBERT L. GLICKSMAN,

---

[9] Federal rights to water may be expressly reserved as well as implied.  ANILCA is full
of examples.  *See, e.g*, Alaska National Interest Lands Conservation Act,  Pub. L. 96-487,
§ 304 (7)(B), 94 Stat. 2371, 2392 ("The purposes for which the Yukon Delta National
Wildlife Refuge is established and shall be managed include-- (i) to conserve fish and
wildlife populations and habitats in their natural diversity including, but not limited to,
shorebirds, seabirds, whistling swans, emperor, white-fronted and Canada geese, black
brant and other migratory birds, salmon, muskox, and marine mammals; and  (iv) to
ensure, to the maximum extent practicable and in a manner consistent with the purposes
set forth in paragraph (i), water quality and necessary water quantity within the refuge."
This and other express reservations will be addressed in detail in phase II of this litigation.

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

PUBLIC NATURAL RESOURCES LAW § 5:36 (2006 Supp.) for a comprehensive review of

federal reserved water rights litigation after *United States v. New Mexico*.

These cases all make it clear that it is the federal action setting land aside for a

particular purpose which results in a simultaneous withdrawal of sufficient water to carry

out those federal purposes.  The water is set aside by implication as a matter of law.

Later court decrees may simply confirm that water was in fact intended to be reserved

when the land was set aside.  As demonstrated more fully below, the federal agencies in

this case simply have given effect to the court of appeals' mandate and identified by

regulation the waters subject to the doctrine.

### B.    The Agencies Were Not Ordered to Adjudicate or Quantify Federal Reserved Rights.

Nothing in any of the Court's Indian reserved right or federal reserved rights

cases *requires* that the existence of such rights be litigated before an agency may claim

them, nor that they be quantified in order to have legal effect.   The State is simply wrong

in its assertion that an agency may not administratively determine whether water in or

adjacent to a federal reservation was reserved to fulfill the purposes of the reservation.[10]

As this Court previously held: "By ANILCA Section 814, Congress expressly authorized

the Secretary to promulgate, 'such regulations as are necessary and appropriate to carry

---

[10] Nor is there any merit to the claim that the determination by the agencies works any prejudice to private water right holders.  The United States' claims are to keep water in the relevant rivers.  In the unlikely event that the federal government were to bring an action to halt a diversion by a state water right holder, that individual could attack the merits of the U.S. claim in defense of the action.  *Cf.*, *Block v. North Dakota*, *supra* at 291-92.

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

out his responsibilities under this [Title].' Congress having unequivocally given the

Secretary regulatory authority, he was empowered to fill the statutory gap so as to

implement not only the policy contained in ANILCA Section 802, but also effect the

substantive preference established by ANILCA Section 803 for rural Alaskans."

(footnotes omitted). *Katie John v. United States*, Nos. A90-0484-CV (HRH), A92-0264-

CV (HRH) Order at 8. Since the agencies have the power to implement the substantive

provisions of the statute by regulation, they certainly have authority to comply with the

court of appeals directive to identify federally reserved waters.[11]

Administrative agencies are empowered to make determinations regarding

ownership of federal property for the purpose of administration. In *Block v. North

Dakota*, 461 U.S. 273 (1983) the Court dismissed on sovereign immunity grounds North

Dakota's challenge to the federal government's claim of ownership of the submerged

lands of the Little Missouri River. The State's claim of ownership was based on the

presumption embodied in the equal footing doctrine, while the federal government

asserted ownership as the riparian owner of land on a river the federal government

claimed to be non-navigable. The United States manifested its claims of ownership by

issuing oil and gas leases on the disputed submerged land. *Id.* at 277. While holding that

the Quiet Title Act' statute of limitations barred North Dakota's claim, the circumstances

of the case make it clear that that the federal government need not perfect its title through

---

[11] For a discussion of earlier administrative determinations of reserved rights and
attempts to assert them in state processes, *see* Harold A. Ranquist, *The Winters Doctrine
and How it Grew:  Federal Reservation of the Rights to the Use of Water*, 1975 BYU L.
Rev. 639, 677-78.

an adjudication before proceeding to act as the owner. *Id*. at 291-92. Indeed, the dispute arose because *federal agencies* determined that the Little Missouri River was non-navigable with ownership of the bed and banks falling to the riparian owner – the United States. *See also Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, 757-58 (10th Cir. 2006) (holding that while BLM could not conclusively establish existence or non-existence of rights-of-way, it could make such determinations for administrative purposes).

Indeed, the rule touted by the State would require that the United States bring quiet title actions in any case where it asserted ownership to land, or before it could act as the holder of reserved water rights. That would be preposterous. The court of appeals is well aware of the statutory mechanism for the judicial determination of water rights, *see e.g.*, *United States v. Oregon*, 44 F.3d 758, 766-67 (9th Cir.1994), and it would be remarkable indeed to infer that the court intended a remand to the agencies "to identify waters" to mean that it must commence massive litigation. The State's proposal would require the largest and most complex water rights lawsuit ever brought. [12] It would take

---

[12] "Modern general stream adjudications, most of which have been filed since the 1970s, are characterized by their enormity and longevity. These complex lawsuits are among the largest civil proceedings ever litigated in state or federal courts. For instance, 28,500 persons have filed more than 100,000 claims to water rights in the Arizona general stream adjudications. Parties have filed over 150,000 claims for water rights in Idaho's Snake River adjudication. Also, in Montana, approximately 80,000 persons have filed 218,000 water rights claims in the statewide adjudication." John E. Thorson *et al.*, *Dividing Western Waters: A Century of Adjudicating Rivers and Streams*, 8 U. Denv. Water L. Rev. 355, 358-59 (2005). The cases are also expensive to litigate. One estimate put the State's cost of attorneys' fees at $14 million for twelve years of litigation in Wyoming's Big Horn River adjudication. Reid Peyton Chambers & John E. Echohawk, *Implementing the Winters Doctrine of Indian Reserved Water Rights: Protecting Indian*

20

years to simply gather all the data necessary for a state-wide general stream adjudication and serve every water right holder in the State of Alaska.[13]  In effect, the subsistence priority for fisheries would not be provided for many years if the States' claim for relief were granted.

In fulfilling their statutory duties, agencies are not required to undertake processes that will place an intolerable burden upon them.  *Airline Pilots Assoc. v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960).  *See also* Kenneth Culp Davis and Richard J. Pierce, *Administrative Law Treatise* § 9.2 (3d. ed. 1990).  As was the case in *Airline Pilots Assoc.*, the public interest in the timely adoption of rules governing and facilitating federally-protected subsistence activities "far outweighs any possible advantage in a multitude of piecemeal and time-consuming" water rights adjudications.  276 F.2d at 897. The State's proposal would also be inconsistent with the court of appeals' statement: "Let us hope that the federal agencies will determine promptly which navigable waters are public lands subject to federal subsistence management."  *Katie John I*, 72 F.3d at 704.

---

*Water and Economic Development Without Injuring Non-Indian Water Users?*, 27 Gonz. L. Rev. 447, 456 n. 54 (1992)

[13] The State made the same point in its appeal in *Katie John I* in 1994.  Brief for Appellee State of Alaska at 17, *Katie John v. United States*, 72 F.3d 698 (9th Cir. 1995) (No. 94-34581).  Attached as Ex. 5 to Brief of the United States.

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

C.     **The Agency Process Was Lawful.**

As set forth above, agencies have broad discretion as to how they carry out their delegated functions.[14]  In this case, agency discretion was constrained by the mandate from the court of appeals that the agencies identify the waters subject to the reserved rights doctrine.  The Departments of Interior and Agriculture commenced a three-stage rulemaking process to identify those waters and provided for extensive public participation.  *See* 61 Fed. Reg. 15,014 (April 4, 1996) (advance notice of proposed rulemaking);  62 Fed. Reg. 66,216  (Dec. 17, 1997) (proposed final rule); and 64 Fed. Reg. 1276 (Jan. 8, 1999) (final rule).   The State does not allege any violation of the technical requirements for notice and comment rulemaking.

The federal agencies utilized the test set out in the *Cappaert* case for determining the existence of federal reserved rights.  *See* Tab 88, AR 1688-1742,  Issue Paper and Recommendations of the Alaska Policy Group (June 15, 1995).  From the outset, the agencies determined that "nothing in the *Katie John* decision requires the United States to quantify its reserved water rights.  It thus appears that if the United States has any

---

[14] Intervenors agree with the United States is entitled to deference in terms of the rules adopted and note that this is especially true with regard to the process undertaken determine an agency's position. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524 (1978)  ("Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them. This is not to say necessarily that there are no circumstances which would ever justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute. But such circumstances, if they exist, are extremely rare.")  S*ee also*, *Superior Oil Co. v. Federal Power Comm'n*, 322 F.2d 601, 608-09 (9th Cir. 1963) (in the absence of statutory directive no specific procedures are required other than those mandated by the APA); and *Administrative Law Treatise*, *supra*, § 7.8.

reserved water right that interest is sufficient to come within the ANILCA definition of public lands and trigger subsistence management responsibilities." *Id.* at AR 1581. The Issue Paper and Recommendations of the Alaska Policy Group set out the federal conservation system units within which reserved water rights would be asserted. Tab 88, AR 1688-1742. The agencies' determinations are based on longstanding interpretations of the reserved rights doctrine as set out in the 1979 Solicitor's Opinion attached to the United States' Brief. In fact, the State for some time has expressed its understanding that there are likely large federal reserved water rights claims in existence in Alaska. *See* AR 5251; Tab 224; Alaska Department of Natural Resources: "Fact Sheet: Federal Reserved Water Rights" (September 1992) (acknowledging potential federal reserved rights on nearly 178 million acres of land in Alaska which may apply to instream and out of stream uses).

        If the State wishes to contest the question of whether *any* water has been reserved for a given water body, it may do so in phase II of this litigation, or by commencing a general stream adjudication pursuant to Alaska Stat. 46.15.166. In the meantime, the agencies acted lawfully and reasonably in the process used to identify those waters with federal reserved rights. The State should not be permitted to thwart the subsistence priority of ANILCA by fomenting unnecessary litigation. It may regain control of subsistence on reserved waters by amending its constitution.

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John

**Conclusion**

For the foregoing reasons this Court should dismiss the plaintiff's process claims.


October 23, 2006                              Respectfully submitted,


/s/Robert T. Anderson                        Heather R. Kendall-Miller
Robert T. Anderson                           Alaska Bar No. 9211084
Alaska Bar No. 8506043                       Native American Rights Fund
University of Washington School of Law        420 K Street, Suite 500
Box 353020                                   Anchorage, Alaska  99501
Seattle, WA  98195-3020                      Phone: (907) 276-0680
Phone:  (206) 685-2861                       Fax: (907) 276-2466
Fax:  (206) 616-3426                         E-mail: kendall@narf.org
Email: BobA@u.washington.edu


Counsel for Alaska Federation of Natives     Counsel for Katie John, *et al*.

Carol H. Daniel
Alaska Bar No. 8601005
Alaska Federation of Natives
1577 C St., Suite 300
Anchorage, AK 99501
Phone: (907) 274-3611
Fax:    (907)276-7989
Email:  cdaniel@alaska.net

Ann Tweedy
Kanji & Katzen PLLC
100 South King Street, Suite 560
Seattle, WA 98104
Tel: (206) 344-8100
Fax: (866) 283-0178
Email: atweedy@kanjikatzen.com


Counsel for Alaska Federation of Natives

Certificate of Service

I hereby certify that on the 23rd day of October, 2006 a copy of the foregoing BRIEF OF ALASKA FEDERATION OF NATIVES AND KATIE JOHN, *et al*. was served electronically upon:


Dean K. Dunsmore
Heather Kendall-Miller
William F. Sherman
Randolph H. Barnhouse
Steven A. Daugherty
Joanne Grace
William P. Horn
Gregory L. Fisher
Carol H. Daniel

/s/ Robert T. Anderson
Robert T. Anderson

Katie John v. United States, 3:05-cv-00006-HRH
Brief of AFN and Katie John