WILLIAM P. HORN
D.C. Bar No.: 375666
JAMES H. LISTER
D.C. Bar No.: 447878
Birch, Horton, Bittner & Cherot, P.C.
1155 Connecticut Avenue
Suite 1200
Washington, D.C. 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
Email: whorn@dc.bhb.com
Email: jlister@dc.bhb.com

Attorneys for Plaintiff State of Alaska

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE JOHN, GERALD NICOLIA, et al. ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, et al., ) <br> ) <br> Defendants. ) | Case No.: A05-0006-CV (HRH) <br> (Consolidated) |

## [PROPOSED*] REPLY BRIEF OF THE STATE OF ALASKA

\* -- The Reply Brief is filed as "Proposed" because the State's Unopposed Motion for Leave to File Over-Length Document (Docket No. 83, filed October 31, 2006) is pending.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

I.     INTRODUCTION AND SUMMARY OF ARGUMENT..................................................1

II.    ARGUMENT ...........................................................................................3

       A.     The Court Should Reject the Federal Defendants' Collateral Estoppel and Waiver
              Arguments ...................................................................................................3
              1.     Collateral Estoppel............................................................................4
              2.     Exhaustion of Administrative Remedies ...................................................10
                     a.     Any Issue Exhaustion Requirement is Satisfied ............................10
                     b.     The Agencies Cannot Avoid Judicial Review of Their
                            Authority to Act ....................................................................13
              3.     The Additional Preclusion Arguments Raised By the *Katie John*
                     Parties Fail ...................................................................................14

       B.     The Federal Defendants Misapplied Federal Reserved Water Rights Doctrine.....18
              1.     Adjudication of FRWRs ...................................................................18
              2.     What the *Katie John* Court Actually Authorized.......................................21
              3.     The Other Parties Confuse the FRWR Doctrine........................................23
              4.     Post Hoc Legal Arguments Cannot Cure Agency Failures .......................26
              5.     Federal Defendants Confuse Water and Water Rights ..............................27
              6.     There Can Be No FRWRs in Marine Waters..............................................28
              7.     Clear Statement Rule .......................................................................29
              8.     A Reasonable Approach .....................................................................31

       C.     Headland-To-Headland Seaward Boundaries in 1999 Rule Violate ANILCA ......33

       D.      Validly Selected Statehood Act Lands Are Not and Cannot Be
               Treated as Public Lands.............................................................................35

III.   CONCLUSION ....................................................................................37

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

## **TABLE OF AUTHORITIES**

### FEDERAL AND STATE CASES

*Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496 (9th Cir. 1980)........................................10, 13, 14

*Altamirano v. Gonzales*, 427 F.3d 586 (9th Cir. 2005)..................................................................26

*Arizona v. California,* 373 U.S. 546 (1963)............................................................................19, 25

*Astoria Federal Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991)..........................................14

*Bean v. Agard (In re Bean)*, 252 F.3d 113 (2nd Cir. 2001) ..................................................6, 10, 17

*Block v. North Dakota*, 461 U.S. 273 (1983).......................................................................24, 25

*Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991)................6

*Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156 (1962) ............................................26

*Cappaert v. United States*, 426 U.S. 128 (1976) ................................................................. *passim*

*Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) ..............................................6

*Chicago Truck Drivers v. Century Motor Freight, Inc*., 125 F.3d 526 (7th Cir. 1997)...................9

*Clark v. Bear Stearns & Co.*, 966 F.2d 1318 (9th Cir. 1992)...............................................4, 6, 8, 9

*Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir. 1981) ...........................................28

*Commercial Associates v. Tilcon Gammino, Inc.*, 998 F.2d 1092 (1st Cir. 1993) ..........................9

*Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990) ................................................................15

*Darby v. Cisneros,* 509 U.S. 137 (1993)......................................................................................10

*Delta Sav. Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001) ..................................................17

*Great Basin Mine Watch v. Hankins*, 456 F.3d 955 (9th Cir. 2006) ......................................10, 13

*INS v. Cardoza-Fonseca*, 480 U.S. 426 (1987) ............................................................................35

*Johnson v. Dir., Office of Workers' Compensation Programs,* 183 F.3d 1169 (9th Cir. 1999).....13

*Katie John v. United States*, 247 F.3d 1032 (9th Cir. 2001).................................................1, 17, 29

ii

*Northwest Envt'l Defense Center v. Bonneville Power Admin.*, 117 F.3d 1520 (9th Cir. 1997)....10

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2005) ...............................................29

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)................................................3, 29, 34

*Phonometrics, Inc. v. Northern Telecom*, Inc., 133 F.3d 1459 (Fed. Cir. 1998) ...........................6

*Potlatch Corporation v. United States*, 12 P.3d 1260 (Idaho 2000)..................................20, 25, 32

*Reid v. Engen,* 765 F.2d 1457 (9th Cir. 1985) .......................................................................11, 13

*Resolution Trust Corporation v. Keating*, 186 F.3d 1110 (9th Cir. 1999) ......................................9

*Sarie v. Rio Tinto, PLC*, 456 F.3d 1069 (9th Cir. 2006)..................................................................13

*Segal v. AT&T, Inc.*, 606 F.2d 842 (9th Cir. 1979)..........................................................................9

*Seldovia Native Association v. Lujan*, 904 F.2d 1335 (9th Cir. 1990) ..........................................35

*Sierra Club v. Yeutter,* 911 F.2d 1405 (10th Cir. 1990) .......................................................5, 27-29

*Solid Waste Agency v. United States Army Corps of Eng'rs*, 531 U.S. 159 (2001) ............3, 29, 34

*Southern Utah Wilderness Alliance v. BLM*, 425 F.3d 735 (10th Cir. 2006) .......................5, 14, 24

*State of Alaska v. Babbitt,* 72 F.3d 698 (9th Cir. 1995) .......................................................... *passim*

*State of Alaska v. United States*, 563 F. Supp. 1223 (D. Alaska 1983) .............................24, 25, 34

*The Daniel Ball*, 77 U.S. (10 Wall.) 557 (1870)............................................................................34

*The Steam-Boat Thomas Jefferson*, 23 U.S. (10 Wheat.) 428 (1825)............................................34

*Troutt v. Colorado W. Ins. Co.*, 246 F.3d 1150 (9th Cir. 2001) .....................................................14

*Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013 (9th Cir. 2004)...................................11

*United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983) .............................................................28, 32

*United States v. Anderson*, 6 I.L.R. F-129 (E.D. Wash. 1979)......................................................28

*United States v. City and County of Denver,* 656 P.2d 1 (Colo. 1983).......................19, 25, 27, 32

*United States v. District Court for Eagle County*, 401 U.S. 520 (1971) .......................................20

iii

*United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000) ...............................................................6

*United States v. New Mexico*, 438 U.S. 696 (1978)................................................. 1, 19, 20, 25-27

*United States v. Powers*, 305 U.S. 527 (1939).................................................................................20

*United States v. State of Washington,* 294 F.2d 830 (9th Cir. 1961) .............................................34

*United States v. Washington*, 506 F. Supp. 187 (W.D. Wash. 1980) ............................................29

*Utah v. United States*, 403 U.S. 9 (1971)........................................................................................24

*Watt v. Alaska*, 451 U.S. 259 (1981)...............................................................................................35

*Winters v. U.S.*, 207 U.S. 564 (1908)...........................................................................................5, 20

## STATUTES

5 U.S.C. § 704....................................................................................................................................10

5 U.S.C. § 706....................................................................................................................................29
    § 706(2)........................................................................................................................................5

ANILCA, § 101(b); 16 U.S.C. § 3101 (b) ........................................................................................26

ANILCA, § 102; 16 U.S.C. § 3102.......................................................................................3, 23, 36
    § 102(3); 16 U.S.C. § 3102(3) ....................................................................................................3
    § 102(3)(A); 16 U.S.C. § 3102 (3)(A) ................................................................................35, 39
    §§ 102(3)(B), (C); 16 U.S.C. §§ 3102(3)(B), (C) .....................................................................35
    § 102(4); 16 U.S.C. § 3102(4) ..................................................................................................12

ANILCA, § 103(a); 16 U.S.C. § 3103(a)................................................................2, 33, 34, 37, 39
    § 103(c); 16 U.S.C. § 3103(c)..........................................................................................23, 35, 36

ANILCA, § 906(o); 48 U.S.C. § n. prec. § 21, 43 U.S.C. § 1601 note ......................................36
    § 906(o)(2); 48 U.S.C. § n. prec. § 21 ...............................................................................36, 37

16 U.S.C. § 3114...................................................................................................................................9

16 U.S.C. § 3124, P.L. 96-487 (Dec. 2, 1980).............................................................................2, 3

16 U.S.C. § 3202...............................................................................................................................2, 3
    § 3202(a) .....................................................................................................................................30

16 U.S.C. § 3207 .................................................................................................2, 3
    §§ 3207 (1), (2) ...........................................................................................30

28 U.S.C. § 1345 .....................................................................................................32

## REGULATIONS

36 C.F.R. § 242 ........................................................................................................1

50 C.F.R. § 100 .........................................................................................................1

50 C.F.R. § 100.10(d)(4)(xviii) .............................................................................21

50 C.F.R. § 100.27 ......................................................................................31, 32, 39
    § 100.27(i)(4)(vi) ........................................................................................31
    § 100.27(i)(5)(iii) ........................................................................................31

50 C.F.R. § 100.3 ...............................................................................................31, 39

50 C.F.R. § 100.4; 64 Fed. Reg. 1276 (Jan. 8, 1999) ..............................................1, 33
    § 100.4(2) ..............................................................................................1, 35

57 Fed. Reg. 22,940 (May 29, 1992) .......................................................................35

62 Fed. Reg. 66216 (Dec. 17, 1997) ........................................................................11

64 Fed. Reg. 1276 (Jan. 8, 1999); 50 C.F.R. § 100.4 ..............................................1, 33

## ADDITIONAL AUTHORITY

18A Wright & Miller, Federal Practice & Procedure § 4433 (2006) ...........................................16

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The State of Alaska's challenge to the 1999 regulations[1] purporting to implement the *Katie John*[2] decisions remains unrefuted by the briefs filed by the opposing parties (Federal Defendants, Katie John, and Peratrovich): the regulations expansively and illegally preempt traditional State authority over fish and wildlife and water.  The Federal Defendants do so by purporting to establish Federal Reserved Water Rights (FRWRs) themselves, acting without authority as judge of their own FRWR claims, and by failing to adhere to the substantive requirements of the FRWR doctrine.[3]  Similarly, the rules illegally extend federal "river mouth" boundaries to preempt State authority over State submerged lands and tidally influenced waters[4] as well as illegally treat as "public lands" certain Statehood Act land selections.[5]

The heart of the Federal Defendants, (and Katie John parties) case is that one line of dicta – "[l]et us hope that the federal agencies will determine promptly which navigable waters are public lands," *State of Alaska v. Babbitt,* 72 F.3d 698, 704 (9th Cir. 1995) ("*Katie John I*") – is a definitive order or mandate to short circuit the Supreme Court requirements for the assertion and establishment (i.e., adjudication) of FRWRs.  The State disagrees.  No torturing of the English language can transmute "hope" into a mandate.  Nothing in the Ninth Circuit's ruling, including the ambiguous direction to merely "identif[y]" which of "some" waters have FRWRs (*id.* at 703-

---

[1]    64 Fed. Reg. 1276 (Jan. 8, 1999); 50 C.F.R. § 100; 36 C.F.R. § 242.  There are parallel, identical Department of the Interior rules at 50 C.F.R. § 100 and U.S. Department of Agriculture rules at 36 C.F.R. § 242.  For simplicity, all references herein are to the Interior rules.
[2]    *State of Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995) ("*Katie John I*"); *Katie John v. United States*, 247 F.3d 1032 (9th Cir. 2001) (*"Katie John II"*).
[3]    *See United States v. New Mexico*, 438 U.S. 696 (1978); *Cappaert v. United States*, 426 U.S. 128 (1976).
[4]    50 C.F.R. §§ 100.4, 100.4(2).
[5]    50 C.F.R. § 100.4(2).

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

04) or in statute, authorize a departure from the FRWR doctrine and resultant further diminution of State authority.

Contrary to the other parties' arguments –

(1)     The *Katie John* decisions did not definitively and unambiguously specify how FRWRs were to be established nor did the rulings order or mandate the establishment of FRWRs via agency rulemaking;

(2)     The State did not concede this issue in prior litigation, did object to the proposed agency action to short circuit FRWR procedures and standards, and is not estopped from raising these issues in this case;

(3)     The State similarly objected to unauthorized boundary extensions and the assertion of federal authority over certain Statehood Act lands;

(4)     Neither section 814 of the Alaska National Interest Lands Conservation Act ("ANILCA") (P.L. 96-487, Dec. 2, 1980) (16 U.S.C. § 3124) nor the Ninth Circuit's direction to merely "identify" "some" waterways with FRWRs authorize or require the agencies to establish (i.e., judge) such rights via rulemaking;

(5)     Purportedly "established" FRWRs fail to comply with the substantive requirements of that doctrine;

(6)     Sections 1314 and 1319 of ANILCA (16 U.S.C. §§ 3202, 3207) do affirm State authority over fish and wildlife and waters and impose limitations on federal preemptive powers;

(7)     ANILCA expressly sets federal unit boundaries at the mean high tide line (§ 103(a); 16 U.S.C. § 3103(a)) and the agencies lack authority to contravene that

2

clear direction by instead setting seaward boundaries per United Nations boundary conventions; and

(8)    ANILCA also expressly prescribes that validly selected State lands are not "public lands" subject to preemptive federal subsistence authority (§ 102(3); 16 U.S.C. § 3102(3)).

The other parties also fail to address the Clear Statement rule (Alaska Opening Brief at 31-33) which is applicable to this case: agencies lack authority to diminish or impinge upon traditional State authority involving fish and wildlife or waters absent an "unmistakably clear" Congressional directive to do so. *Solid Waste Agency v. United States Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). Seen through the lens of this rule, it is evident that ANILCA provisions such as sections 102, 103, 814, 1314, and 1319[6] do not confer on the agencies any unmistakably clear authority to further broaden Title VIII federal preemption at the expense of the State.

## II.    ARGUMENT

### A.    The Court Should Reject the Federal Defendants' Collateral Estoppel and Waiver Arguments

The Federal Defendants (and the Katie John parties) rely on misplaced collateral estoppel and exhaustion of administrative remedies (i.e., waiver) arguments to defend their theory that ANILCA authorizes them to conclusively establish the existence of their own FRWR claims through their own rulemaking proceeding. Contrary to these arguments, *Katie John I* never addressed whether the Federal Defendants have the authority to administratively establish or validate FRWRs, as opposed to identify and assert such rights. The State did not concede this or related issues during briefing on the *Katie John* cases and the State and others fairly raised that

---

[6]   16 U.S.C. §§ 3102, 3103, 3124, 3202 and 3207.

issue during the rulemaking proceeding.  The Administrative Record confirms that the Federal

Defendants took notice of this issue from the outset of the rulemaking.

      1.     **Collateral Estoppel**

      To successfully invoke collateral estoppel, the other parties must prove that the

"identical" issue of agency authority to establish FRWRs via rulemaking was "actually litigated"

and resolved in the prior *Katie John* litigation.  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318,

1320 (9th Cir. 1992).  Showing only that a "similar" issue was actually litigated and resolved in

the prior case will not suffice.  *Id.*  Additionally, "determination of the issue in the prior litigation

must have been a critical and necessary part of the judgment in the earlier action."  *Id.*

      *Katie John I* concluded that ANILCA could be permissibly interpreted to treat "some" or

"certain" waters in Alaska with FRWRs as "public lands" for Title VIII purposes.  72 F.3d at

703.  During that appeal, the State of Alaska also conceded that Federal Defendants had

authority to provide a subsistence preference for the taking of fish and wildlife on public lands,

in the absence of State laws implementing the preference provided in ANILCA, and preempt

State authority to the limited degree necessary to afford the preference on bona fide public lands.

*Id.* at 700, n.2.  Those matters are now resolved.

      We are dealing now with the distinct and different issues of how the Federal Defendants

are to identify and assert FRWRs and who has the authority to decide (i.e., adjudicate) which

particular FRWRs asserted or claimed by the Federal Defendants are valid FRWRs.  This

authority-to-adjudicate issue is both broader and different from the issues decided in the prior

case.  It is also an implementation issue that did not become ripe for litigation until four years

after the *Katie John I* ruling, when the Federal Defendants finally issued the 1999 rules

purporting to establish particular FRWRs.  Only then was there a concrete dispute over whether

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

the Federal Defendants (a) had authority to judge the validity of their own water right claims, in which case their findings of fact are reviewable under a deferential standard of review, or (b) lacked such authority, in which case their findings must be set aside as made without statutory authority, and a de novo standard of review for issues of fact applied.[7]  Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); *see Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, 757, 788 (10th Cir. 2005).

The statement in *Katie John I* that the Federal Defendants are responsible for "identifying" FRWRs falls far short of holding that the Federal Defendants may decide the validity of their own FRWR claims.  72 F.3d at 704.  It is difficult to determine precisely what the Ninth Circuit meant, because the case focused on whether waters containing FRWRs were public lands, not on the process for validating FRWR claims.[8]  Because federal agencies normally have discretion whether to assert FRWRs, *Sierra Club v. Yeutter,* 911 F.2d 1405, 1414,1422 (10th Cir. 1990), the statement that the Federal Defendants are "responsible" for identifying FRWR may have been intended to foreclose any risk that the Federal Defendants would never identify and assert FRWRs. *See Southern Utah Wilderness Alliance,* 425 F.3d at 757, 788 (explaining that the Bureau of Land Management may identify rights-of-way over federal lands, but these administrative "determinations" are not binding or entitled to deference).

While we have a new lawsuit, and therefore the Court must evaluate collateral estoppel rather than law of the case, the Ninth Circuit's warning against reading too much into a remand

---

[7]   There appears to be no dispute on the applicable standard of review for issues of law. In its opening brief, the State explained that the law of FRWRs is judge-made law originating from *Winters v. United States*, 207 U.S. 564 (1908), rather than law created by any statute administered by the Federal Defendants.  Consequently, rulings by the agencies on the law of FRWR are subject to de novo review rather than deferential *Chevron* review.  The United States did not respond to this point in its brief.

[8]   As the Court can see from reviewing the briefs filed with the Ninth Circuit, including the statements of questions presented, the parties focused on whether waters containing FRWRs were public lands, not on the process for validating FRWR claims.  The briefs of the Federal Defendant, the State, and the Katie John parties are supplied in a Notebook of Exhibits attached to this Reply.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

order during remand proceedings remain apt: "On remand, courts are often confronted with issues that were never considered by the remanding court. In such cases, broadly speaking, mandates require respect for what the higher court decided, not for what it did not decide." *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) (internal citations omitted).[9]

The cornerstone of the Federal Defendants' case is one line of dicta: "Let us hope that the federal agencies will determine promptly which navigable waters are public lands subject to federal subsistence management." *Katie John I*, 72 F.3d at 704. A judicial expression of "hope" cannot be fairly or reasonably construed to be an unambiguous, definitive ruling to establish FRWRs via agency rulemaking. Further, dicta such as "let us hope" cannot give rise to collateral estoppel. *Bean v. Agard (In re Bean)*, 252 F.3d 113, 118 (2nd Cir. 2001); *Phonometrics, Inc. v. Northern Telecom, Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998).

In any event, the Ninth Circuit did not unambiguously rule that the Federal Defendants could judge their own water right claims. Consequently there can be no collateral estoppel. As the Ninth Circuit has held, "[t]he party asserting preclusion bears the burden of showing with <u>clarity</u> and <u>certainty</u> what was determined by the prior judgment." *Clark*, 966 F.2d at 1321 (emphasis added). The party seeking preclusion must "pinpoint the exact issues being previously litigated." *Id*. Ambiguity defeats collateral estoppel. *Bd. of Educ. of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 260 (1991) (prior court ruling that Oklahoma City schools had achieved a "unitary", i.e. non-segregated, school system was ambiguous and therefore not preclusive); *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139, 1152 (9th Cir. 2000) (brief unexplained statement in the conclusion of a Ninth Circuit opinion was not preclusive).

The Administrative Record confirms that just months after the *Katie John I* opinion, the Federal Defendants thought it was unclear whether they should attempt to adjudicate FRWRs or

---

[9]   See note 22 below for a discussion of law of the case.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

just claim FRWRs.  On September 11, 1995, the Manager of the Federal Subsistence Program

sent the Department of the Interior's Regional Solicitor for Alaska comments on the rules being

drafted to implement *Katie John I*.[10]  He proposed clarifying that the draft rules did "NOT

adjudicate[] water right claims":

> "The regulation package needs to make clear that these are NOT federal reserved
> water right claims for the purpose of adjudicating reserved water right claims nor
> for any other purpose not directly related to implementation of Title VIII of
> ANILCA."  A.R. Tab 410 at p. 9954 (emphasis in original).

These contemporaneous agency observations regarding the need for clarity on this very

issue are clear evidence of the ambiguities inherent in the *Katie John I* decision and a better

indicator of agency thinking than the Federal Defendants' present argument that there was no

ambiguity.

Because the result of an appeal and any issues decided on remand should be reflected in

the final judgment entered in the district court on remand, the post-remand proceedings

conducted by this Court and its final judgment are also pertinent. The Ninth Circuit's mandate

simply stated "reversed and remanded."[11] This Court's main order on remand issued February 7,

1996 describes the Ninth Circuit's "implicit" as well as explicit rulings, and directs that those

rulings supersede this Court's earlier 1994 opinion.[12]  Nothing suggests that this Court thought

the Ninth Circuit had resolved whether the Federal Defendants could decide the validity of their

own FRWR claims – the issue is not mentioned by the Court in its summary of the Ninth

Circuit's ruling.  While the case remained on the Court's docket for four more years, no further

relevant rulings were made.  On January 7, 2000, the Court entered two identical final judgments

---

[10]   The Ninth Circuit issued its initial panel opinion at 54 F.3d 549 on April 20, 1995.  This opinion was
identical in relevant respects to the replacement panel opinion issued at 72 F.3d 698 on Dec. 19, 1995.
[11]   The Mandate is filed as Document 227 in Case No. 90-484-CV.
[12]   "[T]his court's decision of March 30, 1994, as set out at pages 21 through 42, is vacated, and the issue
therein discussed shall be deemed controlled by the foregoing decision of the court of appeals."  Order
Dated Feb. 7, 1996, Case Nos. 90-484-CV and 92-264-CV (supplied as Ex. 16 to this Reply).

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

(there were two consolidated cases) in which it "reaffirmed" and made "final" the Court's prior "substantive orders," which would be the February 7, 1996 order plus possibly several orders granting narrow preliminary injunctions relating to the Batzulnetas salmon fishery.

In the final judgments, the Court correctly anticipated future litigation addressing unresolved issues. It ordered that "any issues or claims not heretofore decided by the court are dismissed without prejudice as to all parties."[13] In an accompanying explanatory order, the Court recognized that there were unresolved issues, but concluded that that it would be more efficient to close the old case file and let the parties raise undecided issues in new lawsuits:

> "[I]t is the Court's considered judgment that it will be most efficient for all concerned to strike the slate clean at this point and, if necessary, permit such of the plaintiffs as are dissatisfied with the status quo to commence new actions."

Order in Case Nos. A90-484-CV and A92-264-CV (Jan. 6, 2000).[14] The dismissal of undecided claims without prejudice undermines substantially the plea for collateral estoppel, because the other parties cannot show with that this Court or the Ninth Circuit ever decided unambiguously that the Federal Defendants could judge the validity of their own FRWR claims.

For all these reasons, the other parties fail to demonstrate with "clarity and certainty" that the "identical" issue was actually decided in the prior litigation. *Clark*, 966 F.2d at 1320-21.

The other parties fail to establish other essential elements of collateral estoppel:

- <u>Actual Litigation</u>. The hundreds of pages of briefing in the *Katie John I* appeal contain only a few sentences from the Federal Defendants' brief and a single sentence from the States brief that are even remotely relevant to identifying FRWRs. None requested or opposed a ruling that the Federal Defendants should adjudicate (or otherwise conclusively decide) their FRWR claims, and none cited any legal authorities relevant to

---

[13] Judgment in Civil Case, A90-484-CV and A92-204-CV (Jan. 7, 2000) (Exs. 13 and 14 to the Reply).
[14] A copy is supplied as Ex. 15. Alaska was a Plaintiff in A92-264-CV and a party in A90-484-CV.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

that question.[15]  These isolated passages fall far short of the actual litigation threshold. *Chicago Truck Drivers v. Century Motor Freight, Inc.*, 125 F.3d 526, 532 (7th Cir. 1997) (legal issue "not fully briefed" in first case was not precluded); s*ee Segal v. AT&T, Inc.*, 606 F.2d 842, 846 (9th Cir. 1979) (remedy aspect of ruling was not actually litigated).

- <u>Critical and Necessary to Rendering Judgment.</u>    Even if the Ninth Circuit's brief ambiguous remarks are *arguendo* construed as implicitly deciding who would adjudicate the validity of particular FRWR claims, such remarks were not a "critical and necessary" step to arriving at the judgment that waters containing FRWRs are public lands on which the Defendants can provide a subsistence preference.  *Clark*, 966 F.2d at 1320; *see Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1115-1116 (9th Cir. 1999); *Commercial Associates v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097-98 (1st Cir. 1993) (critical and necessary issues are more apt to be fully briefed and litigated).  The issue of who adjudicates FRWR claims only became relevant because of that judgment.  *See Katie John I*, 72 F.3d at 700 ("sole issue" for decision was "definition" of public lands); March 31, 1994 Order (certification of issues for interlocutory appeal) (Ex. 19 to this Reply).

- <u>Ripeness.</u>    As discussed above, only when the Federal Defendants finally identified in the 1999 rulemaking the particular FRWRs they believe exist did an actual controversy arise over whether the Federal Defendants were entitled to adjudicate or just assert those

---

[15]    The Federal Defendants' brief refers to subsistence jurisdiction on navigable waters pursuant to ANILCA Section 804 (which sets the subsistence preference) (16 U.S.C. § 3114) and this Court's determination that there were FRWRs at the intersection of Tanada Creek and the Copper River.  Brief of Federal Appellants in 9th Cir. Case No. 94-35481 at 18, 27 (Sept. 19, 1994) (Ex. 1 to this Reply).  The State sentence objects to using FRWRs to determine public land status and notes that as judges must decide FRWR claims, subsequent litigation would be lengthy.  Brief of Appellee Alaska at 17 (Oct. 17, 1994) (Ex. 2 to this Reply). Thus the State's reference to judicial determination of FRWRs indicates it did not concede to the Federal Defendants authority to establish or adjudicate FRWRs via rulemaking.

9

particular FRWRs.  Discussion or even determination of a non-ripe issue is not preclusive in later litigation when the issue has become justiciable.  *Bean*, 252 F.3d at 118.

### 2.      Exhaustion of Administrative Remedies

The Federal Defendants and Katie John parties also wrongly assert that the State did not raise the issue of who had authority to judge the validity of the FRWR claims during the rulemaking process.  The purpose of the judge-made doctrine of "issue exhaustion" is to avoid premature lawsuits and encourage parties participating in administrative proceedings to bring issues to the attention of the agency before it acts, so that the agency may use any relevant expertise to evaluate the issue before acting.  *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965, 968 (9th Cir. 2006); *see Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 500 (9th Cir. 1980).

### a.      Any Issue Exhaustion Requirement is Satisfied

As a threshold matter, there is conflicting Ninth Circuit authority on whether courts have the discretion under 5 U.S.C. § 704 to impose an issue exhaustion requirement in cases if, as here, no agency-specific statute or rule makes issue exhaustion a condition of judicial review. Following the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S 137-38 (1993), the Ninth Circuit held that Section 704 of the APA limits imposition of judge-made issue exhaustion requirements in such cases.[16]  *Northwest Envt'l Defense Center v. Bonneville Power Admin.*, 117 F.3d 1520, 1534 n.8 (9th Cir. 1997).  In so holding, the Ninth Circuit distinguished a line of cases relied upon by the United States in its brief. *Id.*[17]  In contrast, the Ninth Circuit in another case,

---

[16]    5 U.S.C. § 704 ("Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.")

[17]    *Id.* (Recognizing that the Supreme Court's 1993 *Darby* opinion supersedes *Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir. 1986), which is the sole precedent relied upon in *Red Top Mercury Mines v. United States*, 887 F.2d 198, 206 (9th Cir. 1989), a case cited by the Federal Defendants at page 20 of their opening brief in this matter, Docket 78, filed Oct. 10, 2006).

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

without discussing the APA, held that *Darby* merely prohibits courts from requiring exhaustion of internal agency appeal procedures in the absence of a statute or rule mandating exhaustion of internal appeals. *Universal Health Services, Inc. v. Thompson*, 363 F.3d 1013, 1017 (9th Cir. 2004) (judicial review under 42 U.S.C. § 1395oo(f)). Other Ninth Circuit cases that do not consider *Darby* hold that courts have discretion to apply issue exhaustion rules where no statute or rule requires such exhaustion. *E.g.*, *Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir. 1985).

If the Court chooses to require issue exhaustion, that requirement is satisfied. As shown below, the comments of the State of Alaska, the Alaska Legislature, and other parties on the proposed rule reinforced what the Federal Defendants already knew from their Subsistence Manager's September, 1995 internal observations and recommendations – that the Federal Defendants needed to consider whether they should attempt to adjudicate their FRWR claims in the course of the rulemaking proceeding.

Despite the Subsistence Manager's plea for clarity regarding whether the regulations would "adjudicat[] water rights claims," A.R. Tab 410 at p. 9954, the Federal Defendants published an Advance Notice of Proposed Rulemaking in 1996 and a Proposed Rule in 1997 which obscured the issue. While the Proposed Rule does state that the Federal Defendants are deciding where FRWRs exist, the Proposed Rule never explicitly says if this is for the purpose of claiming FRWRs or adjudicating the validity of those FRWRs. *See* 62 Fed. Reg. 66216 (Dec. 17, 1997)**.**

The State of Alaska filed comments on both the Advance Notice and the Proposed Rule. The State explained that it thought the Federal Defendants were only <u>claiming</u> FRWRs:

> "While the state recognizes that the federal agencies are required to extend ANILCA title VIII jurisdiction to navigable waterways in which the United States <u>claims</u> a reserved water right, the proposed rulemaking provides no basis for the extensive water rights it <u>claims</u>." A.R. Tab 352 at p. 8424 (emphasis added).

11

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

State comments under the sub-heading "Authority to identify other 'Public Lands'" are also directly on point. There the State unequivocally asserted that "[i]n ANILCA, Congress did not authorize the Secretaries to designate new areas to which the Act may apply." A.R. Tab 352 at p. 8454 (emphasis added). This would include waters not previously recognized as having FRWRs. *Id.* Alaska's timely contention that the Secretaries (and the Federal Subsistence Board) lacked authority to designate as public lands areas not already so designated reaches the key authority issue. The contention is stated separately from and, therefore, could not be confused with the point that the Secretaries and the Subsistence Board lacked authority to assert emergency "extraterritorial" subsistence jurisdiction on non-public lands. *See* A.R. Tab 352 at p. 8454 (separating "exterritorial jurisdiction" argument from "identifying additional 'public lands'" argument).

Similarly, the Alaska Legislature filed separate comments that specifically challenged the Federal Defendants authority to establish FRWRs, at least outside Conservation System Unit ("CSU")[18] boundaries: "We could not find a thread of evidence on what authority the agencies are using to preempt state management on state lands and waters and that would delegate that authority to the Federal Subsistence Board." A.R. Tab 180 at p. 3932. "It is inconceivable that Congress intended this type of encroachment into state sovereignty when it passed ANILCA in 1980." *Id.* at p. 3933. The International Association of Fish and Wildlife Agencies, a cooperative association of state and international wildlife regulators, also filed pointed comments challenging the Federal Defendants authority to act. A.R. Tab 225 at p. 5528-29. Another commenting party noted that the proposed rule failed to properly provide for the filing of applications asserting FRWRs with the State Department of Natural Resources. *Id.* at 5505.

---

[18] "Conservation system units" or "CSUs" are defined in ANILCA as park units, monuments, wildlife refuges, trails, wild and scenic rivers, and wilderness areas. § 102(4); 16 U.S.C. § 3102(4).

Finally, the State reminded the Federal Defendants that the whole proceeding to identify FRWRs was subject to the outcome of the still-pending litigation on remand from *Katie John I*. Because that decision was on an interlocutory appeal and there was the possibility of Supreme Court review of a final judgment, the State explained that "[t]he federal court decision in [*Katie John I*] is not final, and the state does not concede that the court of appeals correctly analyzed the issues in that case. Nothing in these comments should be read as compromising this position or as conceding the existence of any particular federal reserved water rights." A.R. Tab 352 at p. 8452.

In short, the issue of authority to determine the validity of FRWR claims was before the Federal Defendants when they issued the Final 1999 Rule. This was more than sufficient to satisfy any exhaustion requirement. No particular format or precision is required to preserve an issue for judicial review. *See Great Basin Mine Watch*, 456 F.3d at 965, 967, 968, 971 (parties to agency proceeding may preserve issues by "fram[ing] their claims in non-legal terms rather than precise legal formulations," and may seek judicial review on issues that came to the agency's attention from any source) (internal quotations omitted).

### b.  The Agencies Cannot Avoid Judicial Review of Their Authority to Act

Moreover, even if *arguendo* the authority issue has not been sufficiently raised during the course of the rulemaking, that would not entitle the Federal Defendants to avoid judicial review of their authority to act. In the absence of an agency statute or rule mandating issue exhaustion, the issue exhaustion doctrine is discretionary and is not applied where the policy purposes underlying it are not implicated. *Reid*, 765 F.2d at 1462; *Johnson v. Director, Office of Workers' Comp. Programs*, 183 F.3d 1169, 1171 (9th Cir. 1999); *Aleknagik Natives Ltd.,* 648 F.2d at 500 ("Unless statutorily mandated, application of the doctrine is in the sound discretion of the

13

courts"); *see, Sarie v. Rio Tinto, PLC*, 456 F.3d 1069, 1090 (9th Cir. 2006) ("If a statute does not provide for exhaustion of administrative remedies, a district court may require exhaustion in the exercise of its discretion") (internal quotations omitted).

The authority issue does not implicate the purposes of the issue exhaustion doctrine. The authority issue presents a matter of statutory construction that requires interpreting ANILCA and the Ninth Circuit's decision in litigation in which this Court was the trial judge, and so can be resolved as easily by the Court as by the agency. *See Aleknagik Natives*, 648 F.2d at 501 (**"The** plaintiffs' claim involving the meaning of ANCSA and ANTA are matters of statutory interpretation that are particularly within the judiciary's competence. The fact-finding capacity of the agencies will do little to further this inquiry") (internal citation omitted). Further, although the Federal Defendants were on notice of the authority issue from the beginning of the rulemaking, reacting to that issue sooner would not have allowed them to avoid doing the work of identifying FRWRs. That work had to be done whether the Federal Defendants would identify and adjudicate FRWRs or just identify and assert FRWRs. That work also will not be wasted. As courts routinely do in litigation where an agency first considers issues but does not have authority to finally resolve them, the Court may consider the agency's findings as evidence, without giving any deference to them. *See e.g., Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 114 (1991); *Southern Utah Wilderness Alliance*, 425 F.3d at 757 (although agency cannot make binding determinations on rights-of-way claims its expertise and fact finding on the issue will be of use to the reviewing court).

### 3. <u>The Additional Preclusion Arguments Raised By the Katie John Parties Fail</u>

The Katie John parties raise two more meritless preclusion arguments.

First, they assert *res judicata* (claims preclusion) as distinct from *collateral estoppel* (issue preclusion).  Res judicata may extend to a matter that could have been litigated in the prior lawsuit, provided that such matter was within the scope of the causes of action that were presented in the prior lawsuit.  *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150, 1156-57 (9th Cir. 2001).  By contrast, collateral estoppel is strictly limited to issues that were actually litigated and actually decided in the prior lawsuit.  *Id.*

However, a court deciding the first lawsuit may collapse the distinction between issues that could have been litigated (res judicata) and issues that were litigated and decided (collateral estoppel) by dismissing undecided issues without prejudice. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990) (dismissal without prejudice is not preclusive).  This is what happened here.  As noted previously, in final judgments entered on January 7, 2000 in Case Nos. 90-484 and 92-264 and in an explanatory order dated January 6, 2000, this Court dismissed all undecided claims "without prejudice" and invited the filing of future lawsuits by parties "dissatisfied with the status quo" regarding the exercise of federal subsistence jurisdiction.  A dismissal of undecided issues without prejudice would encompass all undecided issues, both raised and unraised.  Because of the dismissal without prejudice, the res judicata argument fails for the same reasons discussed above that defeat the collateral estoppel argument.[19]

Second, the Katie John parties assert that the State could have raised the issue of authority to decide FRWR claims in the *Katie John II* appeal, in which the State appealed the final judgments dated January 7, 2000 in Case Nos. 90-484 and 92-264.  This is another

---

[19]    Further, as can be seen from reviewing the final amended complaints filed by the Katie John parties and the State in Case No. 90-484 and 92-264, the issue of authority to judge the validity of FRWR claims was not within the scope of the causes of action advanced in those cases. The complaints in those cases addressed (1) whether navigable waters were or were not public lands subject to federal subsistence jurisdiction, and (2) whether the Federal Defendants could provide a subsistence preference on public lands in the absence of state legislation implementing the preference provision in ANILCA.  These complaints are attached as Exs. 17 and 18 to this Reply.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

meritless "could have" argument.  As shown above, neither the final judgments in Case Nos. 90-484 and 92-264 nor *Katie John I* support a finding that the State is precluded by collateral estoppel or res judicata from contesting the authority of the Federal Defendants to judge the validity of their own FRWR claims.  Therefore the State was under no obligation to appeal the authority issue in the *Katie John II* issue to avoid preclusion.  An appeal is a way to get out of what would otherwise be a preclusive judgment by asking the appellate court to reverse it – if there is no preclusive judgment covering an issue, there is no need to appeal that issue.  18A Wright & Miller, Federal Practice & Procedure, § 4433 at 73-74 ("Failure to appeal, on the other hand, does not expand the res judicata effects of the judgment").  Further, even if the authority issue had been raised or could have been raised in Case Nos. 90-484 and 92-264, which it was not, the "without prejudice" dismissal of undecided issues left the State free to file the instant suit, rather than appeal the authority issue.

Moreover, all the parties to the *Katie John II* appeal recognized that issues concerning the implementation of the *Katie John I* ruling would be addressed in a future lawsuit for judicial review of the 1999 rules.  The Federal Defendants went further.  They told the Ninth Circuit that the 1999 rules made the *Katie John* litigation "moot" and that "<u>any</u>" issues concerning federal subsistence jurisdiction "<u>must</u>" be litigated in a suit for review of those rules:

> "As discussed above, a prior panel of this Case heard this case and remanded to the Secretaries the task of identifying the waters in which the subsistence priority is to be provided.  <u>Alaska v. Babbitt</u>, <u>supra</u>, 72 F.3d at 704.  The agencies subsequently withdrew the regulations [the 1992 regulations] challenged in this lawsuit and issued new regulations that apply the Title VIII priority on specified waters. 64 Fed. Reg. 1276 (Jan. 8, 1999). …
>
> As the district court here explained, the parties continue to disagree regarding the implementation of the priority for subsistence uses set out in Title VIII of ANILCA, but their current disagreement is not addressed in any complaint ….

> <u>Any challenge to the federal management of the subsistence priority must be</u>
> <u>addressed to the current regulatory program</u>, which is embodied in regulations
> found at 50 C.F.R. Part 100 and 36 C.F.R. Part 242 [the 1999 rules].   <u>Alaska does</u>
> <u>not challenge the regulations, but rather seeks an advisory opinion regarding the</u>
> <u>theory underlying them, as expressed by the prior panel of this Court</u>. … Because
> the case is now moot, the Court lacks jurisdiction to rehear it."[20]

In its reply brief, the State agreed with the Federal Defendants that it would be improper then to challenge the 1999 regulations, but explained that the original core issue of whether the Federal Defendants had subsistence jurisdiction over navigable waters remained a "live controversy."[21]  The Katie John parties fully participated in the appeal, but also did not attempt then to challenge the conduct or results of the 1999 rulemaking.  In its opinion, the Ninth Circuit evidently agreed that the core issue of whether waters containing FRWRs were public lands remained live, as it reaffirmed the prior panel opinion, but it did not address the 1999 rulemaking in any way.  *Katie John II*, 247 F.3d at 1032.  Judge Rymer of the Ninth Circuit noted without opposition that the issues concerning the 1999 rules were not before that Court and had not been before this Court.  *Id*. at 1051 ("Separate Statement" of Judge Rymer).

In short, the *Katie John II* appeal undermines rather than supports the preclusion arguments.  The briefing submitted by the parties to that appeal shows that all parties, particularly the Federal Defendants, thought that issues arising in implementing *Katie John I* were not yet ripe for litigation but must await a future lawsuit (such as the present lawsuit) seeking judicial review of the 1999 rules.  *See Bean*, 252 F.3d at 118 (there is no collateral estoppel on unripe issues).  Whether the Federal Defendants have authority to judge the validity

---

[20]   En Banc Brief for the Federal Appellees at 41, 44 (Ninth Cir. No. 00-35121, Nov. 1, 2000) (emphasis and bracketed material added).  The Exhibits to this Reply include this and other *Katie John II* briefs.
[21]    En Banc Reply Brief for Appellants State of Alaska and Frank Rue at 38 (Ninth Cir. Case No. 00-35121, Nov. 30, 2000).  A copy is supplied in the Exhibits provided with this Reply.  *See* Ex. 9.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

of FRWR claims, as opposed to identify and assert FRWR claims, is such an implementation issue. The preclusion arguments raised by the Katie John parties must fail.[22]

**B.    The Federal Defendants Misapplied Federal Reserved Water Rights Doctrine**

Relying primarily on cases cited in the State's opening brief, the other parties –

(1)    Fail to demonstrate that the agencies have the authority to dispense with the key adjudicatory element in the ESTABLISHMENT of a claimed or asserted FRWR;

(2)    Selectively represent the holding and dicta in *Katie John I* regarding the purported "mandate" to the agencies to shortcut the established FRWR process;

(3)    Confuse the FRWR doctrine by (a) mistakenly comparing it to public land regulation and (b) mixing up the vesting date for properly validated claims with the separate determination of whether or not an asserted FRWR actually exists; and

(4)    Fail to respond to the State's arguments that section 1319 of ANILCA, in tandem with the Clear Statement rule, requires the agencies to demonstrate unmistakably clear Congressional intent to short circuit normal FRWR procedures or to promulgate regulations that adversely impact and diminish traditional State authority.

**1.    Adjudication of FRWRs**

In arguing that FRWRs may be established or validated by the agencies themselves and that adjudication is not necessary, the other parties show a misunderstanding of the term

---

[22]    The Katie John parties also mention law of the case in a footnote. "Law of the case" extends only to matters decided earlier in the course of the same case in which preclusion is sought. *Delta Savings Bank v. U.S.*, 265 F.3d 1017, 1027 (9th Cir. 2001) (citing *Harbor Ins. Co. v. Essman*, 918 F.2d 734, 738 (8th Cir.1990)). Here, the record shows a concrete and intentional decision supported by the Federal Defendants to put a definite final end to the prior lawsuits through the entry of the January 7, 2000 "Judgment[s] in Civil case[s]." To ensure the prior lawsuits came to an end, the Federal Defendants (who do not raise law of the case) refused a request by the Katie John parties to ask this Court to review and approve the 1999 rules as part of the process for entry of those final judgments. *See* A.R. Tab 444 at p. 10612. This Court then entered final judgments providing for separate litigation of remaining disputes.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

"adjudication." They believe that "adjudication" refers only to the basin wide water rights determinations that are common in the West. (U.S. Brief at 21-25).[23] The State agrees that basin wide exercises are not necessary in this case. However, "adjudicate" or "adjudication" means simply "to judge or decide by law", "to declare or order by law", and "act of adjudicating" or a "judge's decision." Webster's New World Dictionary, Third College Ed. 1988. Under the FRWR Doctrine, the agencies do not get to judge the claims and assertions they make and nothing in ANILCA gives them that authority. That role is played by an appropriate federal court or state forum as demonstrated by the case law.

"Each time this Court has applied the 'implied-reservation-of-water doctrine', it has carefully examined . . . the ASSERTED water right." *New Mexico*, 438 U.S. at 700 (emphasis added). All of the FRWR cases involving non-Indian lands (i.e., National Parks, Wildlife Refuges, National Forests, etc.) cited in the other parties' briefs involved adjudication by a federal or state court of a FRWR identified and asserted or claimed by a federal agency:

(a)    *New Mexico* decided U.S. Forest Service claims presented for adjudication to the New Mexico courts (*id.*);

(b)    In *Cappaert,* the National Park Service joined a State of Nevada proceeding to assert a FRWR and later brought an action in U.S. District Court seeking to establish its identified, claimed water rights. 426 U.S. at 145-46;

(c)    In *Arizona v. California,* 373 U.S. 546, 601 (1963), the Supreme Court affirmed a Master's adjudicatory ruling that validated some, but not all, claimed FRWRs for a National Forest, two Wildlife Refuges, and one National Recreation Area;

(d)    The U.S. filed in State of Colorado proceedings FRWR claims for a series of Forests, Monuments, Parks, and other public lands and these claims were allowed

---

[23]    *See also* Katie John Brief at 20, n.12.

in part and disallowed in others by the adjudicating state court. *United States v. City and County of Denver,* 656 P.2d 1, 11 (Colo. 1983);

(e)     Similarly, the U.S. filed in Idaho proceedings FRWR claims for three Forest Wilderness areas and a National Recreation Area and the claims were allowed in part and disallowed in part by the adjudicating state court; *Potlatch Corporation v. United States,* 12 P.3d 1260, 1270 (Idaho 2000); and

(f)     In *United States v. District Court for Eagle County*, 401 U.S. 520, 523-26 (1971) the U.S. was compelled to participate in State of Colorado proceedings regarding the adjudication of federal agency FRWR claims.

One consistent pattern emerges from these cases (and many others): federal agency FRWR claims are adjudicated in appropriate federal or state fora.[24] These claims are not simply identified and established by the agency via rulemaking or any other unilateral process in which the agency serves as claimant, judge, and jury. The other parties cite no cases in which a FRWR was ESTABLISHED and recognized by unilateral agency action. Indeed, as *New Mexico* indicates, the standard procedure is for the federal agency (or the U.S.) to ASSERT its claim and carry the burden of demonstrating to an appropriate reviewing entity that the asserted claim satisfies the exacting requirements of the FRWR doctrine. 438 U.S. at 700. Only then is a FRWR established.

The Federal Defendants cite *Winters v. United States*, 207 U.S. 564 (1908) and *United States v. Powers*, 305 U.S. 527, 532-33 (1939) for the proposition that water "rights were

---

[24]     In Alaska, the federal agencies (Bureau of Land Management, National Park Service, U.S. Fish and Wildlife Service, U.S. Forest Service) have filed with the Alaska Department of Natural Resources approximately 225 water rights claims to be reviewed, processed, and determined by the State. These filings began in 1980 and the most recent was in August, 2006. The State has acted favorably on 17 claims; another 192 applications for instream flows are pending. Information supplied by the Alaska Department of Natural Resources regarding this process is attached as Ex. 20 to this Reply.

recognized without a formal water adjudication." (U.S. Brief at 25). To the contrary, the FRWRs pertaining to the Fort Belknap and Crow Indian Reservations were only established (i.e., legally recognized) following lengthy litigation in which the Supreme Court ultimately rendered a judgment (i.e., an adjudication) validating the claimed rights.

### 2.    What the *Katie John* Court Actually Authorized

Similar liberties are taken in the other briefs with the holding and dicta of *Katie John I*. As previously noted, the heart of the other parties' case is that the *Katie John* court "required" the agencies to establish FRWRs in Alaska via rulemaking: "the Court of Appeals expected and required that the Secretaries would make the determination of reserved water rights through a rule making procedure." (U.S. Brief at 23). Such divination is a misreading of *Katie John I* and ignores two other critical admonitions offered by that court.

In reality, the court noted that "some" waters in Alaska likely possessed FRWRs and it was up to the agencies to "identify" those waters. *Katie John I*, 72 F.3d at 704. "Identify" is not a synonym for establish, affirm or adjudicate. Administrative Record documents reveal that the Federal Defendants initially believed that the court was asking for simple "identification" of waters with possible FRWRs: "The requested information includes: (1) identification of Federal reservations that MIGHT include Federal reserved water rights." A.R. Tab 80 at p. 1613, Memorandum to Department of the Interior Regional Solicitor from Regional Director, U.S. Fish and Wildlife Service (May 12, 1995) (emphasis added).

Moreover, the 1999 rules indicate "identify" was construed to mean "identify and recommend" rather than "identify and establish." 50 C.F.R. § 100.10(d)(4)(xviii) prescribes that the Federal Subsistence Board may "IDENTIFY, in appropriate circumstances, whether there exists additional . . . Federal Reserved Water rights . . . and make appropriate

21

RECOMMENDATION to the Secretaries . . . for inclusion with the Federal Subsistence Management Program." (Emphasis added.) In this provision, there is text to make it clear that "identify" means only to "recommend." Contrary to the reasonable approach in their own rules, the Federal Defendants now argue that "identify" means "establish" rather than "recommend."

And as previously discussed, the *Katie John I* court also noted "[l]et us HOPE that the federal agencies will determine promptly which navigable waters are public lands." 72 F.3d at 704 (emphasis added). An expression of "hope" cannot be accurately characterized as a "requirement" or mandate to short circuit the established FRWR process nor can such dicta authorize the agencies to not follow that process. Agencies must determine where they believe FRWRs may exist before they claim or assert them.

In addition, the other parties fail to acknowledge two other key references by the court to the burdens created by adherence to the FRWR process. First, the court recognized that "[b]y holding that public lands include SOME specific navigable waters as a result of reserved water rights, we impose an EXTRAORDINARY ADMINISTRATIVE BURDEN on federal agencies." *Id.* (emphasis added). Second, it observed that the decision will create a "HEAVY ADMINISTRATIVE BURDEN" for the federal agencies as well as a "complicated regulatory scheme." *Id.* (emphasis added). In recognizing that following the FRWR doctrine would be a heavy burden on the agencies, the Ninth Circuit did not contemplate, authorize or mandate the shortcuts taken by the agencies: purporting to "establish" multiple FRWRs across the expanse of Alaska without the requisite individual, specific analysis of each claimed right.

Nor did the *Katie John I* court determine that FRWRs exist in Alaska. Its precise words were that FRWRs exist "to the EXTENT NEEDED to accomplish the purposes of the reservations. By virtue of its reserved water rights, the United States has interests in SOME

navigable waters." *Id.* at 703 (emphasis added).[25]   As *New Mexico* makes clear, the federal agencies carry the burden of demonstrating primary reservation purposes to be served by a water right as well as showing specific need for a water right on a unit-by-unit basis.   Until those key steps are performed, no specific FRWR in "some" waters can be established.   The Ninth Circuit language also reveals it recognized the "need" or "necessity" criterion and that this, and other criteria, would be satisfied in only "some" waters but not all.   Again, *Katie John I* gave rise to an agency burden to engage in a process to identify precisely which waters might have FRWRs and then take the requisite steps to claim and establish those rights.

### 3.    The Other Parties Confuse the FRWR Doctrine

Two other key arguments advanced by the other parties demonstrate further confusion and misunderstanding of the FRWR doctrine.   First, the process of identifying, claiming and establishing a federal property interest (i.e., FRWR) is confused with the process of regulating public land uses.   (U.S. Brief at 24).   Second, the vesting date for a validated FRWR is confused with the wholly separate requirements for establishment or validation of a claimed right.

The Federal Defendants mistakenly claim that "the State's theory would mean that any regulation of public land equates to an adjudication of title." *Id.*   The State's position is founded on a basic precept codified in ANILCA:  the federal agencies can only regulate what they own (*see* §§ 102 and 103(c)).   Where what they might "own" arises by implication (i.e., FRWRs), ownership must be established first.   This, of course, is different from regular public lands in which ownership has been established by statute.   The agencies are not directed or authorized to

---

[25]   This Court in its 1994 opinion observed that it thought that FRWRs exist in portions of Tanada Creek and the Copper River to enable federal management of subsistence fishing at Batzulnetas.  Katie John v. United States, Case Nos. A-90-484-CV and A92-0264 CV, 1994 WL 487830 at 33 (Mar. 30, 1994), *rev'd.* 72 F.3d 698 (9th Cir. 1995). The State objected to this determination in its appeal to the Ninth Circuit, Brief of Appellee State of Alaska in Case No. 94-35481 at 19 (Ex. 2 to this Reply), and the issue was never expressly resolved in the Ninth Circuit's *Katie John I* opinion reversing the 1994 opinion.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

merge these two distinct processes in an ordinary rulemaking: (a) establishment of an implied property interest (i.e., a FRWR) and (b) promulgation of rules governing established, recognized public lands. And contrary to the specious U.S. (and Katie John) argument, there is no need to engage in quiet title determinations as a precondition to regulation of clearly recognized or statutorily designated public lands.

The RS 2477 Utah case cited in the federal brief (U.S. Brief at 24) actually supports the State's position. A RS 2477 right-of-way or easement is a claim by a state or local government for the recognition and establishment of a property interest in federal public land. *Southern Utah Wilderness Alliance*, 425 F.3d at 740. The state or local government makes a claim and a federal agency may make an initial determination if the applicable criteria for recognition of the claim have been satisfied. However, only a court – not the federal agency – can make a final determination of the validity of the claim. *Id.* at 757. Furthermore, any agency or "administrative determinations," *id.*, regarding the claim are not "binding" (*id.*) (internal citation omitted). The case, relied on by the U.S., demonstrates the agencies cannot make binding administrative determinations about their FRWR claims.

Similarly the reference to *Block v. North Dakota*, 461 U.S. 273 (1983) in the Katie John brief further supports the State's case. Katie John Brief at 19. Submerged lands underlying navigable waterways are titled in the United States until a state gains entry into the Union. Then, if the waterway is determined to be navigable, per federally established standards, the underlying submerged lands are deemed to pass to the new state with a vesting date set at its entry into the Union. *Block,* 461 U.S. at 277; *Utah v. United States*, 403 U.S. 9 (1971); *State of Alaska v. United States*, 563 F. Supp. 1223 (D. Alaska 1983). U.S. ownership of these submerged lands is

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

the starting point or "default" position and a state must successfully assert a claim to establish its ownership interests.

These situations are fundamentally different from a FRWR where a federal agency is the claimant. The starting or "default" position is no U.S. interest until the impliedly reserved water right is legally recognized. The federal agency (like the state claimants above) must demonstrate to a deciding entity that its FRWR claim satisfies the requirements spelled out by the Supreme Court (e.g., *New Mexico*; *Potlatch Corp.*).

Similar confusion afflicts the argument that the vesting date of a FRWR excuses the need for proper establishment of a FRWR. (U.S. Brief at 25) The vesting or water seniority date for a FRWR relates to when the land in question was specifically reserved. *Cappaert*, 426 U.S. at 138. But the mere reservation of land on a date does not conclusively establish that the FRWR exists.[26] Nor does the reservation obviate the need for a subsequent adjudication to determine if the federal claim satisfies the applicable requirements. As in submerged lands ownership cases, if a state can establish that a waterway meets federal navigability standards, the state takes title to the underlying lands with a vesting date set at its entry into the Union. *Block*, 461 U.S. at 277. If, however, the state claim fails to satisfy the navigability standards, the existence of a vesting date is immaterial and the state claim denied. *See State of Alaska*, 563 F. Supp. at 1223 (Slopbucket Lake case denying State of Alaska's navigability claim). This is precisely how FRWRs work as well with federal agencies as the claimants.

The Supreme Court established sequence for FRWRs is (1) land is reserved and may implicitly create a FRWR (*Cappaert*, 426 U.S. at 138); (2) the U.S. identifies the purported FRWR and asserts it (*New Mexico*, 438 U.S. at 700; *Potlach Corp.*, 12 P.3d at 1270); (3) an

---

[26]    Federal agency/U.S. claims for FRWRs for clearly reserved National Forests, Wildlife Refuges and other reservations have been denied. *New Mexico*, 438 U.S. at 718*; Arizona,* 373 U.S. at 601; *Potlach Corp.,* 12 P.3d at 1270; *City and County of Denver*, 656 P.2d at 11.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

appropriate federal court or state entity scrutinizes the claim and determines (i.e., adjudicates) if the claim satisfies the FRWR doctrine (*see* p. 20, *supra*), and (4) IF it is determined that the FRWR was created, the vesting or seniority date is set at the time of the land withdrawal. The Federal Defendants have no authority to leap frog to the fourth step.

### 4.    Post Hoc Legal Arguments Cannot Cure Agency Failures

As explained in the State's opening brief, the Administrative Record for the 1999 rules is devoid of the required references and findings regarding which specific actions, legislative or executive, purportedly reserved water rights for specific waterways within the myriad conservation system units and other federal land withdrawals in Alaska. Federal Defendants started a process in 1988-1989 to "inventory" Wildlife Refuge units in Alaska that could possess FRWRs. A.R. Tab 80 at p. 1613. However, this inventory "asserts reserved water rights within the refuges but does not specify individual water bodies." *Id.* Other documents similarly note this "identification" process "does not name specific water bodies; that would be a hug[e] task." A.R. Tab 77 at p. 1573. The lack of requisite specificity in the 1999 rules and Administrative Record violates the requirements of the FRWR doctrine (*New Mexico*, 438 U.S. at 700-01; *Cappaert*, 426 U.S. at 141) and means that FRWRs asserted in the 1999 rules are not valid.

In recognition of this failing, the Federal Defendants' brief tries to correct the deficiency with a recitation of statutory provisions impliedly reserving water rights in Alaska units. (U.S. Brief at 36-38). This attempted correction must fail for three reasons. First, it is well established that post hoc rationalizations by counsel cannot make up for agency failures at an earlier stage in the proceedings. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also Altamirano v. Gonzales*, 427 F.3d 586, 595 (9th Cir. 2005). Second, counsel's post hoc recitation continues to lack the required

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

specific references to precisely which water bodies purportedly contain FRWRs. Third, one of the primary citations is to the general purposes provisions of ANILCA (§ 101(b); 16 U.S.C. § 3101(b)) although case law makes it clear that only unit-specific provisions can impliedly reserve FRWRs. *Cappaert*, 426 U.S. at 147 ("we hold . . . that . . . the United States reserved . . . water rights in unappropriated appurtenant water to . . . implement Proclamation No. 2961."); *City and County of Denver*, 656 P.2d at 28 ("The Supreme Court [in *Cappaert*] analyzed the extent of reserved water rights based on the explicit purpose evidenced in the establishing proclamation and not based on the purposes found under the National Park Service Act.") *see also New Mexico*, 438 U.S. at 710-14.

### 5.    Federal Defendants Confuse Water and Water Rights

The Federal Defendants also try to make a distinction between "water" and "water rights" arguing that only "water" needs to be "necessary" to satisfy the FRWR doctrine, rather than "water rights." This very argument was advanced unsuccessfully by the U.S. in the *New Mexico* case. *See* Department of the Interior Solicitor's Opinion Federal Reserved Water rights in Wilderness Areas, 96 Interior Dec. 211, 216 (July 26, 1988) ("Water being necessary, the argument went, it must be deemed to have been reserved by Congress when the National Forest System was established. Brief at 36. However, the Court declined to take such an expansive view of the reserved water rights doctrine.") (Ex. 21 to this Reply). A showing that "water" was necessary was not enough to establish the requisite need for a water right. *Id.* Simply put, *New Mexico* makes it clear that only if a water right is necessary to avoid "entirely defeat[ing]" the purpose of the reservation, only then is a FRWR recognized. *New Mexico*, 438 U.S. at 700.

And a more careful review of *Sierra Club v. Yeutter* demonstrates that the "necessity" of a water right is a precondition for a FRWR. The Sierra Club sought to compel the Forest Service

to seek FRWRs for wilderness units in Colorado. The Sierra Club alleged that, absent such rights, the wilderness values of the units would be harmed. The Tenth Circuit declined and observed that the "necessity" test would not likely be met: "Absent a diversion within or above the wilderness area, it is difficult to see what harm might befall the wilderness water values that a wilderness WATER RIGHT could prevent." *Sierra Club,* 911 F.2d at 1419 (emphasis added).

During promulgation of the 1999 rules, the Department of the Interior also recognized the necessity criterion of the FRWR doctrine and noted it would be difficult to satisfy in Alaska: "This is a component of the reserved water rights doctrine itself and MAY BE DIFFICULT TO ESTABLISH for the federal reservations in WATER PLENTIFUL Alaska." A.R. Tab 100 at p. 2374. Issue Paper and Recommendations of the Alaska Policy Group, U.S. Department of the Interior (June 15, 1995) (emphasis added). In the present case, the federal defendants have made no attempt to demonstrate the necessity for the identified/claimed FRWRs and it is highly probable that the agencies would have difficulty satisfying this standard given the factual circumstances in Alaska – "plentiful" water and no water shortages. In fact, if a FRWR can be established absent a demonstration of need, the doctrine will have been expanded far beyond the strictures laid down by the Supreme Court.

### 6. There Can Be No FRWRs in Marine Waters

Although the federal officials have acknowledged that FRWRs do not exist in marine waters – "The courts have not extended the federal reserved water rights doctrine to marine waters" (A.R. Tab 77 at p. 1571) – the Peratrovich parties continue to advance this completely novel claim. (Peratrovich Brief at 4). However, they present not a single instance of a FRWR being established or recognized in marine waters. Every case they rely upon relates to the establishment of such rights in freshwaters only. *See United States v. Adair*, 723 F.2d 1394 (9th

Cir. 1983); *United States v. Anderson*, 6 I.L.R. F-129 (E.D. Wash. 1979); *Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir. 1981).  As noted in the State's initial brief, the FRWR doctrine arises within the context of the Prior Appropriation Doctrine that relates solely to the allocation of scarce freshwater resources in Western states including Alaska.  State Opening Brief at 22-24.  Marine waters, being linked to the oceans, are always abundant and never scarce.

Peratrovich mixes apples and oranges with its reference to a case involving Indian treaty fishing rights and water quality – not FRWRs.  *United States v. Washington*, 506 F. Supp. 187 (W.D. Wash. 1980).  The other cases they cite deal with FRWRs on Indian reservations (i.e., Klamath Reservation; Spokane Reservation) not marine waters.  (Peratrovich Brief at 4, n.3). The State readily acknowledges that FRWRs can arise from such reservations of land and appurtenant freshwaters as originally determined in *Winters*.

The Peratrovich brief also claims a right to assert FRWRs on behalf of the U.S.  No court has ever recognized such a right and indeed *Yeutter* demonstrates that a third party has to bring action against a federal agency to compel it to act rather than move directly to seek to establish a FRWR.  911 F.2d at 1410.  Any "failure to act" claim against the agencies (for failing to assert and establish non-existent FRWRs in marine waters) would be reviewed per § 706 of the APA (5 U.S.C. § 706) and *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62-63 (2005).

### 7.    Clear Statement Rule

Lastly, the arguments of the other parties are colored by a fundamental issue they failed to address:  the Clear Statement rule.  It provides that Congress must make "unmistakably clear" an intent to alter the usual federal-state balance with respect to a "traditional and essential state function."  *Pennsylvania Dep't of Corr.*, 524 U.S. at 209.  Recently the Court reaffirmed the rule stating that it applies when interpretation of a statute "would also result in a significant

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

impingement of the State's traditional and primary power over land and water use." *Solid Waste Agency*, 531 U.S. at 161; *see also Katie John II* dissent, 247 F.3d at 1045. The present case relates to the State of Alaska's traditional authority over water resources expressly recognized and affirmed in section 1319 of ANILCA.

Section 1319 is the water rights savings provision:

"Nothing in this Act shall be construed as limiting or restricting the power and authority of the United States or –

(1)    as affecting in any way any law governing appropriation or use of, or FEDERAL RIGHT TO, WATER ON LANDS WITHIN THE STATE OF ALASKA;

(2)    as EXPANDING or diminishing FEDERAL or State JURISDICTION, responsibility, INTERESTS OR RIGHTS in water resources development or control;"

16 U.S.C. §§ 3207(1), (2) (emphasis added). Section 1319 has no proviso or exception regarding Title VIII (subsistence) like that found in section 1314(c), 16 U.S.C. § 3202(a).

The expansive interpretation of the FRWR doctrine, as well as the expansive interpretation of ANILCA's rulemaking powers, has the effect of expanding federal authority over fish and wildlife and water in derogation of State authority and sovereignty. Consequently, these actions must be scrutinized through the lens of the Clear Statement rule.

Using this lens reveals major flaws in the Federal Defendants case. They argue that the agencies complied with section 1319 because the 1999 rule "applied established principles of the federal reserved water rights doctrine." (U.S. Brief at 29). The State has demonstrated multiple agency failures to satisfy the substantive and procedural standards of the FRWR doctrine. In

addition, there is no Title VIII exception in section 1319 meaning Title VIII confers no authority – clear or otherwise – on the Secretaries to enlarge or expand their water rights related powers. The agencies purport to rely on the one sentence generalized rulemaking authority in Section 814 to engage in the unprecedented act of conclusively establishing FRWRs through rulemaking. Nothing in this provision provides unmistakably clear direction to take such action, expand federal agency powers over water rights determinations, and diminish State authority.  Simply put, nothing in the *Katie John* decisions or Title VIII trump section 1319, meaning that the 1999 rules were promulgated in violation of this key provision of ANILCA.

### 8.    A Reasonable Approach

A purpose of this case is to ensure that the agencies adhere to FRWR principles and procedures in establishing which waterways may possess these rights.  To that end, the State wants to acknowledge and accept the Federal Defendants representation of the 1999 regulations that resolve some of the State's concerns (U.S. Brief at 44-46).  It also wants to outline to the Court a means of resolving the presence of valid FRWRs in specific waterways.

Federal Defendants maintain that general provisions in 50 C.F.R. § 100.3 of the 1999 rules (describing in general terms that federal jurisdiction applies only to "federal lands" and unspecified waters related to listed CSUs) trump more specific provisions in section 100.27[27] which identify particular waterways and purport to regulate subsistence activities on those waterways (e.g., the lower Goodnews River, 50 C.F.R. § 100.27(i)(4)(vi); Egegik River, 50 C.F.R. § 100.27(i)(5)(iii)).    (U.S. Brief at 41).    The effect of the Federal Defendants' interpretation is to limit federal preemption and not extend it to the many particular waterways or water areas named in specific regulatory provisions. Thus, many of the specifically identified

---

[27] The section currently in effect, 50 C.F.R. § 100.27, was originally published in the Federal Register as § _ _ _.26.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

waterways in section 100.27 (as well as specific waterways identified in the hunting sections of the rules) (and any that are listed in the section entitled "Subsistence Taking of fish, wildlife, and shellfish; general regulations," 50 C.F.R. § 100.27 (2002)), are not, in fact, subject to federal jurisdiction.  This limiting interpretation redresses many but not all of the State's concerns.  The Federal Defendants also properly concede that FRWRs claimed by them "exclude waterways that are not within or adjacent to federal reservations" (U.S. Brief at 44), most notably waters upstream and downstream from a reservation (*id.* at n.28), further redressing State concerns.

Issues still remain regarding how the agencies ought to identify, assert and establish valid FRWRs.  The State suggests that the agencies can build on their 1988-1989 Federal Reserved Water Rights Inventory Report (*see* A.R. Tab 77 at p. 1571) and add to it the requisite references to specific land reservations and specific navigable waterways in which the U.S. claims rights.[28] A waterway-by-waterway necessity determination could then be prepared for each affected navigable waterway along with appropriate identification of needed water quantity.  As these are completed, the agencies could file each with the Alaska Department of Natural Resources (as they have already done in 225 other instances; *see* p. 20, n.26, *supra*) seeking a determination that a FRWR exists.  In the alternative, the agencies could file for declaratory judgments from an appropriate U.S. District Court or State court for a comparable determination that the FRWR doctrine requirements have been properly asserted and the FRWR is established.  *See Adair*, 723 F.2d at 1400-02; 28 U.S.C. § 1345.

This kind of process, followed routinely by the agencies in the Rocky Mountain States[29] and in Alaska, is neither onerous nor unduly burdensome.  It is more complicated and burdensome, compared to rulemaking, but the *Katie John I* court acknowledged that fact when it

---

[28]  The State recognizes that many non-navigable waterways within CSUs are "public lands."
[29]  *See Cappaert,* 426 U.S. at 145-46*; Potlatch Corp,* 12 P.3d at 1270*; City and County of Denver,* 656 P.2d at 9-11.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

noted the FRWR doctrine would create "extraordinary" and "heavy" burdens on the agencies. 72 F.3d at 704.

The Katie John parties also grossly exaggerate the alleged effects if the State's view of FRWRs requirements prevails.  (Katie John Brief at 20).  Indeed, they cannot know or predict with any accuracy the level of disputes until the federal agencies enumerate their specific FRWR claims.  It is probable that the State will not contest many claims (especially those relating to non-navigable streams within federal CSUs) and that the focus of disagreements will be a relative handful of navigable waterways that flow through or adjacent to CSUs.  Such circumstances would create a readily manageable set of claims and related determinations.

In contrast, extremely expansive claims for FRWRs in waters outside of CSUs and in marine waters, advanced by the Katie John and Peratrovich parties respectively, will likely cause more complex, burdensome litigation than what the State seeks.  If possible "complexity" is the basis for rejecting the State's assertions, the same standard must cause the Court to reject the expansive, complex, and controversial Katie John and Peratrovich claims.

## C.     Headland-To-Headland Seaward Boundaries in 1999 Rule Violate ANILCA

Congress has expressly prescribed that federal CSU boundaries "shall, in coastal areas, not extend seaward beyond the mean high tide line."   ANILCA § 103(a); 16 U.S.C. § 3103(a). In violation of this clear directive, the headland-to-headland river mouth boundary lines extend seaward to encompass tidally influenced waters below the mean high tide line so that these State waters and underlying State-owned submerged lands are treated as "public lands" and subject to federal preemptive authority.  50 C.F.R. § 100.4; 64 Fed. Reg. 1276, 1287 (Jan. 8, 1999).  There is not only no "unmistakably clear" provision allowing the agencies to adopt the headland-to-

headland rule there is clear language barring such seaward boundaries. *Pennsylvania Dep't of Corr.* 524 U.S. at 209*; Solid Waste Agency,* 531 U.S. at 172*.*

The Federal Defendants argue that they needed some way to describe the boundaries of river mouths and that the headland-to-headland rule, arising from United Nations ("UN") conventions, was a reasonable way to proceed (U.S. Brief at 43). However, there is no authority in ANILCA or elsewhere authorizing the agencies to "import" a UN boundary convention that contradicts a specific provision in the 1980 Act – § 103(a). An approach compliant with ANILCA would be to simply delineate a point on each river where it goes from non-tidal to tidal. This would be consistent with section 103(a) and set the boundary lines on the mean high tide line. Tidal/non-tidal delineation is a common practice conducted by governments, federal and State, for nearly 200 years.[30] These delineations continue today especially in those states that have separate fishing licenses and regulations for tidal/non-tidal fisheries.[31]

Finally, the Federal Defendants (like Peratrovich) try to keep alive the fiction that FRWRs can be established within tidally influenced waters: "[a]lthough submerged lands under portions of rivers which are tidally influenced may be owned by the State or other entity, those stretches are still a part of the river and remain subject to potential Federal reservation of water rights" (U.S. Brief at 42, n.25). Indeed, this statement contradicts prior agency conclusions and this issue was addressed at p. 30, *supra*.

As a matter of fact, tidally influenced stretches of rivers may be "part" of the river. But these stretches, as a matter of law, cannot be "public lands" as defined by ANILCA as the waters

---

[30] "At common law, the test for navigability extended only to those waters subject to the ebb and flow of the tide. *See The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563 (1870); *see also The Steam-Boat Thomas Jefferson*, 23 U.S. (10 Wheat.) 428, 429 (1825); *State of Alaska v. United States*, 563 F. Supp. 1223 (D. Alaska 1983); *see also United States v. State of Washington*, 294 F.2d 830, 834 (9th Cir. 1961).

[31] Many states, including Maryland and New Jersey, for example, expressly delineate tidal/non-tidal boundaries in their fishing regulations, *see* Exs. 22 and 23 to this Reply.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

are tidally influenced marine waters (a) seaward of the ANILCA prescribed mean high tide line
and (b) not subject to FRWRs.

**D.**     **Validly Selected Statehood Act Lands Are Not and Cannot Be Treated as Public Lands**

ANILCA prescribes that lands "validly selected under the Alaska Statehood Act" by the
State are not "public lands;" the only Titles of ANILCA to which this express limitation does not
apply are Titles IX and XIV.  § 102(3)(A); 16 U.S.C. § 3102 (3)(A).  A similar limitation applies
to Native corporation land selections under the Alaska Native Claims Settlement Act (ANCSA).
§§ 102(3)(B), (C); 16 U.S.C. §§ 3102(3)(B), (C).  Furthermore, the 1980 Act specifies that "only
those lands within the boundaries of any conservation system unit which are public lands (as
such term is defined in this Act) [Title I] shall be deemed to be included as a portion of such
unit."  § 103(c); 16 U.S.C. § 3103(c).  Contrary to these express provisions, the 1999 regulations
treat validly selected State lands and Native Corporation within CSUs as "public lands" for
purposes of preemptive Title VIII jurisdiction.  50 C.F.R. § 100.4(2).  This rule also constitutes a
reversal of the previous federal position outlined in its 1992 subsistence management
regulations.  57 Fed. Reg. 22,940, 22,942 (May 29, 1992).  Reversal means that the 1999 rule is
"accorded less deference than is normally extended to agency determinations."  *Seldovia Native
Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1345 (9th Cir. 1990); *INS v. Cardoza-Fonseca*, 480 U.S. 421,
446, n.30 (1987); *Watt v. Alaska*, 451 U.S. 259, 273 (1981).

The U.S. brief seeks to justify the unauthorized regulatory action by arguing four points:

(1)     this is a "which lands" issue and shouldn't be considered at this stage of the case
(U.S. Brief at 46-47);

(2)     "waters on ALL LANDS within federal reservations [CSUs] are deemed to be
public lands for purposes of Title VIII" (emphasis added) (*id.* at 47);

35

(3)    there is a difference between validly selected State lands being "public lands" and "treated as public lands" (*id.* at 48); and

(4)    language in Title IX (§ 906(o)) is controlling rather than Title I (*id.* at 48-49).

These contentions are simply wrong. First, this is a "what process" or "what legal rules apply" issue:  what provisions in ANILCA control the status of validly selected Statehood Act lands for Title VIII purposes?  The State contends that the provisions in Title I set the legal rules and proscribe the regulation; the U.S. argues § 906(o)(2) authorizes its regulation.  Resolution of this legal issue is appropriate at this stage of the case.

Second, the U.S. now advances a startling new argument that "waters on all lands" within CSUs are public lands. (U.S. Brief at 47).  As previously discussed at length, waters within CSUs that run through or overlay State lands may not be subject to FRWRs as these waters may not be appurtenant to a federal reservation.  *Cappaert*, 426 U.S. at 138.  Moreover, § 103(c) of ANILCA makes it clear that non-federal inholdings in CSUs (e.g., State lands) are not part of the CSU and not to be subject to federal authority and control.  Consequently, the agencies have no authority under ANILCA or the FRWR doctrine to simply declare and assert that "waters on all lands" within CSUs are public lands.  The existence of FRWRs, if any, in waters on State inholdings must be determined on a case-by-case basis.

Third, validly selected Statehood Act lands and ANCSA lands are not public lands and the agencies lack authority to treat them as public lands for Title VIII purposes.  That is made expressly clear in §§ 102 and 103 which govern the definition of "public lands" for Title VIII purposes:  excluding "validly selected" Statehood Act (and ANCSA) lands from status as "public lands" and further limiting the scope of federal authority over such lands that are within CSU boundaries.

36

Fourth, the structure and history of Title IX of ANILCA, explained at length in the State's initial brief (and the response to the Motion to Dismiss), demonstrate that provisions within it – including § 906(o)(2) – are not applicable to Title VIII. The overarching ANILCA definition provision (§ 102) plainly states that Title IX is separate and distinct and governed by different definitions. Accordingly, the agencies have no reasonable basis to turn this language on its head and use § 906 to extend preemptive Title VIII authority over validly selected Statehood Act lands in contravention of Title I.

Lastly, agency statutory interpretation and action on this issue must also be scrutinized in accord with the Clear Statement rule. *Pennsylvania Dep't of Corr.; Solid Waste Agency; see* p. 29, *supra*. Since the agencies' interpretation expands federal preemptive authority and diminishes and impinges on State authority, the agencies must be able to point to an "unmistakably clear" Congressional directive to take this action and they cannot.

### III.    <u>CONCLUSION</u>

This phase of the case presents three issues for resolution:

(1)    Do the FRWR doctrine, section 1319, and section 814 of ANILCA, read together, clearly and unmistakably allow the Federal Defendants to be claimant, judge and jury of their own FRWR claims, and thereby diminish State authority over its waters and lands?

(2)    Are the agencies authorized to contravene ANILCA section 103(a), which prescribes boundaries at the mean high tide line, by using United Nations boundary conventions to set headland-to-headland river mouth boundaries below the tide line and subject State waters and State-owned submerged lands to federal preemption?

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

(3)     Do the definitions in ANILCA Title I which plainly specify that validly selected Statehood Act lands are not "public lands" allow the federal defendants to promulgate contrary regulations that treat such lands as "public lands"?

The State submits that "no" is the correct answer for each question.

Agency authority regarding FRWRs is first circumscribed by the FRWR doctrine which the agencies have failed to satisfy.  Nothing in that doctrine, as articulated by the Supreme Court, gives the agencies authority to adjudicate their own water claims.  Every case cited is an example of federal agency claimants taking identified and asserted FRWR claims to an appropriate state or federal court for validation.  The same requirement governs the agencies in Alaska.

Section 1319, a savings provision protecting State authority over water in Alaska, which does not include any kind of Title VIII exception, further circumscribes federal authority.  The FRWR doctrine was articulated between 1908 (*Winters*) and 1978 (*New Mexico*).  ANILCA was enacted in December 1980, so section 1319 codifies Congressional recognition of the doctrine in Alaska.  Similarly, section 1314 limits expansion of federal authority over fish and wildlife. Contrary to these clear Congressional directives, the agencies now seek to expand their power over water and engage in unprecedented action: adjudication of their own FRWR claims.

The *Katie John* decisions are also circumscribed by ANILCA and the Supreme Court's FRWR Doctrine.   The Ninth Circuit was without authority to "order" or "require" the unprecedented and unauthorized – conclusive establishment of FRWRs via an administrative proceeding – and did not do so.  Indeed, the Ninth Circuit mandated no such action providing only that the agencies were to "identify" "some" waters in Alaska that might have FRWRs and expressing "hope" that the whole determination process would be prompt.  However, it expressly recognized that adherence to the FRWR doctrine would impose "extraordinary" and "heavy"

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

burdens on the agencies and result in a "complicated" regulatory scheme.  The Federal Defendants (and other parties) read far more into the *Katie John I* decision than what it actually says.

Regarding boundaries, the agencies are without authority to use UN boundary conventions that conflict directly with plain statutory language.  Congress meant what it said: "boundaries . . . shall in coastal areas not extend seaward beyond the mean high tide line to include lands owned by the State of Alaska unless the State shall have concurred ...." § 103(a). A headland-to-headland river mouth boundary, although it might be convenient, is simply proscribed.  This is especially true when the fixing of river boundaries on tidal lines has been well established for nearly two centuries.

Finally, the regulations contravene another plain provision of ANILCA:  "the term 'public lands' [does not include] . . . (A) land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act . . . ."  § 102(3)(A).  The agencies attempt to impose their authority on these State lands relies on provisions within Title IX which is wholly unrelated to Title VIII and other titles of ANILCA.  Moreover, they rely on Title IX despite an express admonition that Title I definitions do not apply to Title IX.  Title I trumps Title IX on this issue.

The agencies do properly concede that where there is a conflict between the specific references in 50 C.F.R. § 100.27[32] to particular waters subject to federal subsistence jurisdiction and the general list at 50 C.F.R. § 100.3 of CSUs containing FRWRs, the general list is controlling so waterways outside and not adjacent to CSUs are not subject to federal subsistence jurisdiction.  (U.S. Brief at 44-46).  Even though this significant concession narrows the case, the

---

[32]    The section currently in effect, 50 C.F.R. § 100.27, was originally published in the Federal Register as § _ _ _.26.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

Federal Defendants overreach by claiming FRWRs and federal subsistence jurisdiction in waters adjacent to but outside CSUs or flowing through private or state-held inholdings within CSUs.

Recognition by this Court of these applicable legal ground rules will ensure that only appropriate lands and waters in Alaska are defined as or treated as "public lands" and that State authority is not unduly diminished.

Respectfully submitted,

/s/ William P. Horn
William P. Horn (D.C. Bar No.: 375666)
James H. Lister (D.C. Bar No.: 447878)
Birch, Horton, Bittner & Cherot, P.C.
1155 Connecticut Avenue, NW, Suite 1200
Washington, D.C. 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
Email: whorn@dc.bhb.com
Email: jlister@dc.bhb.com

Attorneys for Plaintiff State of Alaska

Dated:  November 6, 2006

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Reply Brief of the State of Alaska and

Notebook of Exhibits was served electronically, this 6th day of November, 2006 to the following:


Robert T. Anderson
Randolph H. Barnhouse
Carol H. Daniel
Steven A. Daugherty
Dean K. Dunsmore
Gregory L. Fisher
Phillip E. Katzen
Heather R. Kendall-Miller
William F. Sherman




/s/ William P. Horn
William P. Horn


G:\101445\1\JAP2535.DOC

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)

## **EXHIBITS**

Due to their length, exhibits are being concurrently filed as a separate ECF document.

REPLY BRIEF OF THE STATE OF ALASKA
CASE NO. A05-0006-CV (HRH)