# EXHIBIT A-1

Westlaw.

1994 WL 16058810 (C.A.9)                                                Page 1
(Cite as: 1994 WL 16058810)

For Opinion See 72 F.3d 698Briefs and Other Related Documents
United States Court of Appeals,
Ninth Circuit.
Katie JOHN, et al., Plaintiffs-Appellees,
v.
UNITED STATES OF AMERICA, et al., Defendants-Appellants.
No. 94-35481.
September 19, 1994.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

Brief for the Federal Appellants

Of Counsel: Sandra Ashton, David Gayer, Office of the Solicitor, U.S. Dept. of the Interior, Washington, D.C., Robert Maynard, Assistant Regional Counsel, U.S. Department of Agriculture, Juneau, Alaska 99802Lois J. Schiffer, Acting Assistant Attorney General, Dean K. Dunsmore, J. Carol Williams, Elizabeth Ann Peterson, Attorneys, Department of Justice, Env't and Natural Res. Division, Washington, D.C. 20530, (202) 514-3888

*i INDEX

Opinion Below ... 1

Jurisdiction ... 1

  A. District Court Jurisdiction ... 1

  B. Court of Appeals Jurisdiction ... 1

Issues Presented ... 2

Introduction ... 2

Statement ... 5

  A. The regulatory scheme ... 5

   1. The subsistence preference ... 6

   2. Federal regulation of subsistence hunting and fishing on public lands ... 9

  B. The history of this case ... 9

  C. The district court's order ... 13

   1. Whether a federal program is authorized ... 13

   2. The geographic scope of federal regulatory authority ... 14

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
C:\Documents and Settings\jap\Local Settings\Temporary Internet Files\OLK72\72 F3d 698 Brief for the Federal Appellants 9-19-94 (590142).DOC

   a. The reserved water rights doctrine ... 14

   b. The navigational servitude ... 15

Argument ... 16

   I. Introduction ... 16

   A. The navigational servitude is not a property interest and cannot, therefore, provide the basis for determining that waters subject to it fall within ANILCA's definition of "public lands" ... 18

   B. The United States owns interests in water through the reserved water rights doctrine and therefore is authorized under ANILCA to implement the preference for subsistence fishing in some, but not all, navigable waters in Alaska ... 21

      1. Federal reserved water rights are property interests ... 22

      2. Waters of the Copper River, Tanada Creek and other navigable waterways appurtenant to the Wrangell-St. Elias National Park and Preserve are public lands ... 25

Conclusion ... 29

Statement of Related Cases ... 31

Certificate of Service ... 32

*ii CITATIONS

Cases:

Alaska v. Ahtna, 891 F.2d 1401 ... 28

State of Alaska v. Babbitt, No. A92-264 Civil ... 10

Amoco Production v. Gambell, 480 U.S. 531 ... Passim

Arizona v. California, 373 U.S. 546 ... 24

Bobby v. State of Alaska, 718 F. Supp. 764 ... 8

Boone v. United States, 944 F.2d 1489 ... 18, 19

Cappaert v. United States, 426 U.S. 128 ... 22, 23, 26

City of Angoon v. Hodel, 803 F.2d 1016, cert. denied, 484 U.S. 870 ... 20

Colville Confederated Tribes v. Walton, 647 F.2d 42 ... 22, 24

Dugan v. Rank, 372 U.S. 607 ... 23

F.P.C. v. Niagara Mohawk Power Corp., 347 U.S. 239 ... 22, 24

Kenaitze Indian Tribe v. State of Alaska, 860 F.2d 312, cert. denied, 591 U.S. 905 ... 7, 8

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Madison v. Alaska Department of fish and Game*, 696 P.2d 168 (Ak. 1985) ... 8

*McDowell v. State of Alaska*, 785 P.2d 1 (Ak. 1989) ... 8

*Sporhase v. Nebraska*, 458 U.S. 941 ... 22

*United States v. Adair*, 723 F.2d 1394, cert. denied, 467 U.S. 1252 ... 25, 27

*United States v. California*, 436 U.S. 32 ... 21

*United States v. Certain Parcels of Land, Etc.*, 666 F.2d 1236 ... 19

*United States v. Gerlach Livestock*, 339 U.S. 725 ... 22

*United States v. New Mexico*, 438 U.S. 696 ... 25

*United States v. Twin City Power Co.*, 350 U.S. 222 ... 19

*Winters v. United States*, 207 U.S. 564 ... 23

Statutes, Rules and Regulations:

Alaska National Interest Lands Conservation

  Act ("ANILCA), 16 U.S.C. 3101 et seq. ... 2

  Section 102, 16 U.S.C. 3102 ... Passim

  Section 102(3), 16 U.S.C. 3102(3) ... 11, 16

  Section 201(9), 16 U.S.C. 410hh(9) ... 26

  Section 203, 16 U.S.C. 410hh-2) ... 26

  Section 802, 16 U.S.C, 3112 ... 21

  Section 803, 16 U.S.C. 3113 ... 6

  Section 804, 16 U.S.C. 3114 ... 6, 13

  Section 805(d), 16 U.S.C. 3115(d) ... 7

  Title VIII, 16 U.S.C. 3111-3126 ... Passim

*iii 28 U.S.C. 1292(b) ... 1

28 U.S.C. 1331 ... 1

42 U.S.C. 1602(3) ... 16

Submerged Lands Act, 43 U.S.C. 1201 et seq. ... 20

  Section 3(a), 43 U.S.C. 1311(a) ... 20

  Section 5(a), 43 U.S.C. 1313(a) ... 20, 21

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 6(a), 43 U.S.C. 1314(a) ... 21

Alaska Statehood Act: Section 6(m), Pub. L. No. 85-508, 72 Stat. 343 ... 20

Outer Continental Shelf Lands Act ("OCSLA"): Section 3, 43 U.S.C. 1332 ... 20

Fed. R. App. P. 5(b) ... 1

50 C.F.R. 100.3(b) ... 9

Miscellaneous:

U.S. Constitution, Article VI, Section 3, Clause 2 ... 28

55 Fed. Reg. 27, 114 (June 29, 1990) ... 9

55 Fed. Reg. 27, 115 (June 29, 1990) ... 9

57 Fed. Reg. 22, 940 (May 29, 1992) ... 9

57 Fed. Reg. 22, 942 (May 29, 1992) ... 9

*1 OPINION BELOW

The unpublished decision of the district court (Honorable H. Russel Holland) appears at entry number 184 of the Clerk's Record (C.R. 184) and at p. 53 of the Excerpts of Record (ER 53).

JURISDICTION

A. District Court Jurisdiction. - The district court had jurisdiction pursuant to 28 U.S.C. 1331.

B. Court of Appeals Jurisdiction. - This court granted the United States' petition for permission to appeal from an interlocutory ruling of the district court, pursuant to Fed. R. App. P. 5(b), by order dated May 17, 1994. This Court has jurisdiction pursuant to 28 U.S.C. 1292(b).

*2 ISSUES PRESENTED

1. Whether the definition of "public lands" in section 102of ANILCA (16 U.S.C. 3102), which encompasses "lands, waters and interests therein * * * title to which is in the United States," includes all waters of Alaska that are subject to the United States' navigational servitude.

2. Whether the United States' reserved rights in navigable waters appurtenant to lands reserved by the federal government for purposes that encompass subsistence fishing constitute "interests" in waters "title to which is in the United States" and are therefore "public lands" for purposes of ANILCA Title VIII.

INTRODUCTION

The district court in this case has ruled that "public lands," as defined by the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. 3101 et seq., includes all navigable waters in Alaska. Subsistence hunting and fishing on "public lands" are accorded a priority over other uses of fish and wildlife on such lands. This case presents a challenge to the definition of the term "public lands" set out

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in federal regulations, on grounds that, by excluding virtually all navigable waters, it unreasonably restricts the geographic scope of the federal program for implementing the priority provided by the statute. The plaintiffs sought to redefine "public lands" to include all navigable waters, vastly broadening its scope.

*3 While the case was pending in district court, the Secretaries of the Interior and Agriculture were evaluating a petition for rulemaking filed by the Native American Rights Fund, on behalf of the plaintiffs in this litigation as well as other Alaska Natives. The petition sought rulemaking to reinterpret the definition of "public lands" in ANILCA section 102. It proposed that the definition of "public lands" in the regulations "be revised to include all navigable waters and all federally reserved waters in Alaska." Before the Secretaries had reached a decision on how to proceed regarding the petition, however, the district court issued a "proposed order" in this litigation (C.R. 175), concluding that, while the reserved water rights doctrine might provide an appropriate basis for determining the geographic scope of public lands, complications inherent in implementing the program on such waters would make this basis for defining "public lands" unworkable. It therefore proposed instead to define "public lands" to include all waters in Alaska that are subject to the navigational servitude.

The district court scheduled oral argument directed at this "proposed order." At that hearing (C.R. 183, 190), the United States argued that "public lands" includes navigable waters in which the United States holds appropriate reserved water rights, a position departing from the terms of the existing regulation (ER 101). The government suggested that the district court order the agencies to pursue rulemaking to redefine "public lands" to include those navigable waters in which the United *4 States holds an appropriate interest, either through ownership of the bed of the waters or pursuant to the federal reserved water rights doctrine.

The interlocutory ruling of the district court, however, made no mention of the United States' abandonment of the interpretation reflected in the regulations and determined that the United States is authorized by ANILCA to manage a program that would regulate the taking of fish and wildlife on all waters of Alaska that are subject to the navigational servitude (ER 94).

The district court's order implicates the vast expansion of a federal regulatory program. In addition, as we discuss below, the district court's order is based on an erroneous understanding of the law. Its implementation would require a substantial commitment of public resources. Committing resources to implementing the order prior to this Court's review would be inappropriate, and the district court accordingly has stayed the effectiveness of its decision pending determination of this appeal (C.R. 185, ER 119; Order, July 12, 1994, ER 128).

The district court considered the intermediate course the agencies have proposed to take - defining "public lands" to include only those navigable waters in which the United States has reserved appropriate interests - to be less "compatible with the findings and policies of Title VIII of ANILCA" (slip op. at 33; ER 85). In effect, therefore, the district court, although it has not rejected this approach, has preempted the agency's consideration of this alternative interpretation. With regard to *5 rulemaking to implement its own change in position, the United States accordingly has deferred action pending judicial resolution of the extent to which navigable waters are public lands. Consequently, the regulations remain unchanged, pending this Court's review of the question of the geographic scope of the United States' authority to regulate, although both the United States and the district court have concluded that they reflect an interpretation of the term "public lands" that is at odds with the language and intent of ANILCA Title VIII.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

STATEMENT

A. The regulatory scheme. - Title VIII of ANILCA, 16 U.S.C. 3111-3126, provides that the taking by of fish and wildlife by rural Alaska residents on "public lands" in Alaska for nonwasteful subsistence uses shall be accorded a priority over the taking of fish and wildlife on such lands for other purposes. In order to determine where this priority is to be applied, the federal agencies responsible for implementing ANILCA Title VIII issued regulations interpreting the term "public lands" as defined in the statute. This case, and the other cases pending in the district court under the district court's joint management order, challenged the regulations interpreting the term. This case also presents claims brought by the State of Alaska challenging the United States' authority to manage a program for regulation of hunting and fishing in Alaska. The district court has held that ANILCA authorizes the United States to establish a program for regulation of subsistence hunting and *6 fishing in Alaska, but that the federal regulators' interpretation of "public lands" unreasonably restricted the scope of the federal program. The following is a brief history of the challenged regulatory program.

1. The subsistence preference. ANILCA section 804, 16 U.S.C. 3114, accords the taking of fish and wildlife by rural residents on "public lands" for nonwasteful subsistence uses a priority over the taking of fish and wildlife for other purposes. Section 803, 16 U.S.C. 3113, defines the term "subsistence uses" as:
[T]he customary and traditional uses by rural Alaska residents of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools or transportation; for the making and selling of handicraft articles out of nonedible byproducts of fish and wildlife resources taken for personal consumption; for barter, or sharing for personal or family consumption; and for customary trade.

Section 102 of the statute, 16 U.S.C. 3102, defines "public lands" as follows:
(1) The term "land" means lands, waters, and interests therein.
(2) The term "Federal land" means lands the title to which is in the United States after December 2, 1981.
(3) The term "public lands" means land situated in Alaska which, after December 2, 1980, are Federal lands, except -
(A) land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act and lands which have been confirmed to, validly selected by or granted to *7 the territory of Alaska or the State under any other provision of Federal law;
(B) land selections of a Native Corporation made under the Alaska Native Claims Settlement Act which have not been conveyed to a Native Corporation, unless any such selection is determined to be invalid or is relinquished; and
(C) lands referred to in section 19(b) of the Alaska Native Claims Settlement Act.

When ANILCA was enacted, Congress contemplated that virtually all regulation of subsistence use of fish and wildlife resources in Alaska, including regulation on state and federal lands, would be managed by the State of Alaska, pursuant to a program approved and monitored by the United States. The statute therefore provides (section 805(d) (16 U.S.C. 3115(d)) that if, within one year of ANILCA's enactment, the State:
enacts and implements laws of general applicability which are consistent with, and which provide for the definition, preference and participation specified in, sections 803, 804, and 805 [of ANILCA] such laws, unless and until repealed, shall supersede such sections insofar as such sections govern State responsibility * * *

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for the taking of fish and wildlife on the public lands for subsistence uses.

See Kenaitze Indian Tribe v. State of Alaska, 860 F.2d 312 (9th Cir. 1988), cert. denied, 491 U.S. 905 (1989).

Alaska adopted a statute in 1978 governing management of subsistence uses of fish and wildlife. While the statutory preference was not limited, as required by ANILCA, to "rural Alaska residents," regulations promulgated under it limited *8 eligibility for the priority to rural residents. The State became responsible for all subsistence regulation under the statute on May 14, 1982. In 1985, however, the Alaska Supreme Court invalidated the regulations governing eligibility for subsistence fishing. Madison v. Alaska Department of Fish and Game, 696 P.2d 168 (Alaska 1985). Because without the regulations the preference was not limited to "rural" Alaskans, the Secretary of the Interior withdrew the State program's certification, pending enactment of State subsistence legislation consistent with ANILCA. Kenaitze Indian Tribe v. State of Alaska, supra, 860 F.2d at 314; Bobby v. State of Alaska, 718 F. Supp. 764, 766-68 (D. Alaska 1989).

The State then enacted amended subsistence legislation to remedy the inconsistency with Title VIII. In 1989, however, the Alaska Supreme Court concluded, in McDowell v. State of Alaska, 785 P.2d 1 (Alaska 1989), that the amended state subsistence statute violated the Alaska state constitution, which prohibits the State from affording a preference for the use of renewable resources on the basis of residency. Because ANILCA expressly reserves the priority for "rural" Alaska residents, the State was unable to conform its legislation to ANILCA without violating the state constitution's ban. As a result, the United States Department of Agriculture and the United States Department of the Interior were required to undertake implementation of ANILCA Title VIII on "public lands" on July 1, 1990.

*9 2. Federal regulation of subsistence hunting and fishing on public lands. - The United States Departments of the Interior and Agriculture published temporary subsistence management regulations on June 29, 1990 (55 Fed. Reg. 27,114). In relevant part, the regulations provided that their application generally was limited to "all public lands including all non-navigable waters located on these lands." 50 C.F.R. 100.3(b) (emphasis added). The regulations by their terms, therefore, generally did not apply to navigable waters. This interpretation was explained in the Federal Register notice accompanying the issuance of the regulations as follows:
The United States generally does not hold title to navigable waters and thus navigable waters generally are not included within the definition of public lands. * * * The scope of these regulations is limited by the definition of public lands in section 102 of ANILCA. Lands validly selected by the State or Native corporations are therefore excluded from this public lands definition.

55 Fed. Reg. 27,114 at 27,115 (June 29, 1990). The final regulations (57 Fed. Reg. 22,940 at 22,942 (May 29, 1992)) made no significant change in this interpretation, although they specified that certain navigable waters were public lands by virtue of pre-statehood reservations of lands encompassing waterbodies whose beds therefore did not pass to the State under the equal footing doctrine.

B. The history of this case. - On December 5, 1990, plaintiffs Katie John, Doris Charles and the Village Council of Mentasta filed this suit, challenging the regulations and *10 alleging that the ANILCA's definition of "public lands" included waters of Tanada Creek and the Copper River that were excluded from the areas covered by the federal subsistence regulations. This lawsuit effectively

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

continued a lawsuit the plaintiffs had filed in 1985 against the State of Alaska over limitations on their traditional subsistence fishery resulting from State Board of Fish and Game regulations. The district court in the 1985 suit invalidated the State regulations, but that case became moot when the Federal Subsistence Board assumed responsibility for effecting the subsistence preference in 1990. The federal board adopted temporary regulations that were essentially identical to the State regulations that had been invalidated in the 1985 lawsuit, and the plaintiffs therefore challenged the new federal regulations. The Katie John plaintiffs joined the State of Alaska as a defendant in this lawsuit on March 18, 1991.

The State of Alaska brought its own action challenging the federal government's authority to manage subsistence uses of fish and game pursuant to ANILCA Title VIII on February 27, 1992. That action, State of Alaska v. Babbitt, No. A92-264 Civil, was consolidated in the district court with the Katie John case on May 15, 1992 \{C. R. 70). The State's challenge consisted of three counts. In its first count, the State alleged that the regulations attempted to apply the ANILCA subsistence priority on waters that are not "public lands" as defined by the statute. The State's second count detailed particular waters allegedly "off public lands" over which the federal regulations had *11 asserted jurisdiction to regulate subsistence. Finally, Alaska claimed that the comprehensive nature of the federal subsistence regulations impermissibly diminished the State's authority to manage fish and wildlife.

The plaintiffs in Katie John filed a motion for partial summary judgment on June 21, 1991 (C.R. 48), arguing that the definition of "public lands" in ANILCA section 102(3) had been construed too narrowly by the regulations. The plaintiffs asserted that "public lands" includes all waters in which the United States has an interest, including such interests as the authority to regulate navigation pursuant to the navigational servitude. The federal defendants moved to dismiss for failure to state a claim upon which relief could be granted and cross-moved for summary judgment on the "public lands" question (C.R. 2, 17, 121). The parties filed briefs to the district court on the cross-motions for summary judgment (C.R. 48, 53, 58, 59), and the district court heard argument on the motions on December 12, 1991 (C.R. 63).

The State filed a motion for partial summary judgment on the third count of its Complaint, challenging the United States' authority to establish a program for regulating subsistence hunting and fishing, on March 19, 1993. The State's motion was opposed by both the United States and the plaintiffs.

After extensive briefing on the two partial summary judgment motions, and after hearing oral argument in 1992, the district court issued a "proposed order" on the "public lands" *12 issue on January 13, 1994 (C.R. 175, ER 27). It scheduled a second oral argument, offering counsel an opportunity to respond to its tentative findings and conclusions, on March 18, 1994. The tentative opinion proposed a ruling granting partial summary judgment to the plaintiffs on grounds that "public lands" as defined in ANILCA includes all waters subject to the navigational servitude.

At the second oral argument, the United States modified its earlier position, agreeing with the court and the plaintiffs that the regulations as written were overly restrictive (ER 103). The United States continued to oppose a finding that ANILCA section 804 establishes a priority for subsistence fishing in all navigable waters, however (id.). The United States proposed that "public lands" as defined by ANILCA includes those navigable waters in which the United States has reserved water rights encompassing subsistence fishing, and suggested that the court remand the case to the agencies to determine the geographic contours of the preference

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under this theory (ER 104).

The district court issued its order on the motions on March 30, 1994 (ER 53). It held (ER 72) that the United States reasonably had concluded that it could establish a subsistence management program, but (ER 91) that the definition of "public lands" on which the federal subsistence board had based decisions regarding the geographic scope of this program was unreasonably restrictive. It denied the federal defendants' and the State's motions, and granted partial summary judgment for the plaintiffs *13 on the "public lands" question (ER 94). The opinion and order made no reference to the United States' modification of its position.

C. The district court's order. - The district court concluded that the federal regulators were authorized by ANILCA to implement a program for managing subsistence resources. But it concluded that the term "public lands" could not reasonably be interpreted as excluding navigable waters.

1. Whether a federal program is authorized. - The district court correctly held that ANILCA sets out extensive requirements for the Secretary to establish a regulatory structure for managing subsistence resources, but presumes that the State will administer a federally approved and monitored management program (16 U.S.C. 3114). The statute does not provide explicitly for the implementation of a federal program to effect the subsistence preference in the event that the State fails to implement a program. The district court concluded (slip op. at 17, ER 68), however, that omission of explicit language authorizing a federal subsistence management program was inadvertent. It further held that the statute contains sufficient express authority for the promulgation of regulations to effectuate the subsistence provisions to allow the federal regulators to create the federal subsistence management program (id.).

The district court concluded that the Secretaries' interpretation of these provisions might be the only reasonable *14 response to the State's failure to implement a qualifying subsistence program. It held (slip op. 21, ER 72) that, in any event, the implementation of a federal program was both authorized and reasonable.

2. The geographic scope of federal regulatory authority. - On the question of defining "public lands," the district court held that the existing regulation was not reasonable. It reviewed two approaches to interpreting the term, considering the United States' interest in the reserved water rights doctrine on the one hand, and the navigational servitude on the other, as possible bases for including navigable waters within the definition of "public lands." Ultimately, it selected the navigational servitude as "more compatible with the Congressional findings and policies underlying ANILCA Title VIII" (slip op. 33, ER 85).

a. The reserved water rights doctrine. - The district court examined the reserved water rights doctrine as a basis for determining the geographic scope of ANILCA's subsistence preference, but declined to adopt this approach. The reserved water rights doctrine holds that when the federal government withdraws land from the public domain and reserves it for a federal purpose, the government by implication reserves a sufficient quantity of water appurtenant to the reservation to accomplish the purposes of the reservation. With regard to the park in which the fishery that is the subject of this case is located, the court held (slip op. 32, ER 84) that "it is clear *15 that an unquantified amount of water appurtenant to the park was reserved for the purpose of providing rural Alaskans with the opportunity to pursue their subsistence rights under Title VIII." The district court also acknowledged that federal reserved water rights "might afford a proper basis for the exercise of federal authority to regulate subsistence fishing in some

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

locations" (slip op. 32, ER 84). The district court nonetheless decided not to adopt the reserved water rights theory as the basis for determining the geographic scope of the preference generally. Its only explanation for this decision is its statement that use of the navigational servitude is "more compatible with the findings and policies of Title VIII of ANILCA" (slip op. at 33, ER 85).

b. **The navigational servitude.** - The district court adopted the argument that the subsistence preference should be coextensive with the navigational servitude.[FN1] Although it recognized that the navigational servitude reflects a power of the federal government that is grounded in the Commerce Clause, the district court held that the servitude is an "interest in waters" sufficient to sweep all waters subject to it into the definition of "public lands." It distinguished this Court's conclusion to the contrary in City of Angoon v. Hodel, 803 F.2d 1016, 1027-28, n.6 (9th Cir. 1986), cert. denied, *16 484 U.S. 870 (1987), on grounds that that case "did not address the subtleties regarding the terms 'interests' or 'title' presented by this case" (slip op. at 37, ER 89). And it speculated that this Court premised its holding that the United States does not hold title to the servitude on the conclusion that "the servitude is a power of government rather than a property interest" (id.).

> FN1. The district court did not make any findings concerning the navigability of the waters at issue here but apparently assumed that the waters at issue are navigable. Even if these water are determined not to be navigable, the legal issues presented here are of controlling significance in at least six other cases, all of which may concern implementation of the preference on navigable waters.

The district court itself, however, declined to characterize the servitude as a "property interest," referring to it instead (slip op. at 38, ER 90) as an "interest in water." It held (slip op. 39, ER 91) that "title" for purposes of ANILCA "can refer to something less than technical fee title," and concluded that therefore, for purposes of Title VIII of ANILCA, the United States holds title to an interest in the navigable waters of Alaska (id.).

ARGUMENT

I. **Introduction.** - As explained above, the district court held that "public lands," as defined by section 102 of ANILCA, includes all waters in Alaska that are subject to the navigational servitude. The United States does not challenge the district court's conclusion that the existing regulations' interpretation of "public lands" - excluding all navigable waters - is too restrictive. However, the district court erred in holding that all navigable waters are "public lands." Section 102(3) of ANILCA defines "public lands" as including lands, waters and interests "title to which is in the United States." 42 U.S.C. 1602(3). As discussed below, the United States does *17 not hold "title" to the navigational servitude. Its power to regulate pursuant to the navigational servitude is not tantamount to "title" to "interests" in the waters regulated or to any property interest. The navigational servitude, therefore, cannot provide a basis for interpreting the geographic scope of the United States' authority to regulate on "public lands."

The district court adopted a definition of "public lands" that is overbroad, inconsistent with this Court's earlier rulings on the issue, and based on an erroneous conception of the nature of the navigational servitude. The resulting definition is unreasonably inclusive, and arrogates to the federal government authority to regulate fishing in Alaska that goes well beyond the intent of the subsistence provisions of ANILCA. The district court also held, however, that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reserved water rights doctrine could be "of primary importance" with regard to determining the geographic scope of ANILCA Title VIII (slip op. 32, ER 84). It declined to use the doctrine as a means of determining the geographic scope of Title VIII, concluding that its scope is "better determined" by use of the navigational servitude (slip op. 33, ER 85).

This Court therefore should reverse the district court's conclusion that the United States holds "title" to the navigational servitude. It should affirm the district court's conclusions regarding the applicability of the federal reserved water rights doctrine to the scope of federal jurisdiction over subsistence uses of natural resources on "public lands" in *18 Alaska. This alternative holding is consistent with the law of this Circuit and is free of the other inconsistencies infecting the navigational servitude theory, discussed below. The case should therefore be remanded with instructions to remand it to the Secretaries for further rulemaking to implement ANILCA Section 804 on navigable waters in Alaska in which the United States holds an appropriate interest, either through ownership of the bed of the waters or pursuant to the federal reserved waters rights doctrine.

**A. The navigational servitude is not a property interest and cannot, therefore, provide the basis for determining that waters subject to it fall within ANILCA's definition of "public lands".** - This Court has previously considered the question whether the navigational servitude defines the scope of "public lands" as defined in section 102 of ANILCA, and has held that it does not. In City of Angoon v. Hodel supra, 806 F.2d at 1027-28, n.6, this Court concluded that "[s]ince the United States does not hold title to the navigational servitude, the servitude is not 'public land' within the meaning of ANILCA." The district court's holding is to the contrary. The district court attempts to distinguish Angoon by suggesting (slip op. 37) that this holding has been superseded by later authorities, including Boone v. United States, 944 F.2d 1489, 1493 (9th Cir. 1991), and Amoco Production v. Gambell, 480 U.S. 531, 548 n.15 (1987). Neither of these later authorities, however, has in any way undermined the clear conclusion this Court reached in Angoon.

*19 The district court justifies its deviation from the precedent set out in Angoon with perceived departures in later authorities from the theories underpinning Angoon. With regard to whether the servitude is a property interest, the district court quotes (slip op. 37) from a footnote in Boone stating that "[t]he label 'servitude' implies a property interest," and explaining, instead, that the United States' interest in the navigational servitude is based in the Commerce Clause, which "speaks in terms of power, not of property." Boone, 944 F.2d at 1491, n.9, citing United States v. Twin City Power Co., 350 U.S. 222 (1956); and see United States v. Certain Parcels of Land. Etc., 666 F.2d 1236, 1238 (9th Cir. 1982) ("The navigational servitude * * * is a concept of power, not of property"). Boone does not modify the Angoon decision in any way. It clearly does not hold that the navigational servitude is a property interest; rather, it explains that the term "servitude" in this context does not implicate property, because the navigational servitude is a product of the Commerce Clause and not of the Property Clause.

Similarly, the Supreme Court's suggestion in Amoco Production v.Gambell, supra, 480 U.S. 531, 548 n.15, that the United States might hold title to an "interest" in the Outer Continental Shelf sufficient to render the OCS "public lands" is entirely consistent with this Court's ruling in Angoon. The "interest" in question in Amoco was the United States' interest in mineral leases. This interest, while not a fee interest, is a *20 property interest to which the United States arguably holds "title." The foundation for this interest is found in the declaration in section 3 of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. 1332, that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subject to its jurisdiction, control, and power of disposition * * *." Amoco stands for the proposition that "public lands" may include lands and waters in which the United States' property interest falls short of fee title. It lends no support, however, to the notion that regulatory authority, as opposed to title or property interests, constitutes an appropriate "interest" in lands or waters to bring them within the definition of "public lands." The rationale offered by the district court for departing from the controlling language in Angoon is therefore empty. The navigational servitude is not a property interest to which "title" may attach, and therefore does not provide the United States with a basis for regulating navigable waterways as "public lands."

The Submerged Lands Act, 43 U.S.C. 1201 et seq., made applicable to Alaska by section 6(m) of the Alaska Statehood Act, Pub. L. No. 85-508, 72 Stat. 343, confirms that the navigational servitude is not a species of property. Section 3(a) of the Submerged Lands Act, 43 U.S.C. 1311(a), vested in the States "the title to and ownership of the lands beneath navigable waters within [their] boundaries * * * and the natural resources within such lands and waters * * *." Section 5(a), 43 U.S.C. 1313(a), *21 excepted from this grant any lands and resources the "title to which has been lawfully and expressly acquired by the United States or in which the United States otherwise retained a property interest." Significantly, however, the navigational servitude was protected not by Section 5(a), but by Section 6(a), which reserved to the United States the "navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense and international affairs." Section 6(a) expressly provided that this reservation shall not be deemed to include "proprietary rights of ownership * * *." Thus, Congress distinguished between the federal government's retention of property interests and its retention of regulatory powers, and Congress placed the navigational servitude in the latter category. See United States v. California. 436 U.S. 32, 41 & n.18 (1978). This pre-existing statutory distinction reinforces the conclusion that the navigational servitude was not intended by Congress to be among the interests in property included in the "public lands" definition in section 802 ANILCA.

B. The United States owns interests in water through the reserved water rights doctrine and therefore is authorized under ANILCA to implement the preference for subsistence fishing in some, but not all, navigable waters in Alaska. - The district court held (slip op. at 32) that federal reserved water rights might afford a proper basis for the exercise of federal authority to regulate subsistence fishing in some locations. It also held *22 that the doctrine might have some application in this case (id.). As discussed above, reliance on the navigational servitude as a basis for determining the geographic scope of federal authority to regulate fishing for subsistence uses is inconsistent with the long-standing construction of the servitude as a power of government based in the Commerce Clause. Interpreting federal authority to provide for subsistence fishing in this manner would have impractical results that clearly were not intended by Congress. Federal reserved water rights, on the other hand, are directly associated with lands in which the United States holds title, see Cappaert v. United States. 426 U.S. 128, 138-42 (1976). And usufructuary water rights, such as those reserved under the federal reserved water rights doctrine in Alaska, are themselves recognized in the law as property interests. F.P.C. v. Niagara Mohawk Power Corp., 347 U.S. 239, 251 (1954); Colville Confederated Tribes v. Walton, 647 F.2d 42, 48 (9th Cir.) (Tribe has vested property right in reserved water), cert. denied, 454 U.S. 1092 (1981).

   1. Federal reserved water rights are property

interests. - It is well established in the law that water rights are a species of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

property. Water rights may be bought and sold. Sporhase v. Nebraska, 458 U.S. 941 (1982); F.P.C. v. Niagara Mohawk Corp., supra. The owner of a water right is entitled to the same procedural protections for the water right as for other types of property. U.S. v. Gerlach Livestock. 339 U.S. 725, 754 (1950). As early as 1937, Congress stated in the Rivers and *23 Harbors Appropriation Act, 50 Stat. 844, 850, that "the Secretary of the Interior may acquire by eminent domain, or otherwise, all lands, rights of way, water rights and other property * * *." Unquestionably, therefore, ownership of a water right creates an ownership interest in property, whether in a private party or in the United States.

Water rights inhere in lands. Ducran v. Rank, 372 U.S. 607, 625 (1963). Since the early 1900's, the Supreme Court has recognized that when the United States withdraws land from the public domain and reserves it for a federal purpose, its reservation of that land includes an implied reservation of water rights necessary to fulfill the purposes for which the land was reserved. Winters v. United States, 207 U.S. 564 (1908). The federal reserved water rights doctrine was most clearly articulated in Cappaert v. United States, 426 U.S. 128 (1976), which states that in reserving land for a federal purpose,

the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators. Reservation of water rights is empowered by the Commerce Clause, Art. I, sec. 8, which permits federal regulation of navigable streams, and the Property Clause, Art. IV, sec. 3, which permits federal regulation of federal lands.

426 U.S. at 138.

Congress may reserve water rights either by implication or by express reservation. Id. The federal government therefore *24 owns reserved rights in waters appurtenant to lands withdrawn from the public domain, as necessary to fulfill the purposes of those reservations. For example, where the United States holds title to reservation lands in trust for an Indian tribe, and where the productivity of the reservation lands depends on irrigation, the United States impliedly also owns the right to waters appurtenant to the reservation sufficient to fulfill the tribe's needs to make agricultural use of their reservation lands. See, e.g., Arizona v. California. 373 U.S. 546, 600 (1963); Colville Confederated Tribes v. Walton, supra, 647 F.2d at 48.

Water rights may be consumptive or non-consumptive in nature. In many instances, such as the example discussed above, a water right may consist of the right to appropriate a quantifiable amount of water. Alternatively, water rights may be non-consumptive in nature. Such rights encompass the use of the flow of water but do not vest a right to appropriate the water itself. Use of water pursuant to such a water right does not include the right to diminish the quantity of water, which remains intact, but the right to use of the water is nonetheless property, which may be transferred or leased. F.P.C. v. Niagara Mohawk Power Corp., 347 U.S. 239, 247 (1954).

The federal reserved water rights doctrine also applies to non-consumptive water rights, such as rights to instream flows needed to support reservation purposes. For example, where the United States establishes an Indian reservation whose purposes *25 include maintenance of traditional hunting and fishing practices of the tribe, the reservation would impliedly include the right to maintain water levels sufficient to support the tribe's fishery. "The holder of such a right is not entitled to withdraw water from the stream * * *. Rather, the entitlement

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consists of the right to prevent other appropriators from depleting the streams [sic] waters below a protected level in any area where the non-consumptive right applies." United States v. Adair, 723 F.2d 1394, 1411 (9th Cir. 1984), cert. denied, 467 U.S. 1252 (1984); and see United States v. New Mexico, 438 U.S. 696 (1978); Colville, supra, at 48.

Where water is plentiful - so that no issue of upstream appropriations of water threatening to draw stream flows below the "protected level" is raised - the United States' non-consumptive water right need not be quantified. No action to make use of it is necessary to perfect the United States' title to the water right. The United States nonetheless owns an interest in the water that may be enforced against any future appropriator to prevent the depletion of surface or ground water from undermining the United States' accomplishment of its purposes in reserving lands from the public domain. See Cappaert, supra, 426 U.S. at 139. The interest owned is a property interest.

ANILCA Title VIII provides that rural Alaska residents are entitled to a priority for subsistence use of fish and wildlife on "public lands." The statute defines "public lands" *26 as "lands, waters, and interests therein title to which is in the Uinted States." As demonstrated by the facts of this case and the six other cases pending in the district court that raise this issue, a substantial number of customary and traditional subsistence fisheries are located in navigable waterways whose beds are not owned by the United States. By defining "public lands" to include lands, waters and interests therein, Congress extended the priority to areas that are not owned exclusively by the United States but in which the United States owns interests that provide an appropriate basis for inclusion within "pubic lands." Thus, where the United States has reserved lands for purposes that encompass preservation of fish or subsistence fishing, the United States' ownership of such interests reasonably falls within the meaning of "title" for purposes of ANILCA section 102. See Amoco Production v. Gambell, supra, 480 U.S. at 548 n.15.

**2. Waters of the Copper River, Tanada Creek and other navigable waterways appurtenant to the Wrangell-St. Elias National Park and Preserve are public lands.** - In determining whether there is a federally reserved water right implicit in a federal reservation of public land, the issue is whether the Government intended to reserve unappropriated and thus available water. Cappaert, supra, 426 U.S. at 139. Intent is inferred if the previously unappropriated waters are necessary to accomplish the purpose for which the reservation was created. Id. The dispute in this case concerns the traditional fishery at *27 Batzulnetas, which is located within the Wrangell-St. Elias National Park and Preserve. The Park was established by ANILCA in 1980 for the following purposes:
To maintain unimpaired the scenic beauty and quality of high mountain peaks, foothills, glacial systems, lakes, and streams, valleys and coastal landscapes in their natural state; to protect habitat for, and populations of, fish and wildlife including but not limited to caribou, brown/grizzly bears, Dahl sheep, moose, wolves, trumpeter swans and other waterfowl, and marine mammals; and to provide continued opportunities, including reasonable access for mountain climbing, mountaineering, and other wilderness recreational activities. Subsistence uses by local residents shall be permitted in the park where such uses are traditional * * *.

Section 201(9), 16 U.S.C. 410hh(9). Congress directed The Secretary to administer the "lands, waters, and interests therein" reserved by this provision as units of the National Park System (ANILCA Section 203, 16 U.S.C. 410hh-2).

In order to provide for "unimpaired * * * scenic beauty and quality of * * *

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lakes[] and streams," and "to protect habitat for, and populations of, fish," the United States has the right to prevent appropriators from depleting waters below levels necessary to protect these interests in all areas where this non-consumptive right applies. See United States v. Adair, supra, 723 F.2d at 1411. While the determination of the existence and extent of appropriate water rights interests is generally a matter for the agencies to determine in the first instance, the district court was correct in holding that "it is clear that an unquantified amount of water appurtenant to the park was reserved *28 for the purpose of providing rural Alaskans with the opportunity to pursue their subsistence rights under Title VIII" (Slip op. at 32). In other words, the United States has title to an appropriate interest in the waters of the navigable portions of Tanada Creek and the Copper River within the Wrangell-St. Elias reservation. Accordingly, these waters are "public lands" subject to the preference mandated by Title VIII of ANILCA.

The district court's conclusions regarding federal reserved water rights establish that a reasonable interpretation of the scope of "public lands," as defined in ANILCA section 102, 16 U.S.C. 3102, would encompass those waters in which the federal government holds reserved rights for protection of fish and wildlife or for purposes otherwise appropriate to providing opportunities for subsistence fishing.

The invocation of reserved water rights and the powers associated with federal reservations within Alaska may present difficult issues concerning the identity of the reserved units involved and the geographic scope of the authority conferred by the reservation.[FN2] The United States took the position in the district court that we would not oppose summary judgment that "public lands" encompasses those waters to which the United States has reserved a water right that would provide opportunities for subsistence fishing. We suggested that the *29 district court remand the challenged regulations to the Departments of the Interior and Agriculture so that they could resolve the complexities concerning the geographic scope of the authority conferred by the reservation. The district court instead entered an order requiring a vastly broader definition of "public lands," encompassing virtually all fisheries in Alaska. Because the district court's conclusion regarding the navigational servitude is incorrect, it must be reversed. The district court's alternative conclusions, however, correctly hold that the federal reserved water rights doctrine provides an appropriate means of determining the geographic scope of the subsistence preference in some locations. They should therefore be affirmed.

> FN2. We note that an effort of similar complexity would be required to implement the district court's decision, which would require a determination of the geographic scope of the navigational servitude. See Alaska v. Ahtna, 891 F.2d 1401 (9th Cir. 1989)

CONCLUSION

For the foregoing reasons, the district court's interlocutory order holding that "public lands" for purposes of ANTLCA Title VIII includes all navigable waters in Alaska should be reversed. To the extent that the district court concluded that "public lands" includes waters in which the United States holds reserved water rights for purposes encompassing the opportunity to conduct subsistence fishing operations, the order should be affirmed, and the case should be remanded to the agencies for implementation of a program for providing the *30 required preference on "public lands."

*31 STATEMENT OF RELATED CASES

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

To the best of counsel's knowledge, there is currently pending in this Court one related case, State of Alaska, et al., v. Babbitt, 9th Cir. No. 94-35480, which arises out of the same interlocutory ruling as this case and presents issues some of which are also presented in this case.

Katie JOHN, et al., Plaintiffs-Appellees, v. UNITED STATES OF AMERICA, et al., Defendants-Appellants.
1994 WL 16058810 (C.A.9)

Briefs and Other Related Documents (Back to top)

• 1994 WL 16012379 (Appellate Brief) Reply Brief of Appellant State of Alaska (Nov. 22, 1994) Original Image of this Document with Appendix (PDF)
• 1994 WL 16057704 (Appellate Brief) Reply Brief for the Federal Appellants (Nov. 15, 1994) Original Image of this Document (PDF)
• 1994 WL 16012450 (Appellate Brief) Brief for Appellees Alaska Federation of Natives and Katie John, et al. (Oct. 21, 1994) Original Image of this Document (PDF)
• 1994 WL 16012376 (Appellate Brief) Brief for the Federal Appellees (Oct. 18, 1994) Original Image of this Document (PDF)
• 1994 WL 16058590 (Appellate Brief) Brief for Appellees Katie John, et al., and Alaska Federation of Natives (Oct. 17, 1994) Original Image of this Document (PDF)
• 1994 WL 16058811 (Appellate Brief) Brief of Amici Curiae States of Arizona, California, Idaho, Montana, and Oregon (Oct. 17, 1994) Original Image of this Document (PDF)
• 1994 WL 16012377 (Appellate Brief) Brief for Appellant State of Alaska (Sep. 20, 1994) Original Image of this Document (PDF)
• 1994 WL 16012378 (Appellate Brief) Brief of Amici Curiae State of Arizona, California, Idaho, Montana, Nevada, and Oregon (Sep. 20, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.