# EXHIBIT A-4

Westlaw.
1994 WL 16057704 (C.A.9)                                          Page 1
(Cite as: 1994 WL 16057704)

For Opinion See 72 F.3d 698 Briefs and Other Related Documents

United States Court of Appeals,
Ninth Circuit.
Katie JOHN, et al., Plaintiffs-Appellees,
v.
UNITED STATES OF AMERICA, et al., Defendants-Appellants.
No. 94-35481.
November 15, 1994.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

Reply Brief for the Federal Appellants

Of Counsel:, Sandra Ashton, David Gayer, Office of the Solicitor, U.S. Dept. of the Interior, Washington, D.C. 20240, Robert Maynard, Assistant Regional Counsel, U.S. Department of Agriculture, Juneau, Alaska 99802 Lois J. Schiffer, Assistant Attorney General, Dean K. Dunsmore, J. Carol Williams, Elizabeth Ann Peterson, Attorneys, Department of Justice, Env't and Natural Res. Division, Washington, D.C. 20530, (202) 514-3888

**INDEX**

Introduction ... 1

Argument

I. The United States Does Not Hold Title To The Navigational Servitude ... 4

 A. Under the law of this Circuit, the United States does not hold title to the navigational servitude ... 4

 B. The United States' "interest" in the navigational servitude does not constitute a property interest, and is therefore an inappropriate basis for determining the scope of "public lands" as defined in ANILCA ... 5

II. The United States May Apply The Subsistence Priority On Those Navigable Waters In Alaska In Which It Holds Appropriate Reserved Rights ... 8

 A. The State's construction of Title VIII violates the fundamental cannons of construction that all of the words of a statute must be given operative effect if possible and that the language of a statute must be construed as consistent with the statute's purpose and structure ... 8

 B. Defining "public lands" to include waters in which the United States has reserved appropriate rights is consistent with the law and the purposes of ANILCA Title VIII ... 11

Conclusion ... 14

Certificate of Service ... 16

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
C:\Documents and Settings\jap\Local Settings\Temporary Internet Files\OLK72\72 F3d 698 Reply Brief Federal Appellants 11-15-94 (590139).DOC

CITATIONS

**CASES:**

*Alaska v. Babbitt*, 9th Cir. No. 94-35480 ... 12

*Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987) ... 5

*City of Angoon v. Hodel*, 803 F.2d 1016 (9th cir. 1986), cert. denied, 484 U.S. 870 (1987) ... 4, 5

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ... 12

*Department of Revenue of Oregon v. ACF Industries*, 114 S.Ct. 843 (1994) ... 10

*Goldblatt v. Hempstead*, 369 U.S. 590 (1962) ... 7

*Hadacheck v. Sebastian*, 239 U.S. 394 (1915) ... 7

*Hughes v. Oklahoma*, 441 U.S. 322 (1979) ... 6

*John Hancock Mut. Ins. Co. v. Harris Trust & Sav. Bank*, 114 S.Ct. 517 (1993) ... 10

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979) ... 7

*Keystone Bituminous Coal v. Benedictus*, 480 U.S. 470 (1987) ... 7

*Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949) ... 8

*Miller v. Schoene*, 276 U.S. 272 (1928) ... 7

*Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237 (1985) ... 10

*ii *Ratzlaf v. United States*, 114 S.Ct. 655 (1994) ... 9

*Respublica v. Sparhawk*, 1 U.S. (1 Dall.) 357 (Pa. 1788) ... 7

*Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941 (1982) ... 7

*United States v. Nordic Village*, 112 S.Ct. 1011 (1992) ... 9

**STATUTES:**

Alaska National Interest Lands Conservation Act,

16 U.S.C. 3101 et seq. ... 1, 10

16 U.S.C. 3101(b) ... 11

16 U.S.C. 3113 ... 1

16 U.S.C. 3114 ... 12

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 102 ... 1, 4, 13

Outer Continental Shelf Lands Act, Section 3, 43 U.S.C. 1332 ... 5

Submerged Lands Act,

Section 3(a), 43 U.S.C. 1311(a) ... 6

Section 5(a), 43 U.S.C. 1313(a) ... 6

Section 6(a) ... 6

*MISCELLANEOUS*:

H.R. Rep. No. 97, Part I, 96th Cong. 1st Sess., 231 (1979) ... 14

*1 INTRODUCTION

In Title VIII of the Alaska National Interest Lands Conservation Act, 16 U.S.C. 3101 et seq., ("ANILCA"), Congress declared that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes." 16 U.S.C. 3113. This case concerns the question where in Alaska Congress intended this priority for subsistence uses of fish and game to apply.

The district court held that ANILCA's definition of "public lands," contained in section 102, includes all navigable waters in Alaska, by virtue of the United *2 States' "interest" in the navigational servitude. The Katie John plaintiffs urge this Court to affirm the district court's conclusion on this point (Plaintiffs' Brief at 18-27 (Pl. Br. 18-27)). The State of Alaska, on the other hand, argues (AK Br. 6-20) that "public lands" as defined in ANILCA does not encompass any lands or waters in which the United States holds interests short of fee tide. As explained in our opening brief (US Br.3), the United States promulgated a regulation in 1992 that was consistent with the interpretation now urged by the State. As our brief further explained, the United States has revised its views since the promulgation of the rule interpreting the definition. This litigation, however, reached this Court before the responsible federal agencies had responded to a pending petition for administrative reconsideration of the rule (See US Br.3). The United States therefore requests that this Court remand the case to the Secretaries of the Interior and Agriculture for rulemaking consistent with a definition of "public lands" that includes those navigable waters in which the United States holds appropriate reserved water rights, but does not include all waters subject to the navigational servitude, as explained in our opening brief.

The Katie John plaintiffs urge this Court to affirm the district court. The plaintiffs assert that the statute must be construed broadly to achieve its purposes, including restoration of Alaska Native subsistence fishing rights extinguished by the Alaska Native Claims Settlement Act (ANCSA). It further argues that the district court's interpretation is correct because the United States' interest in the navigational servitude is tantamount to a property interest and should therefore be treated for purposes of Title VIII as an interest in waters the tide to which is in the United States. As evidence that Congress meant to define "public lands" to include all navigable waterways, the plaintiffs rely on the fact that Congress *3 invoked the Commerce Clause as authority for Title VIII's enactment and legislative history indicating an intent to apply the priority on all waters of Alaska. As we discuss below, the plaintiffs' interpretation is unreasonably inclusive, and arrogates to the federal government authority to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regulate fishing in Alaska that goes well beyond the intent of the subsistence provisions of ANILCA.

The State's answering brief, on the other hand, urges this Court to reverse the district court's conclusions regarding the scope of the preference's applicability, on grounds that Congress could not have intended that the geographic coverage of Title VIII go beyond lands held in fee by the United States. It actively urges this Court to read the phrase "and interests therein" out of the statutory definition of "public lands" for purposes of Title VIII, because, it claims (AK Br.7-8), this language is included only for purposes of "establish[ing] the extent of the authority the statute gives the Secretary to acquire and dispose of property" and does not "establish[] where some of ANILCA's provisions apply, as a geographic boundary." The State argues that "title" for purposes of the public lands definition must mean fee title, and that any other interpretation should be rejected because Congress intended to delineate a "finite, specific area, federally owned lands" (AK Br. 19), on which the preference was to apply. Any other interpretation of the statute would introduce complexities regarding the preference's applicability which, the State asserts (AK Br. 13-20), could not have been intended by Congress. As discussed below, the State's interpretation unreasonably restricts the coverage of the preference by virtually nullifying its protection of subsistence fishing rights.

*4 ARGUMENT

I

THE UNITED STATES DOES NOT HOLD TITLE TO THE NAVIGATIONAL SERVITUDE

As discussed in our opening brief (US Br. 18-21), the United States' power under the navigational servitude is not a property interest. Thus, while ANILCA section 102 must be read to include lands and waters in which the United States holds an "interest," i.e. less than fee title, it cannot reasonably encompass the indefeasible sovereign power represented by the servitude. The plaintiffs' argument that "public lands" includes all waters subject to the navigational servitude rests essentially on two bases: 1) that a broad construction of the preference's applicability is appropriate here, because of the statute's intent to provide for Native subsistence rights and because Congress intended broad application of the priority; and 2) the United States' "interest" in the navigational servitude is paramount, and therefore tantamount, to property interests. Both of the plaintiffs' theories overlook the law.

A. Under the law of this Circuit, the United States does not hold title to the navigational servitude. - This Court has previously considered the question whether the navigational servitude defines the scope of "public lands" as defined in section 102 of ANILCA, and has held that it does not. In City of Angoon v. Hodel, 803 F.2d 1016, 1027-28, n.6 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987) this Court concluded that "[s]ince the United States does not hold title to the navigational servitude, the servitude is not 'public land' within the meaning of ANILCA" (emphasis added).

*5 The plaintiffs unsuccessfully attempt to esablish that this holding was overruled in Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 548 n.15 (1987). The Court in Gambell concluded that, although the United States correctly argued that it did not have title to the Outer Continental Shelf ("OCS"), it owned interests, such as the mineral estate, in the OCS, that might suffice to bring the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

OCS within the "public lands" definition.[FN1] Nothing in the Gambell decision offers any basis for overruling this Court's conclusion that the navigational servitude is not "public land" within the meaning of ANILCA, however. This Court concluded in Angoon that the United States does not hold title to the navigational servitude. Gambell merely holds that where the United States does hold title to an interest short of the fee, its ownership of that interest might suffice as a basis for including lands or waters in the definition of "public lands."[FN2] This Court's ruling in Angoon is therefore entirely consistent with Gambell.

> FN1. The Court did not rule on the question whether the United States' ownership of interests in the OCS would in fact render the OCS "public lands" for purposes of ANILCA, however, having concluded that the OCS is not "in Alaska."
>
> FN2. As noted in our opening brief (US Br.20), the basis for the United States' interest is found in the declaration in section 3 of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. 1332, that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition * * *." (emphasis added).

B. The United States' "interest" in the navigational servitude does not constitute a property interest, and is therefore an inappropriate basis for determining the scope of "public lands" as defined in ANILCA. - The navigational servitude is not a property interest to which "title" may attach, and therefore does not provide the United States with a basis for regulating navigable waterways as "public lands." The essence of the *6 plaintiffs' argument to the contrary is that the power encompassed in the servitude is so great, relative even to individual property interests, that it too must be regarded as property. But Congress disagrees.

Section 6(a) of the Submerged Lands Act reserves to the United States the "navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense and international affairs." Section 6(a) expressly provides that this reservation shall not be deemed to include "proprietary rights of ownership * * *." The same statute, in section 3(a), 43 U.S.C. 1311(a), vested in the States "the title to and ownership of the lands beneath navigable waters within [their] boundaries * * * and the natural resources within such lands and waters * * *." Section 5(a), 43 U.S.C. 1313(a), excepted from this grant any lands and resources the "title to which has been lawfully and expressly acquired by the United States or in which the United States otherwise retained a property interest" (emphasis added).

The plaintiffs (Pl. Br. 22-23) attempt to show that the Submerged Lands Act is not conclusive of the question whether the United States holds "title" to the servitude. Quoting a brief written in 1912, the plaintiffs point out that the United States has taken the position that "the navigable waters of the United States for this purpose [commerce] are the public property of the nation," and urge that therefore the navigational servitude is property. But, as the Supreme Court explained in Hughes v. Oklahoma. 441 U.S. 322, 334 (1979), the "public ownership theory" relied on in early rulings regarding regulation of public resources is "but a fiction expressive in legal shorthand of the importance to its people that a State have power to preserve and regulate the exploitation of an important resource." See *7 Sporhase v. Nebraska ex rel. Douglas. 458 U.S. 941, 949-950 (1982). The use of this "legal shorthand" cannot outweigh the clear Congressional understanding - reflected in the Submerged Lands Act - that the navigational

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

servitude is a separate, nonproprietary power of government. And even the language cited by the plaintiffs is qualified: It states that the navigable waters for this purpose are the property of the public. The public, in other words, is entitled to the expectation that the needs of commerce will be paramount to states' and private property owners' interests in navigable waterways. This indefeasible public entitlement, although it affects property interests, is not federal property. Instead, the navigational servitude is a sovereign power based in the commerce clause that is paramount to individual property interests. Kaiser Aetna v. United States. 444 U.S. 164, 176 (1979). There is no legal basis for equating, as the plaintiffs urge this Court to do, a power of federal sovereignty that is superior to, or qualifies, certain private property interests with federal "property."

Although private property ownership is subordinate to the navigational servitude, that fact does not transform the sovereign power to regulate commerce on navigable waterways into government property. Sovereign powers such as the navigational servitude and the police power qualify individual property rights. See, e.g. Respublica v. Sparhawk, 1 U.S. (1 Dall.) 357, 362 (Pa. 1788) (government's authority to destroy a structure to create a firebreak); Hadacheck v. Sebastian. 239 U.S. 394 (1915); Miller v. Schoene, 276 U.S. 272 (1928); Goldblatt v. Hempstead, 369 U.S. 590 (1962). But, unlike federal property, these sovereign powers may not be alienated or transferred. Rather, these powers are incidents of sovereignty that are "properly treated as part of the burden of common citizenship." Keystone Bituminous Coal v. Benedictus, 480 U.S. 470, 489 (1987), *8 quoting Kimball Laundry Co. v. United States. 338 U.S. 1, 5 (1949). Their relationship to property rights should not be confused with their inherent nature as powers, not property.

II

THE UNITED STATES MAY APPLY THE SUBSISTENCE PRIORITY ON THOSE NAVIGABLE WATERS IN ALASKA IN WHICH IT HOLDS APPROPRIATE RESERVED RIGHTS

As discussed at p.26 of our opening brief, an interpretation of "public lands" as defined by ANILCA that includes only lands to which the United States holds title in fee would effectively read out of the statute its intent to protect subsistence fishing, which occurs primarily in navigable waters. Because the definition of "public lands" includes lands and waters and interests therein, however, it reasonably may be interpreted to include those waters in which the United States holds a reserved water right whose purpose appropriately encompasses protection of fish or fishing. The State of Alaska, however, argues that only part of the "public lands" definition operates to determine where the subsistence preference should be applied. As rewritten by the State, ANILCA's subsistence title would exclude the majority of subsistence fisheries from its protection.

A. The State's construction of Title VIII violates the fundamental cannons of construction that all of the words of a statute must be given operative effect if possible and that the language of a statute must be construed as consistent with the statute's purpose and structure. - Alaska contends (AK Br. 7-8) that the inclusion of the phrase "and interests therein" is irrelevant to determining the geographic boundaries of ANILCA Title VIII's applicability. The State asserts (AK Br. 7) that the definition of "land" in the statute "has two purposes: (1) to establish the extent of the authority the statute gives *9 the Secretary to acquire and dispose of property, and (2) to establish where some of ANILCA's provisions apply, as a geographic boundary." But it argues (AK Br. 8) that the definition "clearly was intended to serve the first purpose rather than the second." Alaska surmises (AK Br. 9-10) that Congress meant the phrase "and interests therein" as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

surplusage, at least with regard to the subsistence title, on grounds that it is mere "boilerplate." But "[j]udges should hesitate * * * to treat statutory terms [as surplusage] in any setting" Ratzlaf v. United States. 114 S.Ct. 655, 659 (1994). Boilerplate or not, it is well settled that the Court's duty, where possible, is to give meaning to every word of the statute. United States v. Nordic Village. 112 S.Ct. 1011, 1015 (1992).

Moreover, the apparent purpose for which Alaska urges deleting the phrase, "and interests therein" is to simplify the determination of the preference's geographic boundaries. But the State's proposal to simplify the implementation of the statute comes at the expense of Congress's clearly expressed intent to provide federal protection for customary and traditional subsistence fishing by rural Alaskans. Under the State's interpretation, virtually no navigable waters - not even those within the boundaries of fast lands that are "public lands" - would be "public lands" on which rural Alaska residents would be entitled to the subsistence use priority. But there is no dispute that the most significant locations where fish are taken for subsistence uses are in navigable waters.

The State's focus on the technical meaning of "title" for purposes of the subsistence preference completely overlooks the statute's fundamental purpose of protecting subsistence uses of fish and wildlife. However, it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *10Department of Revenue of Oregon v. ACF Industrie. 114 S.Ct. 843, 848 (1994), quoting Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana. 472 U.S. 237, 249 (1985). The task of the Court is to "examine first the language of the governing statute, guided not by a single sentence or member of a sentence, but looking to the provisions of the whole law, and to its object and policy." John Hancock Mut. Ins. Co. v. Harris Trust & Sav. Bank, 114 S.Ct. 517, 523 (1993) (internal quotations, brackets, and citations omitted).

Alaska approaches construction of Title VII from the opposite perspective: Guided exclusively by its narrow reading of the word "title," the State concludes that the priority established by Title VIII was not intended to apply to the majority of customary and traditional subsistence fisheries, despite the statute's unambiguous intent (16 U.S.C. 3101) "to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so." The legislative history of ANILCA, supported by the record in this case, establishes the enormous importance of fishing to the subsistence culture of rural Alaskans. Nonetheless, the State asserts, Congress could not have meant Title VIII to apply to fishing, except where the United States holds fee title to "waters." The State argues that, because the federal government does not own fee title to the water column on navigable waterways, the federal preference for subsistence fishing cannot apply on such waterways. It offers no explanation for Congress's apparent decision to approach "lands" more narrowly with regard to subsistence rights than with regard to acquisition authority, or for its failure at any time in the legislative history to explain the decision to limit Title VIII's applicability to a subset of "lands" that excludes "waters and interests therein."

*11 In effect, Alaska's interpretation is a triumph of form over substance: It presumes that Congress's concern for avoiding administrative complications inherent in applying the preference broadly was paramount to its concern for the substantive goals of the statute. And to support this dubious proposition, the State offers only its own bald assertion that Congress's intent "clearly was to provide a simple guideline * * * not to create a complex puzzle for courts to spend years attempting to solve" (AK Br.9). It is more reasonable, however, to conclude that Congress intended to delegate to the agencies' expert discretion the resolution of such administrative "complexities" when it defined "public lands," and sought to extend

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

federal protection to the resources, including "resources related to subsistence needs" (16 U.S.C. 3101(b))', of public lands in Alaska that are subject to federal jurisdiction. So interpreted, Title VIII extends protection to the subsistence culture of rural Alaskans who traditionally have fished certain waters appurtenant to lands owned by the United States as well as those who traditionally have hunted on certain lands owned by the United States. It is clear that Congress intended the statute's protection to extend to both subsistence hunting and subsistence fishing.

**B. Defining "public lands" to include waters in which the United States has reserved appropriate rights is consistent with the law and the purposes of ANILCA Title VIII.** - With regard to the park in which the fishery that is the subject of this case is located, the district court held (slip op. 32, ER 84) that "it is clear that an unquantified amount of water appurtenant to the park was reserved for the purpose of providing rural Alaskans with the opportunity to pursue their subsistence rights under Title VIII." The State does not address this holding, and instead argues that Congress could not *12 have intended ANILCA's protection of subsistence fishing to extend to such waters because (AK Br. 15-20) it is awkward and administratively cumbersome, because (AK Br. 12-13) it would lead to absurd results and because (AK Br. 21) under the "clear statement doctrine," Congress cannot be found to have intended to alter the balance of state and federal regulatory authority over subsistence fishing. None of these objections is supportable, however.

As discussed in the United States' answering brief in the related matter of Alaska v. Babbitt. 9th Cir. No. 94-35480 (U.S. Br. 19), ANILCA Title VIII contains a clear statement, confirmed in its "savings" provision (16 U.S.C. 3124), that with regard to subsistence use of wildlife on public lands, there is a change in the state-federal relationship. The statement that "the taking of fish and wildlife on public lands for nonwasteful subsistence uses shall be accorded priority ***," 16 U.S.C. 3114 (emphasis supplied), clearly indicates Congressional intent to include waters as part of "public lands," and that federal law will preempt State regulatory authority to the extent necessary to ensure the subsistence priority.

By interpreting the definition of a "public lands" to encompass appropriate reserved waters, the Court would not, as the State urges (AK Br. 12-13) introduce an awkward new use of the term "title." The federal reserved water rights at issue here are an incident of the United States' title to lands in Alaska. The reserved water rights doctrine holds that the United States impliedly owns the rights to water sufficient to effectuate the purposes for which lands were reserved. The United States' property interest in such reserved waters is recognized in general adjudications of water rights. See Colorado River Water Conservation District v. United States. 424 U.S. 800 (1976). Federal lands in Alaska have been reserved for such purposes as protection of fish habitat and subsistence fishing. *13 By including the impliedly reserved waters as "public lands," the Court would merely treat the waters necessary to the purposes of a reservation as a part of the reservation owned by the United States. Congress's intent to encompass them is expressed in section 102, whose inclusion "waters and interests therein" as part of the definition of "lands" is surplusage if "title" means "fee title."

For the same reason, interpreting "public lands" to include appropriate federal reserved waters would not lead to absurd results. Alaska offers an all-or-nothing approach to interests short of fee title (AK Br. 12) that would require application of the priority wherever the federal government acquired so much as a tax lien. There is no requirement that "interests" be read in this overbroad manner. The interpretation urged by the United States would effectuate the statute's purpose by including the United States' reserved rights in navigable waters appurtenant to lands reserved by the federal government for purposes that encompass subsistence

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fishing. It would not give the preference unbridled applicability to any and all "interests" in lands or waters that the United States might acquire.

In establishing ANILCA's three-tiered definition of "public lands," Congress clearly intended that there would be areas in Alaska that were public lands and areas that were not public lands. Because the federal subsistence use priority is effective only on public lands, it is clear that Congress expected the federal priority to be applicable only to some lands and waters in Alaska. Just as it is unreasonable to say, as the State does, that Congress intended such a narrow definition as to exclude virtually all significant locations for the taking of fish resources for subsistence purposes, it is unreasonable to *14 assert, as do the plaintiffs, that Congress intended to apply the federal priority to virtually all waters where subsistence fishing occurs.

Finally, with regard to the State's concern with the difficulties inherent in locating the boundaries of federal jurisdiction under the reserved rights theory (AK Br.18-20), there is no question that the undertaking is likely to be a complex one. This administrative burden, of course, is the result of the State's unanticipated inability to implement the subsistence priority statewide. The desirability of a uniform State-administered program was clearly acknowledged in the legislative history (see, e.g., H.R. Rep. No. 97, Part I, 96th Cong. 1st sess., 231 (1979)). But, in the absence of the preferable federal-state partnership, there is no legal impediment to interpreting "public lands" subject to the federal subsistence preference to include appropriate federal reserved waters. The determination of the existence and extent of appropriate interests in waters is a matter for the agencies to determine in the first instance, and it is well within the agencies' competence to make these determinations.

CONCLUSION

For the foregoing reasons, and those stated in our opening brief, the district court's interlocutory order holding that "public lands" for purposes of ANILCA Title VIII includes all navigable waters in Alaska should be reversed. To the extent that the district court concluded that "public lands" includes waters in which the United States holds reserved water rights for purposes encompassing subsistence fishing, the order should be *15 affirmed, and the case should be remanded to the agencies for implementation of a program for providing the required preference on "public lands."

Katie JOHN, et al., Plaintiffs-Appellees, v. UNITED STATES OF AMERICA, et al., Defendants-Appellants.
1994 WL 16057704 (C.A.9)

Briefs and Other Related Documents (Back to top)

- 1994 WL 16012379 (Appellate Brief) Reply Brief of Appellant State of Alaska (Nov. 22, 1994) Original Image of this Document with Appendix (PDF)
- 1994 WL 16012450 (Appellate Brief) Brief for Appellees Alaska Federation of Natives and Katie John, et al. (Oct. 21, 1994) Original Image of this Document (PDF)
- 1994 WL 16012376 (Appellate Brief) Brief for the Federal Appellees (Oct. 18, 1994) Original Image of this Document (PDF)
- 1994 WL 16058590 (Appellate Brief) Brief for Appellees Katie John, et al., and Alaska Federation of Natives (Oct. 17, 1994) Original Image of this Document (PDF)
- 1994 WL 16058811 (Appellate Brief) Brief of Amici Curiae States of Arizona, California, Idaho, Montana, and Oregon (Oct. 17, 1994) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 16057704 (C.A.9)
**(Cite as: 1994 WL 16057704)**

Page 10

- 1994 WL 16012377 (Appellate Brief) Brief for Appellant State of Alaska (Sep. 20, 1994) Original Image of this Document (PDF)
- 1994 WL 16012378 (Appellate Brief) Brief of Amici Curiae State of Arizona, California, Idaho, Montana, Nevada, and Oregon (Sep. 20, 1994) Original Image of this Document (PDF)
- 1994 WL 16058810 (Appellate Brief) Brief for the Federal Appellants (Sep. 19, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.