# EXHIBIT A-6

Westlaw.

1994 WL 16012376 (C.A.9)  Page 1
(Cite as: 1994 WL 16012376)

For Opinion See 72 F.3d 698, 54 F.3d 549Briefs and Other Related Documents
United States Court of Appeals,
Ninth Circuit
STATE OF ALASKA, Plaintiff-Appellant,
v.
Bruce BABBITT, et al., Defendants-Appellees.
No. 94-35480.
October 18, 1994.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

Brief for the Federal Appellees

Of Counsel: Sandra Ashton, David Gayer, Office of the Solicitor, U.S. Dept. of the Interior, Washington, D.C.Robert Maynard, Assistant Regional Counsel, U.S. Department of Agriculture, Juneau, Alaska 99802Lois J. Schiffer, Assistant Attorney GeneralDean K. Dunsmore, J. Carol Williams, Elizabeth Ann Peterson, Attorneys, Department of Justice, Env't and Natural Res. Division, Washington, D.C. 20530, (202) 514-3888

*i INDEX

Opinion Below ... 1

Jurisdiction ... 1

  A. District Court Jurisdiction ... 1

  B. Court of Appeals Jurisdiction ... 1

Issues Presented ... 2

Statement ... 2

  A. The subsistence preference ... 4

  B. Federal regulation of subsistence hunting and fishing on public lands ... 6

  C. The history of this case ... 7

Argument ... 8

I. The Standard Of Review ... 9

II. The Plain Language of The Statute Directs The Secretary To Provide The Subsistence Preference And Authorizes The Secretary To Promulgate Regulations Necessary To Carry Out This Responsibility ... 10

  A. ANILCA preempts state authority to regulate customary and traditional subsistence uses of wild, renewable resources on public lands, unless the State

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C:\Documents and Settings\jap\Local Settings\Temporary Internet Files\OLK72\72 F3d 698 Brief for the Federal Appellees 10-18-94 (590136).DOC

enacts and implements legislation conforming to the requirements set out in ANILCA section 805 ... 10

B. This Court has previously recognized that the plain language of ANILCA Title VIII authorizes federal administration of the subsistence priority ... 13

III. To The Extent That The Statute Is Ambiguous, The Agencies' Interpretation Is Reasonable And Entitled To Deference ... 14

A. ANILCA expressly provides for the Secretaries' exercise of their administrative authority as federal land managers to provide the preference for nonwasteful subsistence use of renewable resources by rural Alaskans ... 14

B. ANILCA's plain language acknowledges that its direction to the federal land managers to exercise fish and game management authority shifts the traditional balance of authority between state and federal regulators ... 18

C. The statute must be interpreted to require that State management of the subsistence preference may supersede the federal administrative structure only pursuant to conforming State legislation ... 20

D. Neither the statute nor its legislative history contains any statement to the effect that the Secretaries are not authorized to effectuate the responsibilities delegated to them under the statute ... 24

*ii IV. The Definition Of "Public Lands" In ANILCA Includes Some, But Not All, Navigable Waters ... 29

Conclusion ... 34

Statement of Related Cases ... 35

Certificate Of Service ... 36

CITATIONS

**CASES:**

Amoco Production v. Gambell, 480 U.S. 531 (1987) ... 33

Arizona v. California, 373 U.S. 546 (1963) ... 32

Board of Natural Resources v. Brown, 992 F.2d 937 (9th Cir. 1993) ... 21

Bobby v. State of Alaska, 718 F. Supp. 764 (D. Alaska 1989) ... 5

Chemical Manufacturers Assoc. v. Natural Resources Defense Council, 470 U.S. 116 (1983) ... 9, 14

Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984) ... 9, 14

City of Angoon v. Hodel, 803 F.2d 1016 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987) ... 30

Colville Confederated Tribes v. Walton, 647 F.2d 42 (9th Cir.), cert. denied, 454 U.S. 1092 (1981) ... 32

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Defenders of Wildlife v. Andrus*, 627 F.2d 1238 (9th Cir. 1980) ... 12, 15

*Geer v. Connecticut*, 161 U.S. 519 (1896) ... 15

*Hodel v. Virginia Surface Minin & Recl. Assn., Inc.*, 452 U.S. 264 (1981) ... 22

*Hughes v. Oklahoma*, 441 U.S. 322 (1979) ... 15

*Hunt v. United States*, 278 U.S. 96 (1928) ... 17

*Katie John, et al. v. United States*, Civ. No. A90-484 (D. Alaska) ... 7

*Katie John, et al. v. United States*, Ninth Cir. No. 94-35481 ... 7, 33

*Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312 (9th cir. 1988), cert. denied, 491 U.S. 905 (1989) ... Passim

*Kleppe v. New Mexico*, 426 U.S. 529 (1976) ... 15, 17, 18

*Madera Irrigation District v. Hancock*, 985 F.2d 1397 (9th Cir. 1993) ... 23

*Madison v. Alaska Department of Fish and Game*, 696 P.2d 168 (Alaska 1985) ... 5

*McDowell v. State of Alaska*, 785 P.2d 1 (Alaska 1989) ... 6, 15

*Missouri v. Holland*, 252 U.S. 416 (1920) ... 15

*Native Village of Quinhagak*, 9th Cir. No. 93-35496, slip op. at 46, 1994 WL 469875 at p. 8 (9th Cir. (Alaska)) ... 22

*New Mexico State Game Commission v. Udall*, 410 F.2d 1197 (1969) ... 17

*iii *New York v. United States*, 112 U.S. 2408 (1992) ... 21

*Robertson v. Methow Valley Citizens' Council*, 490 U.S. 332 (1989) ... 29

*United States v. Adair*, 723 F.2d 1394 (9th Cir. 1984), cert. denied, 467 U.S. 1252 (1984) ... 32

*United States v. New Mexico*, 438 U.S. 696 (1978) ... 32

*United States v. San Francisco*, 310 U.S. 16 (1940) ... 18

***STATUTES, RULES and REGULATIONS:***

Alaska National Interest Lands Conservation Act,

  Section 102, 16 U.S.C. 3102 ... 30, 33, 34

  Section 803, 16 U.S.C. 3113 ... 4, 12, 16

  Section 804, 16 U.S.C. 3114 ... Passim

  Section 805(a)(3)(D), 16 U.S.C. 3115(a)(3)(D) ... 16

  Section 805(c), 16 U.S.C. 3115(c) ... 12, 16, 27

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 805(d), 16 U.S.C. 3115(d) ... Passim

Section 807, 16 U.S.C. 3107 ... 26

Section 814, 16 U.S.C. 3124 ... 11, 16

Section 801(d) ... 2

Section 805 ... 12, 16

Section 805(a) ... 27

Section 1314 ... 19, 25, 28

Section 1314(a) ... 25

16 U.S.C. 3101 et seq. ... 2

16 U.S.C. 3105 ... 10

16 U.S.C. 3111 ... 2, 16

16 U.S.C. 3112(3) ... 12

16 U.S.C. 3115 ... 11, 16

16 U.S.C. 3115(a)(3) ... 11

16 U.S.C. 3115(c) ... 11

16 U.S.C. 3202 ... 19, 25, 28

28 U.S.C. 1331 ... 1

28 U.S.C. 1292 ... 2

Fed. R. App. P. 5(b) ... 2

50 C.F.R. 100.3(b) ... 6

55 Fed. Reg. 27,114 ... 6

57 Fed. Reg. 22,940 (May 29, 1992) ... 6

57 Fed. Reg. 22,942 (May 29, 1992) ... 6

**MISCELLANOUS**:

126 Cong. Rec. H11114 col. 2 ... 26

126 Cong. Rec. S25130 col. 1 ... 26

*1 OPINION BELOW

The unpublished decision of the district court (Honorable H. Russel Holland) appears at entry number 184 of the Clerk's Record (C.R. 184) and at p.1 of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Excerpts of Record (ER 1).

## JURISDICTION

**A. *District Court Jurisdiction*.** -- The district court had jurisdiction pursuant to 28 U.S.C. 1331.

**B. *Court of Appeals Jurisdiction*.** -- This court granted the State's petition for permission to appeal from an interlocutory ruling of the district court, pursuant to *2 Fed. R. App. P. 5(b), by order dated May 17, 1994. This Court has jurisdiction pursuant to 28 U.S.C. 1292(b).

## ISSUES PRESENTED

1. Whether, in the event of the State's failure to enact legislation consistent with the requirements of Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. 3114, the United States is authorized to administer the priority for nonwasteful subsistence use of wild, renewable resources on public lands in Alaska provided in section 804 of ANILCA.

2. Whether "public lands" as defined by ANILCA includes navigable waters.

## STATEMENT

This case presents a challenge to the federal government's authority to implement the provisions of Title VIII of the Alaska National Interest Lands Conservation Act, 16 U.S.C. 3101 et seq., which accord a priority for the taking, on public lands, by rural Alaska residents, of wild, renewable resources for nonwasteful subsistence purposes. The statute provides, Section 801(d), 16 U.S.C. 3111, that: in order to fulfill the policies and purposes of the Alaska Native Claims Settlement Act and as a matter of equity, it is necessary for the Congress to invoke its constitutional authority under the property clause and the commerce clause to protect and provide the opportunity for continued subsistence uses on the public lands by Native and non-Native rural residents.

*3 Accordingly, section 804 of the Act, 16 U.S.C. 3114, states that the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded a priority over the taking of fish and wildlife on such lands for other purposes. 16 U.S.C. 3114.

In this case the State of Alaska challenges the United States' authority to manage a program for administering the priority established by the statute. The State argues that ANILCA Title VIII requires the State of Alaska to provide a priority for subsistence use of fish and wildlife on public lands, regardless of the State's enactment of conforming State legislation. The statue, however, sets out exacting conditions under which state law is to be permitted to supersede the federal statute's provisions, which require, *inter alia*, that the state law provide the same preference for subsistence uses as ANILCA section 804. Alaska argues that regardless of its compliance with this condition, ANILCA requires that the preference be administered by the State, as directed by the federal courts in individual cases, and not by the federal government.

The district court rejected the State's remarkable construction, and affirmed the agencies' determination that ANILCA authorizes the United States to establish a program for regulation of subsistence hunting and fishing in Alaska. The district court held, however, that the federal regulators' interpretation of "public lands"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unreasonably restricted the *4 geographic scope of the federal program. The following is a brief history of the challenged regulatory program.

**A. The subsistence preference.** -- ANILCA section 804, 16 U.S.C. 3114, accords the taking of fish and wildlife by rural Alaska residents on public lands for nonwasteful subsistence uses a priority over the taking of fish and wildlife for other purposes. Section 803, 16 U.S.C. 3113, defines the term "subsistence uses" as:
[T]he customary and traditional uses by rural Alaska residents of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools or transportation; for the making and selling of handicraft articles out of nonedible by-products of fish and wildlife resources taken for personal consumption; for barter, or sharing for personal or family consumption; and for customary trade.

The statute provides that if, within one year of ANILCA's enactment, the State: enacts and implements laws of general applicability which are consistent with, and which provide for the definition, preference and participation specified in sections 803, 804, and 805 [of ANILCA], such laws, unless and until repealed, shall supersede such sections insofar as such sections govern State responsibility * * * for the taking of fish and wildlife on the public lands for subsistence uses.

section 805(d), 16 U.S.C. 3115(d). See *Kenaitze Indian Tribe v. State of Alaska,* 860 F.2d 312 (9th Cir. 1988), cert. denied, 491 U.S. 905 (1989). Both the State and the federal government therefore anticipated at the time of ANILCA's enactment that the *5 provisions of Title VIII would be administered by the State of Alaska pursuant to a State program approved and monitored by the United States.

By the time of ANILCA's enactment in 1980, Alaska had adopted a statute conforming generally to ANILCA's requirements for management of subsistence uses of fish and wildlife. But, although the State's statute provided a priority for nonwasteful subsistence use of wild, renewable resources, eligibility for the preference was not limited, as required by ANILCA, to "rural Alaska residents." The State therefore promulgated regulations limiting eligibility for the priority to rural residents. After review and approval of the State program by the Secretaries of the Interior and Agriculture, the State became responsible for all regulation of subsistence use of wild renewable resources under the statute on May 14, 1982.

In 1985, however, the Alaska Supreme Court invalidated the state regulations governing eligibility for subsistence fishing. *Madison v. Alaska Department of Fish and Game,* 696 P.2d 168 (Alaska 1985). Without the regulations, the State's subsistence priority was extended to rural and urban Alaskans alike, although ANILCA requires a priority available only to "rural" Alaska residents. The Secretary of the Interior therefore withdrew the State program's certification, pending enactment of State subsistence legislation consistent with ANILCA. *Kenaitze Indian Tribe v. State of Alaska,* supra, 860 F.2d at 314; *Bobby v. State of Alaska,* 718 F. Supp. 764, 766-68 (D. Alaska 1989).

*6 The State then enacted amended subsistence legislation to remedy the inconsistency with Title VIII. In 1989, however, the Alaska Supreme Court concluded, in *McDowell v. State of Alaska,* 785 P.2d 1 (Alaska 1989), that the amended state subsistence statute violated the Alaska state constitution, which prohibits the State from affording a preference for the use of renewable resources on the basis of residency. Because ANILCA expressly reserves the priority for "rural" Alaska residents, the State was unable to conform its legislation to ANILCA

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

without violating the state constitution's ban. As a result, the United States Department of Agriculture and the United States Department of the Interior undertook implementation of ANILCA Title VIII on "public lands" on July 1, 1990.

**B. *Federal regulation of subsistence hunting and fishing on public lands.*** -- The United States Departments of the Interior and Agriculture jointly published temporary subsistence management regulations on June 29, 1990 (55 Fed. Reg. 27,114). The regulations provided that their application generally was limited to "all public lands including all *non-navigable* waters located on these lands." 50 C.F.R. 100.3(b) (emphasis added). The final regulations (57 Fed. Reg. 22, 940 at 22, 942 (May 29, 1992)) made no significant change in this interpretation of the scope of federal authority, although they specified that certain navigable waters were public lands by virtue of pre-statehood reservations of lands encompassing water bodies whose beds *7 therefore did not pass to the State under the equal footing doctrine.

**C. *The history of this case.*** -- The State of Alaska brought this action challenging the federal government's authority to manage subsistence uses of fish and game pursuant to ANILCA Title VIII on February 27, 1992. The State's challenge consisted of three counts. In its first count, the State alleged that the federal subsistence regulations attempted to apply the priority contained in ANILCA Title VIII on waters that are not "public lands" as defined by the statute. The State's second count detailed particular waters allegedly "off public lands" over which the federal regulations had asserted jurisdiction to regulate subsistence. Finally, Alaska claimed that the comprehensive nature of the federal subsistence regulations impermissibly diminished the State's authority to manage fish and wildlife.

The first two counts of the State's complaint raised issues that were also the subject of litigation in *Katie John, et al. v. United States,* Civ. No. A90-484, (D. Alaska), a separate challenge to the federal subsistence regulations to which both the State and the United States were parties. This case was consolidated with *Katie John* in the district court on May 15, 1992 (CR 71). The State moved for partial summary judgment (CR 113) on the issue contained in the third count of its Complaint -- its claim that the federal government had no authority to administer the subsistence priority on federal lands and that the *8 State was exclusively authorized by the statute to regulate hunting and fishing on public lands -- on March 19, 1993. The court heard oral argument on the motion on October 20, 1993, and ordered supplemental briefing on the issue on November 22, 1993.

On March 30, 1994, the district court issued its decision on the motion, holding that the federal government had permissibly interpreted ANILCA Title VIII as authority for federal administration of the subsistence priority. It accordingly dismissed the third count of the State's complaint in this action. This Court granted permission for the State's interlocutory appeal from the district court's ruling on May 20, 1994 (CR 189).

                            ARGUMENT

The district court held that the United States' interpretation of ANILCA, which includes its conclusion that the federal government is both authorized and required to regulate the taking of fish and game on public lands as necessary to assure the provision of the priority for subsistence uses, reflects a permissible construction of the language of Title VIII (Order at 18; ER 18). As we discuss below, ANILCA Title VIII clearly reveals Congress' intent to confer upon the Secretaries authority to regulate hunting and fishing on public lands as necessary to assure the subsistence priority. To the extent that its language is ambiguous, the Secretaries' construction is, as the district court correctly concluded (Order at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21; ER 21), both authorized and reasonable.

*9 I

THE STANDARD OF REVIEW

When a court reviews an agency's construction of a statute that it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984). If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *Id.* at 843. The Court's task, therefore, is first to determine whether the statute reveals the intent of Congress with regard to the question whether the United States may regulate hunting and fishing on public lands as necessary to assure the provision of the priority. If the statute fails to address the question directly, the Court must review the Secretaries' interpretation to determine whether it reflects a permissible construction of the statute. The Court should defer to the Secretaries' construction "unless the legislative history or the purpose and structure of the statute clearly reveals a contrary intent on the part of Congress." *Chemical Manufacturers Assoc. v. Natural Resources Defense Council*, 470 U.S. 116, 126 (1983).

*10 II

**THE PLAIN LANGUAGE OF THE STATUTE DIRECTS THE SECRETARY TO PROVIDE THE SUBSISTENCE PREFERENCE AND AUTHORIZES THE SECRETARY TO PROMULGATE REGULATIONS NECESSARY TO CARRY OUT THIS RESPONSIBILITY**

ANILCA Title VIII requires that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes." 16 U.S.C. 3114. The statute sets out the requirements for certain components of the administrative structure for providing this priority, and places the duty of taking action to provide it on "the Secretary" (16 U.S.C. 3105). The statute requires the establishment of subsistence resource regions, local advisory committees, and regional councils, and delineates their respective responsibilities. It requires "the Secretary," with certain exceptions, to "adopt" recommendations from these administrative bodies to implement a strategy for providing the preference. The clear import of the implementation provisions of Title VIII is that the Secretary has a duty to manage fish and wildlife on public lands as necessary to provide the subsistence priority.

**A. *ANILCA preempts state authority to regulate customary and traditional subsistence uses of wild, renewable resources on public lands, unless the State enacts and implements legislation conforming to the requirements set out in ANILCA section 805.*** -- ANILCA contains a comprehensive grant of responsibility and authority to the federal land managing agencies for management of fish and wildlife on the public lands as necessary *11 to preserve the subsistence way of life of rural Alaskans. It mandates (16 U.S.C. 3115) the creation of an administrative structure that builds upon the personal knowledge of rural Alaskans concerning subsistence uses and needs: "[T]he Secretary in consultation with the State shall establish" regional advisory councils responsible for reviewing regulatory and management proposals, hearing the views of interested persons, and reporting to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Secretary on subsistence uses and needs, and on "recommendations concerning policies, standards, guidelines and regulations to implement" a "strategy for the management of fish and wildlife populations within the region to accommodate such subsistence uses and needs." 16 U.S.C. 3115(a)(3).

The Secretary "shall consider the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses." 16 U.S.C. 3115(c). If the Secretary finds that a council recommendation "is not supported by substantial evidence, violates recognized principles of fish and wildlife conservation or would be detrimental to the satisfaction of subsistence needs," he "may choose" not to follow such recommendation (id.). In that event, however, he must "set forth the factual basis and the reasons for his decision" not to implement the council's recommendation (id.). Pursuant to ANILCA section 814, 16 U.S.C. 3124, the Secretary "shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this title." The statute further mandates *12 that "the federal land managing agencies, in managing subsistence activities on the public lands and in protecting the continued viability of all wild renewable resources in Alaska, shall cooperate with adjacent landowners and land managers." 16 U.S.C. 3112(3).

This partial preemption of the State's traditional management authority over hunting and fishing on federally owned lands and waters (see *Defenders of Wildlife v. Andrus*, 627 F.2d 1238, 1248 (9th Cir. 1980)) can be superseded, however, "if within one year from the day of enactment of this Act, the State enacts and implements laws of general applicability which are consistent with and provide for the definition, preference and participation specified in sections 803, 804, and 805" of ANILCA. In that case, the statute provides that State law would govern the entire program, including its administrative structure and definitions, but must do so according to the requirements of Section 805(d), which requires that the definitions and preference and participation provisions of the State law must be those "specified in sections 803, 804, and 805" of the federal statute. Section 805(d) also specifies requirements for a State rulemaking authority that are identical to the requirements set out in section 805(c) for the Secretary as administrator of the federal program.

In the absence of state legislation conforming to the requirements of section 805, however, the directive to provide for the administration of the subsistence preference is *13 clearly to the Secretary. In directing the Secretaries to use their administrative authority over public lands in considering and adopting regional advisory committee reports and recommendations, Congress spoke directly to the question whether the Secretaries are authorized to regulate taking of fish and wildlife pursuant to ANILCA Title VIII. There was no need for additional language in the statute that explicitly directed federal implementation of the priority on federally managed lands; the statute's authorization is complete on its face.

B. *This Court has previously recognized that the plain language of ANILCA Title VIII authorizes federal administration of the subsistence priority.* -- This Court previously has ruled on the respective responsibilities of the state and federal governments pursuant to ANILCA Title VIII. *Kenaitze Indian Tribe v. State of Alaska, supra,* 860 F.2d 312 (9th Cir. 1989). In *Kenaitze*, this Court ruled that "[t]he Secretary's responsibility in administering the Act includes an initial certification that the state has implemented a statute that complies with ANILCA and that federal regulation should accordingly be withheld." *Kenaitze, id.,* at 315. In the event that Alaska refuses to regulate according to the requirements of Title VIII, this court stated that "the Department of the Interior will step in and do the job. The state's role is thus more accurately characterized as supplanting the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

federal regulatory scheme, rather than implementing it." *Id.* at 316, and see *id.* at 318, n.8. The State's brief omits any reference to this controlling precedent.

*14 III

TO THE EXTENT THAT THE STATUTE IS AMBIGUOUS, THE AGENCIES' INTERPRETATION IS REASONABLE AND ENTITLED TO DEFERENCE

Even if this Court were to determine that Congress has not directly addressed the precise question at issue, it would be required to affirm the Secretaries' interpretation, under Chevron, U.S.A. v. Natural Resources Defense Council, supra, 467 U.S. at 843. Under Chevron, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. The Court should defer to the agencies' construction "unless the legislative history or the purpose and structure of the statute clearly reveals a contrary intent on the part of Congress." Chemical Manufacturers Assoc. v. Natural Resources Defense Council, 470 U.S. 116, 126 (1983). The Secretaries' construction here, as the district court correctly found, (ER 18), "may be the *only* reasonable one" (emphasis supplied), and is "certainly" among the permissible interpretations of the statute. (*id.*). Indeed, the interpretation adopted by the Secretaries and affirmed by the district court is the same interpretation that was adopted and espoused by the State itself for many years, beginning in 1981 (see CR 38 at 19 n.7; CR 131 Exhibits 5; 6 at 7, 9-10; 7 at 6-7; 8 at 4-9; 10 at 3; 11 at 10-13).

A. *ANILCA expressly provides for the Secretaries' exercise of their administrative authority as federal land *15 managers to provide the preference for nonwasteful subsistence use of renewable resources by rural Alaskans.* -- It is undisputed that the State cannot enact laws of general applicability that provide the preference specified in section 804, because its constitution prohibits any such preference based on residence. McDowell v State, supra, 785 P.2d 1. The agencies and the district court therefore reasonably concluded that the statute *requires* the Secretaries to administer a program to ensure provision of the priority for nonwasteful subsistence uses on federal lands. Alaska contends that, despite the State's inability to provide the required preference, the statute prohibits the federal government from undertaking a program to implement the preference. This contention is entirely without support.

Fish and game traditionally have been regulated by states, and not by the federal government. Geer v. Connecticut, 161 U.S. 519 (1896)). The states' power to regulate wild animals within their boundaries, however, exists "only so far as such protection * * * does not contravene the power of Congress in the regulation of interstate commerce." Hughes v. Oklahoma, 441 U.S. 322 (1979). And the United States may, in the exercise of its powers under the property clause, regulate and protect wildlife and may pass laws that pre-empt State management of fish and game on federal lands. Kleppe v. New Mexico, 426 U.S. 529 (1976); Defenders of Wildlife v. Andrus, supra, 627 F.2d at 1248. And see Missouri v. Holland, 252 U.S. 416 (1920) (upholding the *16 constitutionality of the Migratory Bird Treaty Act) ("it is true that as between a State and its inhabitants the State may regulate the killing and sale of [fish and wildlife], but it does not follow that its authority is exclusive of paramount powers"). In ANILCA, Congress invoked its authority under the property clause as well as the commerce clause and Congress' constitutional authority to provide for Native American affairs, to protect the national interest in preserving the subsistence way of life of rural Alaskans (16 U.S.C. 3111). It directed the Secretaries to use their administrative authority over public lands to adopt the recommendations of the regional advisory councils "concerning the taking

of fish and wildlife on the public lands within their respective regions for subsistence use" (section 805(c), 16 U.S.C. 3115(c). Those recommendations must include (Section 805(a)(3)(D), 16 U.S.C. 3115(a)(3)(D)) a strategy for the management of fish and wildlife populations that will accommodate current and anticipated subsistence uses, and "recommendations concerning policies, standards, guidelines and regulations to implement the strategy." The statute allows the Secretaries some discretion *not* to adopt council recommendations (16 U.S.C. 3115(c)). The Secretary thus is both authorized (16 U.S.C. 3124) and required (16 U.S.C. 3115) to engage in regulation of fish and wildlife for subsistence use on public lands, unless the State enacts and implements laws of general applicability that comply with the terms of section 805(d), 16 U.S.C. 3115(d).

*17 Alaska contends that section 805 clearly authorizes the State to implement the requirements of sections 803, 804 and 805, either through its own legislation or by implementing ANILCA directly. Alaska argues that the Secretary's authority is limited to the "exercise of its monitoring and other administrative authority." It concludes, therefore, that Congress intended that the State manage implementation of the priority, with or without appropriate state legislation, and that the Secretaries' only task was to monitor and report on their compliance with the statute's requirements. But the State overlooks the breadth of the Secretaries' authority as managers of the public lands.

The Courts have held that even without express Congressional authorization, the Secretaries' authority to manage and protect public lands inherently includes administrative authority to allow the taking of wildlife on public lands, without the consent of the state regulatory authority. *Hunt v. United States*, 278 U.S. 96 (1928). This administrative authority also includes the authority to allow the taking of wildlife without the consent of the state regulatory authority in order to obtain information needed as a basis for management decisions affecting the preservation and protection of public lands. *New Mexico State Game Commission v. Udall*, 410 F.2d 1197 (1969).

In ANILCA Congress expressly stated that the taking of fish and wildlife on public lands for nonwasteful subsistence uses "shall be accorded a priority" over taking of fish and wildlife for other uses. Congress's authority over public lands *18 pursuant to the Property Clause includes the authority to override state fish and game regulation where necessary to provide for the preservation of national interest goals. See *Kleppe v. New Mexico*, supra, at 540. Indeed, the courts have held that the property Clause authority over public lands is "without limitations." *United States v. San Francisco*, 310 U.S. 16, 29 (1940). In ANILCA Title VIII, Congress expressly authorized the federal administration of subsistence uses of fish and wildlife on public lands as a means of protecting the national interest in preserving the subsistence way of life. By directing the use of the Secretaries' inherent administrative authority to implement the administrative structure mandated in the Statute, Congress clearly intended to authorize the Secretaries to manage the program, unless it was supplanted by conforming state legislation.

B. *ANILCA's plain language acknowledges that its direction to the federal land managers to exercise fish and game management authority shifts the traditional balance of authority between state and federal regulators.* -- The State asserts that the "plain language" of the statute demonstrates that Congress intended that all management of hunting and fishing on federally owned "public lands" be administered by the State, *whether or not* it had fulfilled the requirements of section 805(d). It argues that the supersedure provision of section 805(d) determines only whether the State operates under its own equivalent laws or is governed directly by the provisions of section 805(d). The *19 statute's language and structure manifestly contradict the State's interpretation, however.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The State rests its argument that the statute maintains the status quo with regard to management authority over hunting and fishing on the statute's "savings" provision regarding taking of fish and wildlife, which provides (ANILCA section 1314; 16 U.S.C. 3202) that:
(a) Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands *except as may be provided in title VIII of this Act*, or to amend the Alaska Constitution.
(b) *Except as specifically provided otherwise by this Act*, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the management of the public lands.

The State asserts (Br. 6) that Title VIII grants the Secretary no authority to manage subsistence uses of fish and game on public lands, and argues that the purpose of section 1314 is to "protect against misinterpretation" -- that is, against an interpretation that accounts for the Secretary's duty to provide the priority established in section 804 -- of Title VIII. But the clear import of section 1314 is to the contrary. If section 1314 were intended to establish that *no* authority had changed hands by virtue of Title VIII, there would have been no reason to distinguish Title VIII from the remainder of the statute. Precisely because Title VIII *does* alter the traditional balance, by requiring the Secretaries to take actions to protect customary and *20 traditional subsistence uses of fish and game on public lands that would otherwise be governed by State law, section 1314 acknowledges this shift, and clarifies that it is limited to the subsistence provisions of the statute.

The State interprets section 1314 to state that ANILCA's division of authority between the state and federal sovereigns maintains the status quo. Section 1314, however, states that Alaska's authority to manage fish and wildlife on public lands is unaffected *except as may be provided by Title VIII*. As interpreted by the State, this proviso in section 1314 is confusing surplusage. Such a construction is patently unreasonable.

C. *The statute must be interpreted to require that State management of the subsistence preference may supersede the federal administrative structure only pursuant to conforming State legislation.* -- Under the State's interpretation of the statute, the consequence of the State's failure or inability to enact statewide legislation ensuring the subsistence preference defined in section 804 is that the State must implement federal law directly. The State's brief attempts to establish that Congress intended that State agencies responsible for regulating hunting and fishing in Alaska be responsible for implementing both the non-conforming State program on non-public lands and the priority for rural Alaska residents provided by federal law on federal lands. The State asserts that Congress set out ANILCA's definitions and preference and participation requirements as *21 mandates for *state* regulators and as guidelines for the federal courts to observe in enforcing ANILCA against the State. But Congress does not govern state regulators.

The Supreme Court has recently addressed the limits on Congress' constitutional authority to compel state regulators to conduct federally-mandated regulatory programs. *New York v. United States*, 112 U.S. 2408 (1992). Pursuant to the Tenth Amendment, the Court stated, Congress may not "commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *New York v. United States*, at 2420. It explained that "[w]hile Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York, id.*, at 2421. Rather, "even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Id.* at 2423; <u>Board of Natural Resources v. Brown, 992 F.2d 937, 947 (9th Cir. 1993)</u>.

In this case, there is no question of the federal government's authority to pass laws requiring and prohibiting acts affecting preservation of public lands: Congress has unquestionable authority under the Property Clause to provide for the preservation of lands owned by the United States. In Alaska, *22 history and custom have established the use of lands that are now federal public lands by Alaska Natives and others engaged in the subsistence way of life. Congress clearly expressed its intent to protect the human, as well as the fish and wildlife, resources of these public lands. The Secretaries and the district court have reasonably interpreted the statute to require federal regulation to effectuate the statute's purposes in the absence of State legislation consistent with the requirements of section 805(d).[FN1]

> FN1. The State's brief at pp.9-10 offers the suggestion that Alaska law provides opportunities for subsistence hunting and fishing that are nearly equivalent to the exercise of the rights provided by ANILCA Title VIII. This Court has expressed its strong disagreement with this characterization of State regulation on more than one occasion. *Native Village of Quinhagak*, 9th Cir. No. 93-35496, <u>slip op. at 10246, 1994 WL 469875 at p. 8 (9th Cir. (Alaska))</u>; <u>Kenaitze Indian Tribe v. State, supra, 860 F.2d at 318</u>.

Moreover, although Congress invoked its powers under the Commerce Clause and its constitutional authority to provide for Native affairs, it did not seek to preempt state regulation of fish and game generally. Instead, it mandated only that rural Alaska residents be accorded a priority for the nonwasteful subsistence use of fish and game *on* federal "public lands." Both the interstate commerce effects of hunting and fishing in Alaska and the national interest in providing for the preservation of the Native Alaskan way of life, which is largely subsistence-dependent, might well justify preemption of State fish and game regulation in Alaska. See <u>Hodel v. Virginia Surface Mining & Recl. Assn., Inc., 452 U.S. 264, 277 (1981)</u>. In *23 ANILCA Title VIII, however, Congress chose to exercise its preemptive power only to the extent of its authority under the property clause[FN2] to direct management of federally-owned lands by federal agencies to conform to the needs of the national interest in preserving the subsistence way of life. <u>Kleppe v. New Mexico, supra, 426 U.S. at 540</u>. It offered the State the option of providing appropriate fish and game management under state law, consistent with the requirements that imposed on the federal managers in the absence of conforming state legislation.

> FN2. For this reason, the "clear statement doctrine" is inapposite to ANILCA Title VIII. As discussed *infra*, pp. 32-33, Congress did not intend to exercise the full extent of the commerce power in establishing the subsistence preference in Alaska.

Under the State's construction, ANILCA would compel Alaska to implement the subsistence priority on public lands in violation of its own constitution. So construed, the constitutionality of ANILCA Title VIII is highly questionable. As this Court has already ruled, however, ANILCA has no such effect, precisely because administration of the subsistence preference on public lands is at the State's option. <u>Kenaitze Indian Tribe v. State of Alaska, supra, 860 F.2d at 318, n.8</u>

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1989). The first duty of the court is to interpret a statute in a constitutional manner, if possible. *Madera Irrigation District v. Hancock*, 985 F.2d 1397, 1401 (9th Cir. 1993). The State has asked this Court to go to the opposite extreme -- to ignore the clear language and intent of the statute in order to reach *24 conclusions that cast doubt on the constitutionality of a federal statute. This Court clearly must decline the State's invitation.

In *Kenaitze*, this Court concluded that the plain language of the statute provides a clear, consistent, and constitutional alternative: If, and only if, the State enacts and implements legislation that provides the same definitions and preference and participation requirements as the federal statute, the federal administrative structure established by section 805 may be superseded by State law. As this Court held in *Kenaitze Indian Tribe v. State of Alaska*, *id.*, at 316, the state is delegated no authority under ANILCA. As a separate sovereign, the state is at all times free to refuse to regulate; Congress could not compel it to do so. *Id.* As we stated earlier, this Court has held that "[t]he state's role is thus more accurately characterized as supplanting the federal regulatory scheme, rather than implementing it" *Id.* The district court correctly entered judgment consistent with this precedent.

**D. Neither the statute nor its legislative history contains any statement to the effect that the Secretaries are not authorized to effectuate the responsibilities delegated to them under the statute.** -- Despite its lengthy discussion of the question, the State's brief offers virtually no suggestion of Congressional intent *not* to authorize the Secretaries to implement the subsistence preference. The State painstakingly sifts through both the language and the legislative history of Title VIII, and offers crabbed interpretations of the congressional *25 language that do little to establish the "clear intent" claimed in the State's brief.

The centerpiece of the State's argument, discussed above, is its claim that section 1314 (16 U.S.C. 3202) does not acknowledge the Secretaries' responsibility for managing fish and wildlife on public lands pursuant to Title VIII. But section 1314(a)'s proviso regarding Title VIII explicitly *does* acknowledge that responsibility (see *supra*, pp. 18-19). And, as discussed above, the State reads far too narrowly (Br. 7) the Secretaries' "other administrative authority over public lands" in finding that section 805 authorizes the Secretaries only to monitor State implementation of the preference and not to implement the preference by establishing a federal administrative structure. The Secretaries have ample authority as land managers to take actions necessary to preserve the interests in these public lands that Congress has directed in Title VIII, both inherently and by virtue of the statute's directive to adopt recommendations for "policies, standards, guidelines and regulations," and its explicit authorization to promulgate regulations to carry out those responsibilities.

Alaska gives great weight to the fact that Congress amended an earlier version of the statute by removing a provision requiring the Secretaries to take action to enforce the statute where the State failed adequately to implement the subsistence preference. It infers from the fact that the final version provides a direct judicial remedy for persons aggrieved by State *26 action under Title VIII that Congress intended the Secretaries to have *no* role in managing fish and wildlife. But the statute's provision of a judicial, rather than a federal administrative, remedy for individual claims against the State for failure to provide the preference has no bearing on the question whether Congress intended the Secretaries to *implement* the preference. Moreover, the statute consistently refers to actions against the State *or* the federal government in its judicial enforcement provisions, clearly indicating its belief that either sovereign could ultimately assume the authority for implementing the subsistence preference (see section 807, 16 U.S.C.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3107).

The legislative history of Section 807, as finally enacted, consists of statements submitted by the floor managers of the bill in the both the House and the Senate. Those statements indicate that the purpose of the amendment to section 807 that eliminated the Secretaries' role in enforcement was to make the process less cumbersome by providing for direct suits against either the federal government or, as appropriate, the State. The final version of the statute simply provides the same enforcement mechanism regardless whether State law has superseded federal implementation of the preference. The legislative history specifically states that the amendments to Section 807 were not intended to diminish or enlarge the Secretaries' authority to protect subsistence uses. 126 Cong. Rec. H11114 col. 2 (daily ed. Nov. 21, 1980); 126 Cong. Rec. S25130 col. 1 (daily ed. Dec. 1, 1980).

*27 In addition, Section 807 provides specific jurisdiction to sue the federal government only with respect to Section 804. Any suit against the federal government with respect to duties under Sections 805, 806, 811 or 816 would have to be found in existing law. See 126 Cong. Rec. H11114, col. 3; S15130 col. 2. Section 807 is therefore rendered meaningless with regard to the federal government under the State's construction of the statute, which provides that the federal government has no duties under section 804.

The legislative history offers no clear statement of any kind that the Secretary was not intended to implement the preference if the State failed to do so. Instead, it discusses the respective roles of the federal and the state regulators *assuming that the State has enacted conforming legislation*. As the district court noted, at the time of ANILCA's enactment, Alaska had adopted a subsistence law that Congress used in drafting the statute, on the belief that the existing state law would supersede sections 803, 804 and 805(a) - (c). Nothing in the legislative history discusses the responsibility of either the State or the federal government in the event of the repeal of the State law.

The State's brief quotes language from the congressional committee reports to support the proposition that the Secretaries were intended *not* to implement the preference. The first of these quotations states that the Secretaries are to "give subsistence uses preferential consideration in their *28 management activities on the public lands which directly relate to the taking of fish and wildlife." This description of the Secretaries' authority is in no way inconsistent with the requirement that the Secretaries undertake implementation of the preference.

The second quoted statement (Br. 21), from the conference committee report, states that "the secretary of the Interior is not given authority to take over fish and game management from the State of Alaska." This statement reflects the concern of some parties that by requiring the preference the federal government sought to preempt state law regulating fish and game in its entirety. As discussed above, the legislation ultimately passed required the preference only on federal lands and offered the State the option of continuing its regulation of fish and game on federal lands, provided that it passed a statewide statute consistent with the requirements of Title VIII. The Senate Energy Committee report quoted in the State's brief also reflects concern that a federal subsistence preference requirement would result in federal preemption of fish and game management, and states that section 1314 (16 U.S.C. 3202) "reconciles" State authority to manage fish and game with the statute, "including the subsistence title." As discussed above, section 1314 provides:
(a) Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands *except as may be provided* *29 *in title VIII of this Act*, or to amend the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Alaska Constitution.

This provision clearly indicates that Title VIII *may* diminish the authority of the State for management of fish and wildlife on public lands.

The State asks the Court to reject the Secretaries' reasonable interpretation of their authority under Title VIII, on grounds that these portions of the statute and its history clearly reveal a contrary intent on the part of Congress. But, even if the Court agrees that these materials could be read to support the State's interpretation, nothing in any of the materials submitted by the State reveals that Congress intended *not* to allow a federal program to implement the preference. The Court's task is not to determine whether Alaska's strained interpretation is supported by the legislative history, but rather to determine whether there is any *clear* evidence of Congress' intent that is contrary to the Secretaries' interpretation. Even if it is not the only reasonable interpretation, the Secretaries' reasonable construction is entitled to deference so long as it reflects a permissible reading of the statute. *Robertson v. Methow Valley Citizens' Council*, 490 U.S. 332, 359 (1989).

IV

THE DEFINITION OF "PUBLIC LANDS" IN ANILCA INCLUDES SOME, BUT NOT ALL, NAVIGABLE WATERS

With regard to the geographic scope of the preference contained in ANILCA Title VIII, the State contends that "public lands," as defined by ANILCA, do not include navigable *30 waters in Alaska. ANILCA section 102, 16 U.S.C. 3102, defines public lands as follows:
(1) The term "land" means lands, waters, and interests therein.
(2) The term "Federal land" means lands the title to which is in the United States after December 2, 1981.
(3) The term "public lands" means land situated in Alaska which, after December 2, 1980, are Federal lands, except -- * * * *

The district court held that all navigable waterways in Alaska are public lands (ER 42), because the United States owns an interest in the navigable waters of Alaska by virtue of the navigational seervitude (ER 39). We agree generally with the State's argument that the navigational servitude is not an interest in waters title to which is in the United States. The servitude is not a property interest of any kind and the district court's conclusion that the United States' "title" to the servitude renders all navigable waters "public lands" is contrary to logic and to the law of this Circuit. *City of Angoon v. Hodel*, 803 F.2d 1016, 1027-28, n.6 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987).

We disagree, however, with the State's argument to the extent that it asserts that "public lands" includes *no* navigable waters in which the United States holds interests short of fee title. The State asserts (Br. 25) that where the government holds less than fee title to lands or waters, only the interest, and not the lands or waters, constitutes "public *31 lands." The State appears to contend that the rights conferred by an interest in lands or waters would be "public lands" but no part of lands or waters themselves would be "public lands." The State's erroneous construction of the "public lands" definition renders the phrase "or interests therein" meaningless with regard to waters, and therefore with regard to subsistence fishing, because virtually no navigable waters would be considered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"public lands" for purposes of Title VIII under this reading of the definition.

ANILCA Title VIII provides that rural Alaska residents are entitled to a priority for subsistence use of fish and wildlife on "public lands." The statute defines "public lands" as "lands, waters, and *interests therein* title to which is in the United States." As demonstrated by the facts of this case, a substantial number of customary and traditional subsistence fisheries are located in navigable waterways whose beds are not owned by the United States. As discussed extensively in our brief in the related matter of *Katie John v. United States*, Ninth Cir. No. 94-35481[FN3], the United States owns interests in water through the reserved water rights doctrine and is therefore authorized by ANILCA to implement the preference for subsistence fishing in some, but not all, navigable waters in Alaska.

> FN3. The *Katie John* case, No. 94-35481, is the United States' interlocutory appeal from the order at issue in this case, on the question whether the district court erred in concluding that all waters subject to the navigational servitude are included within ANILCA's definition of "public lands."

*32 The federal government owns reserved rights in waters appurtenant to lands withdrawn from the public domain, as necessary to fulfill the purposes of those reservations. For example, where the United States holds title to reservation lands in trust for an Indian tribe, and where the productivity of the reservation lands depends on irrigation, the United States impliedly also owns the right to waters appurtenant to the reservation sufficient to fulfill the tribe's needs to make agricultural use of their reservation lands. See, e.g., *Arizona v. California*, 373 U.S. 546, 600 (1963); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 48 (9th Cir.), cert. denied, 454 U.S. 1092 (1981).

Where the United States establishes an Indian reservation whose purposes include maintenance of traditional hunting and fishing practices of the tribe, the reservation would impliedly include the right to maintain water levels sufficient to support the tribe's fishery. "The holder of such a right is not entitled to withdraw water from the stream * * *. Rather, the entitlement consists of the right to prevent other appropriators from depleting the streams [sic] waters below a protected level in any area where the non-consumptive right applies." *United States v. Adair*, 723 F.2d 1394, 1411 (9th Cir. 1984), cert. denied, 467 U.S. 1252 (1984); and see *United States v. New Mexico*, 438 U.S. 696 (1978); *Colville Confederated Tribes v. Walton, supra*, 647 F.2d at 48.

*33 By defining "public lands" to include lands, waters and *interests therein*, Congress extended the priority to areas that are not owned exclusively by the United States but in which the United States owns interests that provide an appropriate basis for inclusion within "public lands." Thus, where the United States has reserved lands for purposes that encompass preservation of fish or subsistence fishing, the United States' ownership of such interests reasonably falls within the meaning of "title" for purposes of ANILCA section 102.[FN4] See *Amoco Production v. Gambell*, 480 U.S. 531, 548 n.15 (1987).

> FN4. As explained more fully in our brief in *Katie-John, et al. v. United States, et al.*, 9th Cir. No. 94-35481, not every interest in lands or waters is appropriate for the provision of the subsistence priority, and therefore not every interest in lands or waters title to which is in the United States consitutes "public lands." For example, the easements described in the State's brief at pp.25-26 are wholly unrelated to protection of the right to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subsistence uses of fish and wildlife and therefore are not within the definition of "public lands." On the other hand, where Congress has expressly reserved lands and waters for purposes including the protection of subsistence hunting and fishing, as it did in creating the Wrangell-St. Elias National Park and Preserve (see U.S. opening brief in *Katie John*, at 27), the interests so reserved are within the meaning of "title" for purposes of ANILCA Title VIII. The existence and extent of appropriate water rights interests is a matter for the agencies to ascertain on remand of this case.

Where the United States holds reserved water rights for purposes appropriate to providing the priority contained in ANILCA Title VIII, the *waters* in which the United States holds reserved rights are public lands. In order for "interests" in waters to constitute "public lands for purposes of Title VIII, the preference must be implemented on waters, title to an interest in which is in the United States. Therefore, while the *34 State has ably challenged the district court's ruling that all navigable waters in Alaska are "public lands" by virtue of the navigational servitude, to the extent that it argues that *no* navigable waters in which the United States owns an interest short of fee title could be "public lands," the State's position is unreasonable and should be rejected.

CONCLUSION

For the foregoing reasons, the district court's conclusion that the federal government is authorized to implement the subsistence priority contained in ANILCA Title VIII should be affirmed. The district court's conclusion that waters of Alaska that are subject to the navigational servitude are therefore "public lands" for purposes of ANILCA Title VIII should be reversed.

STATE OF ALASKA, Plaintiff-Appellant, v. Bruce BABBITT, et al., Defendants-Appellees.
1994 WL 16012376 (C.A.9)

Briefs and Other Related Documents (Back to top)

- 1994 WL 16012379 (Appellate Brief) Reply Brief of Appellant State of Alaska (Nov. 22, 1994) Original Image of this Document with Appendix (PDF)
- 1994 WL 16057704 (Appellate Brief) Reply Brief for the Federal Appellants (Nov. 15, 1994) Original Image of this Document (PDF)
- 1994 WL 16012450 (Appellate Brief) Brief for Appellees Alaska Federation of Natives and Katie John, et al. (Oct. 21, 1994) Original Image of this Document (PDF)
- 1994 WL 16058590 (Appellate Brief) Brief for Appellees Katie John, et al., and Alaska Federation of Natives (Oct. 17, 1994) Original Image of this Document (PDF)
- 1994 WL 16058811 (Appellate Brief) Brief of Amici Curiae States of Arizona, California, Idaho, Montana, and Oregon (Oct. 17, 1994) Original Image of this Document (PDF)
- 1994 WL 16012377 (Appellate Brief) Brief for Appellant State of Alaska (Sep. 20, 1994) Original Image of this Document (PDF)
- 1994 WL 16012378 (Appellate Brief) Brief of Amici Curiae State of Arizona, California, Idaho, Montana, Nevada, and Oregon (Sep. 20, 1994) Original Image of this Document (PDF)
- 1994 WL 16058810 (Appellate Brief) Brief for the Federal Appellants (Sep. 19, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.