# EXHIBIT A-8

Westlaw.

1994 WL 16012379 (C.A.9)   Page 1
(Cite as: 1994 WL 16012379)

For Opinion See 72 F.3d 698, 54 F.3d 549 Briefs and Other Related Documents
United States Court of Appeals,
Ninth Circuit
STATE OF ALASKA, Plaintiffs-Appellant,
v.
Bruce BABBITT, Secretary of Interior, et al., Defendants-Appellees.
No. 94-35480.
November 22, 1994.

APPEAL FROM THE JUDGMENT OF THE UNITED STATES DISTRICT COURT, DISTRICT OF ALASKA
D.C. NO. CV-A92-00264-HRH CONSOLIDATED

Reply Brief of Appellant State of Alaska

Bruce M. Botelho, Attorney General, Joanne M. Grace, Assistant Attorney General, Office of the Attorney General, 1031 West Fourth Avenue, Suite 200, Anchorage, Alaska 99501

*i TABLE OF CONTENTS

TABLE OF AUTHORITIES ... ii

Introduction ... 1

I. THE SECRETARY DOES NOT HAVE IMPLIED OR EXPRESS AUTHORITY TO REGULATE FISHING AND HUNTING ON PUBLIC LANDS ... 1

II. ANILCA TITLE VIII DIMINISHES CERTAIN ASPECTS OF STATE AUTHORITY TO MANAGE FISH AND WILDLIFE ON PUBLIC LANDS, BUT THE SECRETARY'S AUTHORITY IS NOT THE RECIPROCAL OF THE STATE'S ... 6

III. APPELLEES HAVE FAILED TO RESPOND TO THE LEGISLATIVE HISTORY'S CLEAR DEMONSTRATION THAT CONGRESS DID NOT VEST THE SECRETARY WITH GENERAL FISH AND WILDLIFE MANAGEMENT AUTHORITY ... 8

IV. THE SECRETARY'S INTERPRETATION CONCERNING HIS AUTHORITY TO REGULATE THE TAKING OF FISH AND WILDLIFE IS NOT ENTITLED TO DEFERENCE UNDER *CHEVRON* ... 10

V. THE KENAITZE CASE IS NOT CONTROLLING ON THE ISSUE OF THE SECRETARY'S AUTHORITY ... 12

VI. THE STATE'S INTERPRETATION OF TITLE VIII DOES NOT VIOLATE THE TENTH AMENDMENT ... 13

CONCLUSION ... 15

*ii TABLE OF AUTHORITIES

*Cases*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
C:\Documents and Settings\jap\Local Settings\Temporary Internet Files\OLK72\72 F3d 698 Reply Brief State of Alaska 11-22-94 (590133).DOC

Adams Fruit Co. v. Barrett, 494 U.S. 638 (1990) ... 11, 12

Alaska v. Andrus, 429 F.Supp. 958 (D. Alaska 1977), aff'd on other grounds, 591 F.2d 537 (9th Cir. 1979) ... 5

Board of Natural Resources v. Brown, 992 F.2d 937 (9th Cir. 1993) ... 13

Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) ... 11

FERC v. Mississippi, 456 U.S. 742 (1982) ... 15

Hunt v. United States, 278 U.S. 96 (1928) ... 4, 5

Kelley v. EPA, 15 F.3d 1100 (D.C. Cir. 1994) ... 12

Kenaitze Indian Tribe v. State of Alaska, 860 F.2d 312 (9th Cir. 1988), cert. denied, 491 U.S. 905 (1989) ... 12

New Mexico State Game Comm'n v. Udall, 410 F.2d 1197 (10th Cir. 1969) ... 4, 5

New York v. United States, 505 U.S. 144, 112 S.Ct. 2408 (1992) ... 13, 14

United States v. Atlantic Richfield, 612 F.2d 1132 (9th Cir. 1980) ... 12

United States v. Hunt, 19 F.2d 634 (D.C. Ariz. 1928) ... 5

Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658 (1979) ... 15

*Statutes*

16 U.S.C. 3111 ... 3

16 U.S.C. 3113 ... 13

16 U.S.C. 3115 ... 1, 2, 4

16 U.S.C. 3117 ... 3

16 U.S.C. 3126 ... 5

*iii 16 U.S.C. 3202 ... 1, 5, 6, 8, 11

*Legislative Materials*

126 Cong. Rec. S10670 (daily ed. August 4, 1980) ... 6

126 Cong. Rec. S15129 (daily ed. December 1, 1980) ... 7

126 Cong. Rec. S15131 (Dec. 1, 1980) ... 4

Committee on Energy and Natural Resources, August 3, 1978 ... 2

Committee on Energy and Natural Resources, October 9, 1979 ... 3

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H. Rep. No. 96-97, Part I, Committee on Interior and Insular Affairs (1979) ... 10

H.Rep. 95-1045, Part II, Committee on Merchant Marine and Fisheries, 95th Cong., 2d Sess. (1978) ... 4, 6, 7

H.Rep. No. 95-1045, Part I, House Interior Committee bill, 95th Cong., 2d Sess. (1978) ... 4, 7

S.Rep. No. 413, Committee on Energy and Natural Resources, 96th Cong., 1st Sess. (1979) ... 3, 5, 9

S.Rep. No. 1300, Committee on Energy and Natural Resources, 95th Cong., 2d Sess. (1978) ... 3, 4, 14

*1 *Introduction*

The State demonstrated in its opening brief that in ANILCA, Congress did not define "public lands" to include navigable waters or vest the Secretaries of Interior and Agriculture ("Secretary") with authority to regulate hunting and fishing. The Secretary and the *Katie John* appellees respond that the Court should find express or implied secretarial authority to regulate hunting and fishing, reject the State's interpretation as unconstitutional, defer to the agency interpretation, or avoid the issue on procedural grounds.

I. THE SECRETARY DOES NOT HAVE IMPLIED OR EXPRESS AUTHORITY TO REGULATE FISHING AND HUNTING ON PUBLIC LANDS.

Both appellees argue that the Secretary has authority to adopt a regulatory scheme to manage hunting and fishing for subsistence purposes. While they identify different sources for the authority, both rely on implied authority, precisely what § 1314(b) prohibits.

An agency's power is circumscribed by the authority granted or withheld by Congress. In § 1314(b) of ANILCA, 16 U.S.C. 3202(b), Congress stated that it intended to enlarge the Secretary's authority to manage public lands only as specifically provided:

TAKING OF FISH AND WILDLIFE

* * *

(b) Except as specifically provided otherwise by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the management of the public lands.

The *Katie John* appellees assert that § 805(c) must authorize the Secretary to regulate hunting and fishing because it requires advisory councils to report to him with recommendations for managing fish and wildlife populations to accommodate subsistence *2 uses. KJ Br at 20. The assertion that while not express, secretarial authority is hidden in § 805's interstices relies on implied authority, however. The *Katie John* appellees claim, "The Secretary could hardly implement a strategy for the management of subsistence fish and wildlife populations and concerning the taking of those resources if all he were authorized to do were monitor state management, protect fish and wildlife habitat, and close the public lands to all takings." KJ Br at 20. The "could hardly . . . if all he were authorized" reasoning clearly signals the type of implied authority argument Congress meant § 1314 to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forestall.

Moreover, § 805(c) does not authorize the Secretary to effect a strategy for fish and wildlife management; it requires him to use the councils' reports in performing his monitoring responsibilities pursuant to section 806 and in the exercise of his closure and other administrative authority over the public lands. See State App. Br at 8. Appellees do not explain why the Secretary would monitor *state* provision of the priority if *he* is providing it.

The limits of the Secretary's authority in § 805 are explained in the legislative history of the Senate Energy Committee bill in the 95th Congress. The committee wanted to retain the House bill's advisory councils comprised of citizens with knowledge of local conditions, but debated whether the Secretary or the State should establish them. Senator Stevens urged that Congress not require, but only encourage the State to set up regional councils. See markup, August 3, 1978, AD 195-96.[FN1] The Committee decided to induce the *3 State with funding if it set up such a system, but authorized the Secretary to develop the councils if the State did not. See Supp. AD 12-13; S.Rep. No. 1300, 95th Cong., 2d Sess., p. 222, AD 67. Consequently, § 805 prescribes the form of the advisory system if state law does not establish it. The committee did not consider or discuss giving the Secretary management authority, however.

> FN1. "AD" refers to the addendum the State filed with its opening brief; "Supp. AD" refers to the addendum attached to this brief.

The *Katie John* appellees argue that the State's interpretation gives no meaning to § 805(d)'s requirement that the State's laws of general applicability must comply with §§ 803 and 804. KJ Br at 22-23. The State's view is consistent with this language, which it drafted so that it might be governed by its own laws rather than by the specified provisions.[FN2] The State proposed this amendment to clarify that its statewide laws would supersede §§ 803-805.

> FN2. In markup in the 96th Congress, a staffperson for Senator Stevens presented the proposed amendment to the Senate Energy Committee:
> Number 6, this makes it clear that if the state implements a subsistence management system consistent with management guidelines in the subsistence title, the state laws rather than Title VIII shall govern the administration of the state program as long as the program remains consistent. This amendment is offered by the state.
> Energy Committee markup, October 9, 1979, Supp. AD 3. The resulting change is apparent by comparing the Energy Committee's wording of § 805(d) for the 95th Congress with that of the 96th Congress. Compare S. Rep. 1300, p. 28, AD 54, with S. Rep. 413, p. 36, AD 21.

The *Katie John* appellees argue that if § 805 only gives the Secretary authority to establish advisory councils, then the councils do not have a sufficiently meaningful role to fulfill the policy statement of § 801(5), 16 U.S.C. 3111(5). In fact, Congress gave the advisory councils a powerful role in enforcing the rural priority through a direct judicial remedy under § 807.

*4 Every major version of the subsistence title required the advisory councils to monitor state implementation of the priority and notify the Secretary if it was inadequate. The Secretary then was to enforce the right with the authority granted him by the bill.[FN3] For example, the Senate Energy Committee bill required the councils to report noncompliance to the Secretary, who was to bring a civil suit on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

their behalf. § 807, H.R. 39, S.Rep. 95-1300 at 29, AD 55. Congress then amended § 807 to eliminate the Secretary's role and gave the councils authority to file suit directly.[FN4]

> FN3. See State App. Br at 12-20; House Interior Committee bill, 95th Cong., § 704, H.R. 39, H.Rep. No. 95-1045, Part I at 28, AD 117; House Merchant Marine Committee bill, § 704, H.R. 39, H.Rep. 95-1045, Part II at 23-24, AD 124-25.
>
> FN4. See Senator Stevens' description of § 807 as providing councils a right of action. 126 Cong. Rec. S15131 (Dec. 1, 1980), AD 184.

Section § 801(5)'s reference to a meaningful role for local residents does not imply intent to realize that purpose in a particular way. Every major version of the subsistence title stated the identical policy, yet each provided different means to effect it. As enacted, ANILCA gives the councils authority to enforce the priority, a role far from meaningless.

The Secretary asserts that regulating hunting and fishing is included in his "other administrative authority over public lands," referred to in § 805(c). US Br at 12-13. He asserts that the State "overlooks the breadth of the Secretaries' authority as managers of the public lands," citing Hunt v. United States, 278 U.S. 96 (1928) and New Mexico State Game Comm'n v. Udall, 410 F.2d 1197 (10th Cir. 1969) for the proposition that the Secretary possesses inherent *5 authority to regulate hunting and fishing on public lands. These cases are far narrower, however; in both the Secretary acted pursuant to statutory authorization to protect federal lands.[FN5]

> FN5. Alaska v. Andrus, 429 F.Supp. 958 (D. Alaska 1977), aff'd on other grounds, 591 F.2d 537 (9th Cir. 1979), cited by the Katie John appellees at 17 n.30, refers only to the Secretary's closure authority, which the State does not dispute, although § 816 diminishes this authority as to ANILCA lands. 16 U.S.C. 3126.

In Hunt, the court upheld the Secretary of Agriculture's order that deer be killed to protect a national forest from overbrowsing under a statute authorizing him to protect the forests from destruction by fire and depredations. See United States v. Hunt, 19 F.2d 634 (D.C. Ariz. 1928). The New Mexico court found authority in the Secretary of Interior to protect a national park from overbrowsing under a statute permitting him to destroy animals detrimental to the use of a park. 16 U.S.C. 3. Thus, neither case holds that the Secretary has inherent authority to regulate hunting on federal lands. Moreover, the Secretary does not claim inherent authority to regulate fisheries despite his plan to do so in waters subject to a reserved water right. See US Br at 29.

Further, Congress did not consider the Secretary's existing authority to include fish and wildlife management. The Senate Energy Committee stated that it intended § 1314(b) to preserve the existing role of the agencies as manager of the habitat and "the determination of taking by state law."[FN6] Congress considered *6 granting the Secretary authority to regulate fishing and hunting but declined because it wanted that authority to remain exclusively with the State.[FN7] State App. Br at 12-20.

> FN6. See State App. Br at 18-19 (Senate Energy Committee discussion prompting this language in its report, S.Rep. 413 at 308, AD 27):
> Section 1314: Taking of Fish and Wildlife
> This section, adopted as a Committee amendment, preserves the status quo with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regard to the responsibility and authority of the State to manage fish and wildlife, and reconciles this authority with the Act, including the subsistence title. **At the same time, the section confirms the status quo with regard to the authority of the Secretary to manage the wildlife habitat on Federal lands.** [emphasis added]

FN7. For example, in the 95th Congress the House Merchant Marine Committee rejected the Interior Committee bill's grant of authority to the Secretary to assume fish and wildlife management if the State failed to enact an adequate subsistence program. The Committee explained that in contrast to the Interior Committee version, under its bill "**the Secretary would not be authorized to suspend the State's authority to manage subsistence resources or to take over the management of those resources on the public lands.**" H.Rep. 95-1045, Part II at 91, AD 133. Also, the Ad Hoc Conference bill had a subsistence title identical to that in the Energy Committee bill. 126 Cong. Rec. S10670 (August 4, 1980), AD 191. The committee cited as a "highlight of the accord" that "**State regulation of fish and game is maintained-The Secretary of Interior is not given authority to take over fish and game management from the State of Alaska.**" 126 Cong. Rec. S10703, AD 192.

II. ANILCA TITLE VIII DIMINISHES CERTAIN ASPECTS OF STATE AUTHORITY TO MANAGE FISH AND WILDLIFE ON PUBLIC LANDS, BUT THE SECRETARY'S AUTHORITY IS NOT THE RECIPROCAL OF THE STATE'S.

The *Katie John* appellees assert that title VIII provides for "the diminishment of State authority and, concomitantly, for the enlargement of the Secretary's authority." KJ Br at 17. The first clause of this statement is correct, but the second is not. For this reason, the Secretary's focus on § 1314(a) in assessing his authority also is misdirected. Section 1314(a) addresses the act's effect on *state* authority, but the Secretary's authority is not the reciprocal; § 1314 (b) addresses the act's effect on the Secretary.

Title VIII does diminish the State's authority to manage fish *7 and wildlife on public lands by creating a right to a subsistence priority for rural residents that the State may not abridge, but this is unrelated to the Secretary's authority. As explained in the State's opening brief, Congress rejected a scheme that would have given the Secretary authority to manage fish and wildlife by default should the State fail to adequately provide the priority, and devised an enforcement scheme that provides aggrieved parties direct access to federal court. The version of H.R. 39 reported in April 1978 by the House Interior Committee provided that if the State failed to accept the authority to regulate subsistence uses in a manner consistent with the act, the Secretary would do so. § 704(b), H.Rep. No. 95-1045 (Part I) 28, AD 117. In the words of § 1314(b), this specifically provided the Secretary authority to regulate hunting and fishing should the State fail to regulate in a manner consistent with the Act. Had this provision been enacted, the Secretary's authority would be determined under the "default rule," but even the House rejected this version. On sequential referral, the House Merchant Marine Committee deleted default authority and provided only closure authority and emergency authority to open public lands to subsistence uses. § 705(c), H. Rep. No. 95-1045 (Part II) 26, AD 127.

The Senate also declined to give the Secretary management authority and deleted the emergency opening authority. After the Senate bill passed and the House accepted it, H. Con. Res. 452 amended § 807 to provide aggrieved parties direct recourse to the court. 126 Cong. Rec. S15129 (daily ed. December 1, 1980), AD 182.

Thus, to the extent title VIII diminishes state authority, it *8 does not correspondingly enlarge secretarial authority. ANILCA enlarges the Secretary's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

traditional authority to manage the public lands only as specifically provided. 1314(b), 16 U.S.C. 3202(b).[FN8]

> FN8. Title VIII specifically enlarges the Secretary's role as manager of the public lands. It directs him to establish regional advisory councils, § 805; monitor the State's provision of the priority, § 806; appoint and implement programs for national park and park monument subsistence resource commissions, § 808; allow uses or dispositions of federal land only after complying with procedural requirements, § 810; ensure access for subsistence taking, § 811; undertake research, § 812; and prepare reports for Congress, § 813.

III. APPELLEES HAVE FAILED TO RESPOND TO THE LEGISLATIVE HISTORY'S CLEAR DEMONSTRATION THAT CONGRESS DID NOT VEST THE SECRETARY WITH GENERAL FISH AND WILDLIFE MANAGEMENT AUTHORITY.

The *Katie John* appellees accuse the State of offering only "fragments" of the legislative history. KJ Br at 30. This is preposterous, as the State's comprehensive analysis draws on the committee reports of all the bills through which the subsistence title developed. In contrast, appellees offer no substantive support for their position from the legislative history. The *Katie John* appellees cite a summary of title VIII attached to a Senate Energy Committee report that was not even written by that committee; rather, it is the Congressional Budget Office's description in its estimate of the bill's costs. Their focus on a sentence from an unauthoritative source and their disregard of the Energy Committee's explanation of *its* intent[FN9] demonstrates the lack of support in the legislative history for their position.

> FN9. *See* Energy Committee explanation for title VIII, Supp. AD 16-27.

Further, the Budget Office summary does not describe ANILCA as enacted. The part of the summary not quoted indicates that the *9 Budget Office was referring to establishment of advisory councils as the "subsistence management program" that the Secretary must develop if the State does not do so within a year of enactment.[FN10]

> FN10. S.Rep. 96-413 at 339, Supp. AD 33. This is clear in the cost estimate, which states that if the state establishes a "subsistence management program," the Secretary is authorized to reimburse up to 50 percent of its cost. *Id.* This obviously refers to § 805(e) of the bill, which provided reimbursement to the state for establishing and operating regional advisory councils, but not for state management costs. H.R. 39, § 805(e), AD 21.

The only other legislative history source the *Katie John* appellees cite is a statement that § 804 requires both the State and the United States to accord subsistence uses a priority. As explained in the State's opening brief at 20-23, Congress intended the Secretary to provide the priority in his traditional management of the public lands and several additional duties. *See infra* n. 8.

The legislative history does not support appellees' claim that Congress intended a "cooperative federalism" approach but assumed that the State would "opt[] into the federal regulatory scheme" after it passed a subsistence law. KJ Br at 31; US Br at 27. In arguing that the State can either pass an implementation program or opt to let the Secretary regulate hunting and fishing, appellees ignore a vital aspect of the legislative history: the Senate Energy Committee eliminated the requirement of a state program expressly because it intruded on the State's management

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

authority.[FN11]

FN11. *See* Committee report quote explaining this action, *infra* at 14.

The idea that Congress intended a "cooperative federalism" approach also is belied by the concerns of dissenters to a House bill that the enforcement scheme was inadequate. In the 96th *10 Congress, the subsistence title of the House Interior Committee bill (H. Rep. 96-97, Part I) was identical to title VIII of the Senate Energy Committee bill in the previous Congress. The Interior Committee adopted the Huckaby substitute for the provisions of H.R. 39 favored by Chairman Udall. In "Dissenting Views," Udall and others warned that the bill's subsistence title "may very well be unconstitutional." Id. at 537-539, Supp. AD 37-39. They feared that the judicial enforcement provisions of § 707 (§ 807 of the Senate bill) would so hinder executive oversight as to abdicate the government's Native affairs and public lands responsibilities. They also believed that § 707 raised separation of powers problems because the Secretary could take no administrative action if he found that the State had inadequately provided the priority, but could only file a civil action. Id. at 538-39, Supp. AD 38-39.

When the bill came to the floor in the 96th Congress, the dissenters prevailed and the House approved the Udall-Anderson substitute in lieu of the Huckaby substitute. Ultimately however, the Senate substitute title that the Huckaby substitute had tracked was enacted with no addition to the Secretary's delegated authority and with a revision of § 807 that eliminated his role as advocate in court. Consequently, the criticisms of the Huckaby substitute dissenters that it granted no effective oversight authority to the executive are applicable *a fortiori* to ANILCA as enacted.

IV. THE SECRETARY'S INTERPRETATION CONCERNING HIS AUTHORITY TO REGULATE THE TAKING OF FISH AND WILDLIFE IS NOT ENTITLED TO DEFERENCE UNDER *CHEVRON*.

The Secretary argues that the Court must defer to his view of *11 his authority under title VIII. US Br at 9. The agency interpretation is not due deference, however, because Congress directly addressed the issue in ANILCA, Congress did not delegate the agency authority to fill gaps as to regulation of hunting and fishing, and Congress intended the Court to enforce the priority.

In *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the court held that if Congress has spoken to the precise question at issue, courts must give effect to that unambiguously expressed intent. *Id.* at 842-43. ANILCA is not silent or ambiguous about the Secretary's authority to manage fish and wildlife; § 1314(b) addresses the issue directly, maintaining the Secretary's existing authority except where explicitly broadened, thus directing that management authority not be open to interpretation. By inferring authority the Secretary has ignored the provision that Congress intended to control the issue.

Further, simply because the Secretary has responsibility to administer some provisions of title VIII does not permit him to appoint himself its "administrator." In applying *Chevron*, courts analyze each section of a statute separately to determine whether agency interpretation is entitled to deference. *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-50 (1990). Congress' delegation of authority is a precondition to deference under *Chevron*. *Id.* at 649. In order to satisfy the express requirement of § 1314(b), the precondition of congressional delegation to the Secretary of administrative authority must be specifically provided in ANILCA.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Title VIII does not specifically give the Secretary authority to regulate hunting and fishing as required by § 1314(b), and he *12 thus has no authority to issue regulations on that subject under the rulemaking authority of § 814. Consequently, the subsistence regulations are not entitled to deference for the same reason that those regulations are unlawful as beyond the Secretary's authority.

Deference also is inappropriate because Congress did not delegate to the agency authority to reconcile ambiguities or to fill gaps as to enforcement. By providing an enforcement scheme independent of the Secretary -- a private right of action in federal court under § 807 -- Congress established the court as adjudicator of the right, thereby making deference to the Secretary inappropriate. See _Adams Fruit Co._, 494 U.S. at 649-50 (deference to agency interpretation inappropriate where Congress established the judiciary rather than the agency as adjudicator of the rights under the statute); _Kelley v. EPA_, 15 F.3d 1100, 1108 (D.C. Cir. 1994) (deference withheld if a private party can bring the issue independently to federal court under a private right of action.)[FN12]

> FN12. The _Katie John_ appellees also urge the Court to adopt the construction most favorable to Indians. KJ Br at 25. The Court can not ignore congressional intent and give the Secretary undelegated authority in order to achieve a result more beneficial to Indians, however. See _United States v. Atlantic Richfield_, 612 F.2d 1132, 1138-39 (9th Cir. 1980). Furthermore, the State's position is not hostile to the rights of Alaska Natives. The State agrees that title VIII grants rural residents a priority for taking fish and wildlife for subsistence purposes on public lands, and disputes only the Secretary's authority to manage fish and wildlife.

V. THE KENAITZE CASE IS NOT CONTROLLING ON THE ISSUE OF THE SECRETARY'S AUTHORITY.

The appellees rely on _Kenaitze Indian Tribe v. State of Alaska_, 860 F.2d 312 (9th Cir. 1988), cert. denied, 491 U.S. 905 (1989), as determinative of secretarial authority to regulate *13 hunting and fishing. US Br at 13; KJ Br at 15-16. _Kenaitze_ addressed the meaning of the word "rural" in § 803, 16 U.S.C. 3113. It predated by four years the Secretary's 1992 issuance of subsistence regulations prior to which no case or controversy existed as to his authority to regulate hunting and fishing on public lands. Any statement in _Kenaitze_ about the Secretary's authority therefore constitutes _dictum_. Its holding that title VII does not delegate the State authority or assign it any particular function is consistent with the State's position in this case.

VI. THE STATE'S INTERPRETATION OF TITLE VIII DOES NOT VIOLATE THE TENTH AMENDMENT.

Appellees argue that the State's view of title VIII violates the tenth amendment in "commandeering" state legislative processes. KJ Br at 26; US Br at 20. In fact, title VIII creates a right without compelling the State to enact a program to enforce it.

Congress devised title VIII to avoid the constitutional problems identified in _New York v. United States_, 505 U.S. 144, 112 S.Ct. 2408 (1992). In _New York_, the Low-Level Radioactive Waste Policy Amendments violated the principle that Congress may not "commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." Id. at 2420. The act's "take title" provisions offered states the unconstitutional alternatives of either regulating according to Congress's direction or taking title to and possession of radioactive waste. Id. at 2428. Similarly, _Board of Natural Resources v. Brown_, 992 F.2d 937 (9th Cir. 1993), relating to timber export, addressed congressional directives that the state *14 administer and issue regulations to implement the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statute. *Id.* at 947. This Court found the provisions to be "direct commands to the States to regulate according to Congress's instructions," with the unconstitutional alternative of halting all timber sales. *Id.*

Unlike these statutes, title VIII contains no mandate to the State, no program requirements, no coercive alternatives, and no "commandeer[ing] of the legislative processes of the [State]." *New York*, 112 S.Ct. at 2428. Congress established in § 804 an individual right to a subsistence priority, and provided for judicial enforcement if an entitled person does not receive it.

Early House bills did contain regulatory mandates to the State. The Senate rejected this approach, instead creating a right that the State can absorb into its own law or avoid trenching upon:
Section 704 of the House bill requires the State to develop and implement a subsistence management program which includes a regionalized regulatory system for the management of fish and wildlife on the public lands for subsistence uses, and laws or regulations which provide preference for nonwasteful subsistence uses by local residents for consumptive uses on the public lands. The State regulations must further provide preferences for subsistence uses shall be based upon local residency, customary and direct dependence upon such populations as the mainstay of livelihood and the availability of alternative resources. **The committee determined that inclusion of these requirements as part of a federally mandated State program is an unnecessary intrusion into traditional state responsibility for fish and wildlife management. Consequently, the committee retained both of these requirements in sections 804 and 805 respectively, but has eliminated the requirement that they be included as part of a formal State program.** [emphasis added].[FN13]

   FN13. S. Rep. No. 95-1300 at 196-197, AD 62-62.

Section 807 carefully avoids mandating state promulgation of regulations. It provides that "regulations submitted by the state shall be incorporated as part of the final judicial order," thereby *15 obviating the accountability concerns of the court in *New York*. Addressing this matter in *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658 (1979)*, the court observed that "[w]hether Game and Fisheries may be ordered actually to promulgate regulations having effect as a matter of state law may well be doubtful." *Id.* at 695. The court did not doubt, however, that as parties to federal litigation, state officials could be directed to prepare rules to implement a federal right, "even if state law withholds from them the power to do so." *Id.*

Even if title VIII did mandate a state program, the Court need not accept appellees' position to avoid tenth amendment problems. Such "commandeering" does not violate the tenth amendment without an unconstitutional alternative and if absent state compliance Congress can preempt the field completely. *FERC v. Mississippi, 456 U.S. 742, 765 (1982)*. This is true even if Congress has not assumed federal regulation; its authority to preempt an area is unrelated to whether it has provided an alternative regulatory mechanism to police it in the event of default. *See id.* at 766.[FN14]

   FN14. Even if title VIII were deemed to violate the tenth amendment, the Court cannot vest the Secretary with undelegated authority.

*CONCLUSION*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:05-cv-00006-HRH   Document 89-9   Filed 11/06/2006   Page 12 of 12
1994 WL 16012379 (C.A.9)
(Cite as: 1994 WL 16012379)

Page 11

Congress intentionally did not give the Secretary authority to manage fish and wildlife on public lands in title VIII. Appellees' arguments rely on implied secretarial authority, which violates § 1314(b). Congress did not mandate State implementation of the priority, and gave the federal court direct enforcement authority.

Appendix not available.

STATE OF ALASKA, Plaintiffs-Appellant, v. Bruce BABBITT, Secretary of Interior, et al., Defendants-Appellees.
1994 WL 16012379 (C.A.9)

Briefs and Other Related Documents (Back to top)

- 1994 WL 16057704 (Appellate Brief) Reply Brief for the Federal Appellants (Nov. 15, 1994) Original Image of this Document (PDF)
- 1994 WL 16012450 (Appellate Brief) Brief for Appellees Alaska Federation of Natives and Katie John, et al. (Oct. 21, 1994) Original Image of this Document (PDF)
- 1994 WL 16012376 (Appellate Brief) Brief for the Federal Appellees (Oct. 18, 1994) Original Image of this Document (PDF)
- 1994 WL 16058590 (Appellate Brief) Brief for Appellees Katie John, et al., and Alaska Federation of Natives (Oct. 17, 1994) Original Image of this Document (PDF)
- 1994 WL 16058811 (Appellate Brief) Brief of Amici Curiae States of Arizona, California, Idaho, Montana, and Oregon (Oct. 17, 1994) Original Image of this Document (PDF)
- 1994 WL 16012377 (Appellate Brief) Brief for Appellant State of Alaska (Sep. 20, 1994) Original Image of this Document (PDF)
- 1994 WL 16012378 (Appellate Brief) Brief of Amici Curiae State of Arizona, California, Idaho, Montana, Nevada, and Oregon (Sep. 20, 1994) Original Image of this Document (PDF)
- 1994 WL 16058810 (Appellate Brief) Brief for the Federal Appellants (Sep. 19, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.