# EXHIBIT B-9 (Part 1)

No. 00-35121

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KATIE JOHN; DORIS CHARLES; and MENTASTA VILLAGE COUNCIL,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA; BRUCE BABBITT, in his capacity as Secretary
of Interior; DANIEL GLICKMAN, in his capacity as Secretary of Agriculture; and
DANIEL DEMIENTIEFF, NILES CESAR, FRAN CHERRY, ROBERT BARBEE,
DAVE ALLEN, and RICK CABLES, in their capacity as members of the Federal
Subsistence Board,

Defendants-Appellees,

and

STATE OF ALASKA and FRANK RUE, in his capacity as
Commissioner of the Alaska Department of Fish and Game,

Defendants-Appellants.

On Appeal from the United States District Court for the District of Alaska
(No. A90-0484-CV (HRH), consolidated with No. A92-0264-CV (HRH))

**EN BANC BRIEF FOR APPELLANTS**
**STATE OF ALASKA AND FRANK RUE**

(Counsel listed on inside cover)

*Of Counsel*:
John G. Roberts, Jr.
Gregory G. Garre
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5810

Bruce Botelho
*Attorney General*
Joanne M. Grace
*Assistant Attorney General*
STATE OF ALASKA
Attorney General's Office
1031 W. 4th Avenue
Anchorage, Alaska 99501
(907) 269-5100

September 13, 2000

*Counsel for Defendants-Appellants*
*State of Alaska, et al.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................iii

STATEMENT OF JURISDICTION.............................................................. 1

STATEMENT OF ISSUE ON APPEAL....................................................... 1

STATEMENT OF THE CASE ...................................................................... 1

STATEMENT OF FACTS............................................................................. 4

SUMMARY OF ARGUMENT ................................................................... 12

ARGUMENT .............................................................................................. 15

I.     IN ENACTING ANILCA, CONGRESS DID NOT
INTEND TO STRIP ALASKA OF ITS
SOVEREIGNTY OVER NAVIGABLE WATERS OR
RIGHT TO MANAGE FISH AND WILDLIFE
ALONG SUCH WATERS ............................................................. 15

     A.    The Long Settled Understanding Is That States
Are Sovereign Over The Navigable Waters
Within Their Borders And Natural Resources
Along Such Waters................................................................. 15

     B.    ANILCA Does Not Plainly And
Unambiguously Divest Alaska Of Its
Sovereignty Over Navigable Waters And
Natural Resources Along Such Waters. ............................... 19

     C.    Apart From The Absence Of Any Clear
Statement, Other Indicia Of Congress' Intent
Confirm That It Did Not—*Sub Silentio*—Intend
To Extend ANILCA To Navigable Waters.......................... 24

# TABLE OF CONTENTS—Continued

Page

D.  Neither The *Chevron* Doctrine Nor Appellees'
Congressional Acquiescence Theory Sanctions
The Result Reached By The Prior Panel
Majority ............................................................................ 37

CONCLUSION ........................................................................... 43

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM:    STATUTORY PROVISIONS
LEGISLATIVE HISTORY

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## CASES:

*Alaska v. Ahtna, Inc.*, 891 F.2d 1401 (9th Cir. 1989), *cert. denied*, 495 U.S. 919 (1990) ................................................................. 4,21

*Alaska v. Babbitt*, 54 F.3d 549, *superseded by* 72 F.3d 698 (9th Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996) ............................... *passim*

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) ............. 4,34-35

*Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371 (1978) ................................................................................................... 17

*Board of Governors v. Dimension Fin. Corp.*, 474 U.S. 361 (1986) ................................................................................................... 32

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ............................ 39

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) .............................................. 15

*Carey v. South Dakota*, 250 U.S. 118 (1919) ................................................. 17

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ................................................................. 14,37-38

*Chisom v. Roemer*, 501 U.S. 380 (1991) ........................................................ 33

*Coyle v. Smith*, 221 U.S. 559 (1911) ......................................................... 4,16

*Edmonds v. Compagnie Gen. Transatlantique*, 443 U.S. 256 (1979) ................................................................................................... 33

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988) .......................................... 37

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ....................................... 32

*Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992) ................................................................................................... 20

# TABLE OF AUTHORITIES—Continued

Page

## CASES:

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988)................................ 16

*Gregory v. Ashcroft,* 501 U.S. 452 (1991) ...................................... 19,23,38,41

*Hynes v. Grimes Packing Co.*, 337 U.S. 86 (1949)........................................ 20

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ...................... 16

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,*
    510 U.S. 86 (1993).......................................................................30-31

*Jones v. United States*, 120 S. Ct. 1904 (2000)............................................. 37

*McDowell v. Alaska*, 785 P.2d 1 (Alaska 1989) ............................................. 5

*Metlakatla Indian Community v. Egan*, 369 U.S. 45 (1962) .................. 2,4,17

*National R.R. Passenger Corp. v. Boston & Me. Corp.*, 503
    U.S. 407 (1992) ....................................................................................... 40

*New York State Conf. of Blue Cross & Blue Shield Plans v.*
    *Travelers Ins. Co.*, 514 U.S. 645 (1995).................................................... 20

*Pacific Gas & Elec. Co. v. State Energy Resources Conservation*
    *& Dev. Comm'n*, 461 U.S. 190 (1983)....................................................... 31

*Resource Invs., Inc. v. United States Army Corps of Eng'rs*, 151
    F.3d 1162 (9th Cir. 1998)........................................................................ 39

*Rincon Band of Mission Indians v. Harris*, 618 F.2d 569 (9th
    Cir. 1980) ................................................................................................. 40

*Totemoff v. Alaska*, 905 P.2d 954 (Alaska 1995), *cert. denied,*
    517 U.S. 1244 (1996).........................................................................*passim*

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995)............................ 42

*United States v. Alaska*, 521 U.S. 1 (1997)........................................... 4,16,26

## TABLE OF AUTHORITIES—Continued

Page

CASES:

*United States v. Lopez*, 514 U.S. 549 (1995) ............................................. 10,37

*United States v. Oregon*, 295 U.S. 1 (1935).................................................... 16

*United States v. Rohm & Haas Co.*, 2 F.3d 1265 (3d Cir. 1993).................. 39

*Utah Div. of State Lands v. United States*, 482 U.S. 193 (1987)........ 16,20,27

*Vermont Agency of Natural Resources v. United States*, 120
    S. Ct. 1858 (2000) ...................................................... 13,20,21,22

*Virginia Dep't of Educ. v. Riley*, 106 F.3d 559 (4th Cir. 1997).................... 39

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)......................... 20

*Zarr v. Barlow*, 800 F.2d 1484 (9th Cir. 1986)............................................. 40

CONSTITUTION:

U.S. Const. art. I, § 8, cl. 3 ........................................................ 10,37

U.S. Const. art. IV, § 3, cl. 2 ...................................................... 10

U.S. Const. amend. X................................................................... 20

STATUTES:

Alaska Statehood Act, § 6(m), 72 Stat. 339 (1959) ........................................ 16

16 U.S.C. § 90b .............................................................................. 25

16 U.S.C. § 102 .............................................................................. 6

16 U.S.C. § 110c(c)(3) ..................................................................... 25

16 U.S.C. § 121 ............................................................................... 25

16 U.S.C. § 228b(a)........................................................................... 25

## TABLE OF AUTHORITIES—Continued

Page

**STATUTES**:

16 U.S.C. § 230a(b) ................................................................................... 25

16 U.S.C. § 230g(a) ................................................................................... 25

16 U.S.C. § 272(a) ..................................................................................... 25

16 U.S.C. § 273(a) ..................................................................................... 25

16 U.S.C. § 398d ........................................................................................ 25

16 U.S.C. § 410bb(b)(1) ............................................................................ 25

16 U.S.C. § 410ff-1(a) ............................................................................... 25

16 U.S.C. § 410gg ...................................................................................... 25

16 U.S.C. § 410gg-1 .................................................................................. 25

16 U.S.C. § 410ii-3(a) ............................................................................... 25

16 U.S.C. § 410j .......................................................................................... 25

16 U.S.C. § 410jj-3(c) ................................................................................ 25

16 U.S.C. § 410mm-2(b) ........................................................................... 25

16 U.S.C. § 410o ......................................................................................... 25

16 U.S.C. § 410p ......................................................................................... 25

16 U.S.C. § 410qq-2(a) .............................................................................. 25

16 U.S.C. § 410rr-2 ..................................................................................... 25

16 U.S.C. § 410rr-7(c) ............................................................................... 25

16 U.S.C. § 459d-3(a) ................................................................................ 25

16 U.S.C. § 459e-1(a) ................................................................................ 25

## TABLE OF AUTHORITIES—Continued

Page

__STATUTES__:

16 U.S.C. § 459h-1(a) ................................................................. 25

16 U.S.C. § 459i-1 ...................................................................... 25

16 U.S.C. § 460aa-12 .................................................................. 25

16 U.S.C. § 460bb-3(a) ............................................................... 25

16 U.S.C. § 460cc-1(a) ................................................................ 25

16 U.S.C. § 460ee(c)(1) ............................................................... 25

16 U.S.C. § 460kk(c)(1) ............................................................... 25

16 U.S.C. § 460*l*-8 ....................................................................... 25

16 U.S.C. § 460*l*-9(a) ................................................................... 25

16 U.S.C. § 460*l*-10a .................................................................... 25

16 U.S.C. § 460*l*-10b .................................................................... 25

16 U.S.C. § 460m-3 ..................................................................... 25

16 U.S.C. § 460m-9(a) ................................................................. 25

16 U.S.C. § 460m-16(a) ............................................................... 25

16 U.S.C. § 460nn-1 .................................................................... 25

16 U.S.C. § 460p-2(a) .................................................................. 25

16 U.S.C. § 460q-2(a) .................................................................. 25

16 U.S.C. § 460r-2(a) ................................................................... 25

16 U.S.C. § 460v-7 ...................................................................... 25

16 U.S.C. § 460ww(b) .................................................................. 25

# TABLE OF AUTHORITIES—Continued

Page

**STATUTES**:

16 U.S.C. § 460z-6(a) ........................................................................... 25

16 U.S.C. § 460z-13 .............................................................................. 25

16 U.S.C. § 460-10a .............................................................................. 25

16 U.S.C. § 817(1) ................................................................................ 25

16 U.S.C. § 3101 .................................................................................... 1

16 U.S.C. § 3102 .............................................................................. 12,15

16 U.S.C. § 3102(1) ........................................................................... 5,26

16 U.S.C. § 3102(2) .............................................................. 4,26,28,34

16 U.S.C. § 3102(3) ................................................................................ 4

16 U.S.C. § 3102(3)(A) ........................................................................ 27

16 U.S.C. § 3114(a) ............................................................................. 4,5

16 U.S.C. § 3115(d) ................................................................................ 5

16 U.S.C. § 3117 .................................................................................... 1

16 U.S.C. § 3124 .................................................................................. 32

16 U.S.C. § 3202(b) ........................................................................ 23,24

28 U.S.C. § 1291 .................................................................................... 1

29 U.S.C. § 630(b)(2) ........................................................................... 23

33 U.S.C. § 1344(a) .............................................................................. 24

33 U.S.C. § 1362(7) .............................................................................. 24

43 U.S.C. § 945 .................................................................................... 35

## TABLE OF AUTHORITIES—Continued

Page

### STATUTES:

43 U.S.C. § 1301(e) .......................................................................... 17

43 U.S.C. § 1311(a) ....................................................................... 17,26

### RULES AND REGULATIONS:

36 C.F.R. § 242.3(b) (1994) ............................................................... 6

55 Fed. Reg. 27114 (June 29, 1990) ........................................... 5,6,27

57 Fed. Reg. 22940 (May 29, 1992) .............................................. 6,28

64 Fed. Reg. 1276 (Jan. 8, 1999) ............................................... 11,36

Fed. R. App. P. 4(a) ........................................................................ 1

### OTHER:

Alaska Almanac (6th ed. 1981) .................................................... 29

Alaska Dep't of Fish and Game, Catalog for Waters Important
    for Spawning, Rearing or Migration of Anadromous Fishes ................... 29

ANILCA Legislative History ........................................................ 30

*Hearings on H.R. 331 and S. 2036 Before the Senate Comm. on*
    *Interior and Insular Affairs*, 81st Cong., 2d Sess. (Apr. 24-
    29, 1950) ................................................................................ 17-18

*Water Supply and Use: Alaska*, U.S. Geological Survey Water-
    Supply Paper ........................................................................ 29

## STATEMENT OF JURISDICTION

The District Court had jurisdiction pursuant to 16 U.S.C. § 3117. The District Court entered final judgment on January 7, 2000, and entered an amended judgment on February 14, 2000. The State of Alaska and Frank Rue (collectively, "Alaska" or "State") filed a timely appeal on January 26, 2000. Fed. R. App. P. 4(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291; the appeal is from a final judgment disposing of all claims with respect to all parties.

## STATEMENT OF ISSUE ON APPEAL

Whether the prior panel majority of this Court properly held—in the absence of any express direction from Congress and in direct conflict with the Alaska Supreme Court, *Totemoff v. Alaska*, 905 P.2d 954 (Alaska 1995), *cert. denied*, 517 U.S. 1244 (1996)—that in enacting the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3101, *et seq.*, Congress drastically curtailed the State of Alaska's control over her navigable waters and management of fish and wildlife along those waters.

## STATEMENT OF THE CASE

This case is before this Court for the second time, after engendering a divided panel decision in a prior interlocutory appeal. The basic question presented is "whether Alaska or the United States has control over * * *

Alaska's navigable waters." *Alaska v. Babbitt*, 72 F.3d 698, 708 (9th Cir.

1995) (Hall, J., dissenting), *cert. denied*, 517 U.S. 1187 (1996).  Few matters

are more central to a State's sovereignty than the authority to manage the

natural resources within its borders.  That is especially true for Alaska.

Indeed, because Alaska's salmon stocks were decimated under federal

management in territorial times, one of the primary reasons Alaskans sought

statehood was to "receive[] full control over her resources." *Metlakatla*

*Indian Community v. Egan*, 369 U.S. 45, 47 n.2 (1962).  In this case, the

private plaintiffs and the federal defendants claim that ANILCA's definition

of "public lands" has the effect of divesting Alaska of control over most

navigable waters and management of the fish and game along those waters.

   In the earlier interlocutory appeal, a panel of this Court embraced this

interpretation of ANILCA—a statute that "makes no reference to navigable

waters"—even though the panel had to jerry-rig a "judicial * * * solution" to

resolve "*which* navigable waters are public lands" under the Act and, at the

same time, urged Congress to "clarify * * * its intent" on this important

matter.  54 F.3d 549, 553, 554 (9th Cir. 1995) (emphasis in original).

Shortly thereafter, the Alaska Supreme Court expressly "disagree[d]" with

the panel's conclusion, and "h[e]ld that * * * ANILCA does not curtail the

State's authority to regulate hunting and fishing in navigable waters."

- 2 -

*Totemoff*, 905 P.2d at 968.  The panel of this Court then withdrew its decision and replaced it with another.  72 F.3d 698 (1995).  The result was the same, but this time Judge Hall dissented.  Because Congress left the "slate * * * blank" on this "far-reaching" issue, she argued that it is not "for us" to effect "[s]uch a drastic change in the amount of federal control exercised by the federal government over [the] navigable waters in Alaska." *Id.* at 705-706, 708.  That "can only come from Congress." *Id.* at 706.

The case is now before this Court on appeal from a final judgment giving effect to the prior panel decision and the federal regulatory regime spawned by that decision.  That regime divests Alaska of jurisdiction to regulate subsistence fishing and hunting along navigable waters in more than half the State—wherever the federal government, according to federal regulators, has "reserved water rights," even though the murky concept of reserved water rights appears nowhere in the text of ANILCA or its legislative history, and is an odd and unruly proxy for determining *geographic* reach.  This Court granted initial hearing en banc to reconsider the panel decision sanctioning this "drastic" result. *Id.* at 706.  As Judge Hall reasoned in her dissent from that decision, this Court should hold that— whatever federal regulators or others may believe is the best policy for Alaska—Alaska retains control over fish and game management along her

- 3 -

navigable waters unless and until Congress plainly takes it away. The decision below accordingly should be reversed.

## STATEMENT OF FACTS

1.    Alaska entered the Union in 1959 on an equal footing with the lower 48 States, with "the right to control and regulate navigable streams within [her borders]," *Coyle v. Smith*, 221 U.S. 559, 573 (1911), and to manage fish and wildlife along those waters. *See United States v. Alaska*, 521 U.S. 1, 5-6 (1997); *Egan*, 369 U.S. at 47 n.2; *Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1403 (9th Cir. 1989), *cert. denied*, 495 U.S. 919 (1990). In 1980, Congress enacted ANILCA. While the "primary purpose" of ANILCA was "to complete the allocation of federal lands in the State of Alaska," *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 549 (1987) (footnotes omitted), Title VIII of the Act gave rural Alaskans a priority over other residents for "the taking on *public lands* of fish and wildlife for nonwasteful subsistence uses." 16 U.S.C. § 3114(a) (emphasis added). 1/

ANILCA defines "public lands" as "[f]ederal lands," *id.* § 3102(3); "[f]ederal land" in turn is defined as "lands the title to which is in the United States," *id.* § 3102(2); and "land" is defined as "lands, waters, and interests

---

1/    Section 3114(a) of ANILCA and other pertinent statutory provisions are reproduced in the addendum to this brief.

- 4 -

therein," *id.* § 3102(1). Neither the definition of "public lands" nor any other provision of ANILCA refers to "navigable waters." ANILCA allowed Alaska to maintain control over subsistence activities on even these federal "public lands" if the State enacted a rural priority consistent with that of ANILCA. *Id.* § 3115(d). Alaska enacted such a priority and, with federal approval, retained control over subsistence management throughout the State. *Alaska v. Babbitt*, 72 F.3d at 700-701.

In 1989, however, the Alaska Supreme Court held that the State's rural subsistence priority violated the state constitutional guarantee of equal access to fish and game and, thus, could not be enforced. *McDowell v. Alaska*, 785 P.2d 1 (Alaska 1989). Federal regulators then stepped in and— under ANILCA—assumed control over fish and game management on "public lands" in Alaska. As part of the federal takeover, the Secretaries of Interior and Agriculture promulgated regulations governing hunting and fishing on such public lands, and established a Federal Subsistence Board for the day-to-day management of such activities. 55 Fed. Reg. 27114 (June 29, 1990). The regulations provide that "[t]he United States generally does *not* hold title to navigable waters and thus navigable waters generally are *not* included within the definition of public lands." *Id.* at 27115 (emphases

added); *see id.* 27118. *See also* 57 Fed. Reg. 22940, 22942 (May 29, 1992);

36 C.F.R. § 242.3(b) (1994). 2/

      2.     In December 1990 the private plaintiffs—rural Alaskans who

fish in navigable waters—sued the federal defendants in the District Court

for the District of Alaska, challenging the administrative interpretation of

ANILCA's reach and arguing that the Act and its rural subsistence priority

cover *all* navigable waters in the State, in addition to non-navigable waters

on federally-owned public lands. Shortly thereafter, Alaska filed suit against

the federal defendants, challenging the authority of federal agencies to take

over subsistence management. The District Court consolidated the actions,

---

2/    In adopting the final rule to this effect, the Secretary of the Interior
further explained:

        The scope of these regulations is limited by the definition of
public lands, which is found in section 102 of ANILCA and which
only involves lands, waters, and interests therein title to which is in
the United States. Because the United States does not generally own
title to the submerged lands beneath navigable waters in Alaska, the
public lands definition in ANILCA and these regulations generally
excludes navigable waters.

        Consequently, neither ANILCA nor these regulations apply
generally to subsistence uses on navigable waters. However, based
upon specific pre-Statehood reservations of submerged lands,
§ _____, 3(b) establishes that these regulations apply to navigable
waters located on the identified public lands. The listed areas remain
subject to change through further rulemaking pending a review and
determination of pre-Statehood reservations by the United States. [57
Fed. Reg. at 22942.]

and first addressed "the fundamental issue of whether navigable waters are public lands" within ANILCA. 72 F.3d at 701.

The federal defendants defended the Title VIII regulations and, in accordance with those regulations, argued that ANILCA's definition of public lands generally *excludes* navigable waters. But in October 1993, they flip-flopped, and argued that most navigable waters are covered under ANILCA. *Id.* In March 1994 the District Court granted partial summary judgment for the private plaintiffs and held that ANILCA's definition of public lands encompasses "all navigable waterways in Alaska." 1994 WL 487830 at *18, reproduced in Record Excerpts at ER36. In so holding, the court specifically "decline[d] to use the reserved water rights doctrine as a means of determining the geographic scope of Title VIII" and, instead, held that the existence of a federal navigational servitude in Alaskan waters transformed such waters into public lands within ANILCA. *Id.* at *14, *17. The court thought that the navigational servitude theory of ANILCA's reach was "more compatible with the findings and policies of Title VIII" than one based on reserved water rights. *Id.* at *14 (footnotes omitted). The District Court certified its order for interlocutory review. *See* 72 F.3d at 701.

3.a.    On April 20, 1995, a panel of this Court reversed the District Court ruling that ANILCA extends to all navigable waters in Alaska, and

flatly rejected its navigational servitude rationale. 54 F.3d at 553. But the panel held that "some navigable waters" are public lands within ANILCA. *Id.* at 552 (emphasis in original). In so holding, the panel acknowledged that ANILCA "makes no reference to navigable waters" and that its "legislative history is also unhelpful," and that, as a result, it is unclear "*which* navigable waters are public lands." *Id.* at 553 (emphasis in original). To fill this void, the panel turned to the theory—passed over by the District Court—that "the definition of public lands includes those navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine." *Id.* at 554. The court then charged federal regulators with the "extraordinary" and "complicated" task of "identifying those waters." *Id.* The panel candidly recognized that this "judicial * * * solution" was "inherently unsatisfactory," and urged Congress to "clarify both the definition of public lands and its intent." *Id.*

      b.     On August 9, 1995, the Alaska Supreme Court decided *Totemoff.* 3/ That case arose when a subsistence hunter shot a deer on federal land from a skiff in navigable waters. The State prosecuted the

---

3/     Alaska filed a petition for rehearing and suggestion for rehearing en banc from the initial panel decision. Rehearing was denied on August 8, 1995, one day before *Totemoff* was issued. On August 9, 1995, the State brought *Totemoff* to the attention of this Court, which ordered that the mandate be withheld pending further consideration.

hunter for violating its own hunting laws, and the hunter defended on the ground that the federal government had jurisdiction over the incident under ANILCA. In rejecting that defense, the Alaska Supreme Court held that "ANILCA does not apply to the navigable waters from which Totemoff [shot] at the deer," and specifically "disagree[d]" with the panel decision in this case. 905 P.2d at 961, 968. As the Alaska high court reasoned, "Congress could not have intended to create such a complicated and uncertain regulatory scheme" as the one fashioned by the Ninth Circuit panel. *Id.* at 967. Moreover, "[i]f Congress intends to alter the usual balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Id.* at 966 (quotation omitted). Courts may not alter the balance *for* Congress.

      c.    On December 19, 1995, the panel of this Court withdrew its decision and issued another. 72 F.3d 698. Two judges joined the same opinion issued the previous April, but Judge Hall dissented. While Judge Hall suspected that Congress intended some navigable waters to fall under ANILCA, the absence of any clear indication as to *which* waters it had in mind prevented her from signing on to the majority's approach of simply invoking the reserved water rights doctrine and turning the matter over to the federal regulators. "Such a drastic change in the amount of control exercised

by the federal government over [the] navigable waters in Alaska can only come from Congress." *Id.* at 706. Far from addressing this issue, Congress left the "slate * * * blank." *Id.* at 708. Thus, because Judge Hall believed "[w]e, as judges," are "neither qualified to, nor in this case capable of," filling that slate, she admonished that the Court should "wait for *Congress* to make its intentions clear." *Id.* (emphasis added). 4/

   d.    Both the plaintiffs and the State petitioned for Supreme Court review. The United States opposed certiorari "in light of the interlocutory nature of the court of appeals' decision," suggesting that the parties might be able to "reach an accommodation through the administrative or political processes." Opp. Cert. at 19. The Supreme Court denied certiorari in 1996, and the case returned to the District Court where it was stayed pending completion of the "extraordinarily * * * complicated" administrative task— mandated by the divided panel decision—of identifying which navigable

---

4/    Judge Hall also concluded that even if it had made its intent clear, Congress lacked the authority to strip Alaska of control over her navigable waters under the majority's theory. As she explained, the reserved water rights doctrine is limited by both the Property and Commerce Clauses. The Property Clause only gives Congress power over *federal* lands; however, "Alaska has title to its navigable waters under the Submerged Lands Act." 72 F.3d at 706. Similarly, "[b]ecause the impact of ANILCA's subsistence priority in Alaskan navigable waters would not 'substantially affect' interstate commerce, this priority cannot be upheld under the Commerce Power." *Id.* at 707 (quoting *United States v. Lopez*, 514 U.S. 549, 559 (1995)).

- 10 -

waters in Alaska are "public lands" under an application of the reserved

water rights doctrine. 72 F.3d at 704.

      4.    Despite considerable debate, no political solution materialized

to this litigation over ANILCA's reach to navigable waters, or to the issue

whether Alaska's constitution should be amended to allow for a rural

subsistence priority. Thus, while passing a series of moratoria postponing

the federal takeover, Congress failed to heed the request of the initial panel

in this case to "clarify both the definition of public lands and its intent." 72

F.3d at 704. In October 1999, when the last moratorium expired, the final

ANILCA regulations took effect, *see* 64 Fed. Reg. 1276 (Jan. 8, 1999), and

the United States assumed control over subsistence fishing and hunting

along more than 100,000 miles of rivers and streams in Alaska—including

some of the State's most significant waterways, such as the Yukon,

Kuskokwim, and Copper Rivers—and in many of the State's marine waters.

Pursuant to this Court's "direct[ion]," the regulations purport to "identif[y]

Federal land units in which reserved water rights exist. These are 'public

lands' under the [prior panel decision] and thus are subject to the Federal

subsistence priority in Title VIII of ANILCA." *Id.*

      With the federal takeover complete, the District Court issued a final

judgment in this action on January 7, 2000, reaffirming the prior ruling on

- 11 -

ANILCA's reach to Alaska's navigable waters and dismissing without prejudice all undecided claims. The State appealed. The private plaintiffs—supported by the federal appellees—moved for summary affirmance on the basis of this Court's prior panel decision. The State opposed summary affirmance and petitioned for initial en banc consideration of the appeal. On July 14, 2000, this Court granted the State's petition.

## SUMMARY OF ARGUMENT

ANILCA does not divest Alaska of her sovereignty over navigable waters or management of fish and wildlife along those waters. By its terms, the Act only applies to "public lands," which Congress defined as federal "lands, waters, or interests therein," "the title to which is in the United States." 16 U.S.C. § 3102. Neither that definition nor any other provision of ANILCA refers to "navigable waters." Yet, when Congress enacted ANILCA, it is presumed to have known that under constitutional equal footing doctrine and the Submerged Lands Act, Alaska holds title to the lands beneath navigable waters and, by virtue of that title, enjoys the right to manage those waters and natural resources along them for public purposes including fishing. This authority is uniquely bound up with Alaska's identity and mission as a sovereign.

- 12 -

As the Supreme Court reiterated just last Term, the "ordinary rule of statutory construction [is] that if Congress intends to alter the usual constitutional balance between States and the Federal Government, it must make its intention to do so unmistakably clear *in the language of the statute.*" *Vermont Agency of Natural Resources v. United States*, 120 S. Ct. 1858, 1870 (2000) (quotations and citations omitted; emphasis added). This fundamental rule of construction ensures that decisions on such momentous matters are made by Congress, the branch of our federal government that is comprised of, and thus uniquely accountable to, the States. The prior panel majority could not have strayed farther from this rule. Indeed, the panel acknowledged that ANILCA "itself makes no reference to navigable waters," and that it provides no "clear direction" on what navigable waters are supposedly covered, but then construed ANILCA to divest Alaska of control over navigable waters in *most* of the State. 72 F.3d at 702.

ANILCA not only lacks the requisite clear statement to achieve this result, but the evidence that does exist indicates that Congress, in fact, did not intend for the Act to cover navigable waters, and certainly not on the basis of implied water rights. When Congress wants to legislate federal regulation of "navigable waters," it does so expressly, as it did in the Clean Water Act. Furthermore, during Congress' final deliberations on ANILCA,

- 13 -

an amendment that would have extended ANILCA *beyond public lands* to "the waters of Alaska" was considered and rejected. In addition, there is no evidence in the extensive legislative history to ANILCA that Congress intended the drastic aftermath of the prior panel decision. As the panel itself acknowledged, using the indeterminate "reserved water rights" doctrine to identify which of the millions of lakes and hundred thousand miles of waterways in Alaska are "public lands" within ANILCA imposed an "extraordinary administrative burden on federal agencies." 72 F.3d at 704. Not a single Congressman uttered a word about it.

Because appellees can find no support for their interpretation in ANILCA, they rely almost entirely on *Chevron* deference and congressional acquiescence theories to defend the prior panel decision. But neither of those doctrines can account for the lack of a clear statement *by Congress* that it intended to disrupt the federal balance in the manner achieved by the prior panel decision. By definition, *Chevron* deference—applicable when Congress has *not* spoken directly to the question presented—cannot save an interpretation that requires a clear legislative statement. Moreover, *Chevron* does not resuscitate interpretations that are unreasonable to begin with, such as the one advanced by the government—now. Similarly, Congress has not acquiesced to the prior panel decision by virtue of any of the eleventh hour

appropriations riders cited to by appellees.  And the clear statement rule

would be a hollow safeguard for our federal system if courts could strip

States of their sovereignty over a vital area of regulation, then simply wait

and see if Congress "acquiesces."

## ARGUMENT

I.   IN ENACTING ANILCA, CONGRESS DID NOT INTEND TO
     STRIP ALASKA OF ITS SOVEREIGNTY OVER NAVIGABLE
     WATERS OR RIGHT TO MANAGE FISH AND WILDLIFE
     ALONG SUCH WATERS.

     A.   The Long Settled Understanding Is That States Are
          Sovereign Over The Navigable Waters Within Their
          Borders And Natural Resources Along Such Waters.

     The question whether, or to what extent, ANILCA sanctions the

federal takeover of fish and game management along navigable waters in

Alaska turns on construction of ANILCA and, in particular, its definition of

"public lands." 5/  As discussed, that definition provides that "public lands"

are federal "lands, waters, and interests therein," "the title to which is in the

United States." 16 U.S.C. § 3102.  This definition was written against a

settled legal backdrop concerning navigable waters, of which Congress is

presumed to have been aware.  *See Bowen v. Massachusetts*, 487 U.S. 879,

896 (1988) ("the well-settled presumption [is] that Congress understands the

---

5/    This question is purely legal and therefore subject to de novo review.
Because this Court is sitting en banc, it is not bound by the prior panel
decision in this case.

- 15 -

state of existing law when it legislates"); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-185 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.").

"[N]avigable waters uniquely implicate sovereign interests." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 284 (1997). Under the constitutionally grounded "equal footing" doctrine, all States enter the Union with title to the land underlying navigable waters and "the right to control and regulate navigable streams" on that land. *Coyle v. Smith*, 221 U.S. at 573. This title has long been viewed as "an *essential attribute* of sovereignty," because it directly affects "the sovereign's ability to control navigation, fishing, and other * * * activity on rivers and lakes." *Utah Div. of State Lands v. United States*, 482 U.S. 193, 195 (1987) (emphasis added). *See United States v. Alaska,* 521 U.S. at 5 ("[o]wnership of submerged lands * * * carries with it the power to control navigation, fishing, and other public uses of water"); *United States* v. *Oregon*, 295 U.S. 1, 14 (1935).

Furthermore, it is presumed that Congress enacted ANILCA based on the understanding that "[t]he Submerged Lands Act of 1953 * * * shall be applicable to the State of Alaska." Alaska Statehood Act, § 6(m), 72 Stat. 339, 343 (1959). Among other things, the Submerged Lands Act expressly affirms that—in accordance to the constitutionally-grounded equal footing

- 16 -

doctrine—States have "title to and ownership of the lands beneath navigable waters within [their] boundaries * * *, and the natural resources within such lands and waters." 43 U.S.C. § 1311(a). 6/ The Act also affirms that States have "the right and power to manage * * * natural resources" along navigable waters, including "fish." *Id.* §§ 1311(a), 1301(e). In Alaska, dominion and control over such natural resources, as well as those throughout the State, is central to what being "sovereign" is all about.

"Protection of the wild life * * * is peculiarly within [the States'] police power." *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 391 (1978) (quotation omitted). *See Carey v. South Dakota*, 250 U.S. 118, 120 (1919). That is true in the Nation's frontier state—land of perhaps the largest and most diverse wildlife population in America—and, for Alaskans, that authority is particularly dear with respect to the protection of fisheries. Indeed, it is one of the principal reasons Alaskans sought statehood, *see Egan*, 369 U.S. at 47 n.2; as Alaska's Territorial Governor Ernest Gruening pleaded in testifying on the statehood bill:

> We all feel in Alaska that it is inconceivable to think of a State being created without control of [fisheries]. Alaskans feel that the very existence and perpetuation of that resource, which has so often been

---

6/    The Submerged Lands Act contains certain exceptions, but, as Judge Hall explained, "[n]one" applies here. *Alaska v. Babbitt*, 72 F.3d at 705 n.2 (dissenting).

jeopardized in the past in no small degree because of inadequate enforcement due to insufficient Federal appropriations, depends on local control. The people of Alaska all feel, and this is said without any criticism, that they could do a better job with the conservation of fisheries than has been done through the years. [*Hearings on H.R. 331 and S. 2036 Before the Senate Comm. on Interior and Insular Affairs*, 81st Cong., 2d Sess. 486 (Apr. 24-29, 1950).]

Granting Alaska title to the land beneath the navigable waters containing many of the States most prized fisheries was a significant way in which Congress returned to Alaskans control over their fisheries, since title to such waters traditionally carries with it the authority to regulate fishing in them.

Against this settled backdrop, perhaps the most telling fact of this case is that—as the panel majority in the prior appeal recognized—"ANILCA itself * * * makes no reference to navigable waters." 72 F.3d at 702. Nor does ANILCA or its legislative history say a word about stripping Alaska of the dominion and control over navigable waters that she enjoys by virtue of the constitutional equal footing doctrine and Submerged Lands Act. This fact alone casts doubt on every single argument propounded by the private appellees and federal defendants in support of the interpretation that ANILCA nevertheless *covers* all or most navigable waters in Alaska, and thus displaces the State's authority to control subsistence fishing in them.

- 18 -

**B.    ANILCA Does Not Plainly And Unambiguously Divest Alaska Of Its Sovereignty Over Navigable Waters And Natural Resources Along Such Waters.**

The prior panel majority was wrong to conclude that Congress intended to depart in ANILCA from the settled understanding with respect to state sovereignty over navigable waters. But more fundamentally, in reaching this conclusion, the panel flouted a principle of judicial restraint that is deeply rooted in Supreme Court jurisprudence and vital to our federal structure: when construing a federal statute in a manner that "would upset the usual constitutional balance of federal and state powers," "it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides this balance." *Gregory v. Ashcroft,* 501 U.S. 452, 460 (1991) (quotation omitted). Put somewhat differently, "[i]f Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear *in the language of the statute.*" *Id.* (same; emphasis added). "This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Id.* at 461.

- 19 -

See *Vermont Agency of Natural Resources v. United States*, 120 S. Ct. at 1870 (citing *Gregory*); U.S. Const. amend. X. 7/

In *Utah Division of State Lands v. United States*, 482 U.S. at 195, 198 (quotation omitted), the Supreme Court held that a court should not construe a federal statute to restrict state title to submerged lands—key to "the sovereign's ability to control navigation, fishing, and other * * * activity" on navigable waters—"unless [such an] intention was definitely declared or otherwise made very plain, or was rendered in clear and especial words." In a similar vein, the Supreme Court in *Hynes v. Grimes Packing Co.*, 337 U.S. 86, 105 (1949), observed that "[i]t would take specific and unambiguous legislation to cause us to rule that Congress intended to authorize the Secretary of the Interior to alienate the Alaska fisheries permanently from public control." And this Court itself has recognized and applied this clear

---

7/    See also, e.g., *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (where "federal law is said to bar state action in fields of traditional state regulation," the courts "work[] on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'") (quotation omitted); *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 121-122 (1992) ("In sum, our rule is that the traditional police powers of the State survive unless Congress has made a purpose to pre-empt them clear."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (when "Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.") (quotation omitted).

statement rule to preserve Alaska's "equal footing entitlement" to navigable waters. *See Alaska v. Ahtna Inc.*, 891 F.2d at 1406 (quotation omitted).

The panel majority in the prior appeal could not have strayed farther from this teaching. The majority interpreted ANILCA to effect a "drastic change in the amount of control exercised by the federal government over [the] navigable waters in Alaska" and management of fish and game along those waters. 72 F.3d at 706 (Hall, J., dissenting). Yet, far from finding that this result was "unmistakably clear in the language of the statute," *Vermont Agency of Natural Resources*, 120 S. Ct. at 1870, the majority candidly acknowledged that ANILCA "makes no reference to navigable waters," and that to the extent Congress intended ANILCA to cover "*some* navigable waters," it left no clue as to "*which* navigable waters." 72 F.3d at 702 (emphases in original). Likewise, instead of ensuring that Congress had clearly spoken to this question, the majority freely admitted that it "[l]acked clear direction" on the matter, and openly invited Congress to "clarify both the definition of public lands and its intent." *Id.* at 702, 704.

The majority's "judicial * * * solution" (*id.* at 704) to the lack of any clear direction from Congress on the Act's reach to navigable waters speaks volumes about its approach. With no guidance from Congress, the majority clung to the government's latest argument—which contradicted its first

- 21 -

interpretation of ANILCA (*i.e.*, that navigable waters generally are *not* public lands), *see id.* at 701; *supra* at 6 & n.2—and held that the reserved water rights doctrine solved the riddle as to *which* navigable waters are covered.  That was clear error.  As the Supreme Court reiterated just last Term, a court should not construe a statute to alter the federal balance unless that result is "unmistakably clear *in the language of the statute*," *Vermont Agency of Natural Resources*, 120 S. Ct. at 1870 (emphasis added), not in the administrative interpretation *du jour* of the statute.  In this vein, as we explain below, when it comes to altering the traditional balance between the federal government and the States, the *Chevron* doctrine does not allow agencies—or courts—to step in where Congress leaves off.  Rather, as Judge Hall recognized, decisions on such important matters "can only come from Congress." 72 F.3d at 706 (dissenting).

While ANILCA is completely silent as to its application to *navigable* waters—a unique attribute of Alaska's sovereignty—all agree that ANILCA reaches water.  Thus, as discussed, the United States' first interpretation of the Act for purposes of its subsistence rules, and its initial position in this litigation, was that "public lands" included non-navigable waters on federally-owned lands, and even certain navigable waters on federally-owned lands withdrawn prior to statehood.  Those waters may support a

- 22 -

subsistence lifestyle for many rural Alaskans. But Congress' intent to
include *some* water within ANILCA's reach does not eliminate the
requirement for a clear statement that Congress meant to usurp Alaska's
sovereignty over *all or most* of its navigable waters. The clear statement
doctrine, in other words, is not applicable only to the threshold question
whether Congress intended to legislate in an area that could upset the
balance of federal and state power, but rather also governs the equally
important question of how far Congress intended to go.

 Thus, for example, in *Gregory v. Ashcroft*, the Supreme Court held
that the Age Discrimination in Employment Act, which covered employees
of "a State or political subdivision of a State," 29 U.S.C. § 630(b)(2), did not
apply to state judges, because the provision did not unambiguously reveal
that Congress intended to cover those particular state employees. 501 U.S.
at 467. In reaching this conclusion, the Court reasoned that a clear statement
is required not simply in determining whether a statute applies to the States,
but also in determining whether the statute applies in the particular manner
claimed. *Id.* at 468. So too here. A clear statement is required not only to
ascertain whether Congress intended ANILCA to displace state fish and
game authority at all, but also in determining *where* and *to what extent*.
Otherwise, the clear statement rule would have the anomalous effect of only

- 23 -

requiring the courts to ascertain whether Congress was legislating in the

highly sensitive area of state sovereignty and—once clear that it was—

impose no further constraint on construing the statute's reach.

This principle has particular force where, as here, Congress itself goes

out of its way to specify that, to the extent it has altered the federal balance,

its actions should be narrowly construed. *See* 16 U.S.C. § 3202(b).

C.    **Apart From The Absence Of Any Clear Statement, Other Indicia Of Congress' Intent Confirm That It Did Not—*Sub Silentio*—Intend To Extend ANILCA To Navigable Waters.**

1.    Other indicia of Congress' intent confirm that it did not intend

to extend ANILCA to all or most navigable waters in Alaska—without

saying so.  To begin with, Congress plainly knows how to extend federal

legislation to "navigable waters" when it wants to, and does so in express

terms.  Thus, for example, the Clean Water Act not only expressly extends

federal law to "navigable waters," but separately defines that term.  *See* 33

U.S.C. §§ 1344(a) (authorizing the Corps of Engineers to issue permits "for

the discharge of dredged or fill material into the navigable waters at

specified disposal sites"), 1362(7) (defining "navigable waters").  In

establishing ANILCA's reach, by contrast, Congress spoke in terms of

"public lands"—a definition that incorporates boilerplate language found in

numerous other federal conservation measures and which, before this case,