# EXHIBIT B-10 (Part 1)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

### No. 00-35121

---

## KATIE JOHN, DORIS CHARLES and MENTASTA VILLAGE COUNCIL

Plaintiffs-Appellees

### and

### ALASKA FEDERATION NATIVES

Intervenor-Appellee,

### v.

### UNITED STATES OF AMERICA, et al.

Defendant-Appellants

---

## ON APPEAL FROM THE FEDERAL DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

---

## <u>EN BANC</u> BRIEF FOR THE FEDERAL APPELLEES

---

**LOIS J. SCHIFFER**
**Assistant Attorney General**

**WILLIAM B. LAZARUS**
**JOHN A. BRYSON**
**DEAN K. DUNSMORE**
**ELIZABETH ANN PETERSON**
<u>Attorneys, Department of Justice</u>
<u>P.O. Box 23795</u>
<u>L'Enfant Plaza Station</u>
<u>Washington, D.C. 20016</u>
<u>(202) 363-6157</u>

**(Cover Page Retyped Due To Eligible (Very Dark) Copy)**

# TABLE OF CONTENTS

PAGE

Opinion Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The statutory framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The proceedings below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.    Proceedings in the district court . . . . . . . . . . . . . . . . . 6

        2.    The prior panel's ruling . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.    Post-decision actions by Congress and the Agencies . . . . . . 8

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.    The Current Federal Regulations And  The Prior Panel's
Opinion Reflect A Reasonable Interpretation Of The "Public
Lands" Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    The prior panel correctly applied a deferential standard of review
to this case, which concerns agencies' construction of a statute
they administer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.    The prior panel correctly deferred to the Secretaries'
reasonable interpretation of "public lands" as including
both navigable and non-navigable waters in which the
United States holds property interests . . . . . . . . . . . . . . . . 17

PAGE

2.   This Court may defer to the agencies' views although there is no rulemaking record at issue here  . . . . . . . . . . . . . . . .  18

B.   Even in the absence of deference, the panel's ruling and the current regulations should be upheld because Title VIII unambiguously protects the subsistence use of fish and wildlife on public lands  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

1.   The United States holds title to interests in waters appurtenant to federal lands  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

2.   By defining "public lands" on which the statute applies to include "waters and interests therein" Congress extended its protections to waters appurtenant to federal lands  . . . . .  22

3.   A definition that reads out "waters and interests therein" is inconsistent with ANILCA  . . . . . . . . . . . . . . . . . . . . . .  26

C.   Congress is aware of, and has acquiesced in, the agencies' definition of "public lands"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

II.   Title VIII Represents An Appropriate Exercise Of Congress's Authority Under the Property Clause  . . . . . . . . . . . . . . . . . . . . . . .  28

III.   ANILCA Contains A "Clear Statement" Of Intent To Regulate In Areas Traditionally Managed By States In Order To Protect The Subsistence Way Of Life, Including Subsistence Fishing, On Lands And Waters Owned By The United States  . . . . . . . . . . . . . . . . . . . . . . . . . .  31

A.   Even if the state were entitled to exclusive authority in navigable waters, Gregory v. Ashcroft would not apply because "waters" is unambiguous  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

-ii-

**PAGE**

B.    The clear statement rule does not apply in the manner proposed
by Alaska, because Alaska's authority to regulate in navigable
waters is subordinate to that of the United States . . . . . . . . . . . . .  35

    1.    The Submerged Lands Act does not give states exclusive
authority to regulate waters within their boundaries . . . . . .  35

    2.    Alaska's authority to regulate in navigable waters is at all
times subject to the navigational servitude . . . . . . . . . . . .  37

    3.    Alaska's regulatory authority in navigable waters is
subordinate to the federal Commerce Clause authority
to legislate regarding activities substantially affecting
commerce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

IV.    This Court Lacks Jurisdiction To Hear This Appeal Because the
Challenged Regulations Have Been Superseded By New Regulations,
And The Case Is Now Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

Statement Pursuant To Circuit Rule 32(e)(4) . . . . . . . . . . . . . . . . . . . . .  46

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

PAGE

# TABLE OF AUTHORITIES

### CASES:

Alaska v. Babbitt, supra, 72 F.3d at 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Alaska Pacific Fisheries v. United States, 248 U.S. 78 (1918) . . . . . . . . . . . . . . 26
Arizona v. California, 373 U.S. 546 (1963) . . . . . . . . . . . . . . . . 22,25,35,37
Bragdon v. Abbott, 524 U.S. 624 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Cappaert v. United States, 426 U.S. 128 (1976) . . . . . . . . . . . . . . . . . . . . 22,30
Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837
    (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,19,20
Christensen v. Harris County, 529 U.S. 576 (2000) . . . . . . . . . . . . . . . . . . 19,20
Colville Confederated Tribes v. Walton, 647 F.2d 42, (9th Cir.), cert. denied,
    454 U.S. 1092 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,25
Commissioner v. Shapiro, 424 U.S. 614 (1976) . . . . . . . . . . . . . . . . . . . . . 42
Defenders of Wildlife v. Andrus, 627 F.2d 1238 (D.C. Cir. 1980) . . . . . . . . . . 33
Department of Revenue of Oregon v. ACF Industries, 510 U.S. 332 (1994) . 15,42
Douglas v. Seacoast Products, Inc., 431 U.S. 25 (1977) . . . . . . . . . . . . . . . . . 39
Dunn v. Commodity Futures Trading Comm'n, 519 U.S. 465 (1997) . . . . . . . 27
F.P.C. v. Niagara Mohawk Power Corp., 347 U.S. 239 (1954) . . . . . . . . . . . . 22
Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . 30
Food and Drug Administration v. Brown & Williamson Tobacco Corp.,
    529 U.S. 120 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Gibson v. United States, 166 U.S. 269 (1897) . . . . . . . . . . . . . . . . . . . . . . 36
Geer v. Connecticut, 161 U.S. 519 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . 28
Gregory v. Ashcroft, 501 U.S. 452 (1991) . . . . . . . . . . . . . . . . . . . 36,37,38
Hodel v. Indiana, 452 U.S. 314 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264
    (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31,39
Hughes v. Oklahoma, 441 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 29
Idaho v. Coeur D'Alene Tribe, 521 U.S. 261 (1997) . . . . . . . . . . . . . . . . . . . 42
Idaho Department of Fish & Game v. Pacific Northwest Generating Cooperative,
    56 F.3d 1071 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
International Paper Company v. Ouellette, 479 U.S. 481 (19**) . . . . . . . . . . . 35
John Hancock Mut. Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86 (1993) . 15

PAGE

**CASES (continued) :**

Jones v. Rath Packing Co., 430 U.S. 519 (1977) . . . . . . . . . . . . . . . . . . . . . . . 31

Kenaitze Indian Tribe v. State of Alaska, 860 F.2d 312 (9th Cir. 1988),
    cert. denied, 491 U.S. 905 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 4,6,13

Kleppe v. New Mexico, 426 U.S. 529 (1976) . . . . . . . . . . . . . . . . . . . . . . . 29,31

Light v. United States, 220 U.S. 523 (1911) . . . . . . . . . . . . . . . . . . . . . . . 29,30

Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992) . . . . . . . . . . . 42

McDowell v. State of Alaska, 785 P.2d 1 (Alaska 1989) . . . . . . . . . . . . . . . . 6

Metlakatla Indian Community v. Egan, 369 U.S. 45 (1962) . . . . . . . . . . . . 16,37

Minnesota v Mille Lacs Band of Chippewa Indians, 526 U.S. 172 (1999) . . . . 29

Missouri v. Holland, 252 U.S. 416 (1920) . . . . . . . . . . . . . . . . . . . . . . . . 29,39

Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana,
    472 U.S. 237 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ninilchik Traditional Council v. United States, 2000 WL 1290363
    (Sept. 14, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Oregon ex rel. State Land Board v. Corvallis Sand and Gravel Co., 429 U.S. 363
    (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,36

Pavelic & Le Flore v. Marvel Entertainment Group, 493 U.S. 120 (1989) . . . . 30

Preseault v. ICC, 494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Railway Labor Executives' Ass'n v. ICC, 784 F.2d 959 (9th Cir. 1986) . . . . . . 14

Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947) . . . . . . . . . . . . . . . . . . 31

Robinson v. Shell Oil Co., 519 U.S. 337 (1997) . . . . . . . . . . . . . . . . . . . . . 17

Rust v. Sullivan, 500 U.S. 173 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382 (9th Cir. 1994) . . . . . . . 13

Sannon v. United States , 631 F.2d 1247 (5th Cir. 1980) . . . . . . . . . . . . . . . 42

Scranton v. Wheeler, 179 U.S. 141 (1900) . . . . . . . . . . . . . . . . . . . . . . . . . 38

Skidmore v. Swift & Co., 323 U.S. 134 (1944) . . . . . . . . . . . . . . . . . . . . . . 20

Steffel v. Thompson, 415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 42

U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 115 S. Ct. 386
    (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

United States v. Adair, 723 F.2d 1394 (9th Cir. 1984), cert. denied,
    438 U.S. 696 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,30

United States v. Alexander, 938 F.2d 942 (9th Cir. 1991) . . . . . . . . . . . . . . . 16

United States v. Cherokee Nation of Oklahoma, 480 U.S. 700 (1987) . . . . . . . 38

-v-

**PAGE**

<u>**CASES (continued)**</u>:

<u>United States v. Darby</u>, 312 U.S. 100 (1941)  . . . . . . . . . . . . . . . . . . . . . . .  18,40
<u>United States v. Gardner</u>, 107 F.3d 1314  . . . . . . . . . . . . . . . . . . . . . . . . .  30,31
<u>United States v. Lopez</u>, 514 U.S. 549 (1995)  . . . . . . . . . . . . . . . . . . . . . . .   39
<u>United States v. New Mexico</u>, 426 U.S. 529  . . . . . . . . . . . . . . . . . . . . . . .   35
<u>United States v. Rands</u>, 389 U.S. 121, 122 (1967)  . . . . . . . . . . . . . . . . . . .  37,42
<u>Utah Division of State Lands v. United States</u>, 482 U.S. 193 (1987)  . . . . . . . . .   37
<u>Wickard v. Filburn</u>, 317 U.S. 111 (1942)  . . . . . . . . . . . . . . . . . . . . . . . . . .   40

PAGE

**STATUTES, RULES and REGULATIONS:**

Act of April 26, 1996,
Pub. L. No. 104-134, 1996 U.S. Code Cong. & Admin. News (110 Stat.)
1321, 1321-210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,32

Act of September 30, 1996,
Pub. L. No. 104-208, 1996 U.S. Code Cong. & Admin. News
110 Stat. 3009, 3009-222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,32

Act of November 14, 1997,
Pub. L. No. 105-83, 1998 U.S. Code Cong. & Admin. News
111 Stat. 1543, 1592 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10,32

Age Discrimination in Employment Act
29 U.S.C. 621-634 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Alaska National Interest Lands Conservation Act (ANILCA),
Section 102, 16 U.S.C. 3102(1)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . 5,8
Section 807, 16 U.S.C. 3117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,15
16 U.S.C. 3101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
16 U.S.C. 3101(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
16 U.S.C. 3102(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
16 U.S.C. 3111-3126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,32
16 U.S.C. 3111(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. 3111(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. 3113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
16 U.S.C. 3114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. 3115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. 3115(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16 U.S.C. 3121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
16 U.S.C. 3121(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
16 U.S.C. 3202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Federal Land Policy and Management Act,
43 U.S.C. 7102(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PAGE

**STATUTES, RULES and REGULATIONS (continued):**

Omnibus Consolidated Appropriations Act of October 21, 1998,
     Pub. L. No. 105-277, 1999 U.S. Code Cong. & Admin. News
     112 Stat. 2681 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10,32

Submerged Lands Act,
     Section 3(a), 43 U.S.C. 1311(a) . . . . . . . . . . . . . . . . . . . . . . . . 39
     Section 5(a), 43 U.S.C. 1313(a) . . . . . . . . . . . . . . . . . . . . . . . . 40
     Section 6(a), 43 U.S.C. 1314(a) . . . . . . . . . . . . . . . . . . . . . . 40,42

72 Stat. 339, 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Section 102(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Section 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 804 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,9
Section 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,27
Section 814, 16 U.S.C. 1324 . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. 410hh(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
16 U.S.C. 1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
16 U.S.C. 1301(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
16 U.S.C. 796 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
28 U.S.C. 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
43 U.S.C. 1602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fed. Reg. 27,114 (June 29, 1990) . . . . . . . . . . . . . . . . . . . . . . . . 6
55 Fed. Reg. 27114 (June 29, 1990) . . . . . . . . . . . . . . . . . . . . . . 31
55 Fed. Reg. 27115 (June 29, 1990) . . . . . . . . . . . . . . . . . . . . . . 31
57 Fed. Reg. 22,942 (May 29, 1992) . . . . . . . . . . . . . . . . . . . . . . 6
61 Fed. Reg. 15014 (April 4, 1996) . . . . . . . . . . . . . . . . . . . . . . . 7
61 Fed. Reg. 15015/2 (April 4, 1996) . . . . . . . . . . . . . . . . . . . . . . 7
62 Fed. Reg. 66,216 (Dec. 17, 1997) . . . . . . . . . . . . . . . . . . . . . . 9
62 Fed. Reg. 66,222-223 (Dec. 17, 1997) . . . . . . . . . . . . . . . . . . . 9
64 Fed. Reg. 1276 (Jan. 8, 1999) . . . . . . . . . . . . . . . . . . . . . 10,14,22

**PAGE**

**STATUTES, RULES and REGULATIONS (continued):**

36 C.F.R. Part 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
50 C.F.R. Part 100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
50 C.F.R. 100.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


**MISCELLANEOUS:**

H. R. Rep. No. 95-1045, pt. I (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
U.S. Const. Art. III, sec. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,35
U.S. Const. Ar. VI, sec. 3, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

No. 00-35121

———————————

KATIE JOHN, DORIS CHARLES and MENTASTA VILLAGE COUNCIL

Plaintiffs-Appellees,

and

ALASKA FEDERATION OF NATIVES

Intervenor-Appellee,

v.

UNITED STATES OF AMERICA, et al.

Defendants-Appellees

and

STATE OF ALASKA, et al.

Defendants-Appellants

———————————

ON APPEAL FROM THE FEDERAL DISTRICT COURT
FOR THE DISTRICT OF ALASKA

———————————

EN BANC BRIEF FOR THE FEDERAL APPELLEES

———————————

OPINIONS BELOW

The district court entered final judgment in this case on January 7, 2000

(Supplemental Excerpts of Record (hereinafter "SER") at page 529).  The district

court's order concluding that the case was at an end is reproduced at SER 523.

This Court's 1995 opinion on interlocutory appeal in this case is reported at 72

F.3d 689 (9th Cir. 1995).

## JURISDICTION

The district court had jurisdiction over this matter pursuant to 16 U.S.C. 3117, which allows suits by persons "aggrieved by a failure of the State or Federal Government to provide for the priority for subsistence uses."

The district court entered final judgment on all claims as to all parties on January 7, 2000. This Court's jurisdiction rests on 28 U.S.C. 1291. As discussed infra, pp. 41-44, however, the regulations originally challenged by the State of Alaska have been withdrawn and superseded by new regulations, thereby making the claims in the instant case moot.

## ISSUES PRESENTED

1. Whether this case is now moot because the regulatory definition challenged in the Complaint has been superseded by new regulations, and the appeal is taken from a judgment that neither granted nor denied relief on any claim.

2. Assuming that this Court has jurisdiction to consider the matter, whether, in regulations issued as a consequence of this Court's 1995 interlocutory ruling, and which superseded the regulations challenged in this lawsuit, the Secretaries of Agriculture and the Interior reasonably interpreted "public lands" on which the priority for subsistence uses of fish and wildlife provided by Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA) is to be accorded, to include certain waters in which the United States owns reserved rights.

## STATEMENT

This Court heard interlocutory appeals in this case in 1995. As a consequence of the ruling on those interlocutory appeals, the Departments of

- 2 -

Agriculture and the Interior have issued new regulations, which have superseded the 1992 regulations challenged in this lawsuit, in which they have identified as "public lands" certain federal reserved waters. ANILCA and the current federal regulations protect the interests of rural Alaska residents dependent on fishing for subsistence against competing claims to these resources from sport and commercial fisheries, by according their use of these resources a priority on federally owned lands and waters. This case involves the question which lands and waters in Alaska are subject to the priority.

In enacting Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. 3111-3126, Congress invoked its constitutional authority under the Property Clause and the Commerce Clause "to protect and provide the opportunity for continued subsistence uses on the public lands by Native and non-Native rural residents." ANILCA Section 801(d), 16 U.S.C. 3111. Title VIII therefore accords a priority for the taking, on "public lands," by rural Alaska residents, of fish and wildlife for nonwasteful subsistence purposes. The State of Alaska challenges the interpretation given by the Departments of Agriculture and the Interior to the term "public lands" in Title VIII.

ANILCA's subsistence provisions preempt regulation by the State of subsistence hunting and fishing on federal lands and waters, unless the State implements legislation providing the same measures as the federal statute for protection of the subsistence way of life. Despite several attempts to enact and implement equivalent state legislation, Alaska has not taken the necessary steps to provide the priority for subsistence hunting and fishing established in ANILCA, and

- 3 -

the federal government therefore has been required to implement the program. See Kenaitze Indian Tribe v. State of Alaska, 860 F.2d 312 (9th Cir. 1988), cert. denied, 491 U.S. 905 (1989).

The first federal regulations implementing Title VIII, published in June 1990, defined the scope of federal regulation narrowly, concluding that "public lands" encompassed only federally owned lands and waters whose beds were federally owned lands. In an earlier phase of this challenge to that definition, a panel of this Court upheld the revised view of the Secretaries of the responsible agencies that "public lands," which ANILCA defines as "lands, waters and interests therein, title to which is in the United States" includes waters in which the United States owns reserved rights by virtue of their appurtenance to federal lands reserved for purposes requiring the use of water. Alaska v. Babbitt, supra, 72 F.3d at 701. Accordingly, the federal agencies have now amended their regulations to extend the priority to waters appurtenant to certain federal lands, including lands reserved as national forests and conservation system units. In this appeal, Alaska again challenges the definition of "public lands" adopted by the agencies – and earlier approved by a panel of this Court – as a violation of the State's sovereign authority to regulate navigable waters pursuant to the equal footing doctrine, and as exceeding Congress's authority under the Commerce Clause and the Property Clause of the U.S. Constitution.

A. The statutory framework. – Congress enacted ANILCA Title VIII as a means to preserve the subsistence way of life in rural Alaska. 16 U.S.C. 3111. It found that "the national interest in the proper regulation, protection and

- 4 -

conservation of fish and wildlife on the public lands in Alaska and the continuation

of the opportunity for a subsistence way of life by residents of rural Alaska require

that an administrative structure be established for the purpose of enabling rural

residents * * * to have a meaningful role in the management of fish and wildlife and

of subsistence uses on the public lands in Alaska." 16 U.S.C. 3111(5).  It

therefore invoked "its constitutional authority over Native affairs and its

constitutional authority under the Property Clause and the Commerce Clause" to

establish such a structure. 16 U.S.C. 3111(4). The cornerstone of the subsistence

title is the provision in section 804, 16 U.S.C. 3114, of a priority for subsistence

uses of fish and wildlife by rural Alaska residents over other uses of these

resources on federal "public lands."  Section 804 also provides criteria for

implementation of the priority when threats to populations or uses require further

restriction.  The Secretary is directed by section 814 of ANILCA, 16 U.S.C. 1324,

to prescribe such regulations as are necessary to carry out his responsibilities under

the statute.

    The Title VIII priority applies on "public lands," a term that is defined in

section 102(3) of the statute to mean "land situated in Alaska which * * * are

Federal lands." Section 102 defines "Federal land" to mean lands the title to which

is in the United States, and states that "'land' means lands, waters, and interests

therein." Title VIII lays out a structure for ensuring the priority on "public lands"

through local and regional advisory committees and councils. 16 U.S.C. 3115.

Implementation of the federal management program established in Title VIII is to be

withheld, however, if "within one year from December 2, 1980, the State enacts and

- 5 -

implements laws of general applicability which are consistent with, and which provide for the definition, preference and participation" required by ANILCA Title VIII. 16 U.S.C. 3115(d).

Beginning before ANILCA was enacted and for approximately 10 years thereafter, Alaska attempted to implement the Title VIII program through conforming state legislation. Alaska's early efforts to enact conforming legislation are described in detail in this Court's opinion in Kenaitze Indian Tribe v. State of Alaska, supra, 860 F.2d at 314. In 1989, however, the Alaska Supreme Court concluded, in McDowell v. State of Alaska, 785 P.2d 1 (Alaska 1989), that the Alaska state constitution prohibits the State from affording a preference for the use of renewable resources on the basis of residency. Because ANILCA expressly reserves the priority for "rural" Alaska residents, the State was therefore unable to conform its legislation to ANILCA without violating the state constitution.

The federal agencies responsible for implementing Title VIII issued temporary regulations on June 29, 1990 (Fed. Reg. 27,114). At the heart of this appeal is the regulations' interpretation of the term "public lands" as defined by ANILCA section 102, 16 U.S.C. 3102(1)-(3), which defines the scope of the priority. The temporary regulations provided that their application generally was limited to "all public lands including all non-navigable waters located on these lands." 50 C.F.R. 100.3(b). Final regulations published in 1992 made no significant change to this interpretation of the scope of Title VIII's applicability (57 Fed. Reg. 22,942 (May 29, 1992)).

- 6 -

B. The proceedings below.

1. Proceedings in the district court – On December 5, 1990, a group of Alaska natives sued to challenge the federal government's interpretation of "public lands," and to enjoin enforcement of state subsistence laws on certain waterways. The State filed its own lawsuit, in which it argued that ANILCA did not authorize federal management of the subsistence priority. It also challenged the United States' interpretation of the scope of "public lands," alleging in essence that the interpretation in the regulations was too broad. The cases were consolidated in the district court.

While the case was pending in district court, the Secretary of the Interior was evaluating a petition for rulemaking filed by the Native American Rights Fund on behalf of the private plaintiffs in this litigation as well as other Alaska natives. The petition sought rulemaking to redefine public lands. See 59 Fed. Reg. 32923/3 (June 27, 1994); 61 Fed. Reg. 15014, 15015/2 (April 4, 1996). It proposed that the definition of "public lands" in the regulations "be revised to include all navigable waters and all federally reserved waters in Alaska."

Before the Secretary had reached a decision on how to proceed regarding the petition, however, the district court issued a "tentative decision" in the litigation (SER 402), proposing to redefine "public lands" to include all waters in Alaska that are subject to the navigational servitude. The district court then held oral argument addressing the conclusions proposed in its tentative order (see ER 27, SER 427). At the argument, the United States, which until then had continued to defend the regulatory definition of "public lands," announced that it had revised its view.

- 7 -

The agencies' revised interpretation of "public lands" includes the United States' interests in waters appurtenant to lands reserved for such purposes as national forests and conservation system units. Although the district court did not adopt the agencies' revised view, it certified its order for interlocutory review, and both Alaska and the United States filed permissive appeals with this Court.

   2. The prior panel's ruling. – The panel of this Court that considered the interlocutory appeals concluded that the new interpretation was reasonable, while the definition published in the regulations was inconsistent with the statute's purposes. Alaska v. Babbitt, supra, 72 F.3d at 704. The prior panel held that the plain language of the statute dictated that the priority was intended to be applied on some navigable waters and remanded the case to allow the federal land management agencies to identify those navigable waters in Alaska that are within the definition of "public lands" found in ANILCA section 102. Id. The State sought, and was denied, rehearing of the panel's decision. It then filed a petition for certiorari, which was also denied. 517 U.S. 1187 (1996).

   3. Post-decision actions by Congress and the Agencies. – Because the district court rejected the interpretation adopted in the agencies' original regulations, administrative action to implement its decision was withheld pending this Court's ruling on interlocutory review. Following the panel's ruling, Congress prohibited further action by the agencies to implement the program through a series

of restrictions imposed on their appropriations.[1]

Congress and the Secretary of the Interior made efforts to assist the State in securing the necessary legislation to implement Title VIII as part of a statewide subsistence program. In the Act of November 14, 1997, Pub.L. 105-83, Congress adopted amendments to Title VIII of ANILCA as a part of those efforts. The amendments did not remove or alter the rural residency-based priority for subsistence use of fish and wildlife on federal public lands, and provided that the amendments were in effect "only for the purposes of determining whether the State's laws provide for [the] definition, preference and participation" required by ANILCA sections 803, 804 and 805. If the Secretary could not "certify before December 1, 1998 [that] such laws have been adopted in the State of Alaska [the amendments] shall be repealed on such date." Pub. L. 105-83. The State did not enact legislation, and the amendments therefore were repealed.

During the moratorium period, the agencies published proposed regulations identifying the waters that are "public lands" as that term was interpreted in Alaska v. Babbitt, and extending the federal subsistence use priority to those waters (62 Fed. Reg. 66,216, 66,222-223 (Dec. 17, 1997). These proposed regulations also specified that the Secretaries retained authority to eliminate activities occurring off

---

[1] Act of April 26, 1996, Pub. L. No. 104-134, 1996 U.S. Code Cong. & Admin. News (110 Stat.) 1321, 1321-210; Act of September 30, 1996, Pub. L. No. 104-208, 1996 U.S. Code Cong. & Admin. News 110 Stat. 3009, 3009-222; Act of November 14, 1997, Pub. L. No. 105-83, 1998 U.S. Code Cong. & Admin. News 111 Stat. 1543, 1592; Omnibus Consolidated Appropriations Act of October 21, 1998, Pub. L. No. 105-277, 1999 U.S. Code Cong. & Admin. News 112 Stat. 2681.

of public lands when those activities interfere with the subsistence uses on public lands, and to extend the priority to lands within the boundaries of a conservation system unit[2/] which have been selected by but not yet conveyed to the State of Alaska or an Alaska Native Corporation. Id. Under the congressional moratorium existing at that time, these regulations could not be implemented before December 1, 1998. On October 21, 1998, Congress further extended the time for implementing federal regulations to October 1, 1999. Pub.L. 105-277. On January 8, 1999, the Secretaries published final regulations. These regulations became effective on October 1, 1999, when Alaska still had not enacted conforming legislation. 64 Fed. Reg. 1276 (Jan. 8, 1999).

This appeal does not challenge the new, January 2, 1999, regulations. Neither the Alaska Native nor the State of Alaska sought to amend their pleadings to challenge the new regulations. Instead, Alaska appeals from the district court's order, issued more than three months after the regulations' effective date, that had no effect on the matters addressed in this appeal and merely dismissed as moot all remaining matters in the case that had led to the earlier panel's ruling. The district court found that no issue remained before it, because of the substantial administrative and regulatory changes that had occurred. Following this Court's ruling on interlocutory appeals by the State and the United States, the agencies conformed their regulations to the interpretation adopted in this Court's ruling. The private plaintiffs' complaint was therefore satisfied, because the new regulations

---

[2/] Conservation system units are defined in 16 U.S.C. 3102(4).

- 10 -

provide for the priority in the waters in which their fishery is conducted. Alaska nonetheless has renewed its general challenge to the Secretaries' interpretation of "public lands," arguing this time that the Secretaries' interpretation reflects a greater diminution in Alaska's sovereign authority over waters and fishing than was intended by Congress, and urging this Court to reinstate the interpretation in the agencies' original, 1992 regulations.

## SUMMARY OF ARGUMENT

The prior panel correctly decided this case. It concluded that a definition of "public lands" that excluded navigable waters frustrated a clearly stated purpose of the statute, which was enacted, inter alia, to preserve the subsistence way of life in rural Alaska. The earlier panel further found that the plain language of the statute requires that "public lands" includes some navigable waters, because it directs a priority for subsistence use of fish, which requires that it apply in navigable waters. By ensuring that the priority is accorded in federal reserved waters, the agencies' interpretation gives meaning to all of the words of the statute. It is consistent with the statute's intent to preserve subsistence use of resources on federal lands, which in turn reflects a proper exercise of the United States' authority pursuant to the Property Clause. The prior panel therefore appropriately deferred to the agencies' interpretation.

Alaska's challenge to federal management of subsistence fishing in Alaska rests on the "clear statement rule," which holds that statutes should not be interpreted to shift the balance of federal and state authority unless their intent to do so is plain on the face of the statute. ANILCA unquestionably intends to shift the

- 11 -

state-federal balance with respect to regulation of fish and wildlife, a fact that is not disputed here. Alaska's theory is that there is a double-clear-statement rule here, because both fish and navigable waters are ordinarily subject to state regulation, and the statute does not address specifically whether it intends to preempt state authority over fish in navigable waters. Alaska is incorrect for two reasons. First, the statute unequivocally preempts regulation of fishing in "waters, and interests therein" owned by the United States. The term "waters" unambiguously includes navigable waters, and the statute's clear statement therefore is clearly sufficient to address fish, regardless of the navigability of the waters they inhabit. Second, Alaska's sovereign authority to regulate in navigable waters is qualified by paramount federal powers, including the United States' dominant navigational servitude. Because of this limitation, the exercise of federal authority in navigable waters does not invade a sovereign state interest.

Alaska purports to appeal from a district court order "effectuating" the decision of an earlier panel of this Court. But no such order has been issued. This Court granted Alaska's petition for permission to take an interlocutory appeal on the question presented here, and decided the matter in 1995. In that decision, of which Alaska unsuccessfully sought rehearing en banc, this Court reversed the decision of the district court and ordered additional administrative proceedings. The district court accordingly vacated the relevant portion of its ruling in 1996 and the agencies promulgated new regulations that became effective in 1999. The "final judgment" from which Alaska attempts to appeal has no effect on either the earlier ruling of this Court or the agencies' regulations, which are the only subjects of the

- 12 -

appeal presented here.  Accordingly, this appeal is not justiciable, because the case presenting the issue on which Alaska seeks this Court's views is moot, and Alaska seeks review of a "final judgment" that neither granted nor denied relief on any claim.

ARGUMENT

STANDARD OF REVIEW

This case presents issues of jurisdiction and statutory construction, both of which are questions of law.  Court reviews questions of law de novo.  Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382, 385 (9th Cir. 1994).

I

THE CURRENT FEDERAL REGULATIONS AND<br>THE PRIOR PANEL'S OPINION REFLECT A REASONABLE<br>INTERPRETATION OF THE "PUBLIC LANDS" DEFINITION

As the prior panel correctly concluded, Congress unambiguously stated its intent in ANILCA Title VIII to preempt state regulation of hunting and fishing on "public lands," defined as federal lands and waters, to the extent necessary to provide a priority for rural subsistence uses of fish and wildlife.  Alaska v. Babbitt, supra, 72 F.3d at 702; Kenaitze Indian Tribe v. State of Alaska, supra, 860 F.2d at 316, 318.  The ambiguity facing federal regulators in interpreting Title VIII, therefore, was not whether Congress intended to preempt traditional state authority to regulate fish and wildlife, but rather on which "lands, waters and interests therein" Congress intended the pre-emption to be accorded.

Alaska contends that Congress must have intended to require federal regulation of subsistence fishing only in those waters of Alaska that cover federally

- 13 -

owned lands.  But nothing in the statute or its history suggests that Congress was less concerned with protection of the subsistence use of fish than with subsistence hunting, as even the dissent in the panel's decision recognized.  <u>Alaska v. Babbitt</u>, <u>supra</u>, 72 F.3d at 707.  The panel majority therefore deferred to the Secretaries' revised view and concluded that "public lands" for purposes of the subsistence priority includes federal reserved waters, because an interpretation that failed to take into account the significance of fishing to the subsistence way of life in Alaska was contrary to the statute's plain language. <u>Id.</u> at 702.

A.  <u>The prior panel correctly applied a deferential standard of review to this</u> <u>case, which concerns agencies' construction of a statute they administer.</u> – This Court previously upheld the agencies' interpretation of "public lands" as encompassing certain navigable waters in which the United States owns reserved rights, holding that under <u>Chevron U.S.A. v. Natural Resources Defense Council</u>, 467 U.S. 837, 842 (1984) the interpretation given by the Secretaries was entitled to deference.   In reviewing an agency's interpretation of a statute it administers, the courts must first consider "whether Congress 'has directly spoken to the precise question at issue' either in the statute itself or in the legislative history." <u>Railway</u> <u>Labor Executives' Ass'n v. ICC</u>, 784 F.2d 959, 963 (9th Cir. 1986) (quoting <u>Chevron</u>, 467 U.S. at 842).  Second, if Congress has not directly spoken to that precise question, the Court must determine "whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843.

The prior panel unanimously concluded that <u>some</u> navigable waters are "public lands" for purposes of ANILCA Title VIII.  <u>Alaska v. Babbitt</u>, 72 F.3d at

- 14 -

702 (majority), 706 (dissent).  The panel majority concluded that Congress had directly addressed the question "of whether some navigable waters may be public lands.  They clearly indicate that uses include subsistence fishing. * * * And subsistence fishing has traditionally taken place in navigable waters."  72 F.3d at 701.  Alaska, on the other hand, contends that the statute must be interpreted to exclude navigable waters because Congress did not make a "clear statement" of intent to regulate in such waters.  Alaska therefore urges that the inclusion of "waters, and interests therein" is simply boilerplate language that may not be given meaning in the absence of clearer statutory direction.

It is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."  Department of Revenue of Oregon v. ACF Industries, 510 U.S. 332, 340 (1994), quoting Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249 (1985).  The task of the Court is to "examine first the language of the governing statute, guided not by a single sentence or member of a sentence, but looking to the provisions of the whole law, and to its object and policy."  John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 94 (1993) (internal quotations, brackets, and citations omitted).  The State contends that the priority established by Title VIII was not intended to apply to t,86he majority of customary and traditional subsistence fisheries, despite the statute's unambiguous intent (16 U.S.C. 3101) "to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so."

The legislative history of ANILCA, supported by the record in this case,

- 15 -

establishes the enormous importance of fishing to the subsistence culture of rural

Alaskans.  See generally, H. R. Rep. No. 95-1045, Pt. I, 95th Cong. 2d Sess.

(1978) 181-187; see, e.g., S. Rep. No. 96-413, 96th Cong. 1st Sess. (1979), 269

(where "particular fish or wildlife population (e.g. salmon, moose or caribou) is

sufficient  * * * restrictions on taking set forth in [§ 804] need not be

imposed")(emphasis supplied); and see Metlakatla Indian Community v. Egan, 369

U.S. 45, 46 (1962) ("Long before the white man came to Alaska, the annual

migrations of salmon from the sea into Alaska's rivers to spawn served as a food

supply for the natives"); United States v. Alexander, 938 F.2d 942, 945 (9th Cir.

1991)("Many Alaska natives who are not fully part of the modern economy rely on

fishing for subsistence.  If their right to fish is destroyed, so too is their traditional

way of life").  Nonetheless, the State asserts, Congress could not have meant Title

VIII to apply to fishing, except where the United States holds fee title to the beds

of navigable waters.  Its theory – that the "clear statement" rule and not ordinary

canons of statutory construction governs the interpretation of the "public lands"

definition – leads to its conclusion that the subsistence priority may not be applied

in any waters overlying state-owned submerged lands, despite Congress's decision

to include "waters and interests therein" in the definition and clear intent to preserve

opportunities for subsistence fishing.  Because it would be difficult to determine the

boundaries between federal and state-regulated waters using the reserved water

rights theory, Alaska urges (Br. 32-33) that "public lands" could not have been

intended to include reserved waters, particularly because Congress did not discuss

the practical difficulties implementation on this basis would entail, and must

- 16 -



therefore have been intended to apply only on non-navigable waters and prestatehood reserved waters.

The panel correctly applied the principle that the "plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). Alaska's interpretation would contravene this principle, and would prevent the agencies from effectuating a primary purpose of ANILCA, protection of the subsistence way of life, which is heavily dependent on fisheries. Particularly in light of the expectation that federal management of the subsistence priority would not be needed because of the State's intent to implement the priority statewide, there is no basis for concluding that Congress did <u>not</u> intend the priority to extend to federal reserved waters.

1. <u>The prior panel correctly deferred to the Secretaries' reasonable interpretation of "public lands" as including both navigable and non-navigable waters in which the United States holds property interests</u>. – The prior panel reviewed the various theories as to which "waters" were "public lands" and concluded that the agencies' interpretation, which includes as "public lands" those navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine, was reasonable and therefore entitled to deference. 72 F.3d at 698. It also rejected the alternative theories. It held that the navigational servitude is not "public land" because "the United States does not hold title to it, and that neither the language of the statute nor its history suggests that Congress

- 17 -

intended that "public lands" include all navigable waters.  Because the agencies' interpretation was reasonable and consistent with the language and purposes of ANILCA, deference was clearly appropriate.

Congress plainly sought to extend federal protection to the resources, including "resources related to subsistence needs" (16 U.S.C. 3101(b)), of public lands in Alaska that are subject to federal jurisdiction.   It therefore is reasonable to conclude, as did the panel majority, that Congress delegated to the discretion of the agencies that administer federal lands in Alaska the identification of the "waters and interests" on which the priority was to be accorded.  The Supreme Court has recognized, for example, that Congress in exercising its authority pursuant to the Commerce Clause may "le[ave] it to an administrative board or agency to determine whether the activities sought to be regulated or prohibited have" the requisite effect on commerce.  United States v. Darby, 312 U.S. 100, 120 (1941).  Such a delegation would be entirely appropriate: the exercise of their administrative authority over the lands would requires that the Secretaries be the experts on the extent of federal land holdings in Alaska.   The Secretaries have now identified the lands, waters, and interests therein on which the priority is accorded.  64 Fed. Reg. 1276 (Jan. 8, 1999).

2. This Court may defer to the agencies' views although there is no rulemaking record at issue here. – Although proposed and final regulations, and the requisite environmental documentation to promulgate them, have been completed and published, the record before this Court contains none these materials, because this case is a belated rehearing of the 1995 panel's decision, although the State's

- 18 -

petition for rehearing of that decision was denied at the time.[3/]  As explained above, the secretaries had not completed their review of a request for rulemaking to change the definition of "public lands" in the 1990 regulations at the time of the district court's tentative decision in this case.  As to the agencies' revised view of the definition, the prior panel therefore had before it only the agencies' representations in the litigation, rather than a rulemaking record.  Alaska urges that therefore, and because the revised view contradicted the earlier regulations, deference should not have been accorded the agencies' views.

"Agencies must be given ample latitude to adapt their rules and policies to the demands of changing circumstances."  Food and Drug Administration v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S. Ct. 1291, 1313 (2000). An agency's interpretation is not deprived of deference merely because it represents a sharp break with prior interpretations.  Chevron, 467 at 862.  Thus, where, as here, the agencies have provided a "reasoned analysis" to justify the change, the new interpretation is entitled to deference.  Rust v. Sullivan, 500 U.S. 173, 187 (1991).

The Supreme Court's recent decision in Christensen v. Harris County, 529 U.S. 576, 120 S. Ct. 1655 (2000), held that Chevron deference was not due an opinion letter written by the Acting Administrator of the Wage and Hour Division of

---

[3/] As discussed infra at pp. 41-43, this appeal has been taken in a case challenging regulations that since have been superseded.  This case is therefore moot.  Any consideration of the agencies' current views should be addressed in a challenge to the new regulations, which were promulgated on a full notice-and-comment record.

the Department of Labor to an employer, to the effect that the Fair Labor Standards Act prohibited employers from requiring employees to use accrued compensatory time, absent an agreement with the employees to that effect. See 120 S. Ct. at 1659. The Supreme Court in <u>Christensen</u> observed that it "confronted an interpretation contained in an opinion letter, not one arrived at after, <u>for example</u>, a formal adjudication or notice-and-comment rulemaking." 120 S. Ct. 1662 (emphasis added).[4/] By contrast, this Court was confronted with the studied views of the agency developed over the course of several months' careful consideration, both of the rulemaking petition and of the district court's tentative opinion holding that the existing regulation was unreasonable.

Moreover, even if the agencies' views were not entitled to <u>Chevron</u> deference, the panel nonetheless appropriately deferred to their interpretation. "It is enough to observe that the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 139-140 (1944)." <u>Bragdon v. Abbott</u>, 524 U.S. 624, 642 (1998); see <u>Ninilchik Traditional Council v. United States</u>, 2000 WL 1290363; No. 99-35017 (9th Cir. Sept. 14, 2000), slip op. at 11881. The panel majority found that the plain language of the statute precluded the outcome advocated here by Alaska, 72 F.3d at 702, and that the views of the agencies, while administratively cumbersome, were

---

[4/] The Court's use of "for example" indicates that it did not intend to limit the reach of <u>Chevron</u> to the two specific situations of formal (i.e., on-the-record) adjudication and notice-and-comment rulemaking.