# EXHIBIT B-11 (Part 1)

No. 00-35121

---

# THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

KATIE JOHN, *et al.*,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants-Appellees,

and

STATE OF ALASKA and FRANK RUE, in his capacity as
Commissioner of the Alaska Department of Fish and Game,

Defendants-Appellants.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ALASKA
(No. A90-484-CV (HRH), consolidated with No. A92-264-CV (HRH))

---

## JOINT BRIEF FOR PRIVATE APPELLEES

---

Heather R. Kendall Miller
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 505
Anchorage, Alaska  99501-1937
(907) 276-0680
*Attorneys for Plaintiffs-Appellees*

William E. Caldwell
1648 Cushman St., Suite 300
Fairbanks, Alaska 99701-6206
(907) 452-5181
*Attorney for Intervenor-Appellee AFN*

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ..................................................................... -i-

TABLE OF AUTHORITIES ............................................................... -iv-

JURISDICTIONAL STATEMENT ......................................................... 1

ISSUE PRESENTED FOR REVIEW ...................................................... 1

STATEMENT OF THE CASE .............................................................. 1

STATEMENT OF FACTS AND PRIOR PROCEEDINGS ..................................... 5

    A.   The State's Struggle To Secure Management Authority ....................... 5

    B.   The Secretary's Assumption Of Public-Lands Authority ..................... 7

    C.   Prior Proceedings And This Court's Interlocutory Decision ................. 8

        1.   In the district court ....................................................... 8

        2.   In this Court ............................................................. 10

    D.   On Remand; Congressional Intervention ................................... 11

    E.   Entry of Final Judgment ................................................... 13

SUMMARY OF ARGUMENT .............................................................. 14

ARGUMENT ............................................................................. 16

I.    ALASKA'S EQUAL-FOOTING "SOVEREIGNTY" IS NOT
    DIMINISHED BY FEDERAL REGULATION OF SUBSISTENCE
    FISHING IN NAVIGABLE WATERS; IT WAS THE CLEAR AND
    MANIFEST PURPOSE OF CONGRESS TO PRE-EMPT STATE
    AUTHORITY OVER SUBSISTENCE FISHING ON PUBLIC
    LANDS, AND CONGRESS PLAINLY POSSESSED
    CONSTITUTIONAL POWER TO DO SO ................................... 16

III.    CONGRESS HAS EMBRACED THE SECRETARY'S
        CONSTRUCTION OF "PUBLIC LANDS" AND HAS
        ADHERED TO THAT INTERPRETATION IN ORDER
        TO BRING THE STATE BACK INTO COMPLIANCE
        WITH ANILCA ......................................................................... 53

CONCLUSION ..................................................................................... 59

ADDENDUM ......................................................................................... i

CERTIFICATE OF SERVICE ............................................................ cv

*Crawford v. Indiana Dep't of Corrections,*
15 F.3d 481 (7th Cir. 1997) ............................................................ 42

*Douglas v. Seacoast Prod., Inc.,* 431 U.S. 265 (1977) ............................. 36, 52, 53

*Escondido Mut. Water Co. v. F.E.R.C.,* 692 F.2d 1223 (9th Cir. 1982),
*rev'd in part, aff'd in part, sub nom. Escondido Mut. Water
Co. v. La Jolla Indians,* 466 U.S. 765 (1984) ................................................ 48

*Federal Power Comm'n v. Niagara Mohawk Power Corp.,*
347 U.S. 239 (1954) ................................................................. 48, 49

*Federal Power Comm'n v. Oregon,* 349 U.S. 435 (1955) ...................................... 47

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) ................................................................. 56, 58

*Greenwood v. United States,* 350 U.S. 366 (1956) .................................................. 42

*Gregory v. Ashcroft,* 501 U.S. 452 (1991) ...................................................... 19, 21

*Hodel v. Virginia Surface Mining & Reclamation Ass'n,*
452 U.S. 264 (1981) ................................................................. 5, 35

*Hooks v. Clark County Sch.,* 2000 WL 1357476,
___ F.3d ___ (9th Cir. 2000) ................................................................. 57

*Hughes v. Oklahoma,* 441 U.S. 322 (1979) .......................................................... 36

*Hynes v. Grimes Packing Co.,* 337 U.S. 86 (1949) .................................... 22, 26, 44

*Intertanko v. Locke,* 159 F.3d 1220 (9th Cir. 1998),
*rev'd sub nom. United States v. Locke,* 529 U.S. 89 (2000) ........................ 20

*Katie John v. United States,* 216 F.3d 885 (9th Cir. 2000) .................................... 14

*Kenaitze Indian Tribe v. Alaska,* 860 F.2d 312 (9th Cir. 1988) .............. 2, 6, 34, 35

*Kimball v. Callahan,* 590 F.2d 768 (9th Cir.), *cert. denied,*
444 U.S. 826 (1979) ................................................................. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alaska v. Babbitt*, 54 F.3d 549, *superseded by* 72 F.3d 698
(9th Cir. 1995), *cert. denied*, 516 U.S. 1036 (1996) ............................ *passim*

*Alaska v. United States*, 213 F.3d 1092 (9th Cir. 2000) ................................... 28, 29

*Alaska Pac. Fisheries v. United States*,
248 U.S. 78 (1918) ........................................................................ 23, 24, 40

*Amoco Prod. Co. v. Village of Gambell*,
480 U.S. 531 (1987) ................................................................. 22, 32, 43, 49

*Antoine v. Washington*, 420 U.S. 194 (1975) ......................................................... 17

*Arizona v. California*, 373 U.S. 546 (1963) .................................... 20, 46, 48, 50, 51

*Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656 (1985) ..................................... 22

*Bob Jones Univ. v. United States*, 461 U.S. 574 (1983) ......................................... 58

*Bobby v. Alaska*, 718 F. Supp. 764 (D. Alaska 1989) ............................................... 6

*Bonelli Cattle Co. v. Arizona*, 414 U.S. 313 (1973) ............................................... 52

*Brooks v. Dewar*, 313 U.S. 354 (1941) ................................................................... 58

*California-Oregon Power Co. v. Beaver Portland Cement Co.*,
295 U.S. 142 (1935) .................................................................................... 51

*Cappaert v. United States*, 426 U.S. 128 (1976) ......................................... 45, 47, 52

*Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994) ................................. 58

*Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9th Cir. 1981),
*cert. denied*, 454 U.S. 1092 (1981) ........................................................... 48

*Coyle v. Smith*, 221 U.S. 559 (1911) ............................................................... 16, 18

A.   Nature Of The Controversy ................................................. 16

B.   Historical Protection ........................................................ 23

    1.   Pre-statehood ........................................................ 23

    2.   At Statehood ......................................................... 27

    3.   Post-statehood ....................................................... 28

C.   The Clear And Manifest, And Plainly Constitutional, Purpose Of
    Congress Was To Pre-empt Management Of Subsistence Fishing On
    Public Lands, Absent Alaska's Compliance ......................................... 31

II.    CONGRESS MANIFESTLY INTENDED TO PROTECT
    SUBSISTENCE FISHNG IN NAVIGABLE WATERS IN
    WHICH THE UNITED STATES OWNS INTERESTS,
    AS IT DOES WITH RESPECT TO FEDERAL
    RESERVED WATERS ................................................. 38

A.   Congress Plainly And Unambiguously Intended To Protect
    Subsistence Fishing In Navigable Waters ............................................. 39

B.   Federally  Reserved Waters Are Property Interests Owned
    By The United States And Thus Constitute "Public Lands"
    Covered By ANILCA ............................................. 44

    1.   Water rights were reserved for the federal reservations
        set aside by Congress in ANILCA and elsewhere ...................... 44

    2.   Reserved water rights are property rights of the
        United States ....................................................... 48

    3.   Streambed ownership is distinct from ownership
        or control of water in the stream ................................... 50

*King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) .................................................... 22

*Kleppe v. New Mexico*, 426 U.S. 529 (1976) ............................................. 18, 33, 37

*Menominee Tribe v. United States*, 391 U.S. 404 (1968) ....................................... 17

*Metlakatla Indian Community v. Egan*, 369 U.S. 45 (1962) ............... 23, 27, 28, 53

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
    526 U.S. 172 (1999) ............................................................................ 17, 28

*Missouri v. Holland*, 252 U.S. 416 (1920) ............................................................. 37

*Montana v. United States*, 450 U.S. 544, 556 (1981) ............................................ 27

*Native Village of Quinhagak v. United States*,
    35 F.3d 388 (9th Cir. 1994) .................................................................. 2, 40

*Natural Resources Defense Council v. E.P.A.*,
    863 F.2d 1420 (9th Cir. 1988) .................................................................. 52

*New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324 (1983) ............................. 17

*New York v. United States*, 505 U.S. 144 (1992) ............................................. 22, 35

*Northwest Forest Resource Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) .................................................................... 39

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*,
    429 U.S. 363 (1977) .................................................................................. 52

*Organized Village of Kake v. Egan*, 369 U.S. 60 (1962) ........................... 26, 27, 28

*Pennsylvania Dep't of Corrections v. Yeskey*
    524 U.S. 206 (1998) ............................................................................ 21, 38

*People of Togiak v. United States*, 470 F. Supp. 423 (D.D.C. 1979) .................... 30

*Printz v. United States*, 521 U.S. 898 (1997) ........................................................ 35

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ........................................... 20

*Rincon Band of Mission Indians v. Harris*, 618 F.2d 569 (9th Cir. 1980) ............ 56

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ....................................... 38

*Seminole Tribe v. Florida*, 517 U.S. 44 (1996) ..................................... 36

*Settler v. Lameer*, 507 F.2d 231 (9th Cir. 1974) ..................................... 17

*Sierra Club v. Andrus*, 610 F.2d 581 (9th Cir. 1979),
    *rev'd on other grounds*, 451 U.S. 287 (1981) ................................. 56

*Sohappy v. Smith*, 529 F.2d 570 (9th Cir. 1976) ..................................... 17

*Sporhase v. Nebraska*, 458 U.S. 941 (1982) ....................................... 48

*Union Bank v. Wolas*, 502 U.S. 151 (1991) ............................................ 38

*United States v. Adair*, 723 F.2d 1394 (9th Cir. 1984),
    *cert. denied*, 467 U.S. 1252 (1984) ...................................... 45, 48

*United States v. Alaska*, 423 F.2d 764 (9th Cir. 1970) ............................ 19, 43, 46

*United States v. Alaska*, 521 U.S. 1 (1997) ......................................... 19, 20, 51, 52

*United States v. Alexander*, 938 F.2d 942 (9th Cir. 1991) ............................... 23, 35

*United States v. Alford*, 274 U.S. 264 (1927) ....................................... 37

*United States v. Berrigan*, 2 Alaska 442 (D. Alaska 1905) .................................. 24

*United States v. Brown*, 552 F.2d 817 (8th Cir. 1977)
    *cert. denied* 431 U.S. 949 (1977) ....................................... 37

*United States v. Gardner*, 107 F.3d 1314 (9th Cir. 1997)
    *cert. denied*, 522 U.S. 907 (1997) ................................... 16, 18, 28

*United States v. Haggar Apparel Co.*, 526 U.S. 380 (1999) .................................. 38

*United States v. Helsley*, 615 F.2d 784 (9th Cir. 1979) .......................................... 36

*United States v. Idaho*, 210 F.3d 1067 (9th Cir. 2000)
     *pet. for cert. filed*, 69 U.S.L.W. 3143
     (U.S. 7/25/2000) (No. 00-189) ................................................... 19

*United States v. Lindsey*, 595 F.2d 5 (9th Cir. 1979) ............................................. 37

*United States v. Locke*, 529 U.S. 89 (2000) ...................................................... 20, 22

*United States v. New Mexico*, 438 U.S. 696 (1978) .................................... 47, 48, 51

*United States v. Rio Grande Irrigation Co.*, 174 U.S. 690 (1899) ........................ 51

*United States v. Sheffield Bd. of Comm'rs*, 435 U.S. 110 (1978) ........................... 57

*United States v. Washington*, 520 F.2d 676 (9th Cir. 1975),
     *cert. denied*, 423 U.S. 1086 (1976) ................................................ 17

*Utah Div. of State Lands v. United States*,
     482 U.S. 193 (1987) ...................................................... 20, 50

*Van Brocklin v. Tennessee*, 117 U.S. 151 (1886) .................................................. 28

*Vermont Agency of Natural Resources v. United States*,
     120 S. Ct. 1858 (2000) ................................................... 21

*Ward v. Commissioner*, 784 F.2d 1424 (9th Cir. 1986) .......................................... 57

*Washington v. Washington State Commercial Passenger Fishing
     Vessel Ass'n*, 443 U.S. 658 (1979) .............................................. 17

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ................................... 21

*Winters v. United States*, 207 U.S. 564 (1908) ................................................. 46, 51

*Zarr v. Barlow*, 800 F.2d 1484 (9th Cir. 1986) ...................................................... 56

STATE CASES

*Madison v. Alaska Dep't of Fish & Game,*
    696 P.2d 168 (Alaska 1985) ............................................................ 6

*McDowell v. State*, 785 P.2d 1 (Alaska 1989) ...................................... 2, 7

*Totemoff v. State*, 905 P.2d 954 (Alaska 1995),
    *cert. denied*, 517 U.S. 1244 (1966) ............................................ 11

## FEDERAL STATUTES

Alaska Statehood Act, Pub. L. No. 85-508, 72 Stat.
    339 (1958), *amended,* Pub. L. No. 86-70,
    73 Stat. 141 (1959) ............................................................ *passim*

16 U.S.C. §712(1) ............................................................ 30

16 U.S.C. §1371(b) ............................................................ 30

16 U.S.C. §1379(f) ............................................................ 30

16 U.S.C. §1539(e)(1) ............................................................ 30

16 U.S.C. §1301(a)-(c). ............................................................ 32, 34, 40

16 U.S.C. §3111. ............................................................ 1, 39, 43

16 U.S.C. §3112(1). ............................................................ 41

16 U.S.C. §3114. ............................................................ 34, 41

16 U.S.C. §3115. ............................................................ 12

16 U.S.C. §3115(d) ............................................................ 6

16 U.S.C. §3124. ............................................................ 34

16 U.S.C. §3202(a)-(b). ............................................................ 34

43 U.S.C. §1301 ............................................................ 27

43 U.S.C. §1311(a)(2) ............................................................. 52

43 U.S.C. §1601 ..................................................................... 28

43 U.S.C. §1603 ............................................................... 28, 29

43 U.S.C. §1653(a)(1) ....................................................... 29, 30

Treaty of Cession, June 20, 1867, 15 Stat. 539 ...................... 24

Act of July 1, 1870 (ch. 189), 16 Stat. 180 ............................ 24

Act of June 7, 1902, 32 Stat. 327, amended by Act of March 11, 1908,
    35 Stat. 102 .................................................................. 24

Act of June 26, 1906, 34 Stat. 478 ........................................ 25

Migratory Bird Treaty of 1916, 39 Stat. 1702 ....................... 24

Act of June 6, 1924, 43 Stat. 464 .......................................... 25

Act of January 13, 1925, 43 Stat. 739 .................................... 25

Act of April 16, 1934, 48 Stat. 594 ....................................... 25

Act of June 25, 1938, 52 Stat. 1169 ....................................... 25

Act of August 18, 1941, 55 Stat. 632 ..................................... 25

Omnibus Consolidated Rescissions and Appropriations Act
    of 1996, Pub. L. No. 104-134 (April 26, 1996), 110 Stat.
    1321 (§336) ........................................................... 12, 54

Omnibus Consolidated Appropriations Act of 1997, Pub. L.
    No. 104-208 (Sept. 30, 1996), 110 Stat. 3009-222 (§317) ............... 12, 54

Department of the Interior and Related Agencies Appropriations
    Act, 1998, Pub. L. No. 105-83 (Nov. 14, 1997), 111 Stat.
    1543 (§316) ..................................................... 12, 54, 55, 57

Omnibus Consolidated and Emergency Supplemental Appropriations
    Act of 1999, Pub. L. No. 105-277 (Oct. 21, 1998), 112 Stat.
    2681 (§339) ................................................................................. 12, 54, 55

## FEDERAL REGULATIONS

43 Fed. Reg. 60252-60258 (1978) ................................................................ 31

43 Fed. Reg. 57009 (1978) ........................................................................... 31

55 Fed. Reg. 23522 (1990) ........................................................................ 7, 8

55 Fed. Reg. 27114 (1990) ........................................................................ 7, 8

57 Fed. Reg. 22940 (1992) ............................................................................ 8

59 Fed. Reg. 32923 (1994) ....................................................................... 9, 10

61 Fed. Reg. 15014 (1996) ....................................................................... 9, 11

62 Fed. Reg. 66216 (1997) ......................................................... 2, 4, 5, 8, 13

64 Fed. Reg. 1276 (1999) ............................................................................ 13

65 Fed. Reg. 5197 (2000) ............................................................................ 13

## LEGISLATIVE MATERIALS

126 CONG. REC. 30495 (1980) ..................................................................... 42

142 CONG. REC. H11926 (daily ed. Sept. 28, 1996) ................................. 13, 54

143 CONG. REC. S11266 (daily ed. Oct. 28, 1997) ....................................... 12

H. CONF. REP. NO. 105-825 (1998) ............................................................... 29

H. REP. NO. 95-1045, Pt. I, (1978) ..................................................... 31, 33, 40

S. REP. NO. 96-413 (1979) ................................................................. 31, 33, 38, 40

*Inclusion of Alaska Lands in Nat'l Park, Forest, Wildlife Refuge, and Wild & Scenic River Systems: Hearings on H.R. 39, et al., Before the Subcommittee on General Oversight & Alaska Lands of the House Comm. On Interior & Insular Affairs*, 95th Cong., part XII (8/20/77) ....................................................... 5

## STATE CONSTITUTION

Alaska Const., art. XII, §12 .............................................................. 27

## MISCELLANEOUS

Cribbet, *Principles of the Law of Property* 15 (2d ed. 1975) ................................... 49

*Russian Administration of Alaska and the Status of the Alaska Natives,* Doc. No. 152 (1950) ................................................. 24

*Aboriginal Fishing Rights in Alaska*, 57 Interior Dec. 461 (2/13/42) .................... 26

Tarlock, Corbridge & Getches, *Water Resource Management* 768 (4th ed. 1993) .................................................. 46

## JURISDICTIONAL STATEMENT

Private appellees[1] agree with Alaska's jurisdictional statement. Br.1.

## ISSUE PRESENTED FOR REVIEW

Whether the ANILCA priority for subsistence fishing applies to federally-reserved navigable waters.

## STATEMENT OF THE CASE

Title VIII of ANILCA mandates that priority be given to the taking of *fish* and wildlife for subsistence uses on federal "public lands," expressly defined to include "waters, and interests therein" owned by the United States.[2] Subsistence hunting and fishing and federal property are subjects over which Congress has exercised plenary authority in Alaska continuously for 130 years. ANILCA's subsistence-priority program—the latest such exercise—resulted from an extensive legislative process. Alaska obtained a number of favorable concessions to State authority, based in part upon its good-faith representations that it would satisfy the minimum level of federal pro-tection desired by Congress for the subsistence way of life.

---

[1]    Private appellees are the non-governmental parties in the two cases consolidated below, *Katie John v. United States* and *Alaska v. Babbitt*. The *Katie John* plaintiffs are two Alaska Natives (Katie John and Doris Charles) and a federally recognized Indian tribe (Mentasta Village Council). Appellee Alaska Federation of Natives ("AFN"), a statewide Native organization, is the defendant-intervenor/cross-claimant in *Alaska v. Babbitt*.

[2]    The pertinent provisions of ANILCA and other acts, as well as the relevant regulatory materials, are contained in the Addendum hereto.

Accepting Alaska's assurances, Congress enacted a familiar form of cooperative federalism—invoking federal pre-emption, but conditionally withholding its deployment—and granted the State the opportunity to manage subsistence takings on the public lands under federal standards. *Kenaitze Indian Tribe v. Alaska*, 860 F.2d 312, 313-14 (9th Cir. 1988). Alaska exercised that authority for a decade, but in the end proved unable to uphold her part of the bargain. A divided Alaska Supreme Court, in *McDowell v. State*, 785 P.2d 1 (Alaska 1989), unexpectedly caused the State to "advis[e] the Department of the Interior that it was withdrawing from its role in administering ANILCA." *Kenaitze*, 860 F.2d at 318 n.8; *see Native Village of Quinhagak v. United States*, 35 F.3d 388, 390 (9th Cir. 1994).

"Alaska's noncompliance . . . made the federal government responsible, beginning in 1990, for implementing ANILCA as to 'public lands.'" *Id*. In assuming his statutory responsibilities, the Secretary initially excluded navigable waters from the scope of the federal program, reasoning that such waters were not "public lands" for purposes of ANILCA. *Id*. That initial determination excluded more than 99 percent of all navigable waters from federal management. *See* 62 Fed. Reg. 66216, 66218/2 (12/17/97).

Private plaintiffs challenged the exclusion of navigable and federally-reserved waters (where their subsistence fishery takes place), and also claimed that the State had no authority to restrict their fishery. ER1. Alaska answered with denials and

affirmative defenses (SER46), followed by its own counter-suit (SER16),[3] challenging the Secretary's right (for lack of a "clear statement" from Congress) to manage subsistence on the public lands.

The district court rejected Alaska's attack on the Secretary's authority and dismissed the claim with prejudice. SER449-50, 519-20. Noting that "[m]uch subsistence fishing and much of the best fishing" is in navigable waters rather than "the smaller tributaries or lakes where, for example, salmon go to spawn" (SER424), the district court had tentatively concluded that the Secretary's exclusion of all navigable waters was unreasonable and hence invalid. SER401-A. The Secretary then reconsidered and modified his interpretation. In partial agreement that his view had been "too narrow," the Secretary determined that federal reserved waters—but not all navigable waters—are public lands included in the federal subsistence program. ER28-29. The district court's final decision, however, held to the broader view that all navigable waters, by reason of the navigational servitude, are public lands subject to the federal subsistence program. ER468-71.

On interlocutory appeals by Alaska and the Secretary, this Court reversed the district court's navigational-servitude ruling, while agreeing with the Secretary that public lands include reserved waters appurtenant to federal conservation reservations.

---

[3]    "ER" refers to Alaska's Excerpts of Record, "SER" to Appellees' Joint Supplemental Excerpts of Record.

*Alaska v. Babbitt,* 72 F.3d 698 (1995). The panel majority found it beyond doubt that Congress intended to include some navigable waters within ANILCA's coverage, because of the unmistakable intent to protect subsistence fishing, an activity that inheres in navigable waters. 72 F.3d at 702.

Judge Hall, in dissent, agreed that Congress "must have intended *some* navigable waters" to be covered, and that "defining 'interest' narrowly to exclude all navigable waters is probably incorrect." *Id.* at 706. Nonetheless, she deemed the Court "unable to resolve this issue in this case." She proposed instead to "wait for Congress to make its intentions clear," while questioning whether Congress even possessed the requisite constitutional authority to legislate in the area. *Id.* at 708. The majority, however, held that federal "reserved water rights" are "interests in some navigable waters," making them "public lands subject to subsistence management under ANILCA." *Id.* at 703. The Court accordingly found the Secretary's construction of the statutory scheme to be reasonable and directed him to identify the relevant waters. *Id.* at 703-04.

Pursuant to the Secretary's implementing regulations, fishery-management authority on the public lands has been pre-empted with respect to *subsistence* fishing in slightly more than one-half (52 percent) of Alaska's inland waters. *See* 62 Fed. Reg. at 66218/3. (This contrasts with the pre-emption of subsistence-hunting regulatory authority—no longer open to State challenge—on some two-thirds of the

4

regulatory authority—no longer open to State challenge—on some two-thirds of the Alaska landmass.) Alaska continues to exercise primary regulatory jurisdiction over all commercial and sport fishing in all waters, and virtually all subsistence fishing in the marginal sea.

Subsistence harvests of Pacific salmon (the single most important fishery resource for all user groups), account for a little more than one percent (8.3 million pounds) annually of the statewide salmon harvest. *Id.* at 66219/2, 66221/2. Of the estimated 35 to 45 million pounds of fish and wildlife harvested annually for food by subsistence users, fish account for about 60 percent. SER2.

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

### A.   The State's Struggle To Secure Management Authority

Alaska began its efforts to comply with ANILCA while it was still under consideration in Congress.[4] Anticipating federal standards, Alaska adopted its first

---

[4]   Early on, Governor Hammond expressed his support for "establish[ing] the priority of subsistence use . . . on national interest lands," a principle he hoped "[would be] enacted into Federal law." *Inclusion of Alaska Lands in Nat'l Park, Forest, Wildlife Refuge, and Wild & Scenic River Systems: Hearings on H.R. 39, et al., Before the Subcommittee on General Oversight & Alaska Lands of the House Comm. On Interior & Insular Affairs*, 95th Cong., part XII 12 (8/20/77). At the same time, he insisted that "management must be unified, professional, not splintered and politicized" (*id.* at 13), because "fish and wildlife have little regard for bureaucratic boundaries," which "is argument enough in itself against segmenting the management of a single species or population according to land ownership or user groups." *Id.* at 11. Subcommittee Chairman Seiberling responded (*id.* at 18) that "maybe one way out of this . . . would be for the Federal Government to do what we did in the strip mining law [upheld in *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452

5

subsistence-priority law in 1978. *See Bobby v. Alaska*, 718 F. Supp. 764, 767, 788-91 (D. Alaska 1989); *Kenaitze*, 860 F.2d at 314. The incompatibilities between the State law and ANILCA as subsequently enacted[5] resulted in an intensive certification process. SER54-221, 252-56 (index of certification record). Alaska, the Secretary, and others critiqued the state-law program, which in turn produced regulatory refinements designed to satisfy the federal standards.

In May 1982 Secretary Watt, on the basis of a detailed analysis by his Solicitor (SER224-56), certified to Governor Hammond that the State program, as refined, complied with ANILCA. SER222-23. But the Alaska Supreme Court soon invalidated the fish and game boards' regulatory refinements adopted to satisfy the "rural" priority requirement. *Madison v. Alaska Dep't of Fish & Game*, 696 P.2d 168 (Alaska 1985). The Secretary then advised Alaska that she was no longer in compliance and imposed a deadline for federal displacement of state management. SER271-84.

When the Legislature responded by revising the law to limit the subsistence priority to residents of rural areas, the Secretary re-certified the State program. SER285-91. But in *McDowell*, the Alaska Supreme Court held the law's rural-

---

over that management to the State."

[5]    Section 805(d) conditioned state management on the enactment and implementation of "laws of general applicability" consistent with the key components of Title VIII.

6

residency limitation impermissible under the Alaska Constitution, acknowledging that the effect of its decision would be federal pre-emption on the public lands. 785 P.2d at 10 n.20.

## B.    The Secretary's Assumption Of Public-Lands Authority

The Secretary took over public-lands subsistence management in July 1990, but excluded most of the critical subsistence fishing grounds of rural residents, including private plaintiffs' traditional and primary fishing site within the Wrangell-St. Elias National Park and Preserve. *See* 72 F.3d at 701. The Secretary's initial policy was to implement a program "that minimizes change to the state programs" in order to avoid "unnecessary chaos if and when the State is able to bring its subsistence program back into compliance with ANILCA." 55 Fed. Reg. 23522/2 (6/8/90); 55 Fed. Reg. 27114, 27115/3, 27118/1 (6/29/90).[6] The temporary regulations excluded

---

[6]    Secretary Lujan emphasized to Governor Cowper (SER318-19 (6/20/90)):

The subsistence regulations proposed by the Department of the Interior are temporary. They are predicated on a high degree of cooperation between the [State] Boards of Fisheries and Game and the federal land managers in setting harvest limits and other management decisions. The regulations represent the minimum extension of Federal authority necessary to fulfill the statutory obligation the federal government has in this matter. Absent the high degree of cooperation discussed above, we will be faced with the prospect of either closing public lands to non-subsistence uses of fish and wildlife or further extending Federal authority to comply with the mandates of the law. One of the things I must consider is the possibility that Federal authority may have to be extended predicated on the Federal government's constitutional mandate to protect Native American interests and our fish, wildlife, and other

most navigable waters (and hence most subsistence fishing) from their scope. 55 Fed. Reg. at 23526/1; 55 Fed. Reg. at 27122/2. The explanations were that "[t]he United States generally does not hold title to navigable waters" *(id.* at 27115/3) (temporary rule), and "the United States does not generally own title to the submerged lands beneath navigable waters." 57 Fed. Reg. 22940, 22942/2 (5/29/92) (final rule).[7]

### C.    Prior Proceedings And This Court's Interlocutory Decision

#### 1.    In the district court

In December 1990, Ahtna elders Katie John and Doris Charles and the Mentasta Tribe sued the Secretary for unlawfully excluding from the federal subsistence program most navigable waters (including plaintiffs' and most other subsistence fisheries) in which the United States owned interests. ER1. Alaska was later added by amended complaint. The court consolidated the case with Alaska's counter-suit, Count III of which challenged the Secretary's authority to manage subsistence anywhere. SER16. The court gave first priority to deciding the State's challenge to

---

extended predicated on the Federal government's constitutional mandate to protect Native American interests and our fish, wildlife, and other natural resources.

[7]    As a result, the only subsistence fishing protected by the federal program was the *de minimis* amount that takes place in non-navigable waters on federal lands, and a small additional amount (including an insignificant amount of marine waters) that occurs in the waters overlying certain tracts of submerged lands that the United States reserved at statehood. *See* 57 Fed. Reg. at 22941/2, 22942/2, 22951/3. It was later determined that less than one percent of Alaska's navigable waters were covered by the federal program as so limited. 62 Fed. Reg. 66216, 66218/2 (12/17/97).

Secretarial authority, followed by the issue of whether and to what extent navigable waters should be included in the federal program. SER10-12.

The court released a tentative order in January 1994 concluding that the Secretary's regulatory interpretation of the statutory "public lands" definition had unreasonably "thwarted" the will of Congress and hence was invalid. SER401-A, 424. The Secretary, said the court, had "abandoned to non-complying state control the largest and most productive waters used by rural Alaskans who have a subsistence lifestyle." SER425. While not disagreeing that federal reserved waters fit the "public lands" definition (SER416), the court concluded that *all* navigable waters, by reason of the United States' navigational servitude, are public lands to which the subsistence priority applies. SER424-25.

The Secretary obtained a continuance of the scheduled argument (to be focused on the proposed order) to complete his evaluation of the issues raised by the court. SER427-29.[8] At the rescheduled hearing, the government informed the court that the Secretary now agreed his initial construction was "too narrow" and that reserved federal waters are public lands governed by the subsistence priority. ER29. The Secretary, however, held to his position that the navigational servitude is not a

---

[8]    Private appellees, joined by others, had filed a rulemaking petition with the Secretary in July 1993 seeking revision of the public-lands definition to include navigable and federal reserved waters. *See* 59 Fed. Reg. 32923/3 (6/27/94); 61 Fed. Reg. 15014, 15015/2 (4/4/96). The Secretary had yet to respond to that petition when he received the district court's proposed order.

9

property interest qualifying all navigable waters as public lands. ER28-29.

In its final decision, the court upheld the Secretary's authority to implement a subsistence-management program on the public lands and dismissed Alaska's contrary claim. SER430, 449-50. The court also adhered to its earlier-announced view that the ANILCA subsistence priority applies to all navigable waters by virtue of the navigational servitude. SER468-71. Alaska and the Secretary appealed.[9]

## 2.     In this Court

Prior to oral argument, Alaska abandoned her claim that the Secretary lacked authority to displace state management on public lands. By stipulation the appeal of that issue was dismissed with prejudice. 72 F.3d at 700 n.2 & 701 nn.5-6; SER487-88, 493-94. (The district court eventually entered a final judgment on that claim. SER519-20.)

This Court filed its initial, unanimous opinion in April 1995. 54 F.3d 549. On the public-lands issue, the Court reversed the district court's navigational-servitude holding, but also held that federally-reserved navigable waters constitute public lands, validating the Secretary's position. The Court further held that the Secretary has the

---

[9]     The district court stayed its ruling pending the appeals (SER478), a stay effectively kept in place by Congress until 1999. *See* p. 12, *infra*. The Secretary acknowledged that plaintiffs' rulemaking petition (n.8, *supra*) was "still under consideration," but deemed it inappropriate to issue regulations "immediately" due to the court-ordered stay. 59 Fed. Reg. 32923/3.

responsibility for identifying those waters and extending the priority to them. 54 F.3d
549.

While the State's petition for rehearing *en banc* was pending, the Alaska
Supreme Court *sua sponte* (*see* SER503) expedited consideration of, and decided,
*Totemoff v. State*, 905 P.2d 954 (8/7/95), which, in *dicta*, expressed disagreement
with the panel's opinion. The State brought *Totemoff* to this Court's attention in
support of its rehearing petition, but it had already been denied. No. 94-35480
(8/8/95). The Court then withheld the mandate and requested letter-briefs from the
parties respecting *Totemoff*. *See* ER123-25.

In December 1995, the panel withdrew its April opinion and replaced it with
a new one. 72 F.3d 698. Though Judge Hall now dissented *(id.* at 704-08), neither
opinion mentioned *Totemoff*. Alaska did not seek rehearing of the new opinion, but
petitioned for Supreme Court review, which was denied in May 1996 (along with a
cross-petition by AFN on the navigational-servitude issue). 517 U.S. 1187.

**D.    On Remand; Congressional Intervention**

In response both to this Court's decision and two rulemaking petitions, the
Secretary published an "[a]dvance notice of proposed rulemaking" announcing his
intent, *inter alia*, to propose a rule covering federally-reserved inland waters. 61 Fed.
Reg. 15014 (4/4/96).

Congress intervened with the first of a series of appropriations-act "moratoria," and no proceedings of substance occurred in this case for the next four years.[10] As described in greater detail below (pp. 54-59), Congress utilized this Court's decision to coax the Legislature into proposing a state constitutional amendment that would enable state compliance with ANILCA. In conjunction with extending the moratorium, Congress in 1997 adopted conditional substantive amendments to ANILCA deemed favored by the State[11] that would become effective once Alaska complied (§316(b)), but which would be repealed on December 1, 1998 (and ANILCA in effect reenacted), if the State did not. §316(d).

In 1998, Congress gave Alaska another chance, providing that the $11 million appropriated for federal implementation would instead go to the State as a grant if the Legislature proposed a complying constitutional amendment. Addendum, pp.l xi-l xvi, §339. If not, that act further provided that the Secretary's implementation would commence October 1, 1999. §339(a)-(b).[12] Again, the Legislature declined.

---

[10]     The first moratorium was Pub. L. No. 104-134 (4/26/96), 110 Stat. 1321, 1321-210 (§336), followed by: Pub. L. No. 104-208 (9/30/96), 110 Stat. 3009, 3009-222 (§317); Pub. L. No. 105-83 (11/14/97), 111 Stat. 1543, 1592-1595 (§316); and Pub. L. No. 105-277 (10/21/98), 112 Stat. 2681, 2681-251–2681-252, 2681-271, 2681-295–2681-296 (§339). (These acts are contained in the Addendum, and hereafter will be identified by section number.)

[11]     *See* 143 Cong. Rec. S11266 (daily ed. 10/28/97) (Sen. Stevens).

[12]     Congress also amended §805 by deleting the provision that gave Alaska only one year from the original date of ANILCA's enactment within which to comply.

Meanwhile, the Secretary proceeded with rulemaking.[13] Following public hearings, comments, and an environmental assessment, he published a proposed rule. 62 Fed. Reg. 66216 (12/17/97). The final rule was promulgated in 64 Fed. Reg. 1276 (1/8/99), which by its terms became effective October 1, 1999.[14]

### E.    Entry of Final Judgment

Final judgments in the consolidated cases were entered January 7, 2000. ER78; SER529. Plaintiffs filed a timely motion to alter or amend the judgment on January 20 (CR270) and, while it was pending, Alaska filed its notice of appeal. ER78(a).[15]

---

§339(c).

[13]    Although somewhat inartful, the Secretary took the moratoria to mean that he should not implement this Court's decision. The legislative history, however, indicated that he was not prevented from continuing with the notice-and-comment rulemaking process begun in April 1996. 142 Cong. Rec. H11926 (daily ed. 9/28/96).

[14]    The regulations amend the definition of "federal lands" to include "navigable and non-navigable waters in which the United States has reserved water rights," and "reserved water right(s)," in turn, is defined as "the Federal right to use unappropriated appurtenant water necessary to accomplish the purposes for which a Federal reservation was established." 64 Fed. Reg. at 1287, 1288, §_.4. The regulations further identify those waters as being "within the exterior boundaries" and "adjacent to the exterior boundaries" of specified federal reservations. *Id.* at 1286-87, §_.3(b). Alaska has not challenged these determinations, which govern the 2000 fishing season (through February 2001). A proposed rule for next season is pending, 65 Fed. Reg. 5197 (2/2/00).

[15]    On February 11 the court entered an order agreeing to amend its judgment as requested by plaintiffs (SER526), and did so on February 14. ER79.

13

Alaska's petition for initial hearing *en banc* was granted in July.  216 F.3d 885 (9th Cir. 2000).

## SUMMARY OF ARGUMENT

This case presents a straightforward question of federal pre-emption, arising in fields—Native fishing rights and public lands—in which there has been a significant federal presence since the earliest days of the Republic.  In providing a federally-guaranteed priority for subsistence fishing on public lands, including navigable waters, Congress exercised its plenary powers conferred by the Indian Commerce Clause, the Property Clause, and the Interstate Commerce Clause.  When Congress exercises its enumerated powers to displace or override state authority, equal-footing principles are not offended because a State has not been denied "equality in dignity and power with other States."  Since the issue here concerns subjects regulated by Congress in Alaska for 130 years—and which Congress expressly reserved for its own disposition at statehood—there is no special presumption operating in favor of state authority, and the issue is to be resolved according to the usual means employed to determine "what the purpose of Congress was."  It was the clear and manifest purpose of Congress to pre-empt Alaska's authority over subsistence fishing on public lands if the State did not comply with federal standards.

14

It was Congress' equally clear and manifest purpose to protect subsistence fishing in navigable waters in which the United States owns interests. Congress was well aware, from its own historical involvement and from the abundant evidence before it, that subsistence fishing in navigable waters was essential to the economic and cultural well-being of rural Alaskans. Congress' repeated references in the statute to the importance of fish, fish habitat, and fishery resources to continuation of the subsistence way of life refute the notion that Congress intended only to protect subsistence fishing in the non-navigable shallows where it rarely occurs.

By defining public lands as lands, waters and interests therein to which the United States holds title, Congress plainly intended to encompass government-owned interests in waters. Alaska's suggestion that in referring to *all* waters, rather than just navigable waters, Congress could not have intended to encompass the subset of "navigable" waters is untenable given the manifest object of Congress. "Title" is the equivalent of ownership in this context. Congress undeniably reserved waters in conjunction with the lands, explicitly for the most part, for without reserved stream-flows the principal purposes of the reservations would be entirely defeated. The United States owns these reserved-water rights, and they are therefore an integral part of the public lands governed by ANILCA's subsistence-fishing priority.

Congress has ratified and funded the statutory interpretation that the federal subsistence program includes federal reserved waters. Indeed, Congress has taken

15

possession of that interpretation and is holding on to it as part of a well-informed design to bring Alaska back into compliance.

## ARGUMENT

I.   ALASKA'S EQUAL-FOOTING "SOVEREIGNTY" IS NOT DIMIN-
ISHED BY FEDERAL REGULATION OF SUBSISTENCE FISHING IN
NAVIGABLE WATERS; IT WAS THE CLEAR AND MANIFEST PUR-
POSE OF CONGRESS TO PRE-EMPT STATE AUTHORITY OVER
SUBSISTENCE FISHING ON PUBLIC LANDS, AND CONGRESS
PLAINLY POSSESSED CONSTITUTIONAL POWER TO DO SO

### A.   Nature Of The Controversy

Congress' enumerated constitutional powers to provide for federal regulation of subsistence fishing in navigable waters are indisputable.  If Congress has so provided, there has been no diminution of state "sovereignty," at least not in the equal-footing sense, for Alaska simply has not been deprived of "'those attributes essential to [a state's] equality in dignity and power with other States.'" *United States v. Gardner*, 107 F.3d 1314, 1319 (9th Cir. 1997) (quoting *Coyle v. Smith*, 221 U.S. 559, 568 (1911)); 107 F.3d at 1319 (equal-footing doctrine's purpose "is not to eradicate all diversity among states but rather to establish equality among the states with regards to political standing and sovereignty").

Alaska quotes *Coyle* to the effect that equal-footing principles gave her at statehood "'the right to control and regulate navigable streams'" (Br.4,16), but she leaves out the remainder of the sentence, which concludes: "*until Congress acts on the sub-*

16

*ject.*" 221 U.S. at 573 (emphasis added). "Although States have important interests in regulating wildlife and natural resources within their borders, this authority is shared when the Federal Government exercises one of its enumerated constitutional powers." *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 204 (1999).

Nor can it be suggested that subsistence fishing in navigable waters is a subject over which the State's "traditional" exercise of police powers enjoys a presumption of validity. Indeed, in terms of the potential reach of its police powers, Alaska has more options than many other States where state regulatory authority is circumscribed, even outside of reservations, by the presence of hunting and fishing rights protected by federal laws and treaties.[16] In Alaska, by contrast, Congress has empowered the State to exercise direct regulatory authority over subsistence hunting and fishing, under federal standards, on the two-thirds of the State that constitute public lands. Alaska's unwillingness to meet the federal conditions undoubtedly constricts the reach of her authority, but that self-imposed disability hardly diminishes her

---

[16]  *E.g., Minnesota v. Mille Lacs Band,* 526 U.S. at 204-05; *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324 (1983); *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658 (1979); *Antoine v. Washington*, 420 U.S. 194 (1975); *Menominee Tribe v. United States*, 391 U.S. 404 (1968); *Kimball v. Callahan*, 590 F.2d 768 (9th Cir. 1979); *Sohappy v. Smith*, 529 F.2d 570 (9th Cir. 1976); *United States v. Washington*, 520 F.2d 676 (9th Cir. 1975); *Settler v. Lameer*, 507 F.2d 231 (9th Cir. 1974).