# EXHIBIT C-17

1  Robert T. Anderson
   Lawrence A. Aschenbrenner
2  Heather Kendall
   NATIVE AMERICAN RIGHTS FUND
3  310 K Street, Suite 708
   Anchorage, Alaska 99501
4  Attorneys for Plaintiffs
   (907) 276-0680
5

6                 IN THE UNITED STATES DISTRICT COURT
7                     FOR THE DISTRICT OF ALASKA
8

9  KATIE JOHN, DORIS CHARLES        )
   AND MENTASTA VILLAGE             )      No. A90-484 CIV
10 COUNCIL,                         )
                                    )
11           Plaintiffs,            )      SECOND AMENDED
                                    )      COMPLAINT FOR DECLARATORY
12      v.                          )      AND INJUNCTIVE RELIEF
                                    )
13 THE UNITED STATES OF AMERICA,    )
   BRUCE BABBITT, in his official   )
14 capacity as Secretary of the     )
   United States Department of the  )
15 Interior and MIKE ESPY,          )
   in his official capacity as      )
16 Secretary of Agriculture, CARL   )
   ROSIER, in his official capacity )
17 as the Commissioner of the Alaska)
   Department of Fish and Game      )
18 and the STATE OF ALASKA,         )
                                    )
19           Defendants.            )
   _____)
20

21         1.    Plaintiffs bring this action pursuant to section

22 807 of the Alaska National Interest Lands Conservation Act

23 (ANILCA), 16 U.S.C. § 3117.  The Court's jurisdiction is also

24 invoked pursuant to 28 U.S.C. § 1331 and through 28 U.S.C. §

25 1362.  Venue properly lies in the District of Alaska under 28

26 U.S.C. § 1391(b).  Declaratory Relief is authorized by

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1   28 U.S.C. §§ 2201 and 2202.

2       2.    This case arises out of the United States' failure

3   to provide a priority for subsistence uses at a site known as

4   Batzulnetas, which is within the confines of Wrangell-St. Elias

5   National Park and Preserve at the confluence of Tanada Creek and

6   the Copper River.  The United States claims that jurisdiction

7   over the fishery lies with the State of Alaska.

8       3.    The opportunity to engage in the non-wasteful

9   harvest of local natural resources, and to share and exchange

10  those resources in the customary and traditional way, is vital to

11  the ability of Plaintiffs and the members of Mentasta Village to

12  continue their subsistence-based way of life.  Such subsistence

13  uses are entitled to priority under 16 U.S.C. § 3114 on public

14  lands in Alaska.  Defendants' refusal to provide for the

15  Plaintiffs' custom and tradition of subsistence fishing at

16  Batzulnetas denies protection for a customary and traditional

17  use.  It thus inhibits Plaintiffs' ability to carry on their

18  subsistence way of life and maintain the culture and tradition of

19  their people.

20

21              PARTIES

22      4.    Plaintiff Katie John is an upper Ahtna Athabaskan

23  Indian and a member of Mentasta Village who was raised at

24  Batzulnetas during the early 20th century.  She and her ancestors

25  have lived a traditional subsistence lifestyle in the Copper

26  c:\wp51\john\complain.2nd            2

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1  River Valley area since time immemorial.  In 1969 she applied for

2  a Native allotment at Batzulnetas which is located near the

3  confluence of Tanada Creek and the Copper River.  Her application

4  meets all requirements of the 1906 allotment act and is currently

5  pending in the Bureau of Land Management.  This allotment is a

6  fish camp site which was used by Katie John and her extended

7  family for non-wasteful subsistence purposes until 1964 when

8  State officials barred all subsistence fishing on tributaries of

9  the Copper River and on the Copper River itself above its

10  junction with the Slana River.

11      5.    Plaintiff Doris Charles is an upper Ahtna

12  Athabaskan Indian who now resides in Dot Lake, Alaska.  Since

13  1979 she has been the owner of a Native allotment located at

14  Batzulnetas where she was born in 1902 and grew up.  Ms. Charles

15  and her extended family have a long-standing custom and tradition

16  of operating a fishwheel on and near her allotment.  They fished

17  there for non-wasteful subsistence purposes until the area was

18  closed to fishing by State officials in early 1964.

19      6.    Plaintiff Mentasta Village Council is a

20  Traditional Council which constitutes the governing body of

21  Mentasta Village and is recognized as an Indian tribe by the

22  United States government.  Mentasta Village is located

23  forty-eight miles southwest of Tok, six miles off the Tok - Slana

24  cutoff, with a population of about 60.  There are few cash jobs

25  in the community.  Its residents are heavily dependent upon

26  c:\wp51\john\complain.2nd          3

Native American Rights Fund

310 "K" Street, Suite 700 • Anchorage, Alaska 99501 • (907) 276-0680

1    gathering fish and wildlife for their subsistence needs.  Nearly

2    the entire population of the present village traces its familial

3    roots to Batzulnetas.

4         The members of Mentasta Village have a custom and

5    tradition of carrying on subsistence activities at Batzulnetas

6    and at other sites throughout a well-defined geographic area

7    occupied by speakers of the upper Ahtna dialect.  From time

8    immemorial those activities have been governed by traditional law

9    and custom which is passed on from generation to generation.

10        7.   Defendant Secretary of Interior, Bruce Babbitt,

11   acts through various agencies in the management of wildlife

12   resources on public lands within the state, including but not

13   limited to the United States Fish and Wildlife Service, the

14   Bureau of Indian Affairs, Bureau of Land Management and National

15   Park Service.  He is obliged to provide priority to subsistence

16   uses on "public lands" for rural residents of Alaska.  This

17   authority is exercised in conjunction with the Secretary of

18   Agriculture through the Federal Subsistence Board.

19        8.   Defendant Mike Espy is the Secretary of

20   Agriculture.  The United States Forest Service is an agency

21   within the Department of Agriculture.  It has a seat as a member

22   of the Federal Subsistence Board.  This Board was established in

23   conjunction with the Secretary of Interior to establish

24   regulations governing subsistence uses on public lands in Alaska.

25        9.   Defendant Carl Rosier is the Commissioner of the

26   c:\wp51\john\complain.2nd              4

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

E.R. 4

1   Alaska Department of Fish and Game and as such administers

2   Alaska's laws governing fish and game.

3       10.   Defendant State of Alaska claims jurisdiction over

4   fish and game on lands that are not defined as "public lands" in

5   ANILCA.  This authority is exercised through various agencies and

6   departments, including the Alaska Department of Fish and Game.

7   In exercising this authority the State of Alaska affects the

8   ability of plaintiffs to harvest fish and game on "public lands."

9

10                     GENERAL ALLEGATIONS

11      11.   Doris Charles and Katie John have a long history

12  of fishing at Batzulnetas.  It has been used and/or occupied by

13  the individual Plaintiffs and their ancestors since time

14  immemorial.  It was a permanent village occupied by the upper

15  Ahtna people until the early 1940's.  It has always been a

16  critical site for fishing and as a base for other resource

17  gathering activities by plaintiffs and plaintiff's members. These

18  subsistence activities take place within a well-defined area in

19  accordance with long established seasonal use patterns.

20      12.   In 1984 Katie John and Doris Charles submitted a

21  proposal requesting the Alaska State Board of Fisheries to open

22  the Batzulnetas area to subsistence fishing.  Under this proposal

23  each would have been authorized to take salmon for the use of

24  themselves and their extended families.  The Board, on a 5-2

25  vote, denied the proposal at its hearings in mid-November 1984.

26  c:\wp51\john\complain.2nd             5

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1   The Board's action totally prohibited Katie John and Doris

2   Charles from engaging in their customary and traditional

3   subsistence uses at a customary and traditional site, despite the

4   fact that downstream users were permitted to take hundreds of

5   thousands of salmon for sport and commercial uses.  A federal

6   court lawsuit against the state of Alaska was brought in late

7   1985 to challenge the Board's action.

8           13.   Subsequently, the Board adopted a regulation, 5

9   AAC 01.647(i), which provided a limited salmon fishery at

10  Batzulnetas, restricted to residents of Mentasta and Dot Lake

11  Village.  This regulation was declared invalid in *John, et. al.*

12  *v. State of Alaska,* No. A85-698 Civil (Order dated January 19,

13  1990).

14          14.   As a result of the Alaska Supreme Court's decision

15  in *McDowell v. Alaska,* the federal Defendants have assumed day-

16  to-day regulatory jurisdiction over "public lands" in Alaska.

17          15.   The area known as Batzulnetas is located within

18  the exterior boundaries of Wrangell-St. Elias National Park and

19  Preserve (hereinafter "the Park").  The Park was established by

20  ANILCA in 1980.  The purposes of establishing the Park were to:

21              maintain unimpaired the scenic beauty and
22              quality of high mountain peaks, foothills,
                glacial systems, lakes, and streams, valleys
23              and coastal landscapes in their natural
                state; to protect habitat for, and
24              populations of, fish and wildlife . . .
                Subsistence uses by local residents shall be
25              permitted in the park, where such uses are
                traditional.

26  c:\wp51\john\complain.2nd            6

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1  16 U.S.C. § 410hh(9).  Certain stream flows, as yet unquantified,

2  are necessary to fulfill the purposes expressed by Congress and

3  were thus reserved as of the date of the Park's creation.  These

4  "federal reserved water rights" are interests in water as

5  provided by the public lands definition in ANILCA.  More

6  specifically, various species of anadromous fish migrate up the

7  Copper River and Tanada Creek through the Park.  In order to

8  fulfill the express purpose of protecting fish habitat and fish

9  populations in the Park, certain stream flows in the Copper River

10  and Tanada Creek are necessary to protect these species.  This

11  reservation of water extends not only to the water found within

12  rivers in the Park, but to water throughout the Copper River

13  system in an amount necessary to provide fish habitat and passage

14  for fish making their way to and from the Park.  A certain level

15  of stream flow is also required to "maintain unimpaired the

16  scenic beauty" of the Park.  All land and water within the

17  confines of the Park and the Copper River and its tributaries

18  thus constitute "public lands" as defined by the Alaska National

19  Interest Lands Conservation Act of 1980.

20      16.  The Copper River and Tanada Creek also qualify as

21  public lands because the United States has interests in waters,

22  including, but not limited to, a navigational servitude.  In

23  addition the United States has an interest in the waters of the

24  Copper River and Tanada Creek based on the Alaska Allotment Act.

25      17.  On September 7, 1990, plaintiffs petitioned the

26

c:\wp51\john\complain.2nd          7

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1   Federal Subsistence Board for reconsideration of the regulations
2   governing subsistence fishing at Batzulnetas.  Plaintiffs
3   requested modifications in the seasons, methods, means and
4   geographic scope of the fishery.  A copy of the Petition is
5   attached as Exhibit A and is hereby incorporated by reference.
6   On October 17, 1990 the Chairman of the Federal Subsistence Board
7   responded to the petition.  A copy is attached as Exhibit B and
8   incorporated by reference.  The Board ruled that it had no
9   jurisdiction to adopt regulations over subsistence fishing at
10  Batzulnetas because neither Tanada Creek nor Copper River
11  constituted "public lands" within the meaning of ANILCA.
12  According to the Board both Tanada Creek and the Copper River
13  were determined to be navigable in the vicinity of Batzulnetas
14  and the Board took the position that "navigability" was the
15  dispositive factor in evaluating whether waters are "public
16  lands" as defined by ANILCA.  On information and belief, neither
17  the Copper River nor Tanada Creek are navigable waters in the
18  vicinity of Batzulnetas.  The State of Alaska has no interest in
19  the land underlying the Copper River and Tanada Creek at
20  Batzulnetas.  Even if such waters are navigable, however, the
21  State of Alaska does not thereby acquire, nor divest the federal
22  Defendants of, regulatory authority over fish and game in such
23  waters.

24

25              FIRST CAUSE OF ACTION

26
c:\wp51\john\complain.2nd            8

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

18.  Paragraphs 1-16 are hereby incorporated by reference.

19.  Section 804 of Title VIII of the Alaska National Interest Lands Conservation Act accords a priority for the taking of fish and game for non-wasteful subsistence purposes on public lands.  16 U.S.C. § 3114.  The waters of Tanada Creek and the Copper River are public lands as defined by section 102 of ANILCA, 16 U.S.C. § 3102.  This priority status for subsistence uses requires that other uses be eliminated before restricting the non-wasteful subsistence uses of Katie John and Doris Charles at Batzulnetas.  The United States is required to provide a subsistence fishery at Batzulnetas and its refusal to provide for subsistence uses is in violation of Title VIII of ANILCA.  The State of Alaska has no jurisdiction over the subsistence fishery at Batzulnetas, nor over the remainder of the Copper River system.

## SECOND CAUSE OF ACTION

20.  Paragraphs 1-16 are hereby incorporated by reference.

21.  The Alaska Native Allotment Act of 1906 was intended to provide Alaska Natives with an opportunity to obtain title to lands used and occupied for traditional subsistence activities and thus preserve their ability and right to live a subsistence lifestyle.  Both Katie John and Doris Charles

c:\wp51\john\complain.2nd                    9

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1   selected their allotments at Batzulnetas because their life-long

2   use of the areas demonstrated their importance as fish camp

3   sites. When the United States reserved land under the allotment

4   act, it also reserved sufficient water, including the waters of

5   Tanada Creek and Copper River, to fulfill the purposes of the

6   allotments. The allotments at Batzulnetas thus carry a reserved

7   water right — title to which is in the United States on behalf

8   of the allottees. Thus, the waters of Tanada Creek and Copper

9   River are public lands as defined by section 102 of ANILCA, 16

10  U.S.C. § 3102.

11      22. The federal Defendants' refusal to provide a

12  priority for non-wasteful subsistence fishing on their Native

13  Allotments conflicts with the purpose and policy of the Alaska

14  Native Allotment Act and Title VIII of ANILCA and is thus

15  unlawful.

16

17          THIRD CAUSE OF ACTION

18      23. Paragraphs 1-16 are hereby incorporated by

19  reference.

20      24. On information and belief, the federal defendants

21  through the National Park Service, have precluded plaintiffs from

22  obtaining reasonable access to Batzulnetas via the Batzulnetas

23  trail. This action was taken on the ground that no deviation

24  from the existing Batzulnetas trail may be made no matter how

25  adverse trail conditions may be, despite the Defendants' duty to

26  c:\wp51\john\complain.2nd            10

Native American Rights Fund
310 "K" Sreet, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

1    manage the Park in such a manner as to cause the least possible

2    adverse impact on subsistence uses and as required by §§ 811 and

3    1110(a) of ANILCA; 16 U.S.C. §§ 3121, 3170.

4        25.  The federal defendants' refusal to allow

5    reasonable access to Batzulnetas conflicts with ANILCA's mandate

6    requiring access for subsistence uses and is also contrary to the

7    Alaska Allotment Act.

8

9                          Fourth Cause of Action

10        26.  Paragraphs 1-16 are hereby incorporated by

11    reference.

12        27.  The State of Alaska has no jurisdiction over the

13    waters of the Copper River and Tanada Creek since such waters

14    constitute "public lands" as defined by ANILCA.  As to any part

15    of the Copper River system, Tanada Creek or the Gulf of Alaska

16    which do not constitute public lands, the state is preempted from

17    regulating fisheries under its jurisdiction which in any way

18    infringes on, or adversely affects Plaintiffs' opportunity to

19    fish for subsistence at Batzulnetas.

20

21                          PRAYER FOR RELIEF

22        Wherefore, Plaintiffs request the Court to:

23        (a)  issue a declaratory judgment that waters of Tanada

24    Creek and the Copper River are "public lands" as defined by

25    ANILCA;

26    c:\wp51\john\complain.2nd                11

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

(b)  issue a declaratory judgment that the federal Defendants' refusal to provide a non-wasteful subsistence fishery at Batzulnetas is a restriction of a subsistence use contrary to Title VIII of ANILCA;

(c)  issue a declaratory judgment that the federal Defendants' refusal to provide a fishery at Batzulnetas conflicts with the Alaska Native Allotment Act of 1906

(d)  issue a declaratory judgment that the federal Defendants' policy of refusing to allow deviations and modifications to the Batzulnetas trail is unlawful;

(e)  order the federal Defendants to promulgate a regulation providing for a subsistence fishery at Batzulnetas and declare that such defendants have a duty to preclude the state Defendants from taking any action on non-public lands which interferes with Plaintiffs' subsistence harvest opportunities on public lands;

(f)  declare that Defendants State of Alaska and Rosier have no jurisdiction over subsistence fishing in the waters of the Copper River system, including the Copper River and Tanada Creek, which constitute "public lands" and that such Defendants are prohibited from taking any action on public or non-public lands which in any way interferes with the Plaintiffs' subsistence rights on "public lands" and enjoin such Defendants from taking any such action;

(g)  award Plaintiffs the costs of this action and

1   reasonable attorney's fees;

2           (h)   award Plaintiffs such other relief as may be

3   reasonable and necessary.

4

5                                   RESPECTFULLY SUBMITTED,

6

7   DATED: *March 5, 1993*   By:   *Robert T. Anderson*

8                                  Robert T. Anderson *by L.A.A.*
                                   of Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

c:\wp51\john\complain.2nd           13

Native American Rights Fund
310 "K" Street, Suite 708 • Anchorage, Alaska 99501 • (907) 276-0680

REQUEST FOR RECONSIDERATION OF FEDERAL
REGULATIONS GOVERNING SUBSISTENCE


This request for reconsideration of federal subsistence regulations is filed pursuant to § _____.18 of the regulations published at 55 Fed. Reg. 27114 (June 29, 1990). All information required by the regulation governing appeals is set forth below, or in attachments as noted.

    (1)  The requestor's name, mailing address, and daytime telephone number (if any);

This request is submitted on behalf of Katie John of Mentasta Lake Village, Doris Charles of Dot Lake Village and the Mentasta Village Council (hereinafter "petitioners"). Any inquiries or notices regarding this request should be directed to petitioner's attorney:

Robert T. Anderson
Native American Rights Fund
310 K Street, Suite 708
Anchorage, Alaska 99501
(907)276-0680

    (2)  Decision for which reconsideration is requested and the date of that decision.

The regulation is found at § _____.24(d); 55 Fed. Reg. at 27160. It was adopted on June 29, 1990.

    (3)  Statement of how the requestor is adversely affected by the decision.

The regulation restricts subsistence fishing opportunities to two days per week in June and to three and one-half days per week in July and August. This does not provide sufficient opportunity for the harvest of salmon. These arbitrary limits also conflict with customary and traditional fishing practices under which people fish when the fish are available and when it is convenient for them to do so – rather than in accord with a rigid calendar-based system. These restrictions, which were originally promulgated by the state Board of Fisheries, were set aside for both the 1989 and 1990 fishing seasons by the federal district court. In January of 1990 the court declared the regulation invalid due to the Board of Fisheries' failure to follow the procedures called for under the state subsistence law (copies of the two preliminary injunction orders and the order granting summary judgment are attached). This unlawfully promulgated regulation was then adopted by the Federal Subsistence Board.

The gear type restrictions and restrictions on the

Exhibit A    Pg. 1

E.R. 14

geographic scope of the fishery likewise conflict with customary and traditional practices and inhibit petitioners' ability to harvest salmon at Batzulnetas.

(4) Statement of the facts of the dispute, the issues raised by the request, and specific references to any law, regulation, or policy that the requestor believes to be violated and the reason for such allegation.

Batzulnetas is the site of an historic Native village located at the confluence of the Copper River and Tanada Creek and occupied through the late 1940's.[1] Most of the inhabitants of the village moved to Mentasta Village or Dot Lake Village, but continued to utilize the fishery at Batzulnetas on a regular basis. The State of Alaska closed the area to subsistence fishing in 1964. Katie John and Doris Charles petitioned the State Board of Fisheries to reopen the site in 1984, but were denied by the Board. In 1985 a lawsuit, John v. State of Alaska, Civ. No. A85-698 (D. Alaska), was commenced by Katie John, the Mentasta Village Council and Doris Charles of Dot Lake Village under section 807 of ANILCA. 16 U.S.C. § 3117. The suit resulted in informal negotiations between the parties which provided for a limited fishery at Batzulnetas in 1987. The Plaintiffs formally presented a proposed regulation to the Board in early 1988. At its March 1988 meeting, the Alaska Board of Fisheries rejected the proposal as presented, but adopted a regulation which allowed some fishing at Batzulnetas by residents of Dot Lake Village and Mentasta Village. See 5 AAC § 01.647(i). That regulation allowed fishing for only two days a week in June and three and one-half days per week in July and August. It also limited the methods to fishwheels, dip nets and spears. After an unsatisfactory 1988 fishing season, the plaintiffs renewed their federal court action on the ground that the regulation unlawfully restricted their customary and traditional use of salmon. They sought preliminary relief for the 1989 fishing season and a final order declaring the regulation unlawful.

In June of 1989 federal district Judge Holland issued a preliminary injunction which provided for a fishery at Batzulnetas on a full time basis from June 1 through September 1, or until 1,000 sockeye were taken. See Preliminary Injunction Order at 13-14 (copy attached). He thus rejected a claim by the state that the periodic closures were necessary for conservation

---

[1]    Much information regarding Batzulnetas can be found in Reckord, "That's the Way We Live - Subsistence in the Wrangell-St. Elias National Park and Preserve" (U. of Alaska Cooperative Parks Studies Unit-1983) and Reckord, "Where Raven Stood" (U. of Alaska Cooperative Parks Studies Unit-1983).

2

Exhibit A  Pg 2

purposes.    On January 19, 1990 Judge Holland ruled that the entire regulation was invalid due to the state's failure to follow the state subsistence law in adopting the regulation.  <u>See</u> Summary Judgment Order at 7-8.  The court found that once having determined that the Dot Lake Village and Mentasta Village residents engaged in the customary and traditional use of salmon at Batzulnetas, the Board was bound to determine the amount of salmon available for harvest and the amount required to accommodate subsistence uses.  The Board failed to take these last two steps.  Accordingly, Judge Holland ordered the Board to promulgate regulations which provided priority for subsistence uses at Batzulnetas.  However, because of the decision in <u>McDowell v. State of Alaska</u>, 785 P.2d 1 (Alaska 1989) the Board of Fisheries never acted.  Since the state legislature has not acted to place the state back in compliance with ANILCA, the state has lost jurisdiction over "public lands."

Under 16 U.S.C. § 3114 "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."  "Subsistence uses" are "the customary and traditional uses by rural Alaskan of wild renewable resources for direct personal or family consumption as food . . . ."  16 U.S.C. § 3113.  Thus, an activity is entitled to priority under the federal subsistence law if it: 1) is customary and traditional; 2) is engaged in by rural residents; and 3) takes place on the public lands.  Each of these requirements is met.

First, the State Board of Fisheries, which has been openly hostile to subsistence users in the past (<u>see</u> <u>Kenaitze Indian Tribe v. State of Alaska</u>, 860 F.2d 312 (9th Cir. 1989)), found that Dot Lake and Mentasta Village residents engaged in the customary and traditional use of salmon at Batzulnetas.  This fact is also noted in a study of subsistence uses in Wrangell-St. Elias National Park funded by the National Park Service.  <u>See</u> Reckord, "That's the Way We Live - Subsistence in Wrangell-St. Elias National Park and Preserve" at pp. 29 and 155 (1983).  There is much other documentation of traditional fishing activity taking place at Batzulnetas.

Second, the activity is engaged in by residents of a rural area.  Mentasta Village is comprised of approximately 65 residents and Dot Lake has a population of about 40 residents.  These areas are rural under the common meaning of the term.

Finally, it is plain that the activity takes place on "public lands."  16 U.S.C. § 3102 (3).  The fishing site is within Wrangell-St. Elias National Park.  Tanada Creek and the Copper River are likely non-navigable so that title to the stream bed is held by the United States.  Moreover, even if the waters are navigable, title to the water resides in the United States under the reserved rights doctrine.  When the United States

3

*Exhibit A pg 3*

withdraws land from the public domain, the federal government also reserves enough water to fulfill the purposes underlying establishment of the reservation. See Winters v. United States, 207 U.S. 564 (1908)(water reserved for irrigation upon establishment of Indian reservation); and United States v. New Mexico, 438 U.S. 696 (1978)(water reserved upon establishment of national forest to maintain timber supply and to secure favorable runoff conditions for watersheds). Whether water was reserved requires a determination of the purposes behind establishing the particular reservation. Wrangell-St. Elias National Park and Preserve was established to:

> maintain unimpaired the scenic beauty and
> quality of high mountain peaks, foothills,
> glacial systems, lakes, and streams, valleys,
> and coastal landscapes in their natural
> state; to protect habitat for, and
> populations of, fish and wildlife . . .
> Subsistence uses by local residents shall be
> permitted in the park, where such uses are
> traditional.

16 U.S.C. § 410hh (9).

Based on this expression of congressional intent, there can be no doubt that an implied reservation of water is necessary to fulfill the purposes behind establishment of Wrangell-St. Elias National Park. Water is unquestionably necessary "to protect habitat for, and populations of, fish and wildlife." Id. To conclude otherwise would compel the conclusion that the entire streamflow of the Copper River or Tanada Creek could be diverted for consumptive use under the state's prior appropriation system. Congress could not have intended such a scenario to be legally permissible. Thus, the waters of Tanada Creek and the Copper River are "public lands" as defined by ANILCA.[2]

Since the petitioner's fishery is a "subsistence use," it is entitled to priority under section 804. However, the present regulation fails to provides priority for subsistence uses as required by ANILCA. If it is necessary to restrict subsistence uses as the Board has done, sport and commercial uses of the salmon stocks must first be eliminated. If there is still an insufficient amount of salmon available to satisfy subsistence

---

[2]    Since a purpose of the park is to protect fish populations, the United States likely has title to water throughout the Copper River in a quantity necessary to ensure downstream transport and upriver migration of salmon. It thus, has a property right to the waters of the Copper River throughout its course. This makes the Copper River "public land" subject to federal jurisdiction.

4

Exhibit A Pg 4

users or to maintain sustained yield, subsistence users may only be restricted in accordance with the three criteria listed in 16 U.S.C. § 3114. However, that should not be necessary in this case. Over 500,000 salmon are taken annually in the Gulf of Alaska. These commercial uses must be eliminated before subsistence harvests may be restricted. The federal government has authority under the Supremacy Clause of the Constitution to prevent state authorized harvests which interfere with the exercise of federal subsistence rights. See <u>Kluti-Kaah et al. v. Alaska and Lujan et al.</u>, No.90-004 Memorandum of Decision at 20-22 (Aug. 15, 1990). In other words, the State may take no actions which interfere with the subsistence priority on public lands -- any contrary State regulations must recede in the face of the federal rules. <u>Kleppe v. New Mexico</u>, 426 U.S. 529, 543 (1976). Because ANILCA <u>guarantees</u> a subsistence priority, the Secretary now has the full authority <u>and the duty</u> to take whatever actions are necessary to implement the subsistence priority on public lands. <u>Id</u>. For this reason and for the reasons set forth in footnote 2, <u>supra</u>, the United States should assert jurisdiction over the entire Copper River fishery.

        For a further discussion of the fishery, see the comments dated May 14, 1990 and the attached district court rulings.


        (5)  **Statement of how the requestor would like the decision changed.**

        Petitioners request that the attached regulation captioned "Batzulnetas Subsistence Fishery Management Plan" be adopted. This would: 1) provide for a season that is consistent with that ordered by the federal court for the past two years; 2) expand the geographic scope of the fishery slightly; 3) allow the use of all customary and traditional gear types; and 4) replace the requirement of obtaining a state permit with a federal permit.

DATED:  9/7/90                    SUBMITTED BY:


                                 _Robert T. Anderson_
                                 Robert T. Anderson
                                 on behalf of Katie John,
                                 Doris Charles and
                                 Mentasta Village Council

5

Exhibit A pg 5

BATZULNETAS SUBSISTENCE SALMON FISHERY MANAGEMENT PLAN.

(a)  Salmon may be taken in the vicinity of the former
Native Village of Batzulnetas under the conditions of this
section.

(b)  Residents of Dot Lake Village and Mentasta Village are
entitled to fish at Batzulnetas, along with others with a
customary and traditional participation in the fishery.  Salmon
may taken under authority of a Batzulnetas salmon permit to be
issued by the federal government

(c)  Salmon may be taken only in those waters of the Copper
River between the mouth of Tanada Creek and approximately two
miles downstream.  Salmon may be taken in Tanada Creek from its
confluence with the Copper River to a point approximately two
miles upstream.

(d)  Salmon may be taken by all customary and traditional
methods, including but not limited to fish wheels,
nets and weirs.

(e)  Salmon may be taken from June 1 through September 1 or
until 3,500 sockeye salmon are taken, whichever occurs first.

Exhibit A pg 6

E.R. 19



OCT 3 1990

## United States Department of the Interior



FISH AND WILDLIFE SERVICE
1011 E. TUDOR RD.
ANCHORAGE. ALASKA 99503

IN REPLY REFER TO:

A/SUB

OCT 17 1990

Robert T. Anderson
Native American Rights Fund
310 "K" Street, Suite 708
Anchorage, Alaska 99501

Dear Mr. Anderson:

Your motion for reconsideration of the regulation which governs
subsistence fishing in the vicinity of the former native village
of Batzulnetas was received on September 7, 1990. Batzulnetas is
located near the community of Slana within the boundaries of
Wrangell-St. Elias National Park. Pursuant to Section 18 of the
temporary regulations [50 CFR 100.18(i)], Subpart D regulations
are subject to reconsideration provided the motion is filed prior
to September 30, 1990. The regulation governing the Batzulnetas
fishery is found in Subpart D of the temporary regulations
[50 CFR 100.24(f)(11)(xxiii)], on page 27160 in the Federal
Register, Vol. 55, No. 126.

The Federal Subsistence Board has reconsidered the pertinent
section of the temporary regulations and finds that it is not
applicable to the Batzulnetas fishery because the affected waters
are navigable. Management of the fishery remains with the State
of Alaska. The following information is provided in support of
this finding:

The temporary regulations do not apply on lands which are not
public lands. General provisions regarding applicability and
scope of the regulations are found in Subpart A. Section 3
states that "The regulations of this part _____ apply to
subsistence taking and uses of fish and wildlife on all public
lands in the State of Alaska, ....." Navigable waters are not
included within the definition of "public lands" found in
Section 4 of the regulations. Therefore, the temporary federal
regulations do not apply on navigable waters. In order to
determine if the regulations should apply to a particular
fishery, a determination of navigability for the affected waters
must first be made. Pursuant to this motion, the National Park
Service has made an administrative determination that the waters
of the Copper River and Tanada Creek in the vicinity of their

Exhibit B   Pg. 1

E.R. 20

confluence are navigable.  A copy of the determination is
enclosed.

Because the temporary regulations are not applicable to the
Batzulnetas fishery, your request for relief from restrictions on
fishing periods and methods and means imposed by the State of
Alaska cannot be remedied by a change in regulations found in
Subpart D of the temporary federal regulations.  The State of
Alaska currently manages fisheries in the affected waters.
Therefore, your request for relief from restrictions on fishing
periods and methods and means should be addressed to the state.

Your declaration that the regulation governing the Batzulnetas
fishery should apply regardless of navigability cannot be
accepted as a motion for reconsideration of a Subpart D
regulation.  Sections of the temporary regulations dealing with
applicability and scope are found in Subpart A.  Regulations in
Subpart A are not subject to a motion for reconsideration under
the appeals section of the regulations.

Sincerely,

Walter O. Stieglitz

Chairman, Federal Subsistence Board

Enclosure

Exhibit B, Pg. 2

E.R. 21



United States Department of the Interior

NATIONAL PARK SERVICE

ALASKA REGIONAL OFFICE
2525 Gambell Street, Room 107
Anchorage, Alaska 99503-2892



IN REPLY REFER TO:

L1425(ARO-OL)

Memorandum

To:       Regional Director

From:     Chief, Land Resources Division

Subject:  Navigability of Portions of Tanada Creek and the Copper
          River, Alaska

Introduction

The purpose of this report is to document the physical character
and susceptibility of use of portions of two waterbodies for the
purpose of making administrative determinations of title
navigability.  The waterbodies investigated are Tanada Creek from
its confluence with the Copper River to a point approximately two
miles upstream and the Copper River from its confluence with
Tanada Creek to a point approximately two miles downstream.  The
segments investigated are located within the Wrangell-St. Elias
National Park.

Navigability Criteria

The federal test for title navigability is articulated in the
Daniel Ball [77 U.S. 557, 563 (1870)] case:

        Those rivers must be regarded as public navigable
        rivers in law which are navigable in fact.  And they
        are navigable in fact when they are used, or are
        susceptible of being used, in their ordinary condition,
        as highways for commerce, over which trade and travel
        are or may be conducted in the customary modes of trade
        and travel on water.

The Federal Court of Appeals in the State of Alaska vs. Ahtna,
Inc. (Gulkana River) decision [891 F.2d 1401, (9th Cir. 1989)]
provides the following guidance on applying the federal test:

1.      "Although the river must be navigable at the time of
        statehood ... this only means that, at the time of
        statehood, regardless of the actual use of the river, the

Exhibit  B,  Pg. 3                              E.R. 22

river must have been susceptible to use as a highway for commerce." (p. 1404, col.2)

2. "A river's use 'need not be without difficulty, extensive, or long and continuous' for the river to be a highway for commerce." (p. 1404, col. 2)

3. The use of boats for guided fishing and sightseeing trips may constitute a commercial use of a river.

In the case of the Gulkana River, boats customarily used for guided fishing and sightseeing trips were 20 to 24-foot long aluminum powerboats and 12 to 15.5-foot long inflatable rafts. The rafts, which have a maximum load capacity of 2000-pounds, usually carried five passengers and one guide, often resulting in a load in excess of 1000 pounds. Vessels of this size and type, when used in commerce, can be considered an indicator of navigability.


Tanada Creek

Information on the physical character of Tanada Creek comes from the USGS Nabesna C-6, 1:63,360 scale, topographic map; high-level aerial photography (CIR 60, Roll 3013, Frame 4133, August 1981); field examination by the National Park Service (NPS); and information provided by government officials and local residents familiar with the creek.

Tanada Creek flows approximately 15 air miles from it headwaters at Tanada Lake to its confluence with the Copper River. The creek drains an area of approximately 175 square miles and discharges an estimated average flow of 275 cfs into the Copper River (Grumman Ecosystems Corporation, Report on Navigability of Streams Tributary to the Copper River and Prince William Sound, Alaska, 1975, p. 4-12).

In its upper reaches the creek appears braided and, in areas, shallow. About midway to the Copper River the creek begins a meandering course through a single channel and its width and depth appear relatively uniform from that point on. The gradient of the lower reaches of the creek, as indicated on the USGS topographic map, is approximately 50 feet per mile. The impression of those viewing the creek in the field was that the gradient is significantly less than 50 feet per mile. Several log jams are present along the length of the creek.

The portion of Tanada Creek considered in this report begins at its confluence with the Copper River in Section 30, T.10N., R.9E., CRM, and continues approximately two miles upstream to the point where the creek crosses the section line between sections 32 and 33, T.10N., R.9E., CRM.

2

Exhibit B, Pg. 4

E.R. 23

Ken Roberson, Alaska Department of Fish and Game (ADF&G), has managed fisheries on water bodies in the area, including Tanada Creek, since 1969. He has observed Tanada Creek several times a year for the past twenty years. According to Mr. Roberson, the water level in Tanada Creek is consistently high during the time of snow melt in the spring and early summer. Some years during July and August the water level can be quite low except after intense rainstorms when it may run very high for one or two days.

Typical September water levels at the historic village of Batzulnetas (approximately one mile upstream from the confluence with the Copper River) were estimated by Mr. Roberson at 12 to 18 inches with some riffles perhaps 6 inches deep. The creek is 30 to 35 feet wide at that point. Russ Watts with the Alaska Department of Natural Resources, Division of Land and Water Management, State Interest Determinations office, provided information from U. S. Survey 6736 which described Tanada Creek as 37 feet wide and three to four feet deep at its mouth.

During an aerial and ground examination of the creek on September 19, 1990, NPS personnel observed that the creek followed a meandering course in a single channel from its mouth upstream through the first two miles and beyond. They also estimated the creek to be approximately 35 feet wide and 12 to 18 inches deep, with six-inch riffles at the village of Batzulnetas.

Mr. Roberson reported that Tanada Creek was dry at its mouth for about six weeks this year in late June and July. He said this was very unusual; the only time he had seen it dry in twenty years.

The consensus of those visiting the site and interviewed for this report is that Tanada Creek is suitable for use by 12 to 15-foot long rubber rafts and small jet boats, at least in its lower half, and probably all the way to its headwaters at Tanada Lake. Use of these craft on the creek would be hampered occasionally by log jams, sharp meanders, and short stretches of shallow water, but nonetheless, would be possible.

No actual use of watercraft on Tanada Creek was documented during the course of the investigation. Ken Roberson, ADF&G, attributes the apparent lack of boat use to the proximity of numerous all-terrain-vehicle trails and the Copper River.

Copper River

The Copper River is a major Alaskan River which flows nearly three hundred miles from its headwaters at the Copper Glacier to the ocean at Cordova. At the confluence with Tanada Creek, approximately 15 miles from its headwaters, the Copper River is already a large waterbody.

3

Exhibit B, Pg. 5

E.R. 24

The main channel within the study area is approximately 60 feet wide (Grumman Ecosystems Corporation, <u>Report</u> <u>on</u> <u>Navigability</u> <u>of</u> <u>Streams</u> <u>Tributary</u> <u>to</u> <u>the</u> <u>Copper</u> <u>River</u> <u>and</u> <u>Prince</u> <u>William</u> <u>Sound</u>, <u>Alaska</u>, 1975, p. 4-12).  The river in this area has a swift current and numerous gravel bars.  The gradient is less than 25 feet per mile.

Although the actual depth of the water at this point is not known, there is no doubt that this stretch of the Copper River could be navigated by large rubber rafts and jet boats.

Ken Roberson, ADF&G, reports actual use of this stretch of the Copper River by rafts and kayaks.  He was certain that it would be possible to take a large jet boat from Slana upstream to the river's headwaters.

Conclusion

Tanada Creek:

Based on current information, the first two miles of Tanada Creek upstream from its mouth could be navigated by small rubber rafts and jet boats.  Tanada Creek may be navigated by the same types of rafts loaded with the same numbers of people which were found by the Federal Court to be indicative of the navigability of the Gulkana River.

The fact that there is no documented boating use of Tanada Creek is not relevant to its navigable status since it only needs to be susceptible to use.  Likewise, log jams and short shallow stretches do not affect its navigable status since it is a well established legal principle that navigability is not impaired by an occasional natural obstruction.

Copper River:

The subject portion of the Copper River is a major waterway suitable for use by large rubber rafts and jet boats.  Boats and loads similar to and larger than those indicative of navigability on the Gulkana River may be used on the Copper River.

4

Recommendation

Tanada Creek:

I recommend that Tanada Creek be administratively determined navigable from its confluence with the Copper River in Section 30, T.10N., R.9E., CRM, upstream approximately two miles to the point where the creek crosses the section line between sections 32 and 33, T.10N., R.9E., CRM.

Copper River:

I recommend that the Copper River be administratively determined navigable from its confluence with Tanada Creek to a point two miles downstream from such confluence.

Prepared By:

*Catherine B. Sheppard*
Catherine B. Sheppard
Realty Specialist

OCT 1 5 1990
_____
Date

Approved By:

*Charles M. Gilbert*
Charles Gilbert
Chief, Land Resources Division

OCT 1 5 1990
_____
Date

Concurred With By:

*B. Evison*

Boyd Evison, Regional Director
National Park Service

*Oct. 16, 1990*
Date

5

Exhibit B, Pg. 7

E.R. 26