CHARLES E. COLE
ATTORNEY GENERAL

Joanne M. Grace
Assistant Attorney General
Office of the Attorney General
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
(907) 269-5100
Attorney for the State of Alaska

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| KATIE JOHN, DORIS CHARLES, and MENTASTA VILLAGE COUNCIL, ) ) ) ) and ) ) THE STATE OF ALASKA, ) ) Plaintiffs, ) ) v. ) ) THE UNITED STATES OF AMERICA, ) BRUCE BABBITT, ) Secretary of the Interior, et al., ) ) Defendants. ) | Case No. A90-484 Civ (Consolidated) |

**MEMORANDUM IN SUPPORT OF STATE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269 5100

EXHIBIT 11
Page 1 of 16

1

2        The State of Alaska ("the State") submits this

3   Memorandum in Support of its Motion for Partial Summary Judgment

4   on Count III of the State's First Amended Complaint in <u>State v.</u>

5   <u>Babbitt</u>, No. 92-264 Civil.

6        Summary judgment is appropriate because there is no

7   genuine dispute as to any material fact about whether Congress

8   intended to delegate to the Secretaries of Interior and

9   Agriculture (hereafter "the Secretary") authority to manage fish

10  and wildlife on public lands in Alaska when it enacted title VIII

11  of the Alaska National Interest Lands Conservation Act, Pub. L.

12  No. 96-487, 16 U.S.C. §§ 3101-3126 ("ANILCA"). Congress intended

13  the State of Alaska to manage fish and wildlife on and off public

14  lands in Alaska, and the State is entitled to judgment as a matter

15  of law.

16

17  **SUMMARY OF ARGUMENT**

18       Although the issue has never been squarely presented in

19  prior cases, the courts have assumed that in the event the state

20  did not have a statewide law consistent with Title VIII of ANILCA,

21  which affords a rural priority for subsistence uses of fish and

22  wildlife on public lands, the Secretary could take over fish and

23  wildlife on federal public lands. This assumption is based on the

24  language of section 805(d), 16 U.S.C § 3115(d), which calls for

25  the Secretary to stay implementation of subsections (a), (b) and

26  (c) of that section if the State enacts laws of general

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

1

EXHIBIT <u>11</u>
Page <u>2</u> of <u>16</u>

applicability consistent with the provisions of Title VIII.[1] The only authority granted to the Secretary under ANILCA § 805 (a)-(c), however, is to establish and administer regional advisory councils.

Congress intended for the State to manage fish and wildlife on public lands even without a law of general applicability. The Secretary's responsibilities, in addition to administering the regional councils under ANILCA § 805 (a)-(c), include monitoring and reporting under ANILCA §§ 806 and 813, and ensuring access to subsistence resources on public lands under ANILCA § 811. The Secretary also has the authority to close the public lands to the taking of fish and wildlife for reasons including assuring the viability of a particular fish or wildlife population under ANILCA § 816.

Section 1314 of ANILCA, 16 U.S.C. § 3202, makes clear that, except as provided in Title VIII, the act is not intended to change the authority and responsibility of the State to manage fish and wildlife on public lands, or the authority and responsibility of the Secretary over management of public lands. Neither section 805 nor any other provision of Title VIII

---

[1]    ANILCA § 805(d) provides in relevant part:

The Secretary shall not implement subsections (a), (b), and (c) of this section if within one year from the date of enactment of this Act, the State enacts and implements laws of general applicability which are consistent with, and which provide for the definition, preference, and participation specified in, sections 803, 804, and 805 ....

16 U.S.C. 3115(d).

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

2

EXHIBIT 11
Page 3 of 16

authorizes the creation of the Federal Subsistence Board, or the promulgation of federal regulations governing day to day management of fish and wildlife on public lands in Alaska.

Congress authorized the United States District Court, not the Secretary, to determine whether the subsistence preference is properly provided by the state. Section 807 of ANILCA provides for judicial enforcement of the Title VIII priority, and authorizes the court to order the State to submit regulations which satisfy the requirements of section 804.

The foregoing analysis of the provisions of Title VIII is solidly supported by the legislative history. The earliest Alaska lands bill in the House of Representatives provided explicit authority for the Secretary to regulate the taking of fish and wildlife on public lands. This bill was modified to give the Secretary contingent authority to regulate the taking of fish and wildlife on public lands if the State failed to comply with standards set forth in the bill. The bill again was amended to authorize only selective land closure by the Secretary, i.e., to close lands to nonsubsistence uses while allowing subsistence uses. The House approved this version on May 19, 1978, and sent it to the Senate.

The Senate took a different approach, which is reflected in the statutory scheme of ANILCA as enacted. To implement the public land subsistence priority, the Senate preferred to maintain the traditional state authority and responsibility for regulating the taking of fish and wildlife on federal lands. The Secretary

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

3

EXHIBIT _11_
Page _4_ of _16_

was authorized to establish local and regional advisory committees and was vested with responsibility to monitor provision by the State of the subsistence priority.    The responsibility for enforcing the priority was vested not in the Secretary, however, but in the United States District Court.    The Senate version also preserved traditional closure authority in the Secretary. The authority that the Secretary now claims to have was rejected by both the House and the Senate as the legislation evolved into its final form.

**BACKGROUND**

Alaskans' desire to gain management control over the territory's fish and wildlife was one of the most compelling reasons they sought statehood.    Nearly twenty years after statehood, Congressman Udall introduced H.R. 39, 95th Cong., 1st Sess. (1977), the initial version of the Alaska lands bill, and Alaskans realized that they faced the prospect of losing the State's management authority for fish and wildlife for two-thirds of Alaska.    The Alaskan Congressional delegation, principally Senator Stevens, fought vigorously to assure that Alaska would retain its management authority under any circumstances under ANILCA.

**I.  ALASKANS SOUGHT STATEHOOD IN PART TO OBTAIN STATE CONTROL OVER FISH AND WILDLIFE MANAGEMENT.**

Before statehood, the federal government controlled fish and wildlife in Alaska, with disastrous results.    Federal

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

4

EXHIBIT _11_
Page _5_ of _16_

failed adequately to provide the subsistence preference, could take no administrative action, but could only file a civil action. Id. at 538-39.

When the bill came to the House floor in the 96th Congress, the dissenters prevailed and the full House approved the Udall-Anderson substitute in lieu of the Huckaby substitute. Ultimately, however, the Senate substitute title, which the Huckaby substitute had tracked, was enacted into law with no addition to the delegated authority of the Secretary and with a revision of section 807 that eliminated the Secretary's role as advocate in judicial enforcement. Consequently, the criticisms of the Huckaby substitute dissenters, that it granted no effective oversight authority to the executive, are applicable a fortiori to the provisions of ANILCA as ultimately enacted.[7]

In addition to their misconstruction of title VIII's references to the federal government, defendants' statutory arguments are fundamentally unsound because they require inference of authority, which is prohibited by §1314(b).

B. CONGRESS DID NOT GRANT THE SECRETARY IMPLICIT AUTHORITY TO MANAGE FISH WILDLIFE.

_____

[7]    The regional advisory councils would not be purposeless if the Secretary were not managing fish and wildlife. The councils' reports and recommendations would serve to monitor the State if the Secretary were administering the councils while the State manages fish and wildlife.  Section 806 requires the Secretary to consider the reports or recommendations in annual reports to the State and four congressional committees. If the State consistently failed to provide the preference, presumably Congress would review the scheme it devised in title VIII.  The Secretary also must consider the advisory reports in deciding whether to close an area of public lands to all hunting and fishing.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

9

EXHIBIT  11
Page  6  of  16

All defendants' arguments disregard ANILCA's rule of statutory construction regarding fish and wildlife management authority; §1314(b) declares that except as specifically provided by ANILCA, nothing in the act is intended to enlarge the responsibility and authority of the Secretary for management of the public lands. All defendants' arguments for Secretarial authority require the Court to infer authority from sections that do not purport to grant it, and thus to ignore the provision intended as a framework for analysis on issues of the respective management authority of the State and the federal government.

Defendants cite no pre-ANILCA grant of authority to the Secretary to manage fish and wildlife generally on federal lands in Alaska, and cite no explicit grant of such authority in ANILCA. The State's authority to manage fish and wildlife arises from the Alaska Statehood Act and is reconfirmed in §1314(a), which reserves state authority "except as may be provided in Title VIII." By establishing for rural residents a federal right, §804 is preemptive of state authority; that is, §804 diminishes State authority to manage fish and wildlife on the public lands because the State's management may not trench on the federal right.[8] The Secretary's authority is not the reciprocal of the State's, however. The Secretary is not delegated authority to the extent the State's authority is diminished. §1314(b).

---

[8]    For this reason, the U.S. defendants attach unwarranted significance to the proviso in §1314(a) that title VIII diminishes the responsibility of the State to manage fish and wildlife on the public lands by arguing that this implies _Secretarial_ authority to manage fish and wildlife.

10

EXHIBIT 11
Page 7 of 16

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269-5100

Section 1314(b) precludes the argument that the Secretary is authorized to take over fish and wildlife management by §814, which permits the Secretary to promulgate regulations. The Secretary has no power to preempt state law unless Congress has granted such power. Moreover, §814's grant of authority to the Secretary to prescribe regulations is limited to "such regulations as are necessary and appropriate to carry out his responsibilities under this title," and therefore is not commensurate with fulfillment of the purposes and policies of title VIII. In contrast, §809 authorizes the Secretary to enter into cooperative agreements "to effectuate the purposes and policies of this title."

Defendants' failure to address §1314(b) is particularly significant because Congress intended this provision to address fish and wildlife authority. Section 1314(b) of the Tsongas-Roth-Jackson-Hatfield substitute, passed by the Senate in August 1980, was amended by House Concurrent Resolution 452 to assure that state authority for fish and wildlife would not change except as specifically provided in title VIII. Amendment 42 added to §1314(b) the words "the management of" so that as enacted, §1314(b) reads:

> Except as specifically provided by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the management of the public lands.

Senator Stevens submitted a statement on behalf of himself and Senators Jackson, Tsongas, Randolph as legislative history to emphasize this purpose:

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269-5100

11

EXHIBIT 11
Page 8 of 16

Change number (42)(to section 1314 of ANILCA) is a perfecting amendment designed to maintain the status quo in historic Federal-State relations concerning fish and wildlife management, except as specifically modified by this Act in the Subsistence Title.

126 Cong. Rec. S15131 (daily ed. December 1, 1980). Senator Stevens thus made clear the intent that both §1314(a) and (b) maintain the traditional federal-state roles.[9]

Section 1314(b) is irreconcilable with any argument that requires the Court to infer Secretarial authority to manage fish and wildlife from the policies or purposes of the title. The Secretary does not have this management authority because Congress did not grant it, and Congress included §1314(b) to assure that this intent would be clearly understood.

---

[9]    Prior to this amendment, Mr. Udall proposed an amendment to §1314(b) that would have permitted inference of Secretarial authority.  Udall introduced H.R. 8311 on October 2, 1980 to make changes to the Senate bill.  One proposed change affected §1314(b).  As passed by the Senate, §1314(b) read:

(b) Except as specifically provided by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the public lands [emphasis added].

Udall's proposal would have changed the first clause of §1314(b) to read, "Except as may be provided in Title VIII," thereby exempting title VIII from the directive that enlargement of the Secretary's authority requires specific provision. ADFG Vol. 7, pp. 413-14. The amendment failed, and §1314(b) commands that the authority of the Secretary is limited to that specifically provided him.

While the Supreme Court is reluctant to draw inferences from a failure to act, it would be improper to give a reading to a statute that Congress considered and rejected. Pacific Gas & Electric v. State, 461 U.S. 190, 220 (1983). In title VIII, not only did Udall fail to amend §1314(b), but Congress proceeded in H. Con. Res. 452 to proceed further in the opposite direction, fortifying §1314(b) so as to preclude any interpretation that infers Secretarial authority to manage fish and wildlife.

12

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 11
Page 9 of 16

going to tell us, he is going to be looking over the shoulder of every future Governor until time immemorial, if you pass this bill.

<u>Id.</u>, p. 197.

The committee members ultimately rejected the House bill approach and provided for state management, clearly influenced by the fervor of Senator Stevens' statehood arguments:

<u>SENATOR STEVENS:</u>  All I can tell you is, in the future, the rights of subsistence hunters and fishermen will be better protected on the state level of Alaska than they ever will be here in Washington.
                                                                * * *
I have to go to the floor, and I want to thank you for your courtesy.  Unfortunately, there is another subject on the floor that I have to go to.
Thank you very much.

<u>SENATOR ABOUREZK:</u>  Mark.

<u>SENATOR HATFIELD:</u>  I have almost forgotten now that the bull has left the room.

(Laughter).

<u>Id.</u>, p. 200.

The Senate Energy Committee approach to the subsistence title of the Alaska lands bill was incorporated almost completely into ANILCA as enacted.  Although the State of Alaska did not consider the bill as a whole to be beneficial to the state, Senator Stevens clearly prevailed in his efforts to retain state management of fish and wildlife.


**ARGUMENT**

**III.    IN ENACTING TITLE VIII OF ANILCA, CONGRESS SOUGHT TO PRESERVE STATE AUTHORITY TO MANAGE FISH AND WILDLIFE ON PUBLIC LANDS REGARDLESS OF WHETHER THE STATE ENACTS A LAW OF GENERAL APPLICABILITY.**

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

14

EXHIBIT  11
Page  10  of  16

The plain language of title VIII of ANILCA makes clear, and its legislative history confirms, that Congress did not intend to displace the State's management of fish and wildlife on public lands in Alaska. ANILCA does not vest in the Secretary authority to take over management under any circumstances. ANILCA itself refutes any claim of an implicit grant of management authority to the Secretary, as §1314(b) states that except as specifically provided, the act is not intended to enlarge or diminish the authority and responsibility of the Secretary over the management of public lands. The Secretary retains his pre-ANILCA land management authority, which includes the authority to close the public lands in certain circumstances.[5]

Title VIII of ANILCA creates a private federal right to a priority for the taking of fish and wildlife on public lands for subsistence uses by rural residents. However, Congress determined that the United States District Court for Alaska will provide federal protection for this right, not the Secretary. Alaska's 1992 subsistence law ensures that virtually everyone entitled to the title VIII priority will receive it. If, however, the State law fails to provide the priority to a particular rural resident, the District Court can issue an order enforcing that resident's federal right on public lands.

_____

[5] ANILCA § 816(b), 16 U.S.C. §3126(b). Section 816 authorizes the Secretary to "designate areas where, and establish periods when, no taking of fish and wildlife shall be permitted on the public lands for reasons of public safety, administration, or to assure the continued viability of a particular fish or wildlife population." Id.

15

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 11
Page 11 of 16

**A.   The Plain Language of the Statute Indicates that Congress Intended the State to Manage Fish and Wildlife on Public Lands.**

The inquiry into the meaning of a statute begins with the plain language of the statute, <u>United States v. James</u>, 478 U.S. 597, 604, 106 S.Ct. 3116 (1986); <u>Blum v. Stenson</u>, 465 U.S. 886, 896, 104 S.Ct. 1541 (1984), which shall control absent the clearest demonstration of contrary congressional intent. <u>Garcia v. United States</u>, 469 U.S. 70, 105 S.Ct. 479 (1984); <u>Pyramid Lake Paiute Tribe v. United States Dept. of the Navy</u>, 898 F.2d 1410 (9th Cir. 1990).

Congress' intent that the State would manage fish and wildlife on public lands in Alaska is evidenced by the statutory language of ANILCA in two respects.  First, the act states that nothing in ANILCA was intended to diminish the responsibility and authority of the State to manage fish and wildlife on public lands unless provided in title VIII.  Second, contrary to the Secretary's position that the repeal of the State's rural preference subsistence law triggered his authority to preempt State regulation, title VIII clearly provides that the State is to manage fish and wildlife on the public lands even absent a state law of general applicability.

**1. ANILCA Changed Existing Management Authority Only as Provided In Title VIII, and Nowhere Does ANILCA Specifically Provide the Secretary Authority to Manage Fish and Wildlife.**

While Congress may have the constitutional power to grant the Secretary authority to set up a comprehensive fish and wildlife management scheme on public lands, it assured that ANILCA

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269 5100

16

EXHIBIT 11
Page 12 of 16

would not be so interpreted by providing that it was authorizing only explicit grants of authority:

> Sec. 1314. (a) Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in title VIII of this Act, or to amend the Alaska constitution.
>
> (b) Except as specifically provided otherwise by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the management of the public lands.

16 U.S.C. 3202(a), (b).

In enacting section 1314, Congress plainly sought to ensure that State authority to manage fish and wildlife on public lands, while subject to the subsistence priority provisions of title VIII, would not be diminished by an expansive interpretation of the Secretary's role.

After statehood, the State of Alaska unquestionably had the responsibility and authority for management of fish and wildlife on public lands within its borders. Federal ownership of lands within a state does not withdraw those lands from the jurisdiction of the state. <u>Kleppe v. New Mexico</u>, 426 U.S. 529, 544, 96 S.Ct. 2285 (1976). Absent Congressional legislation clearly depriving the state of this power, the state's police power extends over federally owned land. <u>Wilson v. Cook</u>, 327 U.S. 474, 487, 66 S.Ct. 663 (1946); <u>Surplus Trading Co. v. Cook</u>, 281 U.S. 647, 650, 50 S.Ct. 455 (1930); <u>Omaechevarria v. Idaho</u>, 246 U.S. 343, 346, 38 S.Ct. 323 (1918). As a matter of traditional

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

17

EXHIBIT 11
Page 13 of 16

practice, states have exercised authority and responsibility for regulating the taking of fish and wildlife on federal lands, while federal land managers are responsible for management of the other resources of the land, including fish and wildlife habitat.

Furthermore, Congress has explicitly reserved state authority for fish and wildlife management on public lands in numerous statutes. In three of the four federal land systems involved in the Alaska lands debate of 1977-1980, the National Forest, Wildlife Refuge, and Wild and Scenic River Systems, Congress expressly has reserved the traditional state role in managing fish and wildlife.[6] For the fourth land system, the National Park System, Congress has established a policy of complete protection for parks and monuments; however where areas administered by the National Park Service are open to hunting and

---

[6]   See Multiple-Use Sustained-Yield Act of 1960, 16 U.S.C. §528 (directing the Secretary of Agriculture to administer the renewable surface resources of the national forests for multiple use and sustained yield but explicitly declaring that nothing in the act "shall be construed as affecting the jurisdiction or responsibilities of the several states with respect to wildlife and fish on the national forests"); National Wildlife Refuge System Administration Act of 1966, 16 U.S.C. §668dd(c) (except for species listed by the Secretary of the Interior as endangered or threatened, nothing in the act shall "be construed as affecting the authority, jurisdiction, or responsibility of the several states to manage, control, or regulate fish and resident wildlife under state law or regulations in any area within the [National Wildlife Refuge] system"); Wild and Scenic Rivers Act of 1968, 16 U.S.C. §1284(a) (providing for protection of the free-flowing condition of stretches of wild, scenic or recreational rivers but providing explicitly that nothing in the act "shall affect the jurisdiction or responsibilities of the states with respect to fish and wildlife").

18

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT  11
Page  14  of  16

fishing, state law is applicable.[7]

Although title VIII affects the respective authorities of the Secretary and the state, nowhere does it grant the Secretary authority to regulate fish and wildlife on public lands. Nevertheless, the Secretary has taken over fish and wildlife management due to the Alaska Supreme Court's effective repeal of the provisions of the State's 1986 subsistence law that granted a statewide subsistence preference for rural residents. McDowell v. State, 785 P.2d 1 (Alaska 1989); see "Temporary Subsistence Management Regulations for Public Lands in Alaska," United States Fish and Wildlife Service, Department of Interior, 55 Fed. Reg. 23522 (June 8, 1990). In doing so, the Secretary has usurped the State's authority to manage fish and wildlife on public lands, thereby exceeding his authority to administer the public lands in violation of §1314.   Title VIII does not condition the state's management of fish and wildlife on public lands on the existence of a statewide rural preference; ANILCA's provisions manifest Congress' intent that the State regulate fish and wildlife on public lands regardless of whether it has a law of general applicability.


**2. Congress Intended the State to Regulate Fish and Wildlife on Public Lands Even if The State Does Not Enact and Implement a Statewide Subsistence Law Guaranteeing a Rural Preference.**

---

[7]    See, e.g., §5, Lake Mead National Recreation Area Act of 1964, 16 U.S.C. §460n-4; §5, Sleeping Bear Dunes National Lakeshore Act of 1970, 16 U.S.C. §460x-4; §7(c), Cape Cod National Seashore Act of 1961, 16 U.S.C. §459b-6(c).

19

EXHIBIT 11
Page 15 of 16

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269-5100

**CONCLUSION**

The State is entitled to summary judgment on the issue of its authority to manage fish and wildlife on public lands in Alaska. Although Congress created a federal right to a subsistence priority for rural residents in taking of fish and wildlife on public lands in ANILCA, Congress intended the State to manage fish and wildlife. This intent is apparent from the language of title VIII, and from the legislative history of the subsistence title. Furthermore, section 1314 of ANILCA refutes any claim of implicit authority for the Secretary to usurp the state's role as manager of fish and wildlife on public lands. The Secretary's recent takeover of fish and wildlife management is unauthorized, and therefore is invalid.

DATED this 19th day of March, 1993.

CHARLES E. COLE
ATTORNEY GENERAL

By: Joanne M. Grace
Joanne M. Grace
Assistant Attorney General

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

50

EXHIBIT 11
Page 16 of 16