CHARLES E. COLE
ATTORNEY GENERAL

Joanne Grace
T. Henry Wilson
Office of the Attorney General
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
(907) 269-5100
Attorneys for the State of Alaska

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| KATIE JOHN, DORIS CHARLES, and MENTASTA VILLAGE COUNCIL, <br><br> and <br><br> THE STATE OF ALASKA, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, BRUCE BABBITT, Secretary of the Interior, et al., <br><br> Defendants. | Case No. A90-484 Civ (Consolidated) <br><br><br> **STATE'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 12
Page 1 of 9

failed adequately to provide the subsistence preference, could take no administrative action, but could only file a civil action. Id. at 538-39.

When the bill came to the House floor in the 96th Congress, the dissenters prevailed and the full House approved the Udall-Anderson substitute in lieu of the Huckaby substitute. Ultimately, however, the Senate substitute title, which the Huckaby substitute had tracked, was enacted into law with no addition to the delegated authority of the Secretary and with a revision of section 807 that eliminated the Secretary's role as advocate in judicial enforcement. Consequently, the criticisms of the Huckaby substitute dissenters, that it granted no effective oversight authority to the executive, are applicable a fortiori to the provisions of ANILCA as ultimately enacted.[7]

In addition to their misconstruction of title VIII's references to the federal government, defendants' statutory arguments are fundamentally unsound because they require inference of authority, which is prohibited by §1314(b).

**B. CONGRESS DID NOT GRANT THE SECRETARY IMPLICIT AUTHORITY TO MANAGE FISH WILDLIFE.**

---

[7] The regional advisory councils would not be purposeless if the Secretary were not managing fish and wildlife. The councils' reports and recommendations would serve to monitor the State if the Secretary were administering the councils while the State manages fish and wildlife. Section 806 requires the Secretary to consider the reports or recommendations in annual reports to the State and four congressional committees. If the State consistently failed to provide the preference, presumably Congress would review the scheme it devised in title VIII. The Secretary also must consider the advisory reports in deciding whether to close an area of public lands to all hunting and fishing.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

All defendants' arguments disregard ANILCA's rule of statutory construction regarding fish and wildlife management authority; §1314(b) declares that except as specifically provided by ANILCA, nothing in the act is intended to enlarge the responsibility and authority of the Secretary for management of the public lands. All defendants' arguments for Secretarial authority require the Court to infer authority from sections that do not purport to grant it, and thus to ignore the provision intended as a framework for analysis on issues of the respective management authority of the State and the federal government.

Defendants cite no pre-ANILCA grant of authority to the Secretary to manage fish and wildlife generally on federal lands in Alaska, and cite no explicit grant of such authority in ANILCA. The State's authority to manage fish and wildlife arises from the Alaska Statehood Act and is reconfirmed in §1314(a), which reserves state authority "except as may be provided in Title VIII." By establishing for rural residents a federal right, §804 is preemptive of state authority; that is, §804 diminishes State authority to manage fish and wildlife on the public lands because the State's management may not trench on the federal right.[8] The Secretary's authority is not the reciprocal of the State's, however. The Secretary is not delegated authority to the extent the State's authority is diminished. §1314(b).

---

[8] For this reason, the U.S. defendants attach unwarranted significance to the proviso in §1314(a) that title VIII diminishes the responsibility of the State to manage fish and wildlife on the public lands by arguing that this implies <u>Secretarial</u> authority to manage fish and wildlife.

Section 1314(b) precludes the argument that the Secretary is authorized to take over fish and wildlife management by §814, which permits the Secretary to promulgate regulations. The Secretary has no power to preempt state law unless Congress has granted such power. Moreover, §814's grant of authority to the Secretary to prescribe regulations is limited to "such regulations as are necessary and appropriate to carry out his responsibilities under this title," and therefore is not commensurate with fulfillment of the purposes and policies of title VIII. In contrast, §809 authorizes the Secretary to enter into cooperative agreements "to effectuate the purposes and policies of this title."

Defendants' failure to address §1314(b) is particularly significant because Congress intended this provision to address fish and wildlife authority. Section 1314(b) of the Tsongas-Roth-Jackson-Hatfield substitute, passed by the Senate in August 1980, was amended by House Concurrent Resolution 452 to assure that state authority for fish and wildlife would not change except as specifically provided in title VIII. Amendment 42 added to §1314(b) the words "the management of" so that as enacted, §1314(b) reads:

> Except as specifically provided by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over <u>the management of</u> the public lands.

Senator Stevens submitted a statement on behalf of himself and Senators Jackson, Tsongas, Randolph as legislative history to emphasize this purpose:

11

EXHIBIT 12
Page 4 of 9

> Change number (42)(to section 1314 of ANILCA) is a perfecting amendment designed to maintain the status quo in historic Federal-State relations concerning fish and wildlife management, except as specifically modified by this Act in the Subsistence Title.

126 Cong. Rec. S15131 (daily ed. December 1, 1980). Senator Stevens thus made clear the intent that both §1314(a) and (b) maintain the traditional federal-state roles.[9]

Section 1314(b) is irreconcilable with any argument that requires the Court to infer Secretarial authority to manage fish and wildlife from the policies or purposes of the title. The Secretary does not have this management authority because Congress did not grant it, and Congress included §1314(b) to assure that this intent would be clearly understood.

---

[9] Prior to this amendment, Mr. Udall proposed an amendment to §1314(b) that would have permitted inference of Secretarial authority. Udall introduced H.R. 8311 on October 2, 1980 to make changes to the Senate bill. One proposed change affected §1314(b). As passed by the Senate, §1314(b) read:

> (b) <u>Except as specifically provided by this Act,</u> nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the public lands [emphasis added].

Udall's proposal would have changed the first clause of §1314(b) to read, "<u>Except as may be provided in Title VIII</u>," thereby exempting title VIII from the directive that enlargement of the Secretary's authority requires specific provision. ADFG Vol. 7, pp. 413-14. The amendment failed, and §1314(b) commands that the authority of the Secretary is limited to that specifically provided him.

While the Supreme Court is reluctant to draw inferences from a failure to act, it would be improper to give a reading to a statute that Congress considered and rejected. Pacific Gas & Electric v. State, 461 U.S. 190, 220 (1983). In title VIII, not only did Udall fail to amend §1314(b), but Congress proceeded in H. Con. Res. 452 to proceed further in the opposite direction, fortifying §1314(b) so as to preclude any interpretation that infers Secretarial authority to manage fish and wildlife.

12

EXHIBIT 12
Page 5 of 9

Passenger Vessel Assn., 443 U.S. 658 (1979).

III. <u>The Court Should Not Deny Summary Judgment On Procedural Grounds.</u>

Defendants urge the Court not to reach the merits of the State's summary judgment motion, arguing that the Court simply should defer to the Secretary's interpretation of title VIII, or should deny the motion based on prior court decisions, judicial estoppel, or failure to exhaust administrative remedies. None of these contentions should prevent the Court from facing the merits of the State's challenge.

A. <u>THE SECRETARY'S INTERPRETATION OF THE SCOPE OF FISH AND WILDLIFE MANAGEMENT AUTHORITY GRANTED HIM BY ANILCA IS NOT ENTITLED TO DEFERENCE.</u>

The U.S. defendants argue that the Court must defer to the Secretary's view of the scope of his management authority under title VIII. U.S. Br. at 9. The Secretary's interpretation is not due deference because Congress directly addressed the issue in ANILCA, his interpretation is unreasonable in light of §1314, and the issue is a legal matter of statutory interpretation.

In <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), the Supreme Court established a two-step process to determine whether an agency's interpretation of a statute is entitled to deference. First the Court must determine whether Congress has directly spoken to the precise question at issue; if it has, the Court must give effect to Congress' unambiguously expressed intent. <u>Id.</u> at 842-43. If Congress has not addressed the question, the Court must decide

17

EXHIBIT 12
Page 6 of 9

whether the agency's interpretation is based on a permissible construction of the statute. Id. at 843. In ANILCA, Congress directly addressed the scope of the Secretary's authority, but even if it had not, any interpretation expanding his authority beyond the explicit terms of title VIII is unreasonable.

Under Chevron's first step, the Court does not even consider the reasonableness of the agency's view unless the statute is silent or ambiguous with respect to the issue. Id. at 843. ANILCA is not silent or ambiguous about the scope of the Secretary's authority to manage fish and wildlife, and Congress did not intend the Secretary to formulate policy or fill gaps on this issue. Section 1314(b) addresses the issue directly, maintaining the Secretary's traditional authority except where Congress explicitly broadened it, thus directing that management authority not be open to interpretation. By inferring authority the Secretary has ignored completely the section that Congress intended to control the issue.

Even had Congress not spoken on the issue, the agency's interpretation is not due deference because it is unreasonable in light of §1314. The Senate Energy Committee explained that the purpose of the section was to maintain the traditional roles of state and federal government as to management of fish and wildlife and their habitat.[11] Any interpretation of the Secretary's

---

[11] The 1979 Senate Energy Committee report stated:

*Section 1314: Taking of Fish and Wildlife*
This section, adopted as a Committee amendment,
(continued...)

18

EXHIBIT 12
Page 7 of 9

authority that completely disregards the very section intended as a framework for statutory construction of title VIII is inherently impermissible and defeats the clear intent of the legislation.

The Secretary's interpretation of the authority granted him in title VIII also is not entitled to deference because although deference to an agency interpretation is appropriate where an agency applies a statute to particular facts, questions of pure statutory construction are for the court to decide. I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 446-48 (1987).

In this case, the issue of whether ANILCA grants the Secretary fish and wildlife management authority does not require application of facts to any statutory provision. Defendants do not contend that Congress has not directly addressed Secretarial authority in ANILCA, intending the agency to give effect to the statute's meaning. They argue that Congress clearly granted the Secretary fish and wildlife management authority in §§804 and 805. According to their position, therefore, the statute is unambiguous and requires only statutory construction.[12]

---

[11](...continued)
preserves the status quo of with regard to the responsibility and authority of the State to manage fish and wildlife, and reconciles this authority with the Act, including the subsistence title. At the same time, the section confirms the status quo with regard to the authority of the Secretary to manage the wildlife habitat on Federal lands.

S. Rep. No. 413, Energy Committee, 96th Cong., 1st Sess. (November 14, 1979), p. 308, ADFG Vol. 35, p. 582.

[12] Also, the Court should not defer to an agency's determination of its own authority. See, e.g., The Business Roundtable v. SEC, (continued...)

futile.[22]   Therefore, the doctrine of exhaustion of administrative remedies does not apply.[23]

Conclusion

Congress intentionally did not grant the Secretary authority to manage fish and wildlife on the public lands in title VIII. Defendants' arguments to the contrary rely on implied Secretarial authority, which is prohibited by §1314(b). Congress did not mandate State implementation of the §804 priority, and gave the United States District Court authority to enforce the priority directly if the State fails to afford the priority to an eligible rural resident. The Court should decide this motion on the merits, as the defendants' procedural arguments are inapplicable to this case.

CHARLES E. COLE
ATTORNEY GENERAL

Dated: June 7, 1993   By: *Joanne M. Grace*
Joanne M. Grace
Assistant Attorney General

---

[22]  The futility of exhausting supposed administrative remedies in this situation is demonstrated by the Federal Subsistence Board's failure to act on the State's request for reconsideration of the fisheries regulations set out at 50 CFR 100 Subpart D, paragraphs 24 and 25. See Transcript, Federal Subsistence Board Meeting, September 25, 1991, attached as Exhibit E.

[23]  Even if the doctrine of exhaustion of administrative remedies did apply, the remedy would be a remand to the Secretary to consider the State's position. See, e.g., Marshall v. Burlington Northern, Inc, 595 F.2d 511 (9th Cir. 1979). Remand clearly would be a futile gesture, however.

26

EXHIBIT 12
Page 9 of 9