# RECEIVED

MAR 3 1 1994

Office of
United States Attorney
Anchorage, Alaska

F I L E D

MAR 3 0 1994

UNITED STATES DISTRICT COURT,
DISTRICT OF ALASKA
_____
                        Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KATIE JOHN, et al.,                )
                                   )    No. A90-0484-CV (HRH)
                Plaintiffs,        )    Consolidated with
                                   )    No. A92-0264-CV (HRH)
        vs.                        )
                                   )
UNITED STATES OF AMERICA, et al.,  )
                                   )
                Defendants.        )
_____)
                                   )
STATE OF ALASKA,                   )
                                   )
                Plaintiff,         )
                                   )
        vs.                        )
                                   )        DECISION
                                   )
BRUCE BABBITT, Secretary of the    )
Interior, et al.,                  )
                                   )
                Defendants.        )
_____)

## Introduction

The above consolidated cases are part of a group of cases under joint management,[1] all of which raise important issues concerning the interpretation and application of Title VIII of the

_____

[1]    The jointly managed cases, in addition to those captioned above, are <u>Kluti Kaah Native Village of Copper Center v. State of Alaska</u>, No. A90-0004-CV, <u>Fish & Game Fund v. State of Alaska Bd. of Fisheries</u>, No. A92-0443-CV, <u>Peratrovich v. United States</u>, No. A92-0734-CV, <u>Native Village of Stevens v. McVee</u>, No. A92-0567-CV, and <u>Native Village of Quinhagak v. United States</u>, No. A93-0023-CV.

154

nent regulations.  These permanent regulations, among other things, created the Federal Subsistence Board and invested it with authority to adopt regulations for the day-to-day management of subsistence hunting and fishing on public lands in Alaska.  57 Fed. Reg. 22,940 (May 29, 1992).

## I.

### Who is Entitled to Manage
### Fish and Game within Alaska
### for Purposes of ANILCA?

The State has moved for summary judgment on Count III of its first amended complaint in State of Alaska v. Babbitt [et al.], No. A92-0264-CV.[14]  The motion is opposed, and the court has invited briefing from the parties to the other jointly managed cases, some of whom have submitted briefs on this issue.  Oral argument has been heard and, after further analysis of certain aspects of this portion of the case, the court called for and received supplemental briefing.  The State raises the fundamental question:  does the Secretary[15] have specific authority to adopt a comprehensive scheme for fish and wildlife management on "public lands" as defined in Section 102 of ANILCA?[16]

There is no disagreement about the fact that the McDowell decision abrogated the rural preference provision of the Alaska sub-

---

[14]    Clerk's Docket No. 113.

[15]    Under ANILCA, the term "Secretary" means the Secretary of the Department of the Interior except as to National Forest System lands, in which case "Secretary" means the Secretary of the Department of Agriculture.  ANILCA § 3102(12); 43 U.S.C. § 1618.

[16]    16 U.S.C. § 3102.

Excerpt of Record Page __10__

DECISION                EXHIBIT 13
                        Page 2 of 14                    Page 10

sistence law.  There is no dispute but that the rural preference is an essential element of the federal program.  ANILCA Section 803.[17] The State contends, largely upon Sections 805(a) through (c) and 1314 of ANILCA[18] and its analysis of the legislative history of ANILCA, that Title VIII simply does not vest the Secretary with authority to assume day-to-day management of fish and game for subsistence purposes on public lands.  The federal defendants, as well as Katie John and others, insist that the combination of Title VIII and the McDowell decision required the federal govern-ment generally, and the Secretary in particular, to assume implemen-tation of Title VIII of ANILCA.

ANILCA Section 803[19] unmistakably and unambiguously establishes a preference in favor of rural Alaskans as regards the taking of fish and wildlife from public lands.  Although it is counter-intuitive to think that Congress would enact a law creating such a right and not authorize the Executive Branch to implement it, this contention of the State of Alaska is not without substance.  However, for the reasons and upon the authorities discussed below, the court has concluded that unless and until the State of Alaska shall again be in compliance with Section 805(d) of ANILCA,[20] the

---

[17]    16 U.S.C. § 3113.

[18]    16 U.S.C. §§ 3115(a)-(c) and 3202.

[19]    16 U.S.C. § 3113.

[20]    16 U.S.C. § 3115(d).

Excerpt of Record Page _11_

Secretary has the authority to adopt regulations for the purpose of implementing Sections 803,[21] 804,[22] and 805[23] of ANILCA.

ANILCA Section 805(a) requires the Secretary, in consultation with the State, to establish subsistence resource regions and local and regional advisory groups, "[e]xcept as otherwise provided in subsection (d)[.]"  The Alaska subsistence law being out of compliance with Title VIII, the Secretary is plainly obligated to establish these subsistence resource regions and appoint local and regional advisory groups.

ANILCA Section 805(b) requires that the Secretary assign staff sufficient to permit the local and regional advisory groups to do their work.

ANILCA Section 805(c) is the provision which is critical to the State's argument.  It provides:

> The Secretary, in performing his monitoring responsibility pursuant to section 3116 of this title and in the exercise of his closure and other administrative authority over the public lands, shall consider the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses.  The Secretary may choose not to follow any recommendation which he determines is not supported by substantial evidence, violates recognized principles of fish and wildlife conservation, or would be detrimental to the satisfaction of subsistence needs.  If a recommendation is not adopted by

---

[21]    16 U.S.C. § 3113.

[22]    16 U.S.C. § 3114.

[23]    16 U.S.C. § 3115.

Excerpt of Record Page   12

DECISION

EXHIBIT 13
Page 4 of 14

the Secretary, he shall set forth the factual basis and the reasons for his decision.

Section 805(c) speaks of the Secretary's monitoring responsibilities, his power to effect closures of certain lands for subsistence uses (ANILCA Section 816[24]) and his other administrative authorities over public lands, but says not a word about implementing the subsistence preference for rural Alaskans created by Section 803 or the subsistence priority created by Section 804. It is in this context that the State invokes the provisions of ANILCA Section 1314[25] which provide:

> (a) Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in [Title VIII of this Act[26]], or to amend the Alaska constitution.

> (b) Except as specifically provided otherwise by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the management of the public lands.

Traditionally in the United States, and Alaska is no exception, the federal government has deferred to state fish and game regulators with respect to the management of fish and game on federal lands. Defenders of Wildlife v. Andrus, 627 F.2d 1238, 1248

---

[24]    16 U.S.C. § 3126.

[25]    16 U.S.C. § 3202.

[26]    Title VIII of ANILCA was codified as subchapter II of chapter 51, 16 U.S.C. '§ 3111, et seq.

DECISION                    EXHIBIT 13
                           Page 5 of 14            Excerpt of Record Page 13
                                                   Page 13

(D.C. Cir. 1980). The Alaska Statehood Act[27] made express provision for the transfer of authority to manage fish and game to the State of Alaska after it had established an appropriate system and demonstrated its ability to assume responsibility for such management from the federal, territorial fish and game regulators. It is in this context that the State argues that it is entitled to continue management of fish and game on public lands unless Title VIII of ANILCA provides otherwise. Again, the State's contention is that Title VIII, as discussed above, does not provide otherwise. The State's foregoing position is underscored by the parallel provision of ANILCA Section 1314(b),[28] which serves to maintain the status quo as far as the authority of the Secretary.

Count III of the State's amended complaint calls upon the court to review the Secretary's construction of Title VIII of ANILCA. In Chevron USA, Inc. v. Natural Resource Defense Council, 467 U.S. 837, 843 (1983), the United States Supreme Court adopted a two-part test for evaluating agency construction of a statute. The court must first determine "whether Congress has directly spoken to the precise question at issue." Id. at 842. If, having employed the traditional tools of statutory construction, the court determines that the intent of Congress is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.

---

[27]    Pub. L. No. 85-508 (72 Stat. 339), effective July 7, 1958.

[28]    16 U.S.C. § 3202(b).

DECISION          EXHIBIT _13_
                  Page _6_ of _14_

In such situations, the court owes no particular deference to the administrators. The court must reject a statutory interpretation reached by administrative authorities that is contrary to the clearly expressed intent of Congress. Id. at n.9.

If the court determines that Congress has not clearly stated its intention either by the express language of a statute or otherwise--that is, if the court determines that there is a gap in the statute--

> [T]he court does not simply impose its own con-
> struction on the statute, as would be necessary
> in the absence of an administrative interpreta-
> tion. Rather, if the statute is silent or am-
> biguous with respect to the specific issue, the
> question for the court is whether the agency's
> answer is based on a permissible construction
> of the statute.

Id. at 843. The agency construction need not be the only possible interpretation, it must simply be a reasonable one.[29] Id. at 844.

It is difficult to square the Secretary's interpretation of Title VIII of ANILCA with the express language of these provisions. It is the Secretary's view that he must step in and implement ANILCA Section 804 following the failure of the state subsistence program implemented under ANILCA Section 805(d).[30] As discussed above, Congress has simply not enacted any express, direct

---

[29] The reasonableness test applies to agency action to fill statutory gaps which Congress has implicitly left to the agency. Where there is an explicit legislative delegation to the agency, an arbitrary or capricious test applies. No one contends that this is a case of explicit congressional delegation. Indeed, the State would seemingly not concede that there is any gap in this statute.

[30] 16 U.S.C. § 3115(d).

1   authorization that the Secretary implement the rural preference and

2   subsistence priority if the State does not do so.

3          As the United States Supreme Court makes clear in <u>Chevron</u>,

4   the court may employ "traditional tools of statutory construc-

5   tion"[31] for the purpose of determining congressional intent.   The

6   State and the court have looked to the legislative history of ANILCA

7   which is voluminous.[32]   The State provided an initial analysis of

8   legislative history pertinent to the question before the court.   The

9   court was not satisfied with this initial analysis and conducted an

10  independent evaluation of the legislative history.   That evaluation

11  was the subject of a preliminary order.[33]   In this order, the court

12  invited the parties to file supplemental briefs, which have been

13  filed and have been considered by the court.

14         The court's final appraisal of the legislative history

15  pertinent to the question of whether or not the Secretary has pri-

16  mary authority to implement ANILCA Section 804 in the absence of a

17  state program is contained in an appendix attached to this decision.

18  As detailed in the appendix, Congress started out with the proposi-

19  tion that the Secretary, and he alone, would manage a subsistence

20  hunting and fishing program for rural Alaskans.   Through the various

21  legislative sessions, the role of the Secretary was consciously and

22

23     [31]   <u>Chevron</u>, 467 U.S. at 837 n.9.

24     [32]   This legislative history has been compiled and bound in
    41 separate volumes, which take up nine feet of shelf space.

25

26     [33]   Order re Motions for Summary Judgment on the "Who" Issue,
    filed November 22, 1993 (Clerk's Docket No. 163).

DECISION              EXHIBIT _13_         Excerpt of Record Page _16_
                      Page _8_ of _14_                        Page 16

intentionally reduced, and the role of the State was correspondingly increased.  The State accurately points out that Congress expressly rejected a program wholly within the control of the Secretary.  It simply does not follow, however, that Congress intended that the State continue day-to-day management of fish and game for subsistence purposes, in the absence of a state law of general application sufficient to supersede ANILCA Sections 803 through 805.  See ANILCA Section 805(d).[34]  The court concludes that Congress unintentionally and inadvertently omitted an express provision authorizing the Secretary to implement Section 804 in the absence of a state program.

By ANILCA Section 814,[35] Congress expressly authorized the Secretary to promulgate, "such regulations as are necessary and appropriate to carry out his responsibilities under this [Title]." Congress having unequivocally given the Secretary regulatory authority, he was empowered to fill the statutory gap so as to implement not only the policy contained in ANILCA Section 802,[36] but also effect the substantive preference established by ANILCA Section 803[37] for rural Alaskans.

The final step in the analysis required by _Chevron_ involves the question of whether or not the agency decision embodies a reasonable interpretation of the statute.  In this instance, the

---

[34]   16 U.S.C. § 3115(d).

[35]   16 U.S.C. § 3124.

[36]   16 U.S.C. § 3112.

[37]   16 U.S.C. § 3113.

DECISION              EXHIBIT _13_
                      Page _9_ of _14_

Excerpt of Record Page __17__

Page 17

Secretary's interpretation may be the only reasonable one which could follow the State's forced withdrawal from a qualifying subsistence program. Certainly implementation of ANILCA Section 804 by the Secretary through the creation of a Federal Subsistence Board was a reasonable response, even if it were not the only possible response to the failure of the state program. The State cannot say that the Board's initial regulations were unreasonable, for the Board in substance adopted the State's pre-McDowell subsistence program through temporary regulations. This action provided a smooth transition from state to federal management of the rural subsistence program for public (federal) lands.

The State has made a number of other arguments in support of its position. One of them is particularly intriguing. The State argues that, despite McDowell, it may voluntarily submit to the jurisdiction of this court for purposes of carrying out a qualifying subsistence program as to public (federal) lands. The State seems to argue that it can carry out such a program without doing violence to the Alaska Constitution as applied to subsistence programs in McDowell so long as such program is effected through a court decree.[38]

---

[38]    ANILCA Section 807(a), 16 U.S.C. § 3117(a), provides for federal court enforcement of a state subsistence program consistent with ANILCA Section 804, 16 U.S.C. § 3114, in federal court. No doubt for purposes of avoiding Tenth Amendment difficulties, Section 807(a) reiterates that state programs are optional with the state, providing for federal court jurisdiction "if the State has fulfilled the requirements of Section 805(d)."

What the State urges is problematic and is rejected for a number of reasons.

Firstly, the State is no longer in compliance with the requirements of Section 805(d),[39] and therefore federal court jurisdiction over any state program is very dubious. The court is unable to identify, and the State has not suggested, the source of power for a state fish and game regulator to take action to implement a rural Alaskan preference. Since <u>McDowell</u>, no state law may constitutionally authorize such. Even if that obstacle were overcome, what the State suggests smacks of a violation of the separation of powers doctrine.

Secondly, the State's proposal carefully avoids suggesting that the State would be enacting regulations. Rather, the State would seemingly have the court provide continuing supervision through court decrees which would serve as the subsistence program. ANILCA Section 805(d)[40] expressly contemplated a state program carried out through a "state rulemaking authority". ANILCA Section 807(a)[41] plainly contemplates court review of that state rule-making, and if the state regulations on a subject are found wanting, there is a requirement for the submission of replacement regulations for court approval and incorporation in a decree. This arrangement vests the court with jurisdiction to provide a standard

---

[39]    16 U.S.C. § 3115(d).

[40]    16 U.S.C. § 3115(d).

[41]    16 U.S.C. § 3117(a).

judicial remedy:  review of administrative rule-making.  What the State suggests is that the court in substance become the rule-maker.

Thirdly, there is a substantial risk of state court litigation which could seek to prevent the state from doing by indirection what the Alaska Supreme Court has expressly found to be unconstitutional--a rural Alaskan preference.  Although this subject was not developed by the parties, it is the view of the court that such a suit would likely be successful.

The court and, judging from the summary and background statements that preceded his temporary regulations,[42] the Secretary viewed the dual federal-state fish and game management situation as undesirable.  It would be far preferable for there to be a unified, federally-qualified subsistence hunting and fishing program in the State of Alaska.  One program would undoubtedly cost less, and would certainly be less complex in its implementation and operation.  With that view before it, the court has seriously considered that sometimes situations must get worse before they get better, and a determination that Congress did not expressly (in ANILCA Section 805(a) through (c)) or impliedly authorize the Secretary to establish a subsistence hunting and fishing program in Alaska upon the failure of the state program, would certainly precipitate a crisis.  Perhaps such a crisis would motivate either Congress or the state legislature to solve the problem which confronts all of us.  However, the clarity of the congressional policy and purpose of ANILCA

---

[42]    55 Fed. Reg. 27,114 (June 29, 1990).

DECISION

EXHIBIT _13_
Page _12_ of _14_

Title VIII, coupled with the clear grant of general regulatory power to the Secretary, convince the court that the position taken by the Secretary is both authorized and reasonable.  The court cannot in good conscience reach the crisis-precipitating decision for which the State argues.

The court concludes that the Secretary, not the State of Alaska, is entitled to manage fish and game on public (federal) lands in Alaska for purposes of Title VIII of ANILCA.  The State's motion for partial summary judgment[43] on Count III of its amended complaint is denied; and the court, on its on motion, concludes that the contentions contained in said Count III are without merit and subject to dismissal.

## II.

### Where Does ANILCA Apply?

The first issue has to do with "who" is entitled to regu-late.  The second issue addressed by this decision has frequently been referred to by the parties as the "where" issue.  Assuming that the Secretary does have jurisdiction over the day-to-day management of fish and game for subsistence purposes, the parties disagree as to what lands are subject to the Secretary's regulation.

In their second amended complaint for declaratory and injunctive relief,[44] plaintiffs Katie John, Doris Charles, and the Village Council of Mentasta (the "plaintiffs") contend for their

---

[43]    Clerk's Docket No. 113.

[44]    Clerk's Docket No. 106.

DECISION

EXHIBIT _13_
Page _13_ of _14_

Excerpt of Record Page _21_

Page 21

1  if the navigational servitude is viewed as a power to regulate

2  rather than a property interest, Congress exercised that power to

3  protect subsistence uses by rural Alaskans.

4  <u>Conclusion</u>

5  The court concludes that the Secretary, not the State of

6  Alaska, is entitled to manage fish and wildlife on public lands in

7  Alaska for purposes of Title VIII of ANILCA.  The State's motion for

8  partial summary judgment[66] on Count III of its amended complaint

9  is denied.   Count III is dismissed.

10  The court further concludes that the Secretary's interpre-

11  tation of Section 102 is unreasonable.  For purposes of Title VIII,

12  "public lands" includes all navigable waterways in Alaska.   The

13  federal defendants' motions to dismiss the plaintiff's complaint for

14  failure to state a claim upon which relief, or in the alternative

15  for summary judgment (Clerk's Docket Nos. 2, 17, and 121) are

16  denied.   The State of Alaska's motions to dismiss or for summary

17  judgment (Clerk's Docket Nos. 38 and 124) are denied.   The plain-

18  tiff's motion for partial summary judgment (Clerk's Docket No. 48)

19  is granted.

20  DATED at Anchorage, Alaska, this 30 day of March,

21  1994.

22  cc: * R. Anderson (NARF)
        * M. Walleri
23      * J. Johnson (ALS)                   United States District Judge
        * D. Dunsmore                    * E. Boyko
24      * M. Stanley                     * L. Gordon (ASHBURN)
        * P. Giannini                    * D. Mitchell
25      * J. Grace (AAG-200)             * E. Smith
                                         * J. Bailey

26  [66]  Clerk's Docket No. 113.
                                    *(w/att appendix)

DECISION          EXHIBIT 13          Excerpt of Record Page 42
                  Page 14 of 14                      Page 42