IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE JOHN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| STATE OF ALASKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| ALASKA FISH AND WILDLIFE FEDERA- ) | |
| TION AND OUTDOOR COUNCIL, et al., ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | No. 3:05-cv-0006-HRH |
| vs. ) | (Consolidated with |
| ) | No. 3:05-cv-0158-HRH) |
| GALE NORTON, Secretary of the ) | |
| Interior, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | DECISION |
| ) | |
| KATIE JOHN, et al., ) | The Process for |
| ) | Identification of |
| Defendant-Intervenors, ) | Federally Reserved Waters |
| ) | |
| and ) | |
| ) | |
| ALASKA FEDERATION OF NATIVES, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

- AND -

- 1 -

```
LINCOLN PERATROVICH, et al.,     )
                                 )
                    Plaintiffs,  )
                                 )
       vs.                       )
                                 )
UNITED STATES OF AMERICA, et al.,)
                                 )
                    Defendants.  )
                                 )
       and                       )
                                 )        No. 3:92-cv-0734-HRH
STATE OF ALASKA,                 )
                                 )
            Intervenor-Defendant.)
_____)
```

<u>Proceedings</u>

The proceedings which give rise to this decision were commenced January 6, 2005, in the United States District Court for the District of Columbia by the State of Alaska.[1] By its complaint for declaratory and injunctive relief, the State challenged the process by which the Secretaries of the Departments of Agriculture and the Interior undertook to identify federally reserved waters within navigable waters of the State of Alaska.[2] On January 7, 2005, by complaint filed in the United States District Court for the District of Alaska, Katie John and others[3] complained that the Secretaries of the Interior and Agriculture had failed to accord them the priority for the taking of fish and game on public lands

---

[1]<u>Alaska v. Norton</u>, No. 05-cv-0012-RMC (D.D.C.).

[2]Complaint (Count I, page 14), D.D.C. Docket No. 1.

[3]The other plaintiffs are Charles Erhart, the Alaska Inter-Tribal Council and the Native Village of Tanana. These plaintiffs are referred to collectively herein as the "Katie John plaintiffs".

- 2 -

to which they are entitled under Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA).  The focus of the Katie John complaint was the contention that the Secretaries had failed to identify the full scope of waters that should be considered to be public lands for purposes of ANILCA.[4]  The United States District Court for the District of Columbia ordered its case transferred to the District of Alaska.[5]  By order of August 4, 2005,[6] the State's case was consolidated with the Katie John case, with the latter designated as the lead case.

Prior to the consolidation of the cases, the Alaska Federation of Natives (AFN) moved to intervene in the State case as a defendant-intervenor and that motion was granted by order of July 28, 2005.[7]  Subsequently, the court entered a second order[8] granting intervention in the State case to the Katie John plaintiffs.  Finally, by order of March 15, 2006,[9] the Alaska Fish and Wildlife Federation and Outdoor Council (AOC) and others[10] were granted leave to intervene, with certain conditions not relevant to

[4]Complaint (First Cause of Action, page 17), Docket No. 1.

[5]Order to Transfer, D.D.C. Docket No. 16 (now Case No. 3:05-cv-0158-HRH (D. Alaska)).

[6]Docket No. 32 in Case No. 3:05-cv-0158-HRH.

[7]Docket No. 25 in Case No. 3:05-cv-0158-HRH.

[8]Docket No. 29 in Case No. 3:05-cv-0158-HRH.

[9]Docket No. 52.

[10]The other plaintiff-intervenors are the Alaska Fish and Wildlife Conservation Fund, Michael Tinker, and John Conrad.  These plaintiff-intervenors are referred to collectively herein as the "AOC intervenors."

this decision, as plaintiff-intervenors on the side of the State of Alaska.

In Case No. 3:05-cv-0006-HRH, the Katie John plaintiffs assert three claims: (1) that the federal defendants[11] violated ANILCA by refusing to provide a subsistence priority for plaintiffs who reside in areas upstream or downstream from conservation system units (CSUs);[12] (2) that the federal defendants violated the Alaska Native Allotment Act and Title VIII of ANILCA by refusing to provide a subsistence priority on their Native allotments;[13] and (3) that the federal defendants' restrictive application of the reserved water rights doctrine was arbitrary and capricious under the Administrative Procedure Act (APA).[14]  The federal defendants answered, denying each of the Katie John plaintiffs' claims, and asserted affirmative defenses of standing, failure to state a claim, failure to exhaust administrative remedies, waiver, statute of limitations, laches, <u>res judicata</u> / collateral estoppel, lack of jurisdiction, and lack of ripeness.[15]

In Case No. 3:05-cv-0158-HRH, the State of Alaska asserts four claims: (1) that the federal defendants violated ANILCA and the APA by failing to properly apply the reserved water rights

---

[11]The federal defendants consist of the United States of America, the Secretary of the Interior, and the Secretary of Agriculture.

[12]Complaint at 17, Docket No. 1.

[13]<u>Id.</u> at 17-18.

[14]<u>Id.</u> at 18.

[15]Answer at 17-19, Docket No. 8.

doctrine;[16] (2) that the federal defendants violated ANILCA and the APA by unlawfully extending their authority to marine waters;[17] (3) that the federal defendants violated ANILCA and the APA by unlawfully extending their authority to selected but not yet conveyed lands;[18] and (4) that the federal defendants violated ANILCA and the APA by improperly extending their jurisdiction to waterways that have no connection to Federal lands, CSUs, or National Forests.[19] The AOC intervenors' complaint-in-intervention adopted the State's claims against the federal defendants.[20] The federal defendants answered, denying the claims of the State of Alaska, and again asserted affirmative defenses of failure to state a claim, failure to exhaust administrative remedies, waiver, lack of jurisdiction, statute of limitations, laches, estoppel, and res judicata / collateral estoppel.[21] The AFN and the Katie John plaintiffs, as defendant-intervenors, answered the State's complaint and asserted affirmative defenses which, for all practical purposes, mirrored the position of the federal defendants vis-a-vis the State of Alaska.[22]

---

[16]Complaint at 14-15, D.D.C. Docket No. 1.

[17]Id. at 15-16.

[18]Id. at 16-17.

[19]Id. at 17-18.

[20]Docket No. 55.

[21]Answer at 17-23, D.D.C. Docket No. 15.

[22]Answer at 7-10, D.D.C. Docket No. 25 and Answer at 8-11, D.D.C. Docket No. 30.

Finally as regards parties interested in this litigation, the court has long had pending before it the complaint of <u>Peratrovich v. United States</u>, Case No. 3:92-CV-0734-HRH.  In their amended complaint,[23] the Peratrovich plaintiffs assert a single claim alleging that the federal defendants have failed to provide them with the priority for subsistence uses for which they are entitled under Title VIII.  They seek to have the federal defendants amend the federal subsistence regulations to include all navigable waters within the Tongass National Forest, and they rely upon the reserved waters doctrine as the basis for requiring such an amendment.

On April 24, 2006, the court convened a status conference in the consolidated cases.  The Peratrovich plaintiffs participated in the conference.  It was agreed by all of the parties to all three of the above-mentioned cases that two overarching issues were raised by these cases:

    (1)  Did the Secretaries employ a proper administrative procedural process for determining the existence of reserved water rights within navigable waters for purposes of ANILCA?  This issue is referred to by the parties as the "what process" issue.

    (2)  What specific water bodies are "public lands" for purposes of ANILCA as a result of the Ninth Circuit Court's determination that public lands include navigable waters within which the Government has

---

[23]Docket No. 79 in Case No. 3:92-cv-0734-HRH.

reserved water rights?  This issue is referred to
by the parties as the "where" issue.
All of the conferees and the court agreed that the "what process"
issue should be briefed and decided first; and, when that decision
has been made, the "where" issue would be briefed and decided.

Although slightly different words are employed by various
parties, each of the State (in its Count I), the Katie John
plaintiffs (in their first cause of action), and the Peratrovich
plaintiffs assert a claim which either raises or directly
implicates the State's and AOC intervenors' primary contention,
which is that rule-making proceedings are not the appropriate
procedure for identification of those navigable waters in which the
Government has reserved water rights.  The State raises that issue
directly and overtly.  The claims of the Katie John plaintiffs and
the Peratrovich plaintiffs would each be adversely impacted by a
determination that the Secretaries had employed an incorrect
procedural process.  As a consequence of the foregoing, all of the
parties were invited to participate in the briefing of the "what
process" issue, and did so.[24]

## Background

The Alaska National Interest Lands Conservation Act (ANILCA)
was enacted in 1980.  Title VIII of ANILCA establishes a preference
for customary and traditional uses of fish and wildlife by

---

[24]The various briefs of the parties are located in the record
as follows:  State of Alaska, Docket Nos. 68 and 88; United States
(the Secretaries), Docket Nos. 78 and 103; Katie John plaintiffs
and AFN, Docket Nos. 82 and 106; AOC intervenors, Docket No. 71;
and Peratrovich plaintiffs, Docket Nos. 81 and 107.

according a priority for the taking of fish and wildlife on public lands[25] in Alaska for non-wasteful subsistence uses by rural Alaska residents.  16 U.S.C. §§ 3113 and 3114.  Section 805 of ANILCA charged the Secretaries with the responsibility of implementing the subsistence priority.  16 U.S.C. § 3115.  However, as what might be viewed as an early expression of renewed federalism favoring states rather than the national government, Congress intended that the subsistence priority be effected by the State of Alaska through the implementation of a state law of general application consistent with Title VIII of ANILCA.  16 U.S.C. § 3115(d).  The State of

---

[25]The term "public lands" in this decision has reference to those federally owned lands to which ANILCA has application. "[P]ublic lands" are defined by § 102(3) of ANILCA as:

> (3) The term "public lands" means land situated in Alaska which, after December 2, 1980, are Federal lands, except –
>
> (A) land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act and lands which have been confirmed to, validly selected by, or granted to the Territory of Alaska or the State under any other provision of Federal law;
>
> (B) land selections of a Native Corporation made under the Alaska Native Claims Settlement Act [43 U.S.C. 1601 et seq.] which have not been conveyed to a Native Corporation, unless any such selection is determined to be invalid or is relinquished; and
>
> (C) lands referred to in section 19(b) of the Alaska Native Claims Settlement Act [43 U.S.C. 1618(b)].

16 U.S.C. § 3102(3).  The term "land" is defined in ANILCA to "mean[] lands, waters, and interests therein."  Id. at § 3102(1)(emphasis added).

Alaska enacted and implemented a subsistence law that complied with Title VIII and managed subsistence hunting and fishing throughout Alaska until 1989.

In 1989, the Alaska Supreme Court, in McDowell v. State, 785 P.2d 1 (Alaska 1989), invalidated the state subsistence law, thereby making the state noncompliant with ANILCA's rural preference requirement. The effect of McDowell was stayed until July 1, 1990, at which time the Secretaries assumed responsibility for the management of subsistence hunting and fishing on public lands.[26] The Secretaries promulgated temporary regulations which adopted a definition of "public lands" for purposes of Title VIII of ANILCA that did not include navigable waters. See 55 Fed. Reg. 27114, 27115 (June 29, 1990). The permanent regulations that were promulgated in 1992 also did not include navigable waters within the definition of "public lands" for purposes of Title VIII. See 50 C.F.R. § 100.4 (1992).[27]

The Secretaries' determination — that navigable waters were not included within the definition of "public lands" — generated a host of lawsuits. These cases were consolidated, and the court reviewed extensive briefing and argument. Late in this litigation, the Secretaries changed their position, arguing that navigable waters in which the Government had reserved water rights were

---

[26]The State of Alaska continues to manage subsistence hunting and fishing on state public lands and non-subsistence hunting on all lands in Alaska based upon state law and regulations.

[27]The regulations at issue here are codified at both 36 C.F.R. Part 242 and 50 C.F.R. Part 100. This order will cite only the version of the regulations codified at 50 C.F.R. Part 100.

public lands for purposes of ANILCA.  This court held that "[f]or purposes of Title VIII, 'public lands' includes all navigable waterways in Alaska."  <u>John v. United States</u>, Nos. A90-0484-CV (HRH) and A92-0264-CV (HRH), 1994 WL 487830, at *18 (D. Alaska March 30, 1994) (<u>Katie John I</u>).  The court based its holding on the navigational servitude.

An interlocutory appeal was taken by the State and the federal defendants.  The majority of a three-judge panel for the Ninth Circuit Court of Appeals held:

> to be reasonable the federal agencies' conclusion that the definition of public lands includes those navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine.  We also hold that the federal agencies that administer the subsistence priority are responsible for identifying those waters.

<u>Alaska v. Babbitt</u>, 72 F.3d 698, 703-04 (9th Cir. 1995) (<u>Katie John II</u>).[28]  The court of appeals remanded the case to this court and stated that it "hope[d] that the federal agencies will determine promptly which navigable waters are public lands subject to federal subsistence management."  <u>Id.</u> at 704.  On remand, this court vacated the portion of its March 30, 1994, order defining public lands and deemed that issue controlled by the <u>Katie John II</u> decision.[29]

---

[28]This opinion superseded an earlier opinion, <u>Alaska v. Babbitt</u>, 54 F.3d 549 (9th Cir. 1995).

[29]<u>See</u> Order re Case Status at 2, Docket No. 229 in Case No. A90-0484-CV (HRH) [Consolidated with No. A92-0264-CV (HRH)].

Following the panel decision in <u>Katie John II</u>, the Secretaries undertook rule-making proceedings to identify navigable waters in which the federal government had reserved water rights. On April 4, 1996, the Secretaries published an advance notice of proposed rule-making. <u>See</u> 61 Fed. Reg. 15014. Under "summary of changes", the advance notice provided:

> The amendments being considered ... would expand the scope of the Federal subsistence program to include, in addition to the waters already included, all inland navigable waters within the exterior boundaries of the listed National Parks, Preserves, Wildlife Refuges, and other specified Federal land units managed by the Department of the Interior in Alaska. Within the exterior boundaries of the two national forests in Alaska, the subsistence program would apply to all inland navigable waters bordered by lands owned by the United States.

<u>Id.</u> at 15015. The advance notice included a list of all the parks, preserves, refuges, and other land units which would be covered by the amendments. <u>Id.</u> at 15018. Public hearings were held on the advance notice and written comments were also invited. On December 17, 1997, the Secretaries published proposed regulations. <u>See</u> 62 Fed. Reg. 66216. Public hearings were held on the proposed regulations and the Secretaries also accepted written comments on the proposed regulations. However, promulgation and implementation of the final regulations were delayed by Congress through a series of appropriation act restrictions.

On January 8, 1999, the final rule was published. <u>See</u> 64 Fed. Reg. 1276. The summary section of the final rule explained that "[t]his rule amends the scope and applicability of the Federal

Subsistence Management Program in Alaska to include subsistence activities occurring on inland navigable waters in which the United States has a reserved water right and to identify specific Federal land units where reserved water rights exist." Id. The final rule, which became effective on October 1, 1999, provides that public lands include "navigable and non-navigable waters in which the United States has reserved water rights." Id. at 1287. The final rule also provides that all navigable waters and non-navigable waters within, and inland waters adjacent to, the specifically listed areas are "public lands" for purposes of Title VIII of ANILCA. Id. at 1286-87.

While the foregoing rule-making was underway, the consolidated Katie John litigation was essentially dormant. By early 2000, this court became convinced that consolidated cases which dated back to the early 1990s should terminate and not become the vehicle for further litigation over the Secretaries' new regulations. In an order dated January 6, 2000, the court "readopt[ed] all of its rulings on the merits of plaintiffs' claims heretofore made"[30] and deemed those rulings final "for all purposes and to all parties."[31] Judgment was entered on January 7, 2000.

The State appealed again. The Ninth Circuit voted to hear this second appeal en banc rather than by a three-judge panel. After oral argument, "[a] majority of the en banc court ...

---

[30]Order re Case Status at 2, Case No. A90-0484-CV (HRH) [Consolidated with No. A92-0264-CV (HRH)], Docket No. 268.

[31]Id.

determined that the judgment rendered by the prior panel, and adopted by the district court, should not be disturbed or altered by the en banc court." <u>John v. United States</u>, 247 F.3d 1032, 1033 (9th Cir. 2001) (<u>Katie John III</u>).    The current litigation challenging the 1999 regulations followed.

As set forth above, the parties agreed that the court would first take up the issue of whether the Secretaries employed the proper process for determining the existence of reserved water rights.  The State and the AOC intervenors take the position that the Secretaries have conclusively established reserved water rights in the 1999 regulations and that this is improper because reserved water rights can only be conclusively established through a formal adjudication.  The federal defendants and the Katie John plaintiffs contend that the State's challenge to the process used by the Secretaries is barred by issue and claim preclusion, the law of the case doctrine, and the State's failure to exhaust administrative remedies.  Even if the State's challenge is not barred, the federal defendants, the Katie John plaintiffs, and the Peratrovich plaintiffs take the position that the Secretaries could determine the existence of reserved water rights through the rule-making process.

<u>Issue Preclusion</u>

The federal defendants and the Katie John plaintiffs contend that the issue of whether the Secretaries have the authority to identify the waters that are public lands based on the reserved water rights doctrine through rule-making has already been

litigated and decided.  "As a general proposition, '[t]he doctrine of collateral estoppel (or issue preclusion) prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding.'"  Af-Cap Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1086 (9th Cir. 2007) (quoting Kourtis v. Cameron, 419 F.3d 989, 994 (9th Cir. 2005)).  The doctrine applies "'where (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'"  Id.  An issue need not be explicitly decided by the prior tribunal; issue preclusion also applies when the prior tribunal implicitly decided an issue.  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 750 (9th Cir. 2006).  "Although [i]ssue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law ..., [i]ssue preclusion has never been applied to issues of law with the same rigor as to issues of fact[.]"  Af-Cap, 475 F.3d at 1086 (internal citations omitted).

If and to the extent that the State is actually contending that the Secretaries do not have jurisdiction or the authority to promulgate regulations implementing Title VIII of ANILCA, that issue is precluded.  In the Katie John I case, the State argued that the Secretaries had no authority to issue regulations implementing the subsistence priority on public lands in Alaska.

This court held that Title VIII of ANILCA authorizes the Secretaries, not the State of Alaska, to manage fish and wildlife on public lands in Alaska for purposes of Title VIII of ANILCA. Katie John I, 1994 WL 487830, at *18.  On appeal, the parties stipulated to dismissal with prejudice of this issue, and the court of appeals accepted the stipulation.  Katie John II, 72 F.3d at 700 n.2.

It is the court's perception that the State is not arguing that the Secretaries lack the authority to promulgate regulations implementing the rural subsistence priority on public lands in Alaska.  Rather, the State's argument is a much more focused one: that the Secretaries do not have the authority to conclusively establish reserved water rights through the rule-making process. The federal defendants and the Katie John plaintiffs argue that in Katie John II the Ninth Circuit mandated that the Secretaries act through rule-making.

Nothing in the Katie John II decision indicates that the court of appeals decided that the Secretaries must determine reserved water rights through rule-making.  When the court of appeals held that "the federal agencies that administer the subsistence priority are responsible for identifying those waters", Katie John II, 72 F.3d at 704, it did not expressly say how that was to be accomplished.  The court of appeals did not say what process of identification should be employed.

In the alternative, the federal defendants and the Katie John plaintiffs suggest that this issue was implicitly decided by the

court of appeals.  In their briefing to the court of appeals, the federal defendants suggested that the Secretaries were contemplating using rule-making to identify which waters were subject to the reserved water rights doctrine, and the State argued that Congress could not have intended the subsistence priority to extend to reserved waters because the nature and scope of such rights must be decided in a judicial forum.  The federal defendants and the Katie John plaintiffs argue that in order to hold that the federal agencies were responsible for identifying reserved waters, the court of appeals had to have rejected the State's contention that reserved waters can only be identified by the courts through an adjudication.

The court of appeals did not implicitly decide the "what process" issue.  The appellate court's direction to identify reserved waters implies nothing about whether the Secretaries were to carry out the court's ruling by court action or by use of their power to adopt regulations.  The sole issue before the court of appeals was whether navigable waters fell within the statutory definition of public lands.  Katie John II, 72 F.3d at 700.  To decide that issue, the court of appeals did not have to decide what process the Secretaries should use to determine the existence of reserved water rights.  Issue preclusion does not bar the State's "what process" challenge.

### Claim Preclusion

The Katie John plaintiffs argue that the State's "what process" challenge to the 1999 regulations is barred by claim

preclusion. "Under claim preclusion, a subsequent action is precluded if the same <u>claim</u> was previously litigated." <u>United States v. Oregon</u>, 470 F.3d 809, 817 (9th Cir. 2006). "As such, claim preclusion requires an identity of claims." <u>Id.</u> It also applies to claims that "could have been asserted in the prior litigation." <u>Id.</u>

The Katie John plaintiffs contend that the State has previously raised the claim that the Secretaries lack the authority to determine which waters are public lands for purposes of Title VIII of ANILCA. The Katie John plaintiffs insist that the State's contention that the Secretaries were required to determine reserved water rights through formal adjudication is an attempt by the State to relitigate its claim that the Secretaries do not have the authority to issue regulations implementing the Title VIII subsistence priority.

As stated above,[32] if the State were pursuing a claim that the Secretaries do not have jurisdiction or the authority to promulgate regulations implementing Title VIII of ANILCA, such a claim would be precluded. However, none of State's three extant claims is based on such broad allegations. The claim at issue in this stage of the litigation is that asserted in Count I of the State's complaint: that the Secretaries did not properly apply the reserved water rights doctrine. That claim was not previously litigated, nor is it a claim that could have been brought in the earlier litigation because the Secretaries had not yet attempted to

---

[32]<u>See</u> pages 14-15.

apply the reserved water rights doctrine.  The State's challenge to the process employed by the Secretaries to determine the existence of reserved water rights is not barred by claim preclusion.

<u>Law of the Case</u>

In a footnote in their brief, the Katie John plaintiffs suggest that the law of the case doctrine could apply to the issue of whether the federal agencies are the proper entities to identify reserved waters.  "Under the law of the case doctrine, a court 'is generally precluded from reconsidering an issue previously decided by the same court ... in the identical case.'"  <u>Kamakana v. City and County of Honolulu</u>, 447 F.3d 1172, 1186 (9th Cir. 2006) (quoting <u>United States v. Lummi Indian Tribe</u>, 235 F.3d 443, 452 (9th Cir. 2000)).  "[B]ecause this case is so closely related to the prior disputes between the parties,"[33] the Katie John plaintiffs argue that the law of the case doctrine could apply, even though the ruling at issue was not made in this case.

As said before, the "what process" issue raised by the State in this case is not the same issue that the State raised in the earlier litigation.  The State is arguing that the Secretaries acted improperly in implementing <u>Katie John II</u>, not that the Secretaries do not have the authority to promulgate regulations implementing the subsistence priority on public lands.  The law of the case doctrine has no application here.

---

[33]Brief of Alaska Federation of Natives and Katie John, et al. at 12, n.6, Docket No. 82.

## Exhaustion of Administrative Remedies

The federal defendants and the Katie John plaintiffs argue that the State of Alaska failed to exhaust its administrative remedies as to its contention that the Secretaries improperly adjudicated reserved water rights through rule-making.  "[A] party's failure to make an argument before the administrative agency in comments on a proposed rule bar[] it from raising that argument on judicial review." Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

The State participated in the notice and comment period during the rule-making process that resulted in the 1999 regulations.  Two assistant attorney generals and the attorney general for the State of Alaska testified at six different public hearings held on the advance notice of rule-making that was published in the spring of 1996.  Each one testified at the hearings he or she attended that the State objected to the proposed amendments because the State continued to believe that navigable waters in which the federal government had a reserved water right were not public lands.[34]  They also testified that the State would "challenge any designation where reserved waters are not absolutely necessary to fulfill a primary purpose of the land reservation."[35]  None of them objected to the proposed rules on the ground that the Secretaries were

_____

[34]Admin. Rec., Vol. 8, Tab 189 at 4130-31; Tab 194 at 4223-24; Tab 196 at 4267-69; Tab 198 at 4319; and Vol. 9, Tab 200 at 4464; Tab 202 at 4543-45.

[35]Admin. Rec., Vol. 8, Tab 189 at 4131-32; Tab 194 at 4224; Tab 196 at 4269; and Vol. 9, Tab at 4464; Tab 202 at 4545.

improperly adjudicating reserved water rights through the rule-making process.

After the proposed rules were published in December 1997, the State submitted written comments. In a cover letter, the Attorney General of Alaska stated that "[w]hile the state recognizes that the federal agencies are required to extend ANILCA title VIII jurisdiction to navigable waters in which the United States claims a reserved water right, the proposed rulemaking provides no basis for the extensive reserved water rights it claims."[36] In its comments, the State objected that the Secretaries had not "explained the necessity of reserving water in each reservation or the basis for including adjacent waters."[37] The State also reiterated its continuing objection to the holding of the Ninth Circuit in Katie John II and stated that it was not "conceding the existence of any particular federal reserved water rights."[38]

In none of these comments did the State ever expressly raise the primary argument that it makes here, that the Secretaries were improperly adjudicating reserved water rights through the rule-making process. However, the court may "entertain an issue not raised before the agency if 'exceptional circumstances' warrant such review." Johnson v. Director, Office of Workers' Compensation Programs, 183 F.3d 1169, 1171 (9th Cir. 1999) (quoting Marathon Oil Co. v. United States, 807 F.2d 759, 768 (9th Cir. 1986)). The

---

[36]Admin. Rec., Vol. 15, Tab 352 at 8424.

[37]Id. at 8450.

[38]Id. at 8452.

court "determine[s] whether such circumstances exist by balancing 'the agency's interests "in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances."'" <u>Id.</u> (quoting <u>Litton Indus., Inc. v. FTC</u>, 676 F.2d 364, 369-70 (9th Cir. 1982) (quoting <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 253 (9th Cir. 1987)).

Two exceptional circumstances exist and warrant review here. First, the court is being asked to decide a legal issue: whether court adjudication should have been employed by the Secretaries to properly carry out the holding of <u>Katie John II</u>. Agency expertise is not involved because the "what process" issue does not require the interpretation of any provision of ANILCA. The Secretaries have no particular expertise on the "what process" issue, nor do the Secretaries have any particular expertise as to the reserved water rights doctrine, which was judicially created. It also strikes the court that it likely would have been futile for the State to argue during the notice-and-comment period that the Secretaries could not conclusively establish federal reserved water rights through rule-making.

Second, during the period when the rule-making proceedings were underway, the State's appeal of this court's final decision implementing <u>Katie John II</u> was still pending. The rule-making proceedings ended with publication of the final rules on January 8,

1999.  The State's appeal contesting application of the reserved water rights doctrine was not rejected until May 7, 2001.  In light of this sequence of events, it is quite understandable that the State did not focus on the "what process" issue in the rule-making proceedings.

The court concludes that the foregoing exceptional circumstances excuse the State's failure to raise the "what process" issue before the Secretaries.

<u>Standard of Review</u>

The court's scope of review is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701-06.  The pertinent part of Section 706 provides that

> [t]he reviewing court shall —
>
> ....
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be —
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law....

5 U.S.C. § 706(2).  The State argues that Secretaries have acted "otherwise not in accordance with law", "contrary to constitutional right", "in excess of statutory jurisdiction, authority or

limitations" or "without observance of procedure required by law."
Id.

The parties disagree as to whether the court's review, in this instance, is deferential.  The State argues that the Secretaries' position that reserved water rights could be determined through rule-making is entitled to no deference; the federal defendants argue that the Secretaries' position is entitled to deference.  The court need not decide whether or not the Secretaries' position is entitled to deference because the result would be the same under either a deferential review or an entirely non-deferential review. See Sierra Club v. Dep't of Transp., 948 F.2d 568, 573 (9th Cir. 1991).

## The "What Process" Claim

We turn finally to the merits of the State's "what process" claim that is based on Count I of its complaint, in which the State alleges that the Secretaries:

> failed to apply the reserved water rights doctrine and, instead, simply identified all waters within and adjacent to CSUs and National Forests, and broadly asserted preemptive Federal subsistence management jurisdiction over thousands of appurtenant waterways.[39]

By agreement of the parties, the court here addresses only the general proposition of whether the Secretaries should have proceeded to identify reserved waters within navigable waters by means of rule-making procedures or court adjudication of water rights.  The court will take up subsequently the question of

---

[39]Complaint at 14, Docket No. 1 in Case No. 3:05-cv-0158-HRH.

individual reservations identified by the Secretaries.  For the reasons discussed below, the court concludes that, as a general proposition, the Secretaries' rule-making power was a proper process by which to identify reserved waters within navigable waters for purposes of implementing the rural subsistence priority created by Title VIII of ANILCA.

The Ninth Circuit Court of Appeals relied upon the reserved water rights doctrine in making its decision as to how the rural subsistence priority should be effected with respect to water bodies.  The reserved water rights doctrine was judicially created by the United States Supreme Court in Winters v. United States, 207 U.S. 564 (1908).  Winters involved a priority dispute between irrigators and the Fort Belknap Indian Tribe over the waters of the Milk River in central Montana.  The Court determined that in reserving land as an Indian reservation, the federal government had impliedly reserved sufficient water to fulfill the purpose of the reservation.  Id. at 575-77.  In 1955, the Supreme Court extended the reserved water rights doctrine to all federal reservations.  See Federal Power Comm'n v. Oregon, 349 U.S. 435 (1955).  The essence of the doctrine is "that when the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation." Cappaert v. United States, 426 U.S. 128, 138 (1976).  However, the government "reserves only that amount of water necessary to fulfill the

purpose of the reservation, no more." Id. at 141. "In determining whether there is a federally reserved water right implicit in a federal reservation of public land, the issue is whether the Government intended to reserve unappropriated and thus available water. [Such] [i]ntent is inferred if the previously unappropriated waters are necessary to accomplish the purposes for which the reservation was created." Id. at 139. But, the Court has limited the doctrine to the water necessary to fulfill the primary purposes of the reservation. In United States v. New Mexico, 438 U.S. 696, 718 (1978), the Court held that in reserving the Gila National Forest, the federal government reserved water only where necessary to preserve timber in the forest or to secure favorable water flows, but it did not reserve water for aesthetic, recreational, wildlife preservation, or stock watering purposes. While the Court recognized that the foregoing purposes might be secondary purposes of the reservation, they were not the primary purpose of the reservation, and the Court held that there was no intent by the federal government to reserve water for these secondary purposes. Id. at 714-18.

Here, the State first argues that the process by which the Secretaries identified the waters in which the federal government has reserved water rights was improper because the 1999 regulations "go beyond identification and expansively purport to adjudicate and establish [federal reserve water rights] (and preemptive federal

authority) in numerous Alaska waterways."[40]  The State contends that the 1999 regulations declare that federal reserved water rights exist and thus must be read as an effort to administratively adjudicate the existence of reserved water rights.  The State argues that because the Secretaries do not have the authority to adjudicate reserved water rights, the portion of the 1999 regulations dealing with reserved water rights must be set aside.

The court is aware of no authority that stands for the proposition that the Secretaries have jurisdiction or power under ANILCA to <u>adjudicate</u> water rights.  The Secretaries have not claimed any such jurisdiction.  In the 1999 regulations, the Secretaries have not purported to establish any allocation of water rights.  As the case law discussed above shows, the reserved waters adjudication process is about establishing the priorities of users of water.  Here, the Secretaries were directed by the Ninth Circuit Court to identify those navigable waters in which the Government has reserved water rights.  By the 1999 regulations, the Secretaries have purported to do nothing more than that.  The regulations list federal reservations in which the Government claims to have by implication reserved water for purposes of ANILCA.  The regulations say nothing about who is entitled to use a particular water body, much less what the respective use priorities might be.  The identification of the existence of a reserved water rights claim is not the equivalent of a conclusive

---

[40]Plaintiff State of Alaska's Opening Brief at 2, Docket No. 68.

determination of the validity of such claim for purposes of establishing the priority of water use rights. Rule-making was a proper process by which to identify reserved waters for purposes of the implementation of the subsistence priority created for rural Alaskans by Title VIII of ANILCA.

To the extent the State is arguing that a formal adjudication of a reserved water right is necessary to determine the existence of that right, this argument fails. For purposes of ANILCA public lands determinations, no adjudication of water rights is needed. A formal adjudication, whether it be in a state or federal court, is not the only means of identifying reserved water rights. Reserved water rights vest on the date of the reservation. Cappaert, 426 U.S. at 138. They do not depend upon an adjudication for their existence. Claims of reserved water rights have often been determined through formal adjudication, but this has occurred because the question of whether the federal government has reserved water rights has arisen in places where water is scarce and there is a need to determine who is entitled to how much water. The allocation of water is not at issue here. The parties to this litigation are not "consumers" of water, and the disagreement between the State and the Secretaries has nothing to do with what amount of water was available for appropriation when lands were reserved by the Government. The core disagreement here is the extent to which each governmental regulatory body is entitled (indeed required) to regulate the fish and wildlife that inhabit navigable waters. The Secretaries are required by ANILCA to

implement the rural subsistence priority for the taking of fish and wildlife on public lands (including reserved waters based upon Katie John II), and are authorized by Congress to carry out that directive by the enactment of regulations. 16 U.S.C. § 3124. The State also implements its subsistence law through regulations. AS 16.05.258. The federal and state regulatory schemes intersect at various times and places and in various ways. However, there is nothing about the interaction between these two regulators of fish and wildlife that necessitates an adjudication of water rights — that is, a determination of water use priorities.

Because this case is about regulation and allocation of fish and wildlife, and not the appropriation of water, it is entirely appropriate that those responsible for the regulation of fish and wildlife determine, for the purposes of ANILCA, which waters are subject to reserved water rights through a rule-making process. Nothing in the reserved water cases cited by the parties suggests otherwise. The Ninth Circuit in Katie John II directed the Secretaries to "identify" the waters in which the federal government has reserved water rights. The statutory method for the Secretaries to carry out their regulatory responsibilities under ANILCA is to "prescribe such regulations as are necessary. . . ." 16 U.S.C. § 3124. In directing the Secretaries to "identify" reserved waters, the court of appeals could not have intended that the Secretaries initiate water rights adjudications when there was no need for allocation of water resources.

The State also finds fault with the Secretaries' process because the Secretaries did not expressly identify the primary purpose of each land reservation, determine whether that purpose would be defeated by the absence of water, and quantify the amount of water necessary to fulfill the primary purpose. The Secretaries had no reason to make such determinations. A determination of the primary purpose of a reservation, whether it would be defeated by the absence of water, and/or the quantity of water necessary to fulfill the primary purpose of the reservation, has to do with the adjudication of water rights under a prior appropriation scheme for the establishment of water use rights. As explained above, this case is not about the allocation of water. This case is about the regulation of fish and wildlife that inhabit public lands. There was no need for the Secretaries to make the determinations that are necessary for a formal adjudication of reserved water rights.

Lastly, the State argues that the Secretaries, in promulgating the 1999 regulations, exceeded their statutory authority and violated the principles set forth in sections 1314 and 1319 of ANILCA. Section 1319 of ANILCA provides:

> Nothing in this Act shall be construed as limiting or restricting the power and authority of the United States or--
>
> (1) as affecting in any way any law governing appropriation or use of, or Federal right to, water on lands within the State of Alaska;
>
> (2) as expanding or diminishing Federal or State jurisdiction, responsibility, interests, or rights in water resources development or control; or

> (3) as superseding, modifying, or repealing, except as specifically set forth in this Act, existing laws applicable to the various Federal agencies which are authorized to develop or participate in the development of water resources or to exercise licensing or regulatory functions in relation thereto.

16 U.S.C. § 3207.  Section 1314 of ANILCA, in pertinent part, and as codified, provides:

> Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in subchapter II of this chapter, or to amend the Alaska constitution.

16 U.S.C. § 3202(a).  The State contends that these two savings clauses manifest Congressional intent to protect and maintain the State's traditional authority over fish and wildlife and that the rule-making process employed by the Secretaries impermissibly impinges on this traditional authority.

The Secretaries have not run afoul of either section 1319 or section 1314 of ANILCA in identifying reserved water rights through the rule-making process.  Section 1319 ensures that ANILCA does not alter existing water law.  The identification of reserved water rights through rule-making is not inconsistent the Alaska Water Use Act.  AS 46.15.010-.270[41]  The Secretaries' rule-making for purposes of ANILCA says nothing about anyone's right to use water.

---

[41]The Alaska Water Use Act, AS 46.15.030, sets forth Alaska's prior appropriation water use regime.

Section 1314 recognizes that the State's traditional authority over fish and wildlife management may be diminished "as ... provided in subchapter II of this chapter[.]" 16 U.S.C. § 3202(a). Subchapter II refers to the codified form of the subsistence provisions which are Title VIII of ANILCA. Thus, Section 1314 recognizes that in implementing Title VIII the Secretaries may have to take action that impinges on the State's traditional authority over fish and wildlife management. The Secretaries' use of rule-making to identify reserved waters for purposes of Title VIII of ANILCA falls within the "except[ion]" to section 1314.

<u>Other Issues Raised by the State</u>

In addition to raising the issue of whether the Secretaries improperly adjudicated reserved water rights through the rule-making process, the State raises two other issues in its opening brief: (1) the Secretaries improperly claimed reserved water rights in marine or tidally influenced waters, and (2) the Secretaries improperly claimed reserved water rights in selected but not yet conveyed lands.

These two issues are "which waters" issues, and it was agreed that the court would take up those issues once a decision had been reached on the "what process" issue. Although the other parties responded to these "which waters" issues, the court declines to address them at this point. However, if, as this litigation moves forward, the parties are all satisfied with their briefing on either or both of these two "which waters" issues, they may stipulate to submit that issue or issues on the existing briefs.

## Conclusion

The court concludes that the Secretaries' use of the rule-making process to identify reserved water rights for purposes of federal subsistence management was lawful and was a procedure authorized by law.

Counsel will please confer and by May 31, 2007 propose to the court a plan and schedule for briefing the "which waters" issues.


DATED at Anchorage, Alaska, this <u>17th</u> day of May, 2007.


/s/ H. Russel Holland
United States District Judge
