WILLIAM P. HORN, D.C. Bar No.: 375666
JAMES H. LISTER, D.C. Bar No.: 447878
Birch, Horton, Bittner & Cherot, P.C.
1155 Connecticut Avenue, Suite 1200, NW
Washington, D.C. 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
Email: whorn@dc.bhb.com
Email: jlister@dc.bhb.com

Attorneys for State of Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| KATIE JOHN, CHARLES ERHART, et al. | ) ) ) | |
| Plaintiffs, | ) ) | Case No. A05-0006-CV (HRH) |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | **State of Alaska Plan for Briefing the "Which Waters" Issues** |
| Defendants. | ) ) | |

Because the parties are unable to agree on a plan for the briefing of the "which waters" issues, the State of Alaska hereby submits its briefing plan, pursuant to the Court's May 17, 2007 Order (Docket No. 110, p. 32).[1]  A proposed scheduling order is attached.

**A. Because There Are So Many Waterways at Issue, the Which Waters Phase Will Be Most Efficiently Litigated Using a Test Case Approach.**

Given the very large number of waterways potentially impacted by the rulemaking order challenged by the State and Katie John plaintiffs and the remaining posture of this consolidated litigation, the State proposes that the Court substantively resolve the "which waters" issues for

---

[1]  On May 31, 2007, the State moved on an unopposed basis for a one-day extension of the due date for submission of the briefing plan.  *See* Unopposed Motion (Docket 111).

purposes of this lawsuit by ruling on a limited number of test case waterways that implicate the remaining substantive issues raised by the parties.

**1.   Posture of the Case**

The State brought its lawsuit (1) to challenge the process by which the Secretaries purported by regulation to assert federal reserved water rights ("FRWR") for federal subsistence jurisdiction purposes, particularly insofar as that assertion might be attempted as a conclusive determination of such rights, and (2) to challenge particular categories, such as marine waters and waters adjacent to but outside of federally reserved lands, where the State believes the Federal defendants can not possibly claim FRWR for purposes of such jurisdiction.

The Court appears to have answered the first, "what process", issue to the extent it intends to by ruling in its May 17, 2007 Order (Docket No. 110) that the federal regulations are an appropriate identification of where the Federal agencies **claim** to have FRWR for subsistence regulation purposes but that those regulations are not a conclusive determination of any such rights.  Order at 26-27.  In other words, as the State understands that Order, the Federal Defendants may assert such jurisdiction through that rulemaking and without conclusively adjudicating the correctness of those claims as a pre-condition to asserting such jurisdiction, but the actual existence of such jurisdiction, and its extent, is not conclusively established by that administrative rule, as to any particular water body, portion of water body, or category of water bodies. [2]

---

[2]   The Court's Order states, *inter alia*:  "The regulations list federal reservations in which the Government claims to have by implication reserved water for purposes of ANILCA.  . . . The identification of the existence of a reserved water rights claim is not the equivalent of a conclusive determination of the validity of such claim . . . ."  Docket No. 110, at pp. 26-27.  Elsewhere the Court states that to the extent FRWR exist, they "vest on the date of the reservation" and "do not depend upon an adjudication for their existence."  *Id.* at 27.  That reasoning and the present posture of this case, it appears, can thus be analogized to the State of Alaska's entitlement to navigable waters and beds upon statehood; they vest upon that date, do not depend upon adjudication for their existence, can be claimed

That Order now brings the Court and parties to the second challenge raised by this litigation on which various parties requested declaratory judgment, concerning specific categories of water bodies, as raised either by the State in its lawsuit or by the Katie John plaintiffs -- also referred to as the "which waters" phase of this case. In the State's view what is left to be decided is declaratory judgment regarding whether the Federal Defendants' claims to FRWRs, within those specific categories of water bodies raised in this litigation, contravene the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq. This declaratory judgment can, in turn, assist the parties and Court in that judgment's application to other, similarly situated water bodies.[3]

### 2. The "Which Waters" Categories

To the State's understanding, the "which waters" issues which remain to be decided in this litigation can be grouped into six categories, including some land issues. The State asserts that the Federal Defendants misapplied the FRWR doctrine addressed by the Court in its May 17

---

by identification (usually by specific water bodies but also presumably by general descriptions like the Federal Defendants have done in this instance), and State management over them can be asserted -- but any conclusive determination of the validity of such claims must later be through adjudication, as the need arises, usually through a quiet title, trespass, or enforcement action as to a specific water body or portion of water body in the case of those title navigability claims, which depend on whether the water body at issue is indeed navigable. Likewise, it would appear that the conclusive determination of any actual FRWR in a water body or portion of water body must be through adjudication, as the need arises, by a McCarran Act action or otherwise. *See* further discussion below and *infra*.

[3] It has not been alleged by the State that the Federal Defendants' entire claims to possess FRWR have to be conclusively determined, as to each water body within the areas claimed, in the context of this litigation. The State does not claim that this litigation needs to reach that far-reaching and time-consuming end, no doubt encompassing hundreds or thousands of separate rivers, streams and lakes or portions of those water bodies. Rather, it is understood such determinations could be made later, if and to the extent necessary, on a case needed basis. Neither does the State claim that any party to this litigation should be precluded later from bringing such claims, on a case needed basis, as to specific water bodies. Further, because the standard of review in an APA judicial review is markedly different from the preponderance-of-the-evidence burden of proof that the United States would have to sustain in a McCarran Act (43 U.S.C. § 666) adjudication, nothing in this Briefing Plan should be construed as a concession that the test case waterways can be resolved in this case in a way preclusive to subsequent adjudication under the McCarran Act or other statute. *See Clark v. Bear Stearns & Company, Inc.* 966 F.2d 1318, 1322 (9th Cir. 1992).

3

Order by claiming FRWR in (1) marine and tidally-influenced waters, (2) waters that are bounded by non-federal land located within the exterior boundaries of the 34 federal conservation system units ("CSUs") or other federal reservations listed in the 1999 rulemaking order,[4] and (3) waters that are adjacent to but not within CSUs or other federal reservations, including but not limited to the situation in which extensive state-owned (often out of water) riverbeds in the channels of meandering, often braided, navigable rivers separate the nearby CSU or other federal reservation from the actual water in which FRWRs are apparently being claimed. *See* State Complaint for Declaratory and Injunctive Relief, ¶¶ 37 through 59 (Jan. 5, 2005). In addition, the State asserts that the Federal Defendants erroneously extended their claims to federal subsistence jurisdiction to (4) lands validly selected but not conveyed by the Federal Government and appurtenant waters.[5] For their part, the Katie John parties assert that the Federal Defendants erred (5) by not claiming FRWRs in waters upstream or downstream of segments of waterways that at some point flow through or by one of the 34 CSUs and (6) by not asserting federal subsistence jurisdiction on Native allotments and appurtenant waters. *See* Katie John Complaint, ¶¶ 42-46 (Jan. 7, 2005). Finally, the Peratrovich parties assert that the Federal Defendants should have claimed FRWRs in additional marine or tidally influenced waters.

      Neither the State nor the Katie John parties in their respective complaints provided any comprehensive list of specific waterways whose status is controlled by these relatively few substantive issues. Both complaints are written at a more general level.

---

[4] The amended regulations effective January 26, 2006 listed 35 such areas, plus included sub-areas.
[5] The same statutory provisions govern land selected by the State and land selected by the Native Corporations. *See, e.g., Order on Motion for Judgment on the Pleadings* dated March 10, 2006, at 2-3 (Docket No. 50) (describing challenge to 50 C.F.R. § 100.4(2), which addresses both types of selected lands).

However, it is evident that these substantive "which waters" issues cannot be decided purely in the abstract, but need concrete examples to illustrate those issues for the Court. For each of these substantive issues that remain to be decided, the Court needs to be presented with the facts specific to at least one waterway whose status turns on the issue. For instance, to decide the marine waters issue, the Court needs to be allowed to review at least one precise location, and possibly one or two more (such as a bay and river), where the State can show that the Federal Defendants are claiming FRWRs in marine waters (i.e. saltwater), including tidally-influenced waters. Similarly, determining whether the Federal Defendants should have asserted FRWRs upstream of CSUs requires that the Katie John parties present the applicable facts regarding at least one reach of a waterway that is upstream of a CSU. To make their downstream argument, the Katie John parties would need to present at least one waterway downstream of a CSU.

A critical consideration in establishing a briefing cycle is determining how much waterway-by-waterway detail the Court really needs to see in order to resolve the complaints and provide the parties with the declaratory judgments that they seek. The State proposes that the Court be provided concrete examples, consisting of "test" water bodies including rivers, lakes and marine waters, but that they be as few as possible.

Consistent with the decision by both the State and Katie John parties to focus their complaints for judicial review on broader issues rather than a long list of specific waterways, the State proposes that the Court decide the "which waters" issues based on these test case waterways. The State does not ask that the Court determine which water bodies present appropriate test cases. Instead, each party challenging the rulemaking order (the State, Alaska Outdoor Council, Katie John, Alaska Federation of Natives, and Peratrovich parties) should be

free to select a few waterways which they believe present suitable test cases and identify the controlling issue or issues implicated by them.  Each party will be self-motivated by the Court's page limits to avoid presenting too many test cases.

Arguably, because claims as to specific water bodies have not been made, and because this Court has ruled that the federal rules at issue represent claims of FRWRs and not conclusive determinations of the validity of such claims, no specific Court Order should be necessary to authorize the parties to proceed by using the test case approach, as opposed to somehow attempting to address each and every one of the hundreds of waterways potentially implicated by the substantive issue to be briefed.

However, given the eagerness with which the Federal Defendants and other parties advanced issue preclusion and waiver arguments earlier in this case, the State is concerned that following a test case approach without a specific Court order to do so might later be argued by the Federal Defendants to constitute a waiver of claims for non-test case waterways.  Absent a Court order, both the State and the Katie John parties would be potentially exposed to such an argument if either did not identify in the upcoming briefs the hundreds of specific waterways implicated by outstanding substantive issues.

To avoid future preclusion/waiver disputes similar to those that consumed much of the "what process" briefing, the State respectfully requests that the Court specifically authorize all parties challenging the rulemaking order to use a test case approach in briefing the "which waters" issues.   Should a plaintiff (or plaintiff intervenor) prevail and obtain a declaratory ruling that the Federal Defendants erred on a particular substantive issue being presented, the Court could later hold a hearing on remedy in which specific water bodies impacted by the error could be considered in more detail.  However, the Court should not permit any party to be put to

the Hobson's choice between (1) inundating the Court with paper by attempting to brief hundreds, even thousands, of specific waterways and (2) risking subsequent waiver or preclusion arguments if that party does not.  The Court need not let itself be so inundated.   Selecting and briefing the Court on hundreds, even thousands, of specific water bodies and segments of water bodies, as is encompassed by the breadth of the challenged regulations, would be highly expensive, time-consuming, and likely wasteful prior to further rulings of the Court.  The Court has express authority under the Federal Rules of Civil Procedure to decide the manner and order in which claims are decided, Fed.R.Civ.P. 16 and 42, and if it feels that there are still claims remaining in the case after its decision on the issues as proposed, can determine appealability under Fed.R.Civ.P. 54(b), or proceed to decide them.

In addition to the practical difficulties and/or impossibilities inherent in presenting the facts applicable to hundreds of waterways (some of which involve factual variations of the major issues or combinations of issues) in a reasonable number of pages in briefs due in the near future, the substantive standards that govern the adjudication of FRWRs for subsistence purposes are unknown at this point.   This would make briefing large numbers of waterways even more chaotic.  The State understands that the Court has held that the Federal Defendants are not required in their rulemaking identification to make various explicit determinations that would be required in a traditional FRWR adjudication, including the determination that the FRWR is necessary to achieve a primary purpose of the federal reservation, or the amount of FRWR necessary for that purpose.   Order at 29.  However, consistent with the focus of the "what process" briefing on procedure, the Court understandably did not say what happens if, in an APA proceeding to judicially review a rulemaking, the Federal Defendants fail to include in the record sufficient facts or evidence to show that traditional substantive FRWR elements are met.

It seems pointless to spend enormous energies separately briefing for hundreds of different waterways or reaches of waterways when it is not yet known whether the Federal Defendants have to satisfy what the State views as the basic fundamental <u>substantive</u> elements of a FRWR. Briefing test case waterways will be sufficient to enable a ruling on the governing standards in this unique procedural context. The standards announced by the Court following this phase of the case should be of value to the parties in seeking to consensually resolve future disputes regarding specific waterways.

Knowing these standards will also aid the State in deciding whether to bring cases under the McCarran Act to conclusively adjudicate whether FRWRs exist in any given waterway. 43 U.S.C. § 666. The Court's Order made it clear that the results of the Secretaries' FRWR identification by rulemaking, and by necessary implication judicial review of the results of that rulemaking, are not conclusive in a future action brought to adjudicate water rights priorities relating to a particular water body. Order at 26-27 ("The identification of the existence of a reserved water rights <u>claim</u> is not the equivalent of a conclusive determination of the <u>validity of such claim</u> for purposes of establishing the priority of water use rights.") (emphasis added). That being the case, there is little point in reviewing details regarding hundreds of waterways in the context of this APA review when a subsequent McCarran Act adjudication, using the stricter traditional FRWR requirements, would supersede the results of the APA review of the rulemaking claims.[6]

The State's proposed scheduling order specifically authorizes the parties to proceed using a test case approach.

---

[6] One presumes that an order in a McCarran Act adjudication finding that a FRWR claimed by the Federal Defendants is not valid would also provide a compelling basis for a petition under the APA to amend the Secretaries' rulemaking order and modify the regulations' identification of waters in which FRWRs are claimed for federal subsistence purposes. The APA expressly provides a right to file such petitions to issue, amend, or repeal a rule. 5 U.S.C. § 553(e).

8

B.   **The State's Proposed Scheduling Order Avoids Unnecessary Delay**.

The State's proposed scheduling order also provides for a much faster resolution of the "which waters" issues than the proposal the Federal Defendants made to the State and other parties in exchanges last week. As the following side-by-side comparison of the competing proposed orders shows, the Federal Defendants propose that two briefing cycles be completed before the Court gets the case for decision – the first to address the State and AOC's challenges to the rulemaking order, the second to address the Katie John and AFN challenges to the same rulemaking order. The State sees no reason why the primary parties challenging the rulemaking order (the State and Katie John parties) cannot instead file simultaneous opening and reply briefs with the intervenors filing supplemental briefs shortly after the filing of briefs by the primary parties, as is set out in the State's proposed schedule which follows:

| **State Proposal** | | **Federal Defendants Proposal** | |
|---|---|---|---|
| State and Katie John parties file opening briefs advancing challenges to rulemaking order, specifying test case categories and sample water bodies | 7/23/07 | State files opening brief | 7/16/07 |
| AOC, AFN, and Peratrovich parties file supplemental briefs | 8/6/07 | AOC files supplemental brief | 8/6/07 |
| Federal response to State, AOC, Katie John, AFN, and Peratrovich challenges (page limits are doubled for this Federal brief).<br><br>State responds to Katie John, AFN, and Peratrovich; Katie John responds to State and AOC challenges. | 9/26/07 | United States response to State and AOC | 10/5/07 |
| State and Katie John parties file replies. | 10/26/07 | Katie John's Response to State and Katie John Affirmative Claim. Also AFN supplemental response | 10/26/07 |
| AOC, AFN, and Peratrovich file supplemental replies | 11/9/07 | State's Reply and AOC's Supplemental Reply | 11/30/07 |
| | | United States' Response to Katie John and Peratrovich | 1/11/08 |
| | | Katie John and Peratrovich Reply | 2/1/08 |

9

The Court should also note the extensive potential for slippage in the schedule proposed by the Federal Defendants. The Federal Defendants' proposed order specifically sets July 16, 2007 as the due date of the State's opening brief, and then sets the due dates for the second, third, fourth, fifth, sixth and seventh briefs in the briefing cycle based on various offsets from the preceding brief's due date. (For the Court's convenience, the above side-by-side comparison supplies the specific dates that will apply if all briefs are filed on time). The Federal Defendants have explained that this date offset structure in their proposed schedule is intended to ease recalendaring "in the not unlikely event" that due dates are extended at the request of the parties.[7] The Federal Defendants' anticipation of potential extensions does not create confidence that the briefing cycle which they propose will actually be completed by the February 1, 2008 date that would apply if all seven briefs are filed according to their proposed schedule without extension. During the "what process" briefing, the Federal Defendants obtained three extensions of briefing due dates. Orders at Dockets 76, 80, and 100.

The State's proposed order involves just three primary party briefing dates (opening, response, and reply dates) along with two supplemental filing dates that should involve only limited briefing, and will put the case before the Court for resolution in early November, 2007, rather than three months later (February 1, 2008), which is the earliest the Federal Defendants' proposal provides.[8] The requested clarification that the parties may proceed using a test case approach would reduce the potential for motions to extend briefing deadlines and, even if

---

[7] *See* Federal Defendants' Report Regarding Scheduling at 4 (May 31, 2007) (Docket 112).
[8] The Court has previously ordered that intervenors Alaska Federation of Natives (AFN) and the Alaska Fish and Wildlife Federation and Outdoor Council (AOC) must coordinate their briefing with the primary party with whom or which they are aligned, adopting or joining in the lead party's briefing where their points of view are the same and only addressing differing positions or arguments in their separate briefs. Participation of the Peratrovich plaintiffs has been similarly limited. *See, e.g.,* Order of April 26, 2006 at 3-4 (Docket No. 66).

extensions are necessary, briefing should still be completed significantly sooner than could be anticipated under the cycle proposed by Federal Defendants.

### C. The Recent Order to Develop a Proposed Briefing Plan and Schedule Supersedes Prior Tentative Briefing Orders.

In its May 17, 2007 Order resolving the "what process" issues, the Court directed that the parties "confer and by May 31, 207 propose to the court a plan and schedule for briefing the 'which waters' issues." Order at 32.

Despite this recent directive, the Federal Defendants take the position that the briefing schedule for the "which waters" issues "tentatively" set in an April 26, 2006 scheduling order (Docket No. 66) and extended in a January 19, 2007 scheduling order (Docket No. 108) should control. However, that tentative briefing schedule was specifically made "subject to possible reconsideration after completion of the briefing on the 'what process' issue." April 26, 2006 Order at 2-3. Now that the Court has in fact resolved the "what process" issue, and invited the parties to develop a new briefing plan, whatever new plan is adopted will supersede the old.

The May 17 Order resolving the "what process" issue was also important in ways that could not necessarily be predicted when the tentative schedule was discussed months ago. As noted above, the Order, while it does not specify what substantive limitations govern identification of FRWR claims in a rulemaking proceeding, does provide that the Federal Defendants need not expressly make various determinations that would be required to adjudicate the existence of a FRWR. Order at 29. Further, the Order simplifies the case, and reduces the need for immediate conclusive determinations as to all water bodies, by resolving a key point favorably to the State – holding that the Federal Defendants cannot be allowed to use a rulemaking to conclusively adjudicate the existence of FRWRs. Order at 26-27.

In light of these new developments, the parties need to reconsider goals and objectives. The State appreciates the Court's invitation to submit a new briefing schedule.

### D. **Request for Scheduling Conference.**

The State respectfully requests that the Court hold a scheduling conference call to review the issues presented by the competing briefing plans.

> Respectfully Submitted,
>
> /s/ William P. Horn
> WILLIAM P. HORN, D.C. Bar No.: 375666
> JAMES H. LISTER, D.C. Bar No.: 447878
> Birch, Horton, Bittner & Cherot, P.C.
> 1155 Connecticut Avenue, Suite 1200
> Washington, D.C. 20036
> Telephone: (202) 659-5800
> Facsimile: (202) 659-1027
> Email: whorn@dc.bhb.com; jlister@dc.bhb.com
>
> Attorneys for Plaintiff State of Alaska

Dated: June 1, 2007

G:\101445\1\BAW1409;2.DOC

12

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Plan for Briefing and attached Propose Order were served electronically, this 1st day of June, 2007 on the following:

Robert T. Anderson
Randolph H. Barnhouse
Carol H. Daniel
Steven A. Daugherty
Dean K. Dunsmore
Gregory L. Fisher
Phillip E. Katzen
Heather R. Kendall-Miller
William F. Sherman

/s/ James H. Lister _____
James H. Lister