COPY

1    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2    IN AND FOR YAKIMA COUNTY

3    IN THE MATTER OF THE DETERMINATION )
     OF THE RIGHTS TO THE USE OF THE    )
4    SURFACE WATERS OF THE YAKIMA RIVER )    NO.  77-2-01484-5
     DRAINAGE BASIN, IN ACCORDANCE WITH )
5    THE PROVISIONS OF CHAPTER 90.03,   )
     REVISED CODE OF WASHINGTON,        )
6    STATE OF WASHINGTON,               )
     DEPARTMENT OF ECOLOGY,             )
7                                       )    Memorandum Opinion:  Treaty
                                        )    Reserved Water Rights at Usual
8               Plaintiff,              )    and Accustomed Fishing Places
                                        )
9         vs.                           )
                                        )
     JAMES J. ACQUAVELLA, et al.,       )
10                                      )
                Defendants.             )
11   _____ )

12   I.   INTRODUCTION

13        This Opinion arose from Sunnyside's Motion for Declaratory Judgment

14   as to the treaty fish water right in Ahtanum Creek (Subbasin 23).  (See

15   Motion dated November 2, 1993).  It became clear from discussions in

16   court that this issue had a broader context than just Ahtanum Creek and,

17   according to the U.S. on behalf of the Yakama Nation, would eventually

18   impact all areas that were "usual and accustomed" fishing locations for

19   the Yakama Nation.  Specifically, Sunnyside Division made the following

20   four requests which this Opinion will address:

21        A.   To declare that the YIN's treaty fishing right have been

22   diminished in the Yakima River and its tributaries; that the maximum

23   scope of the diminished treaty water rights for fish remaining is the

24   specific "minimum instream flow" necessary to maintain anadromous fish

25   life only at the remaining usual and accustomed fishing places still

     protected by the June 1855 treaty with the Yakamas.

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 1

Exhibit 17
Page 1 of 15

1    B.    To declare that the U.S. and the YIN are precluded from
2  claiming water to support a fishery at any remaining usual and
3  accustomed places not specified in its pleading in ICC Cause No. 147.

4    C.    To declare that the YIN treaty fishery on Ahtanum Creek has
5  been destroyed by actions of the United States; that if the right has
6  been destroyed, the Yakima Indian Nation is entitled to no water for
7  instream flows in Ahtanum Creek.

8    D.    To exclude <u>in limine</u> introduction of any and all evidence
9  relating to treaty fishing rights inconsistent with A, B, and C above.

10    E.    To declare the U.S. and YIN are bound, precluded or estopped
11  by this Court's 5/22/90  "Memorandum Opinion Re: Motions for Partial
12  Summary Judgment", 10/22/90 "Amended Memorandum Opinion", and "Amended
13  Partial Summary Judgment" [Aff'd. <u>DOE v. YRID, et al.</u>, 121 Wn.2d 257
14  (1993)], finding, concluding and determining all YIN treaty fish water
15  rights in the Yakima River and all its tributaries including Ahtanum
16  Crek have been substantially limited and diminished to a residual right
17  ". . . necessary to maintain fish life."

18    (Sunnyside Division's Amended Consolidated Motion to Clarify
19  11/29/90 "Amended Partial Summary Judgment For Declaratory Judgment and
20  In Limine Re: Reserved Treaty Fish Water Rights.)

21  II.    OPINION

22    A.    <u>Partial Summary Judgment and DOE v. YRID</u>

23    The October 22, 1990 Memorandum Opinion Re: Partial Summary
24  Judgment (Partial Summary Judgment) considered and resolved the
25  irrigation and fishery water rights for the Yakama Indian Nation
   pursuant to their 1855 treaty with the United States. That opinion was

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights – 2

Exhibit 17
Page 2 of 15

1  limited to waters in the Yakima River and exempted consideration of the
2  Ahtanum, Toppenish, Simcoe and Satus Creeks. Mem. Op. at p. 6-7. This
3  Opinion will primarily clarify and expand the Partial Summary Judgment
4  along with considering the implications of the state Supreme Court's
5  review of that decision in DOE v. YRID, supra. However, although this
6  opinion includes Ahtanum Creek and all off-reservation Yakima River
7  tributaries, it does not apply to Toppenish, Simcoe and Satus Creeks,
8  except insofar as they are tributary to the Yakima River where
9  anadromous fish must pass through to spawn.

10      This Court held the treaty right for fish flows were diminished by
11  actions of the U.S. government and the "maximum limits of the diminished
12  treaty fishing rights is the minimum amount of instream flow that is
13  absolutely necessary for the mere maintenance of fish life in the
14  river." Mem. Op. at 55. This diminished right was affirmed by the
15  Washington Supreme Court. DOE v. YRID, 121 Wn.2d 257, 287 (1993)
16  ("although the treaty rights were not extinguished, they were
17  diminished.") This Court and the Supreme Court primarily relied on the
18  1968 settlement and dismissal in Docket No. 147 before the Indian Claims
19  Commission (ICC) in finding a diminishment had previously occurred by
20  various actions and decisions of Congress, agencies and the judiciary.
21  Id. at 287-291; Mem. Op. at 53. The petition filed with the ICC is also
22  instructive as to this matter. The petition alleged that the U.S.:

23      "in improvidently and unlawfully constructing power and
        irrigation dams in the Yakima, Naches, Tieton and Klickitat
24      Rivers and their tributaries, and in improvidently,
        negligently and unlawfully failing to install fish screens in
25      irrigation canals and laterals, in permitting the pollution of
        streams, has completely destroyed all of the usual and
        accustomed fishing locations of petitioner." ICC Petition, at

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 3

Exhibit 17
Page 3 of 15

1    11 (emphasis added).

2    In U.S. v. Dann, 873 F.2d 1189, 1198 (9th Cir.), cert. den. 493

3    U.S. 890 (1989), the court held the ICC could not extinguish Indian

4    treaty rights, that it only had jurisdiction to award damages for the

5    taking of those rights by the U.S.. The court also held that "payment

6    of [a] claims award establishes conclusively that a taking occurred",

7    even though the claim was not actually litigated. Id. at 1199.

8    Even though the diminishment standard was not specifically applied

9    throughout the off-reservation "usual and accustomed fishing locations"

10   in the Partial Summary Judgment, the ICC claim had at least that much

11   reach and res judicata would apply to fishery water rights on those

12   tributaries. The U.S. apparently does not totally disagree with this

13   ruling. During the November 4, 1993 oversight hearing, Charles

14   O'Connell stated on behalf of the U.S.:

15       [This opinion (Partial Summary Judgment) deals solely with the
         treaty rights of the Yak[a]ma Nation...with regard to the
16       treaty rights to satisfy irrigation needs because, if you read
         your opinion, it's bifurcated.... You address the treaty
17       rights for irrigation needs and then you address the treaty
         rights for fishing purposes. And I think that language there
18       was meant to go to the Yak[a]ma Indian's rights to the use of
         Yakima River water to satisfy its irrigation needs. I think
19       your...fishing rights discussion was more expansive...than
         merely the Yakima River. ...Because you found that there is
20       federal action in the basin that diminished the Yak[a]ma
         Indian Nation's treaty fishing rights and that the...Indian
21       Claims Commission's decision merely confirmed that. Transcript
         of Proceedings, November 4, 1993 p. 108
22

23   In that the Partial Summary Judgment dealt with two matters,

24   irrigation and fishery rights, and the Court primarily had irrigation

25   rights in mind when it limited the Opinion to the Yakima River, the U.S.

     is correct. Accordingly, the ruling regarding treaty fishing rights,

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 4

Exhibit 17
Page 4 of 15

1  like the ICC claim, was intended to be more basin-wide. From the

2  passage quoted above and from information submitted by the U.S. during

3  briefing, the federal government, on behalf of the YIN, agrees the

4  Partial Summary Judgment applies to some of the Yakima's tributaries.

5  Amended Notice of Water Right Claims For Instream Flows in Yakima River

6  Basin Tributary Watersheds, March 1, 1994 ("It is the position of the

7  United States that this Court's amended partial summary judgment

8  ...awarded diminished water rights for instream flows...in the Yakima

9  River and those tributary watersheds that are controlled and/or affected

10 by the Yakima Reclamation Project").

11      B.   Basin-wide Diminishment

12      Because all parties agree that the diminished water right applies

13 to the Yakima River and creeks tributary thereto, the issue reduces to

14 which tributaries are diminished pursuant to the Partial Summary

15 Judgment. The non-Indian irrigators argue fishing rights to all off-

16 reservation tributaries are diminished or extinguished based on concrete

17 historical evidence and mention in the ICC claim of "all of the usual

18 and accustomed fishing locations of petitioner." The U.S. argues only

19 those rights in areas specifically served by the Yakima Project were

20 diminished by the Court's previous opinion with the remainder carrying

21 an undiminished right. Id. In support, the U.S. cites to this Court's

22 decision vesting the Superintendent of the Yakima Project, in

23 consultation with SOAC, with decisionmaking authority as to necessary

24 stream flows for maintenance of fish life. Transcript of Proceedings,

25 November 4, 1993, at 109. Additionally, the U.S. asserts it was this

Project's effects on the fish flows that were at issue in this Court's

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 5

Exhibit 17
Page 5 of 15

1  opinion and the basis for the ICC claim. Thus, the diminishment ruling

2  should have only as much reach as the Yakima Project.

3      In regard to the U.S. and the YIN, although the Court made the

4  decision to vest the Superintendent with authority to set necessary in-

5  stream flows, that decision was apart from the one pertaining to the

6  actual water right.  The decision to award a diminished water right,

7  both by this Court and the Supreme Court was based on the proceedings

8  before the ICC and actions by Congress, administrative bodies and the

9  judiciary.  See Part. Summ. Judgment, May 22, 1990 at p. 53; DOE v.

10 YRID, supra, at 291.  This Court is also not persuaded to limiting it's

11 ruling to tributaries with actual Project facilities and diversions

12 because of its effects on fish migration.  Even though the ICC claim was

13 very specific, it did not make such a distinction.  Rather, there were

14 several bases for the diminishment including "the failure of defendant

15 to properly protect the property of" the YIN, failure to install screens

16 and permitting pollution of streams; actions not specifically tied to

17 the Project.  ICC Claim at p. 11, para. XVI.  Additionally, the claim

18 specifically sought damages for destruction of the fishery in the

19 "Yakima, Naches, Tieton and Klickitat rivers and their tributaries." Id.

20 Even if we were to accept the U.S.'s argument that only a few rivers are

21 affected directly by the Project, that does not mean the smaller creeks

22 tributary to those Project rivers are unaffected by it in regard to fish

23 flows.  See KRD v. SVID, Civil Cause No. 21, Fed. Dist. Court, Jan.

24 31,1945 p. 25-26 ("[F]lood water is available....when, as determined by

25 the Yakima Project Superintendent, there is flowing over the Sunnyside

   dam flood water in excess of the amount... necessary for proper river

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 6

Exhibit 17
Page 6 of 15

1  regulation, <u>including in said amount the amount necessary to protect</u>

2  <u>fish life in the river below said dam.</u>")   Emphasis added.

3      The Court believes both sides have taken a too-narrow focus of the

4  geography at issue.   The Court is mindful of the fact this is a water

5  rights adjudication; fish allocation was settled in other venues.   <u>See,</u>

6  <u>e.g., Wash. v. Wash.Comm. Pass. Fishing Vessel Assn.</u>, 443 U.S. 658

7  (1979).   Additionally, fish migration makes the interpretations of both

8  sides illogical and impractical for purposes of the adjudication.   For

9  example, YIN argues that

10      "[i]f there is otherwise an 'undiminished' right on certain
        tributaries, the difficulty of fish to reach those tributaries
11      because they may, perhaps, have to swim through or past
        "diminished" usual and accustomed fishing sites thus does not mean
12      there is not an undiminished water right for fish at those sites."
        YIN's Response Brief at 24.
13

14      This conclusion fails to address the effects of the ICC action.

15  The mainstem Yakima fishery water right is diminished because of the

16  effects of reduced flows, dams and unscreened irrigation canals, etc.

17  <u>See</u> ICC Petition.   Accordingly, fish trying to reach tributaries may be

18  prevented from this goal at numerous points along the way.   A fish

19  attempting to spawn in Park Creek, who is inadvertently diverted into

20  the Wapato Project canal, makes up a fish run that is diminished in both

21  the Yakima River (not available for capture at a usual and accustomed

22  place) and Park Creek (cannot spawn, thereby not producing more fish to

23  be taken or harvested at a usual and accustomed fishing place.)

24      The effect of the U.S.'s actions or inactions on fish throughout

25  the basin and the resulting inability to take fish at certain places was

    at issue in the ICC action.   ("That since the year 1900, by reason of

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 7

Exhibit 17
Page 7 of 15

1  these acts of the defendant, at these usual and accustomed fishing
2  places of the Yakima Tribe located at and along the Yakima, Naches,
3  Tieton and Klickitat rivers, <u>the salmon and other valuable food fish</u>
4  <u>ceased to run in any material numbers</u>....") ICC Complaint § 16. If our
5  hypothetical fish returns to a tributary not listed in the ICC claim and
6  is unable to spawn for lack of stream flow, does that not deprive the
7  YIN an opportunity to take fish, if they migrated to the ocean and
8  return, as they pass "usual and accustomed" fishing locations on the
9  Yakima, Naches and Tieton rivers and their tributaries, i.e.; a
10 "diminished" right?

11      This Court interpreted the meaning of "Yakima River and its
12 tributaries" in the context of the "limiting agreements." Memorandum
13 Opinion Re: Limiting Agreements, June 16, 1993. Therein, the Court
14 determined a limitation on diversions from the Yakima River and its
15 tributaries included <u>all</u> waters tributary to the Yakima River. Mem. Op.
16 at 27. The phrase would seem to have the same applicability in this
17 setting. If anything, the ICC claim is more clear than the limiting
18 agreements as it applied to the "Yakima, Naches, Tieton and Klickitat
19 rivers and their tributaries." Although the Yakama Nation would have
20 the Court read this as applying to the Yakima River and specific
21 tributaries, <u>i.e.</u>, the Naches and Tieton Rivers (an argument identical
22 to that advanced by the irrigators in the Limiting Agreement dispute),
23 the specificity and plain wording of the complaint convinces the Court
24 as to the ICC's applicability to the various small creeks which drain
25 into those specified waterways.

    The Limiting Agreements opinion examined the BOR's reliance on the

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 8

Exhibit 17
Page 8 of 15

1  waters from the small tributaries in calculating the Total Water Supply
2  Available (TWSA). If the U.S. relies on the argument the ICC claim only
3  applied to and diminished those waters that are part of the project,
4  then they must consider these tributaries, at least for some limited
5  purposes, part of the project. They did so in arguing the meaning of
6  the Limiting Agreements.   See, inter alia, Mem. Op. Re: Limiting
7  Agreements; see e.g. U.S. Reply Brief at 2,3 and 21 ("Interpreting the
8  limiting agreements [as only applying to a few major tributaries]...
9  would seriously undermine the continued success of the Project").

10    This Court believes all water courses in the Yakima Basin are
11 connected, in regard to fish and the Project, and each cannot be looked
12 at entirely in their individual capacity.   Such is the meaning and
13 result of the ICC action. The Supreme Court appears to reach a similar
14 conclusion in holding that

15    "the settlement of the Yakima Indian's claim for damage to fishing
      right in the Yakima Basin constituted an acknowledgment that a
16    "taking" had occurred, that the Indians' reserved water right for
      fish had been diminished, and precludes the Indians from arguing
17    that those rights have not been diminished in any respect." DOE v.
      YRID, supra, at 257, 303 (emphasis added).
18

19    The Partial Summary Judgment defined the diminished right as an
20 amount necessary to maintain fish life in the Yakima River. To achieve
21 that, in light of the anadromous fish life cycle, a diminished right is
22 imperative for the tributaries that serve as spawning grounds. Fish
23 life cannot be maintained without a place for fish to spawn. The
24 Superintendent of the Yakima Reclamation Project, in consultation with
25 SOAC, shall administer those waterways to maintain fish life and comply
   with this Court's opinion. The U.S. and YIN are barred from claiming a

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 9

Exhibit 17
Page 9 of 15

1  greater right to any off-reservation Yakima River tributaries.

2  III. <u>AHTANUM CREEK FISHERY RIGHT</u>

3      Although the Court's ruling above establishes a diminished water
4  right in the appropriate off-reservation tributaries for maintaining
5  anadromous fish life in the Yakima River and its tributaries, the Court
6  must now make a specific determination as to the fishery water right in
7  Ahtanum Creek. Ahtanum presents unique factual and legal circumstances,
8  as to the history of fish life and the actions of the U.S., that is
9  unlike any other water course in the basin. Moreover, Ahtanum is the
10 first on-reservation tributary to be considered by the Court. Based on
11 these unique events, the Court makes the following conclusions.

12     Geographically, Ahtanum Creek defines part of the northern boundary
13 of the Yakama Reservation. Transcript of Proceedings, Council between
14 Governor Stevens and Tribes of Indians, June 9, 1855. The Treaty of
15 1855 reserved rights in and to Ahtanum Creek for the YIN. <u>Winters v.</u>
16 <u>United States</u>, 207 U.S. 564 (1908)(When the United States establishes a
17 reservation for Indians, it reserves not only land, but also sufficient
18 water to fulfill the reservation's purposes); <u>United States v. Ahtanum</u>
19 <u>Irrigation</u>, 236 F.2d 321 (9th Cir. 1956). The Court notes the treaty
20 secures two types of fishing rights, depending on the location of the
21 stream. Article 3 reserves "[t]he exclusive right of taking fish in all
22 the streams, where running through or bordering said reservation.... as
23 also the right of taking fish at all usual and accustomed places, in
24 common with the citizens of the Territory...."

25     To determine the Ahtanum Creek water rights has required two
   adjudications, an agreement between the U.S. and north-side (non-

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 10

Exhibit 17
Page 10 of 15

1    reservation) users, and two visits by the U.S. Court of Appeals, Ninth

2    Circuit.   These activities took place from approximately 1908 to 1964.

3    Additionally, the Washington Supreme Court analyzed the Ahtanum Creek

4    water rights to glean principles for determining Yakima River water

5    rights.   DOE v. YRID, 121 Wn.2d 257, 281-283 (1993).

6         In 1908 two relevant activities took place: the U.S Supreme Court

7    decided Winters v. United States, 207 U.S. 564, followed by the Bureau

8    of Indian Affairs (BIA) entering into an agreement with the northside

9    irrigators.    In that agreement, an agent for the BIA, W.R. Code,

10   promised the northside landowners 75% of the water while reserving the

11   Indians a 25% share.   The Ninth Circuit, although acknowledging that

12   such an agreement was "one practically without precedent", United States

13   v. Ahtanum Irrig. Dist., 236 F.2d 321, 331 (1956), found the so-called

14   "Code agreement" was valid as an exercise of the general power bestowed

15   on the Secretary of Interior by Congress in order to manage Indian

16   affairs.   Id. at 336.   Therefore, the Secretary could make "a peaceful

17   arrangement for a practical mode of use of the waters of this stream."

18   Id.; see also DOE v. YRID, supra, at 282.    This Court must decide if

19   the 1908 agreement together with actions by the United States in

20   constructing and operating the Wapato Irrigation Project have diminished

21   or extinguished the YIN's treaty fishing right in Ahtanum Creek.   That

22   the Code agreement, as interpreted by the Ninth Circuit, settles and

23   establishes all irrigation claims, there can be little doubt.    The

24   agreement itself sets forth the following:

25             "THAT WHEREAS the parties hereto claim certain quantities of
             water in the Ahtanum Creek, County of Yakima, State of
             Washington, and a right to divert the same for irrigation

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 11

Exhibit 17
Page 11 of 15

1          purposes...." (emphasis added).

2      Additionally, Article 6 states:

3          "It is further understood and agreed that the water herein
           divided between the parties hereto may be used for domestic,
4          power, stock, and irrigation purposes."

5  In the first appeal, the Ninth Circuit set out the U.S.' complaint in

6  the quiet title suit on behalf of the YIN for irrigation waters to

7  successfully cultivate the arid reservation lands. Ahtanum at 236 F.2d

8  321.    Nowhere are treaty fishing rights specifically referred to.

9  However, this Court determined in the Partial Summary Judgment that

10 there can be more than one primary purpose for treaty reserved waters,

11 including an in-stream right for fish.    See pages 44-45; see also,

12 Colville Confederated Tribes v. Walton, 641 F.2d 42 (1981) cert. denied.

13     The Ahtanum court also required any agreement which purports to

14 compromise Indian water rights be "construed most strongly in favor of

15 the Indians." 236 F.2d at 340;    construed in, Ecology v. YRID, 121

16 Wn.2d 257, 283.    In Ecology, the Supreme Court then proceeded to make

17 the following holding:

18         "We further hold that the same rules of construction that
           apply when considering whether Congress intended to abrogate
19         treaty rights should be applied in construing the actions of
           the Secretary of the Interior." Id.
20

21     That rule of construction, as determined in U.S. v. Dion, supra,

22 requires there be a clear indication that the Secretary at least

23 considered the fact he was extinguishing the Indians' right to fish in

24 their usual and accustomed places by his actions. Ecology at 283.  Such

25 a clear expression of an intent to abrogate fishery rights is not in the

Code agreement nor the Pope Decree.    Additionally, the Ecology court

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 12

Exhibit 17
Page 12 of 15

1 | noted the Code agreement was like the 1905 agreement limiting YIN's
2 | rights to Yakima River water and then held such an agreement did not
3 | abrogate treaty fishery water rights. Id. at 282.

4 | Given a treaty fishery right existed, was it diminished by actions
5 | of the U.S. in operating the Yakima and Wapato Irrigation Project and by
6 | the damages awarded as part of the ICC claim? The U.S. and the YIN
7 | argue it was not the U.S., but rather northside irrigators that caused
8 | the near-total extinction of fish life on Ahtanum Creek. The non-Indian
9 | irrigators counter, stating it was development of the reservation
10 | project that caused the demise of salmon runs and the Pope Decree ruling
11 | allowing the WIP to divert all streamflow after July 10, that has nearly
12 | sealed the demise of Ahtanum anadromous fish runs. Interestingly,
13 | Ahtanum Irrigation District takes the position that the fish on Ahtanum
14 | Creek have rights and an instream flow should be maintained year round
15 | even if that requires a reduction in AID's water allocation.

16 | From a review of the factual record, irrigators on both banks were
17 | instrumental in the destruction of fish runs. Early on, non-Indian,
18 | north-side irrigators were alleged to have diverted water to the
19 | detriment of the fish. (Report of Dr. Barbara Lane; Letter from Jay
20 | Lynch to Comm. of Indian Affairs, Aug. 14, 1901.) Around 1900, the
21 | predecessor to the BIA began construction of an irrigation system for
22 | service to the reservation. Ten ditches were diverting Ahtanum water by
23 | 1907. By 1915, the irrigation project was substantially completed on
24 | the reservation and served approximately 5000 acres. Ahtanum, 236 F.2d
25 | at 327. Finally, after the second visit to the Ninth Circuit, it was
decreed in 1964 that on-reservation irrigators would receive the entire

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 13

Exhibit 17
Page 13 of 15

1  flow of Ahtanum Creek after July 10 of each year.  U.S. v. Ahtanum
2  Irrigation District, 330 F.2d 897, 915 (1964).  According to non-Indian
3  irrigators, since that award, the Wapato Irrigation District has
4  operated in a manner that completely dries up the stream below the #1
5  canal diversion from July 10 to mid-October.  (See also affidavit of
6  John Monahan as to the "dewatering of the middle Ahtanum.)

7      On the other hand, the United States and the fish have not
8  completely forsaken Ahtanum Creek.  In the 1930's, fish screens were
9  installed in the government canal.  Recently, additional screening of
10 south side diversions has taken place to help restore runs.  Such
11 activities were relied on by the Supreme Court in finding that even
12 though inconsistent activities had been pursued by the U.S. for
13 irrigation, there remained some continued recognition of the treaty fish
14 right.  DOE v. YRID, supra, at 287.  As to the existence of fish life,
15 the affidavit of John Monahan acknowledges there is some (although very
16 limited) remnants of fish life.  Finally, the ICC action compensated
17 only for damages arising before August 13, 1946.  25 U.S.C. § 70a.

18     Based on the above, the Court has determined the Ahtanum Creek
19 fishery right, though severely diminished, has not been completely
20 destroyed.  The United States has taken some steps to preserve the
21 fishery and cannot shoulder complete responsibility for the current run
22 decline.  However, the United States has made certain decisions for
23 water allocation contributing to the decline.  Thus, executive,
24 administrative and judicial actions by the U.S. from 1908 onward,
25 coupled with the ICC action, contributed to a water right diminishment
   that now equals an amount necessary to maintain fish life, no more.

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 14

Exhibit 17
Page 14 of 15

1  Because the Wapato Irrigation Project (WIP) is an independent portion of
2  the Yakima Project, the Court vests the WIP superintendent with
3  authority to make decisions on the amount of water necessary to maintain
4  fish life under the existing prevailing conditions.  If water is made
5  available by improvements to irrigation systems or otherwise on either
6  side of the creek, additional water can be devoted to enhancement.
7  However, such water is subordinate to existing diversion rights as set
8  forth in the Pope decree.  U.S. v. Ahtanum Irrig. Dist, supra.

9  IV.  CONCLUSION

10      This Court held in the Partial Summary Judgment that the Yakama
11 Indian Nation treaty fishery right had been diminished to an amount of
12 water necessary to maintain fish life.  The Washington Supreme Court
13 affirmed.  The Court now extends that decision to include all Yakima
14 River tributaries affecting fish availability at the YIN's "usual and
15 accustomed" fishing stations.  Such rights carry a priority right of
16 time immemorial.  The Court extends the authority of the Yakima Project
17 Superintendent, in consultation with SOAC, to make that decision.  The
18 Court also extends that ruling to include Ahtanum Creek, part of the
19 northern border of the Yakama Reservation.  The Wapato Irrigation
20 Project Superintendent shall make that decision depending on the
21 existing prevailing conditions as to Ahtanum Creek and to the on-
22 reservation creeks, i.e., Toppenish, Simcoe and Satus Creeks.

23      Dated this  1st  day of  September 1994.

24

25                                    _____
                                      Judge Walter A. Stauffacher

Usual and Accustomed Places: Treaty
Reserved Fishing Water Rights - 15

Exhibit 17
Page 15 of 15