

United States Department of the Interior



OFFICE OF THE SOLICITOR
Pacific Northwest Region
500 N. E. Multnomah Street, Suite 607
Portland, Oregon 97232

BIA. PN. 0739

**APR 2 3 1993**

MEMORANDUM

TO:        George Gover, Acting Area Director
           Portland Area Office, Bureau of Indian Affairs
           Attention:    Robert Fenton, Hydrologist
                         Water Resources, Branch of Land Services

FROM:      Office of the Regional Solicitor

SUBJECT:   Snake River Basin Adjudication:   Off-Reservation Public
           Domain Allotments

As you know, on March 25, 1993, the United States filed water
rights claims in the Snake River Basin Adjudication (SRBA) for four
off-reservation public domain allotments.  We need additional
factual information regarding each of these off-reservation public
domain allotments in order to prove the priority date for the water
rights claimed by the United States in the SRBA.  That information
is described below.

I.    Wyandotte Allotments WY-161, WY-144, WY-120

Three of these off-reservation parcels, known as Wyandotte
Allotments WY-161, WY-144, and WY-120, are located in parts of
Section 2 and Section 11, Township 1 South, Range 4 East of Elmore
County, Idaho.  These three parcels were apparently selected by
members of the Wyandotte Tribe of Oklahoma[1] pursuant to the Act of
April 28, 1904, titled "An act to authorize the Absentee Wyandotte
Indians to select certain lands, and for other purposes".  33 Stat.

---

[1] The Wyandotte Tribe of Oklahoma is listed in the Bureau of
Indian Affairs' July 10, 1986 listing of "Indian Tribal Entities
Recognized and Eligible To Receive Services From the United States
Bureau of Indian Affairs", 51 Fed. Reg. 132.  From what we are able
to determine, the Wyandotte Tribe of Oklahoma has no reservation
land base at this time.  However, the Tribe previously had some
reservation land base in the Indian Territory of Oklahoma.  See,
e.g., the Act of June 10, 1896, 29 Stat. 321, 343, reprinted in I
Charles J. Kappler, Indian Affairs: Laws and Treaties (Washington:

Exhibit 21
Page 1 of 5

519.[2] This Act could best be described as a special allotment act for a small group of Indians to select agricultural allotments from the nonmineral surveyed public domain.

Each parcel is held by the United States in restricted fee status for the heirs of the original allottee. Restricted fee patents were issued by the United States to the original allottee on the following dates:

WY-161    Patent Number 613446 issued by the United States to Wallace B. Armstrong on February 12, 1918

WY-144    Patent Number 350146 issued by the United States to Leonora E. Armstrong on August 14, 1913

WY-120    Patent Number 333847 issued by the United States to E. Paul Armstrong on May 14, 1913

The claims which were filed by the United States in the SRBA on March 25, 1993 included the date of the issuance of the restricted fee patent as the priority date for the water rights claimed for the particular parcel. However, there is an argument that the lands were withdrawn from the public domain on the date of the selection by the original allottee, or on the date of the selection by the United States on behalf of the original allottee. Since the restricted fee patents were not issued by the United States to the original allottee until between nine and fourteen years after the enactment of the legislation authorizing the selection, the history of the selection process becomes important to the assertion of the

---

[2] The Act of April 28, 1904, provided authorization for each living adult Absentee Wyandotte Indian whose name appears on a census roll of Absentee Wyandotte Indians (made by Special Agent Joel T. Olive, as approved by the Secretary of the Interior on December 7, 1896), the heir of any deceased Absentee Wyandotte Indian on that census roll, or the natural or legal guardian of any minor Absentee Wyandotte Indian on that census roll, to select eighty acres of agricultural land from the surveyed public nonmineral domain wherever there were such lands subject to entry under the public land laws. The Act further provided that

when such lands shall have been so selected . . . and such selection is approved by the Secretary of the Interior, he [the Secretary] shall cause a patent to issue in the name of the enrolled Absentee Wyandotte by or for whom such selection was made, which patent shall contain the condition that the lands covered thereby shall not be aliened without the consent of the Secretary of the Interior.

33 Stat. 519. III Kappler 98.

Exhibit 21
Page 2 of 5

priority date for the water rights claims for these parcels.

We request that you look into this matter further to determine what the selection process for these off-reservation public domain allotments entailed. I have no idea what factual information may be available, but I assume that there may be documents available which would support the assertion of an earlier priority date for the water rights for each parcel. It would also be useful if you would get a copy of the census roll of Absentee Wyandotte Indians made by Special Indian Agent Joel T. Olive and approved by the Secretary of the Interior on December 7, 1896. That information may lead to relevant correspondence between those individual Indians, the Special Indian Agent, and the Fort Hall Agency and others within the Bureau of Indian Affairs or the Department of the Interior who were involved in the selection process.

It is important that this additional factual information be obtained as soon as possible. If the results of this factual research support the assertion of an earlier priority date for the water rights claims for these three off-reservation public domain allotments, the United States may need to file amended water rights claims in the SRBA.

## II.    Allotment No. 72

The fourth off-reservation public domain allotment known as Allotment No. 72, is located in Section 36, Township 6 South, Range 38 East which is south of the Fort Hall Indian Reservation along Toponce Creek. This tract is held by the United States in restricted fee for the heirs of Mo-vish. The title history information which the Bureau of Indian Affairs and HKM have been able to piece together reveals that a restricted fee patent was issued to Mo-vish on November 17, 1915. That restricted fee patent was issued by the United States "in lieu of one dated May 3, 1902" and was issued pursuant to the Act of February 23, 1889, 25 Stat. 688.[3] Allotment No. 72 is currently held by the United States in

---

[3] Article VI of the Fort Bridger Treaty of July 3, 1868, 15 Stat. 673, between the United States and the Eastern Band of the Shoshonees and the Bannock Tribe of Indians provided that any Indian who wanted to begin farming could select a tract of land "within the reservation of his tribe" which thereafter would be held in his exclusive possession so long as he continued to cultivate the tract. 15 Stat. 673, 675. Article II of the 1868 Fort Bridger Treaty provided for the establishment of a separate reservation for the Bannock Indians. 15 Stat. 673, 674. The Fort Hall Indian Reservation was established by companion Executive Orders dated June 14, 1867 and July 30, 1869. I Kappler 835, 838. On May 14, 1880, the Tribes and the United States entered into an Agreement which directed that allotments in severalty should be made on the Fort Hall Reservation. 25 Stat. 687. That Agreement was ratified by on February 23, 1889. 25 Stat. 687. On February 5, 1898, the United States and the Tribes entered into a third

Exhibit 21
Page 3 of 5

restricted fee status for a number of heirs of the original allottee.

From the information provided, it appears that Allotment No. 72 was included with 22 other identified allotments which were decreed water rights in the Decree entered in United States v. Hibner, 27 F.2d 909 (D. Id. 1928). It further appears that the court in Hibner did not specifically quantify the water rights of the United States for Allotment No. 72.[4] However, the court did decree a priority date of February 16, 1869 for the water rights for Allotment No. 72.

In the claims filed March 25, 1993 by the United States in the SRBA, the government asserted federal reserved water claims for Allotment No. 72 with a priority date of February 16, 1869, the priority date for the water rights for Allotment No. 72 decreed by the court in Hibner. We request that you obtain a copy of the Decree entered in the Hibner case, and any other factual information available which documents the irrigation and title history of Allotment No. 72.

As always, if you have any questions concerning these matters, please call me at (503) 231-2141.

For the Regional Solicitor

— Susan K. Driver

Susan K. Driver
Attorney
Pacific Northwest Region

---

Agreement whereby the Indians ceded to the United States lands comprising the southern portion of the Fort Hall Indian Reservation. 31 Stat. 672. That Agreement was ratified by Congress by the Act of June 6, 1890. 31 Stat. 672. Article 3 of the Agreement of February 5, 1898 provided that any Indians who had taken lands and made homes on the reservation and were then occupying lands which were ceded could retain the tracts which they had taken possession of under the 1868 Fort Bridger Treaty and would receive them as allotments. 31 Stat. 672, 673.

[4] In United States v. Hibner, 27 F.2d 909 (D. Id. 1928), the federal court upheld the rights of the individual Indian allottees "to a continuous right through the entire year to the use of one miner's inch of water per acre for the irrigation of that portion of their lands which the evidence discloses is susceptible to irrigation, and with a priority date of February 16, 1869." Id. at 911. It is unclear at this time whether the court heard evidence regarding which lands of Allotment No. 72 were "susceptible to irrigation".

Exhibit 21
Page 4 of 5

cc:   Lynn R. Collins, Regional Solicitor, Intermountain Region

John Trezise, Acting Associate Solicitor
Division of Indian Affairs
Attention:      Anne Crighton, Assistant
                Branch of Water and Power

Peter Monson, Attorney, Indian Resources Section
Environment and Natural Resources Division
U. S. Department of Justice

Exhibit 21
Page 5 of 5