# AGUILAR AND TITLE RECOVERY HANDBOOK FOR NATIVE ALLOTMENTS

### 1992





EXHIBIT 4
Page 1 of 3

## CHAPTER I - INTRODUCTION

A. <u>Background.</u>  In 1971, Ethel Aguilar timely filed a Native allotment application with the Department of the Interior. The Bureau of Land Management (BLM) rejected her application, along with seven others, because the lands for which these applicants applied were patented to the State of Alaska in the early 1960's. The Interior Board of Land Appeals (IBLA) affirmed BLM's decision in <u>Ethel Aguilar et al.</u>, 15 IBLA 30 (1974), stating that even though a patent may have been issued by mistake, it vested title in the State and removed from jurisdiction of the Department of the Interior the right to inquire into and consider any disputed issues. The applicants challenged the IBLA decision in U. S. District Court.

In 1979, the District Court in <u>Aguilar v. United States</u>, 474 F. Supp. 840 (D. Alaska 1979) (see Appendix 1), remanded the cases back to the Department of the Interior with instructions to adjudicate. In the decision, Judge von der Heydt held that use and occupancy prior to a State selection gave Native allotment applicants a <u>preference right</u> which was not eliminated simply because the State filed an application prior to the Native filing an application. (See <u>Native Allotment Handbook</u>, Chapter II. A. <u>Effect of Filing a Native Allotment Application</u> for more information on preference rights.) Therefore it was ruled that the Department of the Interior has a responsibility to determine whether land conveyed to the State of Alaska was mistakenly or wrongfully conveyed based on the fact that a Native allotment application, filed subsequent to the conveyance, claims use prior to the State selection application. The court ordered the Department to adjudicate the allotment claims and found that, if the allottees have a superior claim "it is the responsibility of the defendant [United States] to recover the land."

In 1983, the parties in the Ethel Aguilar case, agreed to Stipulated Procedures for the implementation of the 1979 order (see Chapter II and Appendix 2). These stipulations are the basis for the <u>Aguilar</u> procedures and guidelines set out in Chapter II of this handbook.

Title recovery is not always associated with the <u>Aguilar</u> process. It can be used in certain instances with Native allotments where following the <u>Aguilar</u> stipulations is not necessary (see below under B. <u>Scope</u>) or it can be used with other case types. Chapter III of this handbook is intended to cover all title recovery steps involving Native allotments. The 1985 <u>Title Recovery and</u>

1

EXHIBIT 4
Page 2 of 3

Conveyance Correction Handbook is still current and should be used for all other case types and for document correction.

B. Scope. Although the Aguilar stipulations address the process for adjudication of Native allotment claims on land patented to the State, they also fulfill the due process requirements for adjudication of allotment applications in similar situations, such as land tentatively approved (TA'd) to the State, patented or interimly conveyed (IC'd) to a Native corporation, or patented to a private party. See State of Alaska v. 13.90 Acres of Land, 625 F. Supp. 1315, 1319 (D. Alaska 1985); State of Alaska v. Thorson (On Reconsideration), 83 IBLA 237, 254, 91 I.D. 331, 341 (1984). Therefore, the use of the Aguilar stipulations has been extended to all types of conveyed land.

Aguilar procedures will also be used for lands approved to the State under the Mental Health Enabling Act. These approvals must be treated like tentative approvals (see Tyonek Native Corp. v. Secretary of Interior, 836 F. 2d 1237 (9th Cir. 1988) and Solicitor's opinion of April 11, 1988).

The Aguilar procedures will not be used if title recovery is required due to adjudication error (e.g., failure to exclude a valid allotment with the correct location shown on the record at the time the land was conveyed to another party). In these cases, go directly to title recovery.

Aguilar procedures also do not apply if the allotment is on TA'd land in a core township.

If an allotment was excluded from a TA or an IC, and as a result of survey the legal description of the allotment has shifted within the TA'd or IC'd boundary, it is not necessary to follow the Aguilar process if the State concurs in or if the Native corporations affirm the TA'd or IC'd boundary, respectively, as excluding the allotment as surveyed. See Native Allotment Handbook, Chapter VIII. Title Affirmation/Concurrence, for special procedures in these cases.

If an allotment was not excluded from a conveyance but was legislatively approved pursuant to the Alaska National Interest Lands Conservation Act (ANILCA) (i.e. title passed from the United States after June 1, 1981 and all ANILCA criteria are met), do not follow the Aguilar procedures and proceed directly to requesting voluntary reconveyance (see Chapter II. J. Request for Voluntary Reconveyance). Since the applicant is not required to prove use and occupancy on a legislatively approved allotment, a stipulation no. (Stip.) 4 letter is not necessary.