Heather R. Kendall-Miller
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 505
Anchorage, Alaska 99501
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
Email: kendall@narf.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE JOHN, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.* <br><br> Defendants. | No. 3:05-cv-00006 (HRH) <br> (Consolidated) |

# PLAINTIFFS KATIE JOHN *et al.* BRIEF IN RESPONSE TO STATE OF ALASKA

Plaintiffs' Katie John *et al.* submit this brief in response to the State of Alaska's Opening Brief on the "Which Waters" issue (Dkt. No. 134), hereinafter referred to as "State Br." As discussed below, the State's legal premises for narrowing federally reserved waters lacks any foundation in the law and has been refuted by controlling Supreme Court precedent.

ARGUMENT

## I. WHETHER WATERS HAVE BEEN FEDERALLY RESERVED FOR ANILCA's VARIOUS CONSERVATION SYSTEM UNITS IS CONTROLLED BY THE CONGRESSIONAL PURPOSES FOR WHICH THOSE UNITS WERE RESERVED

The State contends that "[t]he legality of the agency identifications of federally reserved waters hinges on the meaning of 'appurtenant' and the actual nature and extent of the interest associated with a valid FRWR." State Br. at 31. That is plainly incorrect.

As the Supreme Court has long held, the scope and nature of a federally reserved water right is controlled exclusively by the intent of Congress and the purposes for which the lands at issue are reserved. K.J. Br. at 27 (discussing *Cappaert v. United States*, 426 U.S. 128, 141 (1976)). In analyzing such issues, a court must therefore "carefully examine[] both the asserted water right and the specific purpose for which the land was reserved, and conclude[] that without the water the purposes for which the land was reserved would be entirely defeated." *United States v. Mexico* 438 U.S. 696, 700 (1978).

The State's approach simply disregards this controlling law – indeed, it does not even pretend to assess the purposes for which Congress established <u>any</u> of the CSUs at issue here, much less discuss the extent to which the waters identified by the agency (or the waters claimed by the Katie John plaintiffs) are necessary to carry out those purposes. Not once does the State

even mention the specific purposes of ANILCA's various CSUs. Not once does the State address whether those congressional purposes would be defeated without water. The State's failures here are fatal to its contention that the agency has somehow erred in identifying federally reserved waters.

Abandoning the doctrinal underpinnings of the reserved waters doctrine, the State chooses to rest its entire case on its preferred construction of the word "appurtenant," and the assertion that federally reserved water rights exist only as to waters physically within a reservation. State Br. at 7, 30, 31, 43. The State makes the same assertion repeatedly, as if by doing so it will be true. But the Supreme Court long ago held to the contrary.

In *Arizona v. California*, 373 U.S. 546 (1963), the Court addressed federally reserved water rights associated with various reservations (including national forests, national parks, national monuments, public springs and waters, public mineral hot springs and five Indian reservations). In an original action initially involving only the two States, the federal government intervened to assert the water rights of various federal reservations, including the five Indian reservations. The Court examined both the asserted water rights and the specific purposes for which these five reservations were reserved. The Court recognized that the federal government "intended to deal fairly with the Indians by reserving water for them without which their lands would have been useless." *Id.* at 600. The Court then held that the statute and executive orders which established these reservations implicitly reserved water for agricultural purposes. This award specifically included water for the Cocopah Reservation, which does not border the Colorado River and is located several miles from the water source. *See Arizona v. California*, 376 U.S. 340, 344 (1964). *Arizona* establishes that federally reserved water rights may be drawn

from water sources that do not traverse, border or abut a federal reservation, so long as those water rights are necessary to fulfill the purposes of the federal reservation. *See also* Michael C. Blumm, *Reserved Water Rights in 4 Waters and Water Rights* § 37.01(b)(3) (Robert E. Beck ed. 1991) (discussing the Arizona Court's award of water for the Cocopah Reservation and noting "that reserved rights may be drawn from water sources that do not traverse or border on reservations.").

The Supreme Court's award of off-reservation water for the Cocopah Indian Reservation in *Arizona* cannot be explained away. It is not some anomaly. The standard for assessing an asserted water right for an Indian reservation is the same as the standard for assessing such a right for a public land reservation: in both contexts, "appurtenant" does not describe physical proximity but the legal right to use the benefits of water necessary to support the purposes for which the reservation was reserved. This is clear from *Cappaert v. United States*, 426 U.S. 128 (1976), where the Supreme Court upheld enforcement of on-reservation reserved rights against private users located off the reservation. *Id.* at 147. At issue was the off-reservation pumping of ground water by private wells located up to two and one-half miles away from the forty-acre Devil's Hole National Monument. *Id*. at 133. The Monument was created, in part, to preserve a small pool holding a unique species of desert fish. *Id*. at 141. Finding that "federal waters were being depleted" by ground-water pumping, the Court held that "the United States can protect its water from subsequent diversion, whether the diversion of surface or groundwater," regardless of the location of that diversion some distance away from the reservation. *Id*. at 142-43. In so ruling the Court recognized a federal right, not only in the pool's water, but in the off-reservation ground water supplying the pool.

*Arizona* and *Cappaert* establish that water "appurtenant" to reserved lands does not refer to some physical attachment of the water to the land, but to the legal doctrine that attaches water rights, wherever located, to land to the extent such rights are necessary to fulfill the purposes for which Congress created the reservation. As one legal scholar explains:

> Almost all states (except the original thirteen, Texas, and Hawaii) were created largely out of the public domain, where the government had control of virtually all waters. At the sufferance of the United States, private rights in those waters were created pursuant to state or territorial law. The reserved water rights doctrine holds that the government impliedly withdrew its consent to creation of private rights each time it earmarked public lands for a specific federal purpose to the extent necessary to fulfill that purpose. Thus, the fact that a reservation was detached from water sources does not prove an absence of intent to reserve waters some distance away. Judicial references to such rights being 'appurtenant' to reserved lands apparently refer not to some physical attachment of water to land, but to the legal doctrine that attaches water rights to land to the extent necessary to fulfill reservation purposes.

David H. Getches, *Water Law* 324-325 (West Nutshell Series 3d ed. 1994) (emphasis added).

The State never addresses this critical aspect of *Arizona* and *Cappaert*.[1] Instead, the State supports its flawed view of "appurtenancy" with a few citations to lower court opinions. But none of the cases cited supports the novel rule the State advocates here. For instance, in *Shoshone-Bannock v. Reno*, 56 F.3d 1476, 1480 (D.C. 1995) (cited State's Br. at 7), the court never discussed the term "appurtenant" and did not construe the legal doctrine that attaches water rights to land. Rather, "the question [wa]s whether the federal courts have the authority to force the United States to pursue" a water claim in the Snake River basin adjudication on behalf of the Shoshone-Bannock Tribes. *Id.* at 1480. The court actually left open the possibility that the Tribe

[1] The State's one mention of *Cappaert* focuses on the location of the pool of water located within the boundaries of the National Monument, not on the Court's limitation on the appropriation of water outside the boundaries of the Monument. State Br. at 8. The State never bothers to mention, let alone discuss, *Arizona v. California*.

could establish its off-reservation claim on its own behalf, and simply held that the United States had no duty to assent to the Tribe's litigation demand. *Id.* at 1483.

In *United States v. City and County of Denver*, 656 P.2d 1, 35 (Colo. 1982), also cited by the State (Br . at 8), the United States argued, contrary to the State's position, that "there may be circumstances in which water not adjacent to a reservation could be reserved and in which off-reservation use of waters flowing on a reservation may be justified." The Colorado Supreme Court did not disagree, but instead reserved the issue for other pending litigation because there was lacking a specific factual claim presenting an actual case or controversy. *Id.* That outcome is hardly helpful to the State here. To suggest, as the State does, that *County of Denver* supports the proposition that courts have "declined to recognize a federally-claimed FRWR in waters not adjacent to a reservation" (State Br. at 8), is misleading at best.

Not a single case cited by the State defines "appurtenant" in the limited way that the State claims here. Rather, the common thread that runs through all the cited cases is the critical need to assess the purposes of the various congressional reserves, in order to determine whether such purposes would be entirely defeated without water.[2] This critical, first, task is a task the State here utterly neglects to undertake. The State's substitution of its unprecedented "appurtenant" rule for the proper "purposes" test cannot be sustained.

## II. ANILCA AND THE *KATIE JOHN* MANDATE REQUIRE THE SECRETARIES, WITHOUT LIMITATION, TO IDENTIFY ALL THOSE WATERS IN WHICH THE UNITED STATES HOLDS RESERVED WATERS,

[2] *See e.g., Colville Confederated Tribes v. Walton ("Walton II")*, 647 F.2d 42, 46 (9th Cir. 1981); *Sierra Club v. Block*, 622 F.Supp. 842, 853 (D. Colo. 1985); *United States v. City of Challis*, 988 P.2d 1199, 1203 (Idaho 1999); *Potlatch Corp. v. United States*, 12 P.3d 1260, 1265 (Idaho 2000); *General Adjudication of All Rights to Use Water in the Gila River System and Source* ("Gila River"), 989 P.2d 739, 745 (Ariz. 1999).

INCLUDING UPSTREAM AND DOWNSTREAM WATERS AND THOSE APPURTENANT TO ALASKA NATIVE ALLOTMENTS

The State next argues that the Katie John plaintiffs are seeking improperly to compel agency action, contrary to the Administrative Procedures Act's limitations on judicial review, citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), adding that nothing in the law compels the Defendants to identify additional reserved waters. State Br. at 17, 43, 45, 46, 49. In advancing this argument, the State ignores both law and history.

This is not primarily an APA case and it does not arise in a vacuum. Rather, the Katie John plaintiffs brought their challenge pursuant to § 807[3] of ANILCA. They sued to enforce § 804's[4] subsistence priority on public lands (see Complaint ¶ 1), just as Katie John did in her original challenge nearly two decades ago. *See John v. United States (Katie John I*), Nos. A90-0484-CV, A92-0264-CV, 1994 WL 487830 at *8 (D. Alaska March 30, 1994) (unreported). They seek to enforce the mandate issued by this Court and the Ninth Circuit in that litigation, a mandate that required the Secretaries to do precisely what the State now opposes: identify all waters in which there exist federally reserved water rights. Just as in the original *Katie John* litigation, the Katie John plaintiffs here assert that they are being denied the rural subsistence priority because the Secretaries have failed to extend that priority to all public lands in Alaska, including those navigable waters that constitute public lands pursuant to § 102 of ANILCA by virtue of the federally reserved waters doctrine.[5]

---

[3] ANILCA 16 U.S.C. § 3117.

[4] ANILCA 16 U.S.C. § 3114.

[5] ANILCA 16 U.S.C. § 3102.

It is beyond dispute that ANILCA authorizes the Secretary to promulgate "such regulations as are necessary and appropriate to carry out his responsibilities under this [Title]." 16 U.S.C. 3124. In considering this section and answering the "Who" question in *Katie John I*, this Court ruled that:

> . [b]y ANILCA Section 814, Congress expressly authorized the Secretary to promulgate, 'such regulations as are necessary and appropriate to carry out his responsibilities under this [Title].' Congress having unequivocally given the Secretary regulatory authority, he was empowered to fill the statutory gap so as to implement not only the policy contained in ANILCA Section 102, but also effect the substantive preference established by ANILCA Section 803 for rural Alaskans.

*Katie John I*, 1994 WL 487830 at *8 (citations omitted). Section 807 specifically guarantees judicial enforcement in favor of persons aggrieved by a failure of the Federal Government to provide the subsistence use priority, by authorizing such persons to "file a civil action in the United State District Court for the District of Alaska <u>to require such actions to be taken as are necessary to provide for the priority</u>." 16 U.S.C. § 3117 (emphasis added). Thus, unlike the circumstances presented in *Southern Utah*, where no substantive law required the agency to take discreet agency action, here ANILCA expressly provides the substantive law and authorizes this Court to "require such actions to be taken as are necessary to provide for the priority." 16 U.S.C. § 3117.

Moreover, even as to the APA, plaintiffs did not bring a claim to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Rather, the Katie John plaintiffs brought their claim under § 706(2).[6] See Complaint ¶ 2. As explained in *Southern*

---

[6] Title 5 U.S.C. § 706(2) provides, in relevant part:

> "The reviewing court shall – . .
> (2) hold unlawful and set aside agency action . . . found to be–

*Utah*, "[u]nder the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." 542 U.S. at 64 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990)). The specific agency action that has caused plaintiffs harm is the Secretaries' decision — upon remand from the Ninth Circuit and the issuance of a mandate directing the Secretaries promptly to determine what waters are public lands by reason of federally reserved water rights — to deliberately exclude some of those waters and thus deny the Katie John plaintiffs their rights under the law and their rights under the mandate. *State of Alaska v. Babbitt*, 72 F.3d 698, 703-04 (9th Cir. 1995), *cert denied*, 517 U.S. 1187 (1996), *adhered to en banc following remand sub nom., John v. United States*, 247 F.3d 1032 (9th Cir. 2001). The final regulations exclude waters upstream and downstream from the CSUs and waters appurtenant to Native allotments, and thereby both diminish the extent of public land in Alaska to which the subsistence priority applies, and violate the mandate to identify, not some, but all, such public lands.

Nowhere did the Circuit limit, much less hold, that "public lands" as defined by Congress means something less than all federal interests in all waters necessary to fulfill the subsistence and conservation purposes of ANILCA's CSUs. The Ninth Circuit left no discretion to the agencies to pick some federally reserved waters but not others. And, as the Katie John plaintiffs show in their opening brief (K.J. Br. at 28-41), the federally reserved waters doctrine by law supports reserved waters in upstream and downstream waters from CSUs, and those appurtenant to Native allotments, because such water is necessary to support the purposes of the reservations.

---

(A) arbitrary, capricious, an abuse of discretion, or other wise not in accordance with law . . . ."

Thus, in addition to ANILCA § 807, the Katie John plaintiffs have properly brought their challenge under § 706(2) of the APA, to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## III. FEDERALLY RESERVED WATERS ARE APPURTENANT TO ALASKA NATIVE ALLOTMENTS

The State denies the existence of federally reserved waters appurtenant to Alaska Native allotments by arguing that the allotments are not "federal reservation[s]." State Br. at 46. The State is wrong. The fact that public domain allotments were not created by the break-up of larger reservations is immaterial to the analysis required to determine whether those allotments possess federally reserved water rights. As one court has explained:

> [G]enerally, the lands owned by the federal government are classified as either 'public domain' or 'reserved'. The public domain includes lands open to settlement, public sale, or other disposition under the federal public land laws, and which are not exclusively dedicated to any specific governmental or public purpose. Public domain lands are, for the most part, managed by the United States Department of the Interior through its Bureau of Land Management. Reserved lands on the other hand are those that have been expressly withdrawn from the public domain by statute, executive order or treaty, and are dedicated to a specific purpose. Pursuant to the authority vested in the United States Constitution, Congress has frequently acted to reserve or withdraw lands from the public domain or to empower the President or his delegate to do so.

*Sierra Club v. Block*, 622 F. Supp. 842, 854 (D.C. Colo. 1985) (citations omitted). Off-reservation allotments are lands that have been withdrawn from the public domain by statute, executive order or treaty, and have been reserved for the purpose of providing lands to Indians

for agriculture,[7] for homesteads,[8] to preserve traditional fishing grounds,[9] and continued use and occupancy.[10] An implied reservation for water will be found where it is necessary to fulfill the purposes of the reservation of land. *Arizona v. California*, 373 U.S. at 598. Since land set aside for any of these purposes is "valueless without water," *United States v. Winters*, 207 U.S. 564, 576 (1908), federally reserved water is implied. Indeed, under such circumstances, it is "essential to the life of Indian people." *Arizona v. California*, 373 U.S. at 599.

The State further contends that no federally reserved water right has been recognized for an allotment set aside for the benefit of an individual except under the limited circumstance where a water right which was once part of an Indian reservation passed from that reservation through a 1887 Dawes Act allotment to an individual allottee. State Br. at 47. This assertion, too, lacks merit. In addition to creating allotments from existing reservations, Section 4 of the Dawes Act[11] allows "any Indian not residing upon a reservation, or for whose tribe no reservation

---

[7] *United States v. Powers,* 305 U.S. 527 (1939) (since agriculture was the purpose for which the allotments were originally made, and because water was necessary to agricultural use of land, water rights for allotments were consistent with the purposes of the allotment policy and had thus been reserved.).

[8] *State of Washington, Department of Ecology v. Acquavella*, No. 77-2-01484-5 (Wash. Super. Ct. Sept. 1, 1994) (holding federal reserved water rights are created by implication where ever the United States withdraws lands from the public domain in order to fulfill federal purposes).

[9] *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 45-48 (9th Cir. 1981) (where access to water to sustain a newly-built fishery designed to preserve traditional way of life, a reserved right to water was necessary because without water, the Indian allotments would be useless).

[10] *Aguilar v. United States,* 474 F. Supp. 840, 845 D. Alaska 1979) (the use and occupancy that the Native Allotment Act protects is aboriginal use and occupancy).

[11] Act of February 8, 1887, 24 Stat. 388.

has been provided" to secure an allotment from the public domain.[12] Such off-reservation public domain allotments have been found to possess federally reserved water rights under the test the Court employed in *Cappaert*.[13] Indeed, off-reservation allotments withdrawn from the public domain for Native allottees in restricted rather than trust status have been treated identically under the law. See K.J. Br. at 52-54. This is because "the doctrine of implied water rights is not limited to only Indian reservations but encompasses any 'enclave' where Congress has reserved an area for a specific purpose." *Potlatch Corp. v. United States*, 12 P.3d 1260, 1282 (Idaho 2000) citing *Sierra Club v. Lyng*, 661 F.Supp. 1490, 1494 (D. Colo 1987) *(reversed on other grounds by Sierra Club v. Yeutter*, 911 F.2d 1405 (10th Cir. 1990)); and *California v. Arizona*, 373 U.S. at 601.

Accordingly, the State's denial of federally reserved waters appurtenant to Alaska Native allotments under its incorrect reservation rule must be rejected.

IV CONCLUSION.

For all of the foregoing reasons, and for the reasons already stated in K.J. Br., the State's limiting interpretation of federally reserved waters in Alaska should be rejected in their entirety.

Dated this 28th of January, 2008.

s/Heather R. Kendall Miller
Heather R. Kendall Miller
Alaska Bar No. 9211084
NATIVE AMERICAN RIGHTS FUND
420 L Str., Suite 505
Anchorage, Alaska 99501

---

[12] 24 Stat. 388, 389, 25 U.S.C. 334.

[13] See Memorandum from the Assoc. Solicitor to All Assoc. Solicitors, Reg'l Solicitors, and Field Solicitors (July 8, 1976) (attached as Exhibit 20 to K.J. Br.).

Telephone: (907) 276-0680
Facsimile: (907) 276-2466
Email:kendall@narf.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2008, a copy of foregoing Plaintiffs Katie John *et al.* Brief in Response to State of Alaska was served electronically on:

Robert T. Anderson
William F. Sherman
Dean K. Dunsmore
William P. Horn
Gregory Fisher
Carol H. Daniel
Randolph H. Barnhouse
Stephen A. Daugherty
Joanne M. Grance

s/Heather R. Kendall Miller