Robert T. Anderson
Alaska Bar No. 8506043
University of Washington School of Law
Box 353020
Seattle, WA  98195-3020
Phone:  (206) 685-2861
Fax:  (206) 616-3426
Email: BobA@u.washington.edu

Counsel for Alaska Federation of Natives

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| KATIE JOHN, CHARLES ERHART, *et al.* | ) ) | |
| Plaintiffs, | ) ) | Case No. 3:05-CV-0006-HRH |
| v. | ) ) | (CONSOLIDATED WITH) |
| | ) ) | Case No. 3:05-cv-0158-HRH |
| THE UNITED STATES OF AMERICA, *et al.* | ) ) | |
| | ) ) | |
| Defendants, | ) ) | |
| | ) | |

RESPONSE BRIEF OF ALASKA FEDERATION OF NATIVES

(WHICH WATERS)

**Introduction**

Defendant-intervenor Alaska Federation of Natives (AFN) supplements the Brief of the United States, Doc. 167 (Jan. 28, 2008), in response to the State's Opening Brief on the "which waters" issue.   AFN supports the United States' arguments that:  1. waters adjacent to conservation system units (CSUs) include federally reserved waters;  2. waters within CSUs, but bounded by non-federal lands include federally reserved waters; and 3.  inland waters subject to tidal influence, but within the CSUs, include federally reserved waters.  AFN also joins in the arguments made by the Katie John Plaintiffs regarding the application of the federal reserved rights doctrine.  Doc. 168 (Jan. 28, 2008). AFN does not agree with the United States' positions respecting Katie John's "upstream-downstream" claim, her claim regarding Native allotments, nor the United States' position on the claims of the Peratrovich plaintiffs.  However, we leave it to the Katie John and Peratrovich plaintiffs to respond on the merits as provided by the scheduling order.

**I.      Waters adjacent to CSUs may include federal reserved waters.**

The State argues that waters adjacent to CSUs may not be federally reserved because "appurtenant" means "within."  State's Brief, Doc. 134 at 7-9, 31.  This argument is based on a misunderstanding of the federal reserved water rights doctrine.  If unappropriated water outside a federal reservation is necessary to fulfill the purposes of the reserved area, the water may be federally reserved.   A case not cited by the State in the applicable section of its brief is directly contrary to the State's position.   In *Arizona v. California*, 373 U.S. 546, 595-601 (1963) the Supreme Court upheld an award of

1

reserved rights to the Colorado River for the Cocopah Indian Reservation, which is located two miles from the river. *Arizona v. California*, 376 U.S. 340, 344 (1964)( decree).[1]   One state court reached the same result in a non-Indian reservation context.  In *United States v. City and County of Denver,* 656 P.2d 1, 35 (Colo. 1982), the Colorado Supreme Court affirmed a lower court's ruling that "restricted the water source for reserved water rights decreed to accomplish the purposes of particular land reservations to waters on, under, *or touching* the reserved lands." (emphasis added).  The State's brief cites this case in direct support of its claim that adjacent waters may not be federally reserved.  State's Brief, Doc. 134, at 8.  In fact, the court upheld the lower court's ruling that waters *touching*, *i.e., adjacent to*, federal reservations had reserved rights, and simply refused to entertain arguments regarding non-adjacent waters and claims regarding off-reservation use of reserved waters.[2]   There are no cases holding that the federal government lacks power to reserve adjacent water.

---

[1] *See* Brief of Katie John, et al., Doc. 168, at 3-4.  *See also*, Report from Special Master Simon H. Rifkind to the Supreme Court in *Arizona v. California*, 364 U.S. 940 (1961) at 83-88 (describing the Indian reservations "on or near the Colorado River;"  available online at http://www.westernwaters.org/) (Rifkind Report).

[2] The court in *City and County of Denver* stated that:

> [t]he federal government argues that there may be circumstances in which water *not adjacent* to a reservation could be reserved and in which off-reservation use of waters flowing on a reservation may be justified. These issues are presently hypothetical. We decline to resolve them in a case where there has not been a specific factual claim presenting an actual case or controversy.

656 P.2d at 35. The second case cited for the State's proposition similarly did not reach the question of whether non-adjacent water could be subject to federal reserved rights. *United States v. Bell*, 724 P.2d 631, 645, n. 17 (Colo. 1986).

Katie John v. United States, 3:05-cv-00006-HRH (consolidated)
Response Brief of AFN

While many cases involve waters actually within Parks, Refuges and other federally reserved lands "[t]he power of the government to reserve the waters and exempt them from appropriation under the state laws is not denied, and could not be." *Winters v. United States*, 207 U.S. at 577, *citing United States v. Rio Grande Dam & Irrig. Co.*, 174 U. S. 702 (1899); *United States v. Winans*, 198 U.S. 371 (1905). Federal power to reserve unappropriated water for federal purposes is based in the property clause *and* the commerce clauses of the Constitution[3] – both of which also provide authority for Title VIII's subsistence priority.[4] The question then is not one of power, but one of congressional intent, and no authority holds that the federal power to reserve waters is inextricably linked to land ownership. An instructive example is provided by the Federal Wild & Scenic Rivers Act which can apply to rivers that run over state-owned submerged lands and adjacent to state or private lands.[5] Regardless of adjacent land ownership, the designation of a water body as a Wild & Scenic River results in the

_____

[3] *See Federal "Non-Reserved" Water Rights*, 6 Op. Off. Legal Counsel 328, 363 (1982)("the Supremacy Clause provides Congress with ample power, when coupled with the commerce power, the Property Clause, or other grants of federal power, to supercede State law." ).

[4] 16 U.S.C. § 3112 ("it is necessary for the Congress to invoke its constitutional authority over Native affairs and its constitutional authority under the property clause and the commerce clause to protect and provide the opportunity for continued subsistence uses on the public lands").

[5] *See* 16 U.S.C. § 1273(a) ("The national wild and scenic rivers system shall comprise rivers (i) that are authorized for inclusion therein by Act of Congress, or (ii) that are designated as wild, scenic or recreational rivers by or pursuant to an act of the legislature of the State or States through which they flow); and 16 U.S.C. § 1277 (authorizing federal acquisition of state and private lands adjacent to Wild & Scenic Rivers).

Katie John v. United States, 3:05-cv-00006-HRH (consolidated)
Response Brief of AFN

creation of federal reserved waters.  *Potlatch Corp. v. United States*, 12 P.3d 1256, 1258-59 (Idaho 2000), *interpreting* 16 U.S.C. § 1284(c).[6]

The federal agencies developing the reserved rights rule considered the existence of federal reserved water rights in this legal context and determined that Congress intended to reserve waters adjacent to federal CSUs.  The Alaska Policy Group stated:

> ### B. ADJACENT INLAND WATER
>
> Where a federal reservation with a purpose that supports the assertion of reserved water rights is bounded by or adjoins inland water, federal reserved water rights should be asserted in that portion of the water body adjoining the reservation.  This is consistent with the reserved water rights doctrine where the adjoining water can be shown to be necessary for the purposes of the reservation.

AR 2370, *Final Katie John Issue Paper and Recommendations* (June 15, 1995).[7]

The State claims in its opening brief that waters adjacent to the Nowitna National Wildlife Refuge, Lake Clark National Park and Preserve and the National Petroleum Reserve are not federally reserved waters.  State's Brief, Doc. 134, at 25-41.[8]  Contrary to the State's argument, the federal agencies explained the reason for the assertion of federal reserved rights and in any event, it is apparent from the face of the respective

---

[6] This case is not discussed in the State's Brief.

[7] The Report became the Department's legal position when accepted by the Solicitor. AR 2458-2860, *Final Solicitor's Office Legal Determinations on Katie John Implementation* (Aug. 18, 1995).

[8] As explained in the Brief of the United States, the NPRA is not a federal CSU so that adjacent waters are not claimed as reserved.  Doc. 167, at 43-44.

Katie John v. United States, 3:05-cv-00006-HRH (consolidated)
Response Brief of AFN

statutes creating the CSUs.  Appendix 1 to the *Final Katie John Issue Paper* includes

Lake Clark National Park and Preserve on its list of "National Park Units in Alaska

Including Inland Water Boundaries Which Have Federal Reserved Water Rights."  AR

2390.  Appendix 2 includes the Nowitna National Wildlife Refuge on the list of

"National Wildlife Refuges in Alaska Including Inland Water Boundaries Which Have

Federal Reserved Water Rights" and specifically notes that the portion of the Yukon

River adjoining the boundary" is subject to reserved rights."  AR 2396.  AFN agrees with

the arguments of the United States regarding the reservation of waters of the Yukon River

to fulfill the purposes of the Nowitna Wildlife Refuge, which was set aside "to conserve

fish and wildlife populations . . . [and] to ensure water quality and quantity within the

refuge."  ANILCA § 302(6).  Indeed, if the State were correct, all waters adjacent to the

Refuge could be diverted and thus make it impossible to fulfill the purpose of conserving

fish and wildlife populations that make use of the adjacent waters and then return to the

Refuge.

    The State argues that Sixmile Lake is not adjacent to the Lake Clark National Park

and Preserve.   AFN agrees that the United States demonstrated in its Brief that Sixmile

Lake is adjacent to the Park and Preserve, since the Lake abuts Native corporation land

within the exterior boundaries of the Park and Preserve.  Brief of United States at 53-54.

As such there are federal reserved rights in the Lake.  *Id*. at 54-55.  *See* note 10, *infra*.

### II.  Waters within CSUs, but bounded by non-federal lands include federal reserved waters.

        As noted above, whether a particular body of water within a CSU is subject to

federally reserved rights depends on whether the water is necessary to fulfill the purposes

for which the reservation was established.   No court has ever distinguished between areas within CSUs based on whether some portion of the land within a federal reservation was owned by someone other that the federal government.  The inquiry is to determine congressional intent.  If water is necessary to fulfill the purposes of a CSU, the water is reserved throughout the CSU – notwithstanding the existence of inholdings adjacent to lakes or rivers.  As pointed out in the Brief of the United States at 63-66, express reservations of water were made for  the Chignik Lake and River System, which is within the Alaska Peninsula Wildlife Refuge.[9]  Likewise, Congress plainly intended to reserve water within the Crescent River, which is within the exterior boundaries of the Lake Clark National Park and Preserve.[10]  The State's theory would allow a private riparian

---

[9] "The Alaska Peninsula National Wildlife Refuge shall consist of the approximately three million five hundred thousand acres of public lands as generally depicted on the map entitled "Alaska Peninsula National Wildlife Refuge", dated October 1979 and shall include the lands on the Alaska Peninsula transferred to and made part of the refuge pursuant to section 1427 of this Act.
(B) The purposes for which the Alaska Peninsula National Wildlife Refuge is established and shall be managed include--,
(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, brown bears, the Alaska Peninsula caribou herd, moose, sea otters and other marine mammals, shorebirds and other migratory birds, raptors, including bald eagles and peregrine falcons, and salmonoids and other fish;
(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;
(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii) above, the opportunity for continued subsistence uses by local residents; and
(iv) *to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge*." 16 U.S.C. § 668dd, ANILCA, § 302(1)(b), 94 Stat. 2385 (emphasis added).

[10] "Lake Clark National Park, containing approximately two million four hundred thirty-nine thousand acres of public lands, and Lake Clark National Preserve, containing approximately one million two hundred and fourteen thousand acres of public lands, as generally depicted on map numbered LACL-90,008, and dated October 1978. The park

6

landowner within a National Park, National Forest, or National Wildlife Refuge to divert all waters and thus defeat the purposes of the CSU.  That is exactly what the reserved rights doctrine guards against.

The State is also incorrect that the United States' position on this point is only based on administrative convenience.  As stated in the *Final Katie John Issue Paper and Recommendations* (June 15, 1995):  "Administrative jurisdiction over all inland water within the exterior boundaries of a federal reservation should generally be asserted.  Any such assertion must, of course, be based on a determination that the inland waters are necessary to meet the purposes of the reservation."  AR 2368.  As made clear by the statements of purposes in the footnotes 9 & 10, *supra*, water is necessary to fulfill Congress's expressed purposes.  Thus, like the Wild & Scenic River designations, Congress has expressly reserved federal rights in the waters in the Alaska Peninsula National Wildlife Refuge and Lake Clark National Park and Preserve.  Such rights are not extinguished by the conveyance of parcels of land within the Refuge, or Park and Preserve.

Finally, AFN adopts the United States' arguments regarding federal reserved waters for National Forests and the Juneau road system streams within the Tongass National Forest.  Brief of the United States at 66-70.

---

and preserve shall be managed for the following purposes, among others: *To protect the watershed necessary for perpetuation of the red salmon fishery in Bristol Bay*; to maintain unimpaired the scenic beauty and quality of portions of the Alaska Range and the Aleutian Range, including active volcanoes, glaciers, wild rivers, lakes, waterfalls, and alpine meadows in their natural state; and to protect habitat for and populations of fish and wildlife including but not limited to caribou, Dall sheep, brown/grizzly bears, bald eagles, and peregrine falcons." 16 U.S.C. § 410hh(7)(a). (emphasis added).

Katie John v. United States, 3:05-cv-00006-HRH (consolidated)
Response Brief of AFN

III.    **AFN concurs in the United States' argument regarding the seaward boundaries of rivers with federal reserved water rights**

AFN adopts the arguments made by the United States at pages 70-78 of its brief, but only to the extent that it argues that the reserved rights doctrine extends to the mouths of rivers as measured by the headlands-to-headlands method.  AFN supports the Peratrovich plaintiffs' arguments regarding the waters of the Tongass National Forest. United States Brief at 66-70.

**Conclusion**

For the reasons stated above, this court should reject the State's claims on all counts.

February 11, 2008                              Respectfully submitted,


Carol H. Daniel                               /s/Robert T. Anderson
Alaska Bar No. 8601005                        Robert T. Anderson
Alaska Federation of Natives                  Alaska Bar No. 8506043
1577 C St., Suite 300                         University of Washington School of Law
Anchorage, AK 99501                           Box 353020
Phone: (907) 274-3611                         Seattle, WA  98195-3020
Fax:     (907) 276-7989                       Phone:  (206) 685-2861
Email:  cdaniel@alaska.net                    Fax:  (206) 616-3426
                                              Email:  BobA@u.washington.edu

Ann Tweedy
Kanji & Katzen PLLC                           Counsel for Alaska Federation of Natives
100 South King Street, Suite 560
Seattle, WA 98104
Tel: (206) 344-8100
Fax: (866) 283-0178
Email: atweedy@kanjikatzen.com

Katie John v. United States, 3:05-cv-00006-HRH (consolidated)
Response Brief of AFN

Certificate of Service

I hereby certify that on the 11th day of February, 2008 a copy of the foregoing
RESPONSE BRIEF OF ALASKA FEDERATION OF NATIVES, *et al*. was served
electronically upon:


Dean K. Dunsmore
Heather Kendall-Miller
William F. Sherman
Randolph H. Barnhouse
Steven A. Daugherty
Michael Sewright
William P. Horn
Gregory L. Fisher
Carol H. Daniel

/s/ Robert T. Anderson
Robert T. Anderson

Katie John v. United States, 3:05-cv-00006-HRH (consolidated)
Response Brief of AFN