Heather R. Kendall-Miller
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 505
Anchorage, Alaska 99501
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
Email: kendall@narf.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE JOHN, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, *et al*. ) | No. 3:05-cv-00006 (HRH) |
| ) | (Consolidated) |
| Defendants. ) | |
| ) | |

PLAINTIFFS KATIE JOHN *et al.'s* REPLY BRIEF IN RESPONSE TO
FEDERAL DEFENDANTS' BRIEF ON THE "WHICH WATERS" ISSUE  (Dkt. No. 167)

## I.   INTRODUCTION

The defendants' decision not to regulate subsistence fishing in waters upstream and downstream from Conservation System Units (CSUs) and on Alaska Native allotments is not entitled to deference, both under generally applicable law, and in light of Congress's *mandate* to defendants to issue subsistence protection regulations, followed by a specific judicial mandate to those same defendants – after they had violated Title VIII's mandate – to identify without exception *all* lands in which the government holds federally reserved waters rights (FRWRs).

On the underlying issues, defendants' determination that FRWRs do not exist in waters lying upstream and downstream from CSUs is contrary to law and cannot be rationalized by reference to

Title VIII's purposes. Defendants' unexplained decision to defer identifying FRWRs on Alaska Native allotments to the indefinite future is likewise contrary to law.

## II. DEFENDANTS ARE NOT ENTITLED TO DEFERENCE IN THEIR DECISION TO EXCLUDE CERTAIN FEDERALLY RESERVED WATERS FROM THE SCOPE OF TITLE VIII.

Contrary to defendants' view of the matter, deference to the Secretaries' interpretation of the scope of FRWRs that fall within the definition of ANILCA Section 102 is not warranted in this case for several reasons.

First, deference is not due under this specific statutory scheme. Section 814 of ANILCA *mandates* that the Secretaries "*shall* prescribe such regulations as are necessary and appropriate to carry out his responsibilities under [Title VIII]" to protect subsistence fishing and hunting.[1] As the *Katie John* litigation reflects, that mandate includes the duty to identify all FRWRs to which Title VIII's subsistence priority applies.[2] Nothing in Title VIII even hints that Congress intended to grant to the Secretaries discretion to identify only some, but not all, FRWRs necessary to fulfill the purposes of the CSUs or other federal lands. Congress created a subsistence preference applicable to all public lands as defined in ANILCA. When it wished to except certain public lands (such as Glacier Bay National Park) from subsistence uses, Congress did so explicitly. The Secretaries may not now utilize a narrow definition of FRWRs in order to restrict application of the priority.

---

[1] ANILCA, 16 U.S.C. § 1324 (emphasis added).

[2] We continue the convention in our Opening Brief on the "Which Waters" Issue (at 1 n.1) (Dkt. No. 139-2) of identifying the cases as *John v. United States* (*Katie John I*), Nos. A90-0484-CV, A92-0264-CV, 1994 WL 487830 (D. Alaska, March 30, 1994) (unreported); *Alaska v. Babbitt* (*Katie John II*), 72 F.3d 698, (9th Cir. 1995); *John v. United States* (*Katie John III*), 247 F.3d 1032 (9th Cir. 2001) (*en banc*).

Moreover, such discretion would be at odds with the Secretaries' stewardship responsibilities to "fulfill the mission of the System and the purposes of each refuge." 111 Stat. 1252 sec. 5(a)(4)(G). Thus the Secretaries are owed no deference when they choose to exclude FRWRs upstream and downstream from CSU's, any more than if they had chosen to exclude some CSUs altogether. They possess no discretion under Title VIII to identify anything less than *all* public lands to which the subsistence priority applies, and nothing in Title VIII's history suggests otherwise.

Given the express purposes of ANILCA's various CSUs, the agencies' narrow identification of the government's ownership interests in reserved waters is unreasonable and not entitled to deference because it fails to carry out Congress' intent in enacting ANILCA. After all, ANILCA's subsistence priority applies to all "public land," including all federal interests in land, waters and interests therein. 43 U.S.C. § 1601(1). As the Ninth Circuit held in *Alaska v. Babbitt*, 72 F.3d 698, 702 (9th Cir. 1995), Congress did not leave some 'gap' (as it does in many other statutory schemes) such as by failing to specify whether federal reserved waters are covered here; to the contrary, it spelled out those waters with precision. Public lands include all waters in which the government has an interest, namely federally reserved waters. As such, the statute in this respect is clear, and the Secretaries are thus not free to decide that some federal reserved waters are covered while others are not.

Second, the Secretaries' determination is not entitled to deference because the FRWR doctrine is not a product of rulemaking, but rather a legal principle that is rooted in a series of Supreme Court cases and their progeny. *See*, *e.g.*, *Winters v. United States*, 207 U.S. 564 (1908); *Cappaert v. United States*, 426 U.S. 128 (1976); *United States v. New Mexico*, 438 U.S. 696 (1978); *United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983). This rich body of jurisprudence forms not

only the basis for the existence of the federal right, but the nature and scope of the right as well. Thus, the agencies' identification of FRWRs required only the application to each CSU of water rights jurisprudence that has been developed by the judiciary, not by Congress. *See* Admin. Rec. Vol III, Tab 57 at 1059 (Issue Paper and Recommendations of the Alaska Policy Group discussing the federal reserved water rights doctrine as a "judicial creation" requiring the application of *Cappaert v. United States*, 426 U.S. 128, 138 (1976) to determine FRWRs); *see also* Admin. Rec. Vol III, Tab 75 at 1459 (same). Since the FRWRs doctrine is derived from common law principles, not statute, it follows that the agencies' identification of FRWRs that fall within ANILCA's definition of public lands is not entitled to deference. *See Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 270 (1960) (deference is not required when the administrative interpretation is not based on expertise in the particular field but is based on general common law principles); *see also Burgin v. Office of Pers. Mgmt.* 120 F.3d 494, 497 (4th Cir. 1997) (same); *Jicarilla Apache Tribe v. Fed. Energy Regulatory Comm'n*, 578 F.2d 289, 292-93 (10th Cir. 1978) (same).

Third, "because reserved water rights are established by reference to the purpose of the reservation rather than any actual beneficial use of water," *United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983), the determination of the existence of a reserved water right is strictly a question of law. *Id.* at 1406 (upholding decision which decided the priority among reserved water rights and leaving actual quantification of the reserved rights to a state adjudication). *See also United States v. Oregon*, 44 F.3d 758 (9th Cir. 1994). Thus, the twin questions of whether FRWRs extend upstream and downstream from ANILCA's CSUs, and whether they are appurtenant to Alaska Native allotments, turn on the purposes of the respective legislation creating the CSUs and the allotments, determination that are straightforward questions of law subject to *de novo* review. *See Hall v. Lyng*, 828 F.2d 428

(8th Cir. 1987) (agency interpretation need not be accorded substantial deference where matter strictly legal); *Burgin*, 120 F.3d at 497-99 (Office of Personnel Management's interpretation of contractual language is legal determination subject to de novo review); *Colo. Pub. Utils. Comm'n v. Harmon*, 951 F.2d 1571, 1578-79 (10th Cir. 1991) (Department of Transportation's determination that its regulation preempts state law not subject to agency deference); *West Virginia Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239, 246 (4th Cir. 2003) (whether result achieved warrants eligibility for fee award of attorneys fees legal determination subject *de novo* review). After all, the Secretaries are in no better position than is this Court to read the pertinent provisions of ANILCA and of the Alaska Native Allotment Act, and to reach a conclusion about the extent of any FRWRs under the controlling common law.

Fourth, in identifying FRWRs, the United States typically asserts off-reservation claims in the context of stream adjudications. Thus, for example, the United States has asserted claims on behalf of Tribes, Native allottees and federal agencies in a wide range of federal and state water proceedings. *See, e.g., Arizona v. California*, 373 U.S. 546 (1963). When such claims are identified and asserted by the United States, they are then subject to judicial review based upon the legal test set forth in *Cappaert*, which requires a reviewing court to determine whether Congress intended to reserve waters to fulfill the purposes of the particular land reservation. *See, e.g., United States v. New Mexico*, 438 U.S. 696, 700 (1978). Thus, any agency decision regarding the existence of a FRWR should likewise be subject to the same judicial review standards.

An additional reason against deferring to the agencies' interpretation is the inconsistency of the positions taken by the agency on issues of off-reservation water claims. *Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 417 (1993) ("[T]he consistency of an agency's position is a factor

in assessing the weight that position is due"); *Watt v. Alaska*, 451 U.S. 259, 273 (1981) (agency interpretation which conflicts with agency's earlier interpretation entitled to considerably less deference). In this case the record is replete with entries illustrating a "considerable difference of opinion within the Office of the Solicitor" regarding the assertion of FRWRs outside of reservation boundaries based on FRWRs. (6/15/95 Letter from Hopewell to Leshy); *see also* Admin. Rec. Vol IV, Tab 85 at 1667 (6/6/95 Memorandum from Assis Solicitor, Div. of Indian Affairs to Acting Regional Solicitor, Alaska Region stating "[I]t is our view that the draft issue paper makes a serious error in assuming that there is no legal basis for asserting off-reservation instream water rights").

The Division of Indian Affairs' concerns were particularly strident because "the [recommendation in the] issue paper is contrary to the United States' position in asserting off-reservation rights in the lower 48 states." *Id.; see also* Admin. Rec. Vol. V, Tab 100 at 2294 (John Borbridge of BIA "recommends that the United States assert reserved water rights beyond the boundaries of federal reservation in Alaska." Mr. Borbridge states that the Solicitor's Office in Washington. D.C. indicates "both precedent and support for this position and that, additionally, it comports with congressional intent."); Admin. Rec. Vol. V, Tab 100 at 2454 ("[T]he Bureau of Indian Affairs is taking the position that the Department should assert reserved water rights beyond boundaries for all federal lands to the same extent asserted for Indian lands under the *Winters* doctrine.). Given the considerable difference of opinion within the Office of the Solicitor on issues of off-reservation water claims, agency deference is less appropriate here.

With respect to Alaska Native allotments, the agencies never made a determination one way or the other regarding the existence of FRWRs that would bring waters appurtenant to allotments within ANILCA § 102. *See* Admin. Rec. Vol. IV. Tab 94 at 1947. Instead, the agencies, without

explanation, simply left that determination to another day. There is, accordingly, no decision to which deference might apply.

Lastly, defendants urge this Court to limit its review to the administrative record and refrain from reading two exhibits that were authored by Dr. Dudley Reiser (Exhibit 10), and Dave Andersen (Exhibit 11), respectively. While extra-record material is generally outside the scope of review when a court is assessing the reasonableness of an agency's action pursuant to the APA, this by no means is a hard-fast rule, especially when, as here, plaintiffs have challenged the process itself, such as the agency's failure to take certain action contrary to statutory and judicial mandates. Under such circumstances, extra-record material can be considered if it shows that the agency failed to take into consideration factors that were relevant to the issue at the time the decision was made. *See Asarco, Inc. v. U.S. Environmental Protection Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980) ("A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors."). In such a case, "it is both unrealistic and unwise to 'straightjacket' the reviewing court with the administrative record. It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Id*. at 1160. The *most* important factor for the agency to consider when identifying FRWRs is the extent to which CSU purposes require water without which those purposes would be defeated. The Reiser Report (Exhibit 10) illustrates that water is a biological necessity to support fish and fish habitat throughout

the geographic range in which fish journey during their various life stages. This is an important factor that the agencies failed to consider. Thus, the Reiser Report shows that the agency failed to take into consideration key factors that were directly relevant to the issue at hand.

For the reasons set forth above, the agencies' decision to exclude certain FRWRs is not entitled to a deferential standard of review.

### III. FEDERALLY RESERVED WATER RIGHTS INCLUDE WATERS IN RIVERS RUNNING UPSTREAM AND DOWNSTREAM FROM ANILCA'S CSUs.

Federal defendants attempt to walk a fine line in defending against the State's assertions that the Secretaries unlawfully identified FRWRs adjacent to ANILCA's CSUs, while simultaneously defending against Katie John's assertion that the Secretaries unlawfully excluded FRWRs upstream and downstream from those same CSUs. Clinging to a middle ground, defendants argue that the Secretaries' judgment was reasonable. U.S. Br. at 36. But there is nothing reasonable about interpreting federal common law as supporting FRWRs off-reservation while simultaneously claiming that the same common law limits such waters to CSU boundaries.

The inconsistency of defendants' position is illustrated by the governments' correct rejection of the State's assertion that FRWRs must be on or adjacent to federal land. Defendants respond to the State by relying on Supreme Court precedent which holds that "FRWRs can extend to water sources beyond reservation land" if the purposes of the reservation so require. U.S. Br. at 42 (citing *Arizona v. California*, 376 U.S. at 340, 344 (1964) (decree) (water from off-reservation river used for on-reservation Indian purposes on the Cocopah Reservation)). Defendants thus agree with Katie John that FRWRs exist beyond reservation boundaries when necessary to fulfill a reservation's purposes. *Id. citing In the Matter of the Determination of the Rights to the Use of the Surface Waters*

*Yakima River Drainage v. James J. Acquavella*, No. 77-2-01484-5 (Wash. Super. Ct. Sept. 1, 1994), Memorandum Opinion: Treaty Reserved Water Rights at Usual and Accustomed Fishing Places at 9, 15 (holding tribe has right to water throughout the river basin whenever necessary to support fisheries).[3]

Defendants then apply this well settled law to support FRWRs in off-reservation water supporting the Nowitna NWR, explaining that this is necessary given the Refuge's stated purposes "to conserve fish and wildlife populations and habitats in their natural diversity ... ," "to fulfill international treaty obligations of the United States with respect to fish and wildlife and their habitat ... ," "to provide ... the opportunity for continued subsistence uses by local residents ... ," and "to ensure . . . water quality and necessary water quantity."  U.S. Br. at 46, quoting ANILCA § 302(6)(b).  Thus, defendants <u>agree</u> with Katie John that FRWRs are reserved when necessary to carry out the purposes of protecting fish and fish habitat and to comply with international treaties.

The defendants go further and justify federal jurisdiction over these off-reservation waters by emphasizing that "the decision and remand in *Katie John #1* clearly recognized that, if the United States holds a FRWR of any amount, the waters in which that right is held are public lands."  U.S. Br. at 48-49, 69.  Thus here, too, defendants agree with Katie John that Title VIII's priority extends to any waters where the government holds an interest by virtue of the reserved waters doctrine.

Federal defendants' agreement with Katie John on these controlling principles leads to the necessary conclusion that federally reserved water rights also exist in waters upstream and downstream from ANILCA's CSUs.  As illustrated in Katie John's Opening Brief on Which Waters:

---

[3] Attached as Exhibit 17 to Katie John Opening Brief on "Which Waters."  Dkt. No. 139.

(1) the primary purposes of ANILCA's various CSUs includes support of fish and fish habitat, protecting subsistence uses of subsistence resources, and fulfilling international treaty obligations (as defendants agree); (2) case law requires the reservation of water appurtenant to reservations whenever that water is necessary to support the primary purposes of the reservation (as defendants agree); (3) case law further demonstrates that FRWRs extend beyond reservation boundaries when necessary to fulfill a reservation's purposes (as defendants agree); and (4) water is a biological necessity to support fish and fish habitat, and is therefore necessary throughout the geographic range in which fish journey during their various life stages as they pass through the CSUs created to protect them (as defendants agree).[4]  Therefore, (5) a FRWR upstream and downstream from the CSUs exists because it is necessary to carry out the CSUs' primary purposes of protecting fish and fish habitat; and (6) the definition of public lands, and thus Title VIII's subsistence priority, extends to all waters upstream and downstream from ANILCA's CSUs.  K.J. Br. at 30-38.  Given these controlling principles and defendants' agreement with all but the last two, the agency has failed to supply a reasoned basis for excluding waters upstream and downstream from ANILCA's CSUs.

The only reasoning the Secretaries offer for excluding FRWRS upstream and downstream from CSUs is the curious statement that to have included those waters, and thus to have extended federal subsistence protections to such waters, would be contrary to Title VIII as interpreted by the Ninth Circuit in *Katie John II*, 72 F.3d at 702-703.  This is so, defendants contend, because the Circuit expressed concern about "exclud[ing] the State from any meaningful authority over inland

---

[4]  As Judge Tallman noted in his concurring opinion in the opinion, "Salmon are blissfully unaware of the technical distinction between waters in which the United States has a reserved water right and waters in which it does not.  They neither observe nor obey such legal constructs."  *John v. United States*, 247 F.3d 1032, 1040 (9th Cir. 2001).

navigable waters." U.S. Br. at 39. *See also id.* at 15 ("the Court of Appeals rejected the inclusion of all navigable waters recognizing this would defeat this purpose by excluding the State from any meaningful areas of fisheries management," and asserting that under Title VIII's "congressional intent" "the scope of public lands waters were intended to continue meaningful areas of jurisdiction for both State and Federal government."); 39 ("ANILCA intended a meaningful bifurcation of jurisdiction between the State and the Federal government.").

Defendants' assertion is curious indeed, for nothing in *Katie John II* or in Title VIII remotely supports it. In fact, when the Court of Appeals addressed whether public lands included navigable waters, it was clear about *Congress's* intent:

> ANILCA's language and legislative history indicate clearly that Congress spoke to the precise question of whether some navigable waters may be public lands. They clearly indicate that subsistence uses include subsistence fishing. *See, e.g.*, 16 U.S.C. § 3113. And subsistence fishing has traditionally taken place in navigable waters. Thus, we have no doubt that Congress intended that public lands include at least some navigable waters.

72 F.3d at 702. Further, in footnote the Court said that its interpretation of ANILCA would not "usurp state power over navigable waters elsewhere" because "ANILCA applies only to Alaska and *our interpretation of its definition of public lands* [meaning all FRWRs] *is necessary to give meaning to its purpose of providing an opportunity for a subsistence way of life*." *Id.* at 702 n.9. Thus, the Court gave its blessing to the application of Title VIII's subsistence priority to all FRWRs, precisely because doing so was necessary to carry out Congressional intent to protect "the subsistence way of life." Nothing in this passage even hints that the Court expected the Secretaries to moderate or exclude some FRWRs and thus some public lands in order to strike some balance

with state jurisdiction. To the contrary, the Court understood that *Congress* had already struck that balance in favor of protecting the "subsistence way of life."

The Secretaries are now doing what the Ninth Circuit did not do: failing to give meaning to the word "interests" by refusing to identify their ownership interest in FRWRs in waters upstream and downstream from CSUs in favor of maintaining "meaningful areas of jurisdiction for both State and Federal government." U.S. Br. at 15. Defendants' rationale of maintaining meaningful areas of jurisdiction for both the State and Federal governments is not supported in ANILCA, *Katie John I*, *Katie John II*, *Katie John III* or the record below. It should be rejected here as well.

Defendants also contend that the decision not to include upstream and downstream waters is reasonable because:

> [a] [f]ederal reserved water right is a usufruct right which gives the right to divert water for use on specific land or the right to guaranty flow in a specific reach of a water course. As such the water right does not affect the water downstream of the use area and does not have an effect on upstream areas except in times of shortage when a junior use may be curtailed. There is no shortage; therefore, up and downstream waters have not been included.

U.S. Br. at 36, quoting 70 Fed. Reg. 76400, 76402 (Dec. 27, 2005). Surprisingly, defendants support this rationale by arguing that "[w]ater rights are recognized as usufructuary rights; a right to use of the water and not title thereto." U.S. Br. at 37.[5] This position is clearly not reasonable because it is merely a variation on the argument that the State made and lost in *Alaska v. Babbitt,* 72 F.3d 698

---

[5] In direct contrast to the position taken by the Secretaries, here, that one cannot hold "title" to water rights, the Department of the Interior has published in the Federal register a statement that "Indian water rights are vested property rights for which the United States has a trust responsibility, with the United States holding *legal title* to such water in trust for the Indians. 55 Fed. Reg. 9223 (March 12, 1990) (emphasis added); *see also* Michael C. Blumm, *Reserved Water Rights* in 4 WATERS AND WATER RIGHTS § 37.02(f) (Robert E. Beck ed. 1991) ("water rights are property rights").

(9th Cir. 1995). There the state argued that FRWRs are merely some sort of usufructuary right that does not confer title to the United States.[6] In rebuttal before the Court of Appeals, the federal government argued the exact opposite of what it argues here, stating:

> usufructuary water rights, such as those reserved under the federal reserved water rights doctrine in Alaska, are themselves recognized in law as property interests.
> . . .
> Water rights may be non-consumptive in nature. Such rights encompass the use of the flow of water but do not vest a right to appropriate the water itself. Use of water pursuant to such a water right does not include the right to diminish the quantity of water, which remains intact, but the right to use of the water is nonetheless property, which may be transferred or leased.
>   The federal reserved water rights doctrine also applies to non-consumptive water rights, such as rights to instream flows needed to support reservation purposes. . . .
>   Where water is plentiful – so that no issue of upstream appropriations of water threatening to draw stream flows below the "protected level" is raised – the United States' non-consumptive water right need not be quantified. No action to make use of it is necessary to perfect the United States' title to the water right. The United States nonetheless owns an interest in the water that may be enforced against any future appropriator to prevent the depletion of the surface or ground water from undermining the United States' accomplishment of its purposes in reserving lands from the public domain. . . .
> By defining 'public lands' to include lands, waters and interests therein, Congress extended the priority to areas that are not owned exclusively by the United States but in which the United States owns interests that provide an appropriate basis for inclusion within 'public lands.' Thus, where the United States has reserved lands for purposes that encompass preservation of fish or subsistence fishing, the Untied States' ownership of such interests reasonably falls within the meaning of 'title' for purposes of ANILCA section 102.[7]

The Ninth Circuit agreed and found the state's contrary argument of little merit, commenting that "[i]f we were to adopt the state's position, that public lands exclude navigable waters, we would

---

[6] See *John v. U.S.*, No. A90-484 Civ. (HRH), State of Alaska's Supplemental Memorandum Re: Public Lands Definition at 11-12 (6/8/93) (Dkt. No. 142), attached to *John v. U.S.*, No. 94-35481, State's App. Br. at ER 58-59 (10/20/94) (Dkt. No. 12).

[7] *John v. U.S.*, No. 94-35481, Br. for Fed. Appellants at 22, 24-25 (citations omitted) (9/16/94) (Dkt. No. 6).

give meaning to the term "title" in the definition of the phrase "public lands." But we would undermine congressional intent to protect and provide the opportunity for subsistence fishing." 72 F.3d at 698; *see also John v. United States* (*en banc*), 247 F.3d 1032, 1040 (9th Cir. 2001) (Tallman concurring in the judgment) ( "[ANILCA] does not require that the United States have an interest of a particular nature, ... [i]t requires only that it have an interest"). Indeed, as defendants agree elsewhere in their briefing the "decision and remand in *Katie John # 1* clearly recognized that, if the United States holds a FRWR in any amount, the waters in which that right is held is public lands." U.S. Br. at 48, 69 (underline added); *see also* Brief of the United States (Dkt. No. 78) at 34-35.

Accordingly, the very rationale offered by defendants in support of its "usufruct" argument has already been specifically raised and rejected by the Ninth Circuit. That leaves no basis in law for failing to identify FRWRs in upstream and downstream waters.

**IV.   DEFENDANTS HAVE AN "INTEREST" IN ALASKA NATIVE ALLOTMENTS BECAUSE CONGRESS RESERVED WATERS NECESSARY TO FULFILL THEIR PURPOSES.**

As defendants see it, the Court should limit its review to deciding whether defendants acted arbitrarily when they decided to address FRWRs on a case-by-case basis. U.S. Br. at 20. Defendants' effort to so recast the question presented as a purely procedural one and thereby avoid the merits of the central issue – whether the United States owns reserved waters and thus an "interest" in Alaska Native allotments – must fail.

The Katie John plaintiffs brought their challenge pursuant to § 807 of ANILCA to enforce § 804's subsistence priority on public lands (*see* Complaint ¶ 1). They assert they are being denied the rural subsistence priority because the Secretaries have failed to extend that priority to all public

lands, including all navigable waters that constitute public lands pursuant to § 102 of ANILCA by virtue of the federally reserved waters doctrine. Section 807 specifically guarantees judicial relief in the form of "a civil action in the United States District Court for the District of Alaska <u>to require such actions to be taken as are necessary to provide for the priority</u>." 16 U.S.C. § 3117 (emphasis added). Since ANILCA expressly authorizes this Court to "require such actions to be taken as are necessary to provide for the priority," the defendants are simply wrong in contending that this Court must forego addressing the merits of plaintiffs' ANILCA claims. *Id.* To the contrary, under § 807, once the Court determines that the Secretaries erred in failing to recognize federal interests (through FRWRs) in navigable waters appurtenant to Native allotments, the Court <u>must</u> order the Secretaries to "provide for the [subsistence] priority" in those waters.[8]

Defendants' next urge this Court to hold that the Secretaries' indefinite deferral of the issue was reasonable. But this argument, too, must fail, for the Secretaries' decision to defer the issue altogether was never explained. It was simply announced as a *fait accompli*. That is not reasoned decision making. Even now, the Secretaries offer little in the way of a *post hoc* rationalization, other than a vague incantation of the supposed complexities involved in assessing whether Alaska Native allotments possess FRWRs. In doing so, defendants proffer inconsistent positions that suggest the

---

[8] Defendants assert that plaintiff Charles Erhart lacks standing because his allotment is outside a CSU and therefore outside the federal subsistence management regulatory regime. U.S. Br. at 21 n. 22. This assertion is without merit. Mr. Erhart has shown by declaration that he is a rural resident and member of the Village of Tanana and that he owns an interest in an Alaska Native allotment on the Tanana River that is currently subject to state jurisdiction. See Declaration of Charles Erhart ¶¶ 1 - 7, attachment 13 to Katie John *et al.'s* Opening Brief on the "Which Waters" Issue (Dkt. 139-2). The federal government's failure to provide Mr. Erhart a subsistence priority for fishing on his Native allotment – lands that have a FRWR as a matter of law and thus fall within the public lands definition of ANILCA – provide Mr. Erhart with standing to challenge this failure under section 807 of ANILCA.

agency is either unwilling or incapable of making a determination without further direction from this Court.

For instance, defendants agree with Katie John that FRWRs need not arise from formally established federal Indian reservations. U.S. Br. at 24 n.24. Yet, defendants fail to extend that principle to Alaska Native allotments, stating, instead, that allotments may not possess FRWRs because they "do not derive from any previously existing Indian reservation"[]. U.S. Br. at 26. Similarly, the Secretaries agree with Katie John that, under controlling case law, the question of "[w]hether there has been a federal reservation of water is a question of Government intent." U.S. Br. at 16. Yet, when it comes to allotments defendants argue, inconsistently, that the existence of a FRWR turns on the allottee's particular "uses of a particular tract." U.S. Br. at 31. So, too, the Secretaries agree with Katie John that "the United States has an interest in these allotments by virtue of their restricted fee status." U.S. Br. at 29. Yet, the Secretaries then revert back to the position advanced and lost by the State in *Katie John II* that "title" should be interpreted technically, and posit that a restricted fee interest "does not necessarily equate to a propriety interest required by ANILCA's definition of 'public lands' in section 3102." *Id*.

Finally, the Secretaries agree with Katie John that courts have generally recognized FRWRs in off-reservation allotments elsewhere. U.S. Br. 27. Yet here defendants urge that the Secretaries'

do-nothing approach is reasonable because "recognition presents a matter of first impression."[9] U.S. Br. at 27.

In sum, the *post hoc* rationale now offered by defendants in support of their decision to defer indefinitely recognizing FRWRs in Alaska Native allotments is directly at odds with the legal principles that defendants acknowledge elsewhere in their brief are controlling.

Defendants' ultimate assertion that deference to the Secretaries is reasonable "given the nature of Alaska Native allotments" (U.S. Br. at 20), is unsupportable. It is the very nature of Alaska Native allotments that bring them within ANILCA's public lands definition. As illustrated in Katie John's Opening Brief on Which Waters: (1) Congress' intent in the Alaska Native Allotment Act was to protect Alaska Native pre-existing use and occupancy or aboriginal title; and (2) the specific nature of use and occupancy consists principally of hunting and fishing. It thus follows inexorably from Congress' purpose to reserve these lands for Native hunting and fishing, that (3) FRWRs were necessarily reserved to protect those hunting and fishing activities (and also provide for domestic uses) – and without which all fishing and use of the allotment would simply be destroyed; (4) under controlling case law the federal government's restriction on alienation of Alaska Native allotments constitutes a property interest; (5) by defining 'public lands' to include lands, waters and interests therein, Congress extended the subsistence priority to areas that are not owned exclusively by the United States but in which the United States owns interests; and thus (6) where the United States

---

[9] Defendants' "issue of first impression" rationale is particularly ill-conceived in light of Congress's specific Title VIII mandate to the Secretaries to issue subsistence protection regulations, followed by this Court's and the Ninth Circuit's specific mandate to the Secretaries – after they had violated Title VIII – to identify without exception all waters in which the government holds federally reserved waters rights (FRWRs).

maintains an interest in restricted-fee allotments, the United States' ownership of such interests falls within the meaning of 'title' for purposes of ANILCA § 102. K.J. Op. Br. at 45 - 57.

Defendants' concern that the United States' interest does not necessarily equate to the proprietary interest required by ANILCA is misplaced. The Ninth Circuit has already held that ANILCA does not require that the United States have an interest of a particular nature, only that it have an interest. *Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995). Moreover – and as defendants have previously conceded – the "decision and remand in *Katie John I* clearly recognized that, if the United States holds a FRWR in any amount, the waters in which that right is held is public lands." U.S. Br. at 48, 69 (underline added); *see also* Brief of the United States (Dkt. No. 78) at 34-35.

In sum, defendants have provided no reasoned basis in law for failing to identity FRWRs in Alaska Native allotments. Accordingly, this Court should address the merits of plaintiffs claims and find, that as a matter of law, Alaska Native allotments possess FRWRs that bring them within the meaning of ANILCA's public lands definition. This Court should then remand this case to the agencies with instructions to extend the federal subsistence priority to all such public lands.

**CONCLUSION**

For the foregoing reasons, Katie John *et al.'s* motion for summary judgment on upstream/downstream waters and Alaska Native allotments should be granted.

Respectfully submitted this 17th day of March, 2008.

> By s/ Heather Kendall Miller
> NATIVE AMERICAN RIGHTS FUND
> 420 L Street, Suite 505
> Anchorage, Alaska 99501
> Telephone: (907) 276-0680

                                Facsimile: (907) 276-2466
                                Email: kendall@narf.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2008, a copy of foregoing Plaintiffs Katie John *et al.* Reply Brief in Response to Federal Defendants was served electronically on:

Robert T. Anderson
William F. Sherman
Dean K. Dunsmore
William P. Horn
Gregory Fisher
Carol H. Daniel
Randolph H. Barnhouse
Stephen A. Daugherty
Joanne M. Grace

s/ Heather R. Kendall Miller