WILLIAM P. HORN, D.C. Bar No.: 375666
Birch, Horton, Bittner and Cherot, P.C.
1155 Connecticut Avenue, Suite 1200, NW
Washington, D.C. 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
Email: whorn@dc.bhb.com

TALIS J. COLBERG
ATTORNEY GENERAL

Michael W. Sewright, AK Bar No. 7510090
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
Telephone: 907-269-5100
Facsimile: 907-279-2834
Email:  mike.sewright@alaska.gov

Attorneys for State of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE JOHN, et al., ) <br>                Plaintiffs, ) <br>     ) <br> vs. ) <br>     ) <br> UNITED STATES OF AMERICA, et al., ) <br>     ) <br>                Defendants ) <br> And ) <br>     ) <br> STATE OF ALASKA, ) <br>     ) <br>         Applicant Defendant-Intervenor ) <br> _____ ) <br> STATE OF ALASKA, ) <br>     ) <br>                Plaintiffs, ) <br> and ) <br>     ) <br> ALASKA FISH AND WILDLIFE FEDERATION AND ) <br> OUTDOOR COUNCIL, et al., ) <br>     ) <br>                Plaintiff-Intervenors, ) <br>     ) <br> vs. ) | No. 3:05-cv-0006-HRH <br> (Consolidated with <br> No. 3:05-cv-0158 HRH) <br><br> **STATE OF ALASKA'S <br> MOTION TO INTERVENE IN <br> KATIE JOHN v. UNITED STATES <br> Case No. 3:05-CV-0006-HRH** |

| | |
|---|---|
| DIRK KEMPTHORNE, Secretary of the Interior, et al., | ) ) ) |
| Defendants, | ) |
| and | ) ) |
| KATIE JOHN, et al., | ) ) |
| Defendant-Intervenors, | ) |
| and | ) ) |
| ALASKA FEDERATION OF NATIVES, | ) ) |
| Defendant-Intervenor. | ) ) |
| _____ | ) ) |
| - AND - | ) ) |
| LINCOLN PERATROVICH, et al., | ) ) |
| Plaintiffs, | ) No. 3:92-cv-0734-HRH |
| vs. | ) ) |
| UNITED STATES OF AMERICA, et al., | ) ) |
| Defendant. | ) ) |
| and | ) ) |
| STATE OF ALASKA, | ) ) |
| Defendant-Intervenor | ) |
| _____ | ) |

Because of unsettled Ninth Circuit precedent regarding the impact of consolidation on appeal rights and other important procedural matters, the State of Alaska respectfully moves to intervene as a defendant in *Katie John v. United States,* No. 3:05-cv-0006-HRH (the "Katie John Case"), which the Court has previously consolidated with *Alaska v. United States,* Case No. 3:05-cv-0158 HRH (the "Alaska Case"). Pursuant to the Court's subsequent order dated June 29, 2007 (Docket 130), the State has been an active participant in defending against Katie John's

1

claims, but its precise procedural status in the Katie John case is not certain under Ninth Circuit precedent.

### A. The Consolidation Order and the Order Declining to Deconsolidate

1. The Court granted consolidation on August 4, 2005 (Alaska Case Doc. 32, Katie John Case Doc. 16) on a motion filed by the United States that no party opposed (Alaska Case Doc. 22). A copy of the Consolidation Order is attached as Exhibit 1 to this Motion. As the Consolidation Order directed, the United States, State of Alaska, and Katie John have since filed all pleadings under the Katie John Case Number. Subsequently the Court denied Katie John's request to deconsolidate, and at the same time authorized the State to respond to Katie John's claims in the "which waters" briefing. Order of June 29, 2007 at 6-7 (Doc. 130).[1] The State briefed that response (Docs. 134, 169, and 182) and Katie John replied (Docs. 168 and 181).

### B. The Need to Resolve the State's Procedural Status in the Katie John Case

2. As the basis for the Motion to Consolidate was the need to avoid the risk of conflicting judgments regarding the same federal rulemaking decision, the State believes the consolidation of the two cases was not merely for ease of case administration, but rather was more substantive in nature.[2] *See* July 19, 2005 Motion to Consolidate at 2 and accompanying Points and Authorities at 4 (explaining that the State sought a determination that the 1999 rule asserted federal subsistence jurisdiction too broadly, thereby infringing on State jurisdiction to regulate wildlife, while Katie John conversely sought a ruling that the rule asserted federal

---

[1] This and subsequent references to document numbers refer to the Katie John file, where all documents following consolidation were filed.

[2] By contrast, the Court ordered "joint management" of the Peratrovich case (A92-734-CV) with the Consolidated Katie John/Alaska cases. October 19, 2005 Order (Katie John Case Doc. 25). Joint management is for ease of administration. The State is a Defendant-Intervenor in the Peratrovich case.

jurisdiction too narrowly, leaving the State with too much jurisdiction).  A copy of the Motion to Consolidate and Points and Authorities is supplied as Exhibit 2 to this Motion.

   3. If the State's reading of the Court's orders is correct, then the consolidated cases likely are already merged for at least some purposes, most importantly appeal.  *See, e.g.*, State's Response to Court's June 14 Order, Doc. 128 at 3-6.  However, the caselaw on the impact of consolidation is not entirely clear, and the State cannot be certain as to either what the Court intended in consolidating the two cases or how the appellate court might construe that consolidation if there is an appeal.  In *Huene v. United States*, the Ninth Circuit held that consolidated cases are treated as one case for purposes of applying the rule that no party can appeal until all claims in the case are resolved or a Rule 54(b) certification is entered by the district court.  743 F.2d 703, 705 (9th Cir. 1984); F.R.Civ.P. 54(b).  More recently, the Ninth Circuit explained *Huene* as holding that consolidated cases are "merged for purposes of appeal," and went on to explain that consolidation merges cases for some purposes but not others. *Schnabel v. Lui*, 302 F.3d 1023, 1035-36 (9th Cir. 2002).  Older District of Alaska precedent also states that cases consolidated for trial "are merged and thereafter constitute but one action." *Roden v. Empire Printing Co.*, 135 F.Supp. 665, 667 (D.Alaska 1955), *affd.*, 247 F.2d 8 (9th Cir. 1957).  However, while *Schnabel* explains that *Huene* treats consolidated cases as merged for purposes of appeal, *Huene* itself only confirms that all claims in consolidated cases must be resolved before any party can appeal.  743 F.2d at 705.  Thus there may arguably be some distinction between how consolidation impacts the timing of appeals and how it impacts standing to participate in appeals as appellee or appellant.  Other issues relating to the impact of consolidation may arise.  Contrary views on the subject exist, even in this case.  *Cf.*, Katie John's Reply Re Scheduling Order, Doc. 127.

4.  To avoid unnecessary future procedural litigation, it is appropriate to resolve now the State's precise status in the Katie John Case, while this Court retains full control over the case and before it rules on pending dispositive motions or issues its judgment. Accordingly, the State moves to intervene in the Katie John Case. Depending on how the Court's consolidation order is interpreted, intervention may be redundant to the case participation rights resulting from consolidation, but only intervention eliminates all doubt and conclusively establishes the State as a full party in the Katie John Case.

**C. The State Qualifies for Intervention-as-of-Right in the Katie John Case Under Federal Rule of Civil Procedure 24(a)(2).**

5.  The State satisfies all elements necessary to qualify for intervention-as-of-right in the Katie John Case under Fed.R.Civ.P. 24(a)(2). Under that rule, the applicant intervenor must show: (1) that it has a significant protectable interest relating to the subject matter of the action; (2) that the disposition of the action may jeopardize its interest; (3) that the existing parties may not adequately represent its interest; and (4) that the motion to intervene is timely enough. *Apoliona v. Day*, 505 F.3d 963, 965 (9th Cir. 2007). Furthermore, timeliness is a flexible consideration which depends on balancing prejudice to existing parties, the stage of the proceeding, the reasons for and length of any delay in moving to intervene, and other relevant circumstances including the interest of the would-be intervenor. *Id.*, 505 F.3d at 965-66. In *Apoliona*, which was decided on October 11, 2007, the Ninth Circuit Court allowed the State of Hawaii to intervene as a party late in the appellate proceedings, after Hawaii had participated as amicus curiae in the district court and on appeal and the three-judge appeals panel had ruled. *Id.* at 964-66. The Court concluded that intervention should be permitted because, although Hawaii could and arguably should have intervened earlier, it had an important interest in petitioning for rehearing (which only a party could do) that did not threaten to broaden the scope of the case

4

going forward and did not significantly prejudice existing parties. *Id*. That recent decision, which is discussed more in this memorandum, illustrates the flexibility and pro-intervention focus [3] of the intervention rule, but the initial hesitance to grant intervention post-judgment also illustrates the risk Hawaii ran by waiting that long to move to intervene. Thus, the State, in addition to qualifying for intervention under Rule 24(a)(2), has good reason to move to intervene now rather than later.

      6.    <u>Significant Interest at Stake Which May Be Jeopardized</u>. The Court's Order declining to deconsolidate the Katie John Case from the Alaska Case summarizes the State's interest which is at stake:

> The <u>Katie John</u> Plaintiffs take particular exception to the court's briefing schedule which affords the State an opportunity to respond to the <u>Katie John</u> Plaintiff's brief. The appropriateness of permitting such response as well as the consolidation of the <u>Katie John</u> and <u>State of Alaska</u> cases are founded upon the fact that both the State of Alaska and the Federal Defendants separately operate parallel regimes for the management of fish and wildlife in Alaska. The two regimes sometimes apply to the same lands and to the same fish and wildlife. The state regime has priority as regards the management of fish and wildlife, except to the extent that it must give way when and where the priority for rural Alaskans created by ANILCA is lawfully invoked. 16 U.S.C. § 3202(a). As a consequence, the State has just as much interest in the <u>Katie John</u> case as the <u>Katie John</u> Plaintiffs have in the <u>State of Alaska</u> case. The <u>Katie John</u> and <u>State of Alaska</u> cases were appropriately consolidated pursuant to Rule 42(a), Federal Rules of Civil Procedure, and they will stay consolidated for purposes of allowing all parties to all three cases to brief the "which waters" claims.

June 29, 2007 Order (Doc. 130) at 7 (underling in original). As the Court's comments illustrate, the State has a direct interest in continuing to govern the management of fish and wildlife within its boundaries. *Id*. However, the State's regulatory regime is subject to preemption by the Alaska National Interest Lands Conservation Act (ANILCA) in those locations where the Federal Defendants lawfully exercise federal subsistence jurisdiction. 16 U.S.C. § 3202(a).

---

[3]     *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

Katie John seeks an order expanding the locations where federal subsistence jurisdiction applies, thus diminishing the State's jurisdiction and jeopardizing the State's interest. The State can only protect its interest by defending against Katie John's claims and obtaining a ruling that federal subsistence jurisdiction does not apply to the locations in which Katie John insists it does or that the Federal Defendants cannot be compelled to assert jurisdiction in those locations. Thus the State has a significant protectable interest and position directly at stake in this litigation amply satisfying the first two elements of Rule 24(a)(2). *Apoliona*, 505 F.3d at 965 (State of Hawaii has a significant protectable interest in the lands granted to it under the Hawaiian Admission Act and the use of their proceeds and income qualifying it for intervention under Fed.R.Civ.P. 24(a)(2)); *United States v. State of Oregon*, 745 F.2d 550, 551-53 (9th Cir. 1985) (State of Idaho has a significant protectable interest under Fed.R.Civ.P. 24(a)(2) in its fish resources sought to be affected by fish management plan).

      7.    <u>Inadequate Representation by Existing Parties.</u>  The State also satisfies the third Rule 24(a)(2) element because the United States cannot adequately represent the State. Katie John seeks relief that, if granted, would fall far more harshly on the State, which would involuntarily lose jurisdiction over wildlife management, than it would on the United States, which would involuntarily gain the jurisdiction lost by the State. This situation naturally creates a divergence of interests between the United States and the State, even though both currently oppose Katie John's claims. Additionally, the United States could at any point shift positions in a manner adverse to the State. The United States did just that in the original *Katie John* litigation. There the United States originally disclaimed federal subsistence jurisdiction over navigable waters, and then switched its position much later in the case by claiming subsistence jurisdiction over some navigable waters – under a federal reserved water rights (FRWRs) theory.

6

*Alaska v. Babbitt*, 72 F.3d 698, 701 (9th Cir. 1995) ("Prior to oral argument before the district court, the federal agencies agreed with the state. But at oral argument, those agencies modified their position …."). That experience further motivates the State to ensure it is an appellee or appellant in the Katie John Case, regardless of the United States' present position or whether the United States or Katie John prevails on Katie John's claims. The State's consolidated suit against the United States challenging the same rulemaking decision also underscores the divergence of interests between the two governments and the inability of one to adequately represent the interests of the other.

        8.      <u>Timeliness</u>. The final F.R.Civ.P. 24(a)(2) consideration is timeliness, and there the most important factor is whether a substantial incremental ***increase*** in prejudice to existing parties results from the intervention motion being filed later rather than earlier in the case. *Oregon*, 745 F.2d at 553. Thus, in the *Oregon* case the State of Idaho won intervention sixteen years after the start of that case, because its intervention then did not cause materially greater problems to existing parties than earlier intervention would have caused them. *Id*. ("[T]he existing parties' concerns have little to do with timeliness. They do not suggest that their problems are materially different now than they would have been had Idaho sought to intervene a decade or more ago."). *Accord, Apoliona*, 505 F.3d at 965 (the timing of the state's intervention in order to seek rehearing of an appellate decision that no existing part sought to challenge did not itself cause prejudice, because the impact to the existing parties from the state being able to file for rehearing "would have occurred whenever the state joined the proceedings"); *United States v. Union Elec. Co*., 64 F.3d 1152, 1159 (8th Cir. 1995) ("The question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay

in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change.")

9. Here there is no prejudice to Katie John or the United States resulting from the State moving to intervene now rather than earlier in the case, <u>because the State has been defending the case just as fully as it could have had it formally been named a defendant-intervenor at the outset.</u> The State presented its arguments through its involvement already allowed by the Court's consolidation and administration of the cases. Thus the *timing* of the intervention motion has not resulted in a materially different level of representation or cognizable "prejudice" to existing parties. *Oregon*, 745 F.2d at 553. Active participation in a case by a person prior to applying for intervention naturally reduces or eliminates any "prejudice" to existing parties from subsequent intervention, because they have already adjusted to the future intervenor's pre-existing presence in the case. *Apoliona*, 505 F.3d at 965 (Hawaii actively briefed its arguments to district and appellate courts as amicus curiae, so allowing intervention for purposes of further appeal does not "threaten to broaden the scope of the case going forward"); *Winbush v. State of Iowa by Glenwood State Hosp.*, 66 F.3d 1471, 1479 (8th Cir. 1995) (because defendants had long been aware of claims of witnesses they deposed who later sought to intervene as plaintiffs, any prejudice resulting from allowing late intervention was minimal). Furthermore, Katie John has intervened in the State's case, so she can hardly be surprised by the State's parallel intervention in her consolidated case challenging the same federal rule. *See* August 2, 2005 Order (Alaska Case Doc. 25.)

10. Another timeliness factor is the stage of proceedings when the motion is made. *Apoliona*, 505 F.3d at 965-66; *Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986). This factor weighs against (but does not necessarily bar) attempts to intervene after a

judgment, shortly before or during trial, after rulings on dispositive motions, at the conclusion of extended discovery, or after a settlement is reached. *Apoliona*, 505 F.3d at 966 (citing *Smith v. Marsh*, 194 F.3d 1045, 1050-51 (9th Cir. 1999), as example of denial of intervenor status where applicant sought to interject new issues broadening the litigation after rulings on dispositive pre-trial motions); *Orange County,* 799 F.3d at 538 (intervention would disrupt settlement). This and the other timeliness factors serve "to prevent last minute disruption of painstaking work by the parties and the court." *Fiandaca v. Cunningham*, 827 F.2d 825, 833 (1st Cir. 1987) (internal quotations omitted). Here, there has been no settlement or judgment. There has also been no discovery, trial, trial preparation, or dispositive rulings upon Katie John's claims, to disrupt. The completed briefing on which the Court will make its decision would not have to be reopened if intervention is granted because, as discussed above, the State has already briefed its response to Katie John's claims and Katie John has already fully replied. The only pleading that would have to be filed if intervention is granted is the State's proposed Answer attached as Exhibit 3 to this Motion. Fed.R.Civ.P. 24(c). That Answer asserts no counterclaims and asserts only defenses already briefed in the completed "which waters" briefing. It basically mirrors the Federal Defendants' Answer and requires no response by Katie John or the Federal Defendants. *See* Fed.Rs.Civ.P. 12 & 24. So intervention would not cause disruption. The "stage of proceedings" factor favors the State's motion.

      11.    The "length of and reason for the delay" in moving to intervene is also a factor. *Apoliona*, 505 F.3d at 965. However, this factor is evaluated in conjunction with the prejudice and stage of proceedings/disruption factors rather than in isolation, so "mere lapse of time does not necessarily make an intervention motion untimely." *Id.* Thus, even where this factor weighs against intervention, consideration of the other timeliness factors may outweigh it. *Id.* (although

9

amicus Hawaii's delay in moving to intervene until after district court and appellate dispositive rulings had been issued, coupled with a "less than entirely persuasive" explanation for that delay, weighed against allowing Hawaii to intervene, the length and reason for delay factor was outweighed by lack of prejudice to the existing parties and Hawaii's significant interest in the litigation, so the intervention motion was granted).[4]

12.     As shown above, there is no increase in prejudice to existing parties or disruption of the Katie John Case resulting from the timing of the State's motion.  Further, the decision to seek intervention at this stage rather than at the outset is entirely reasonable.  The State reasonably believed that intervention was unnecessary given its reading of the caselaw on the impact of consolidation on appeal rights presented to this Court last summer and the Court's decision to allow the State to respond fully to Katie John's claims.  The State reevaluated this conclusion after reassessing that consolidation caselaw, which, as discussed above, may be less settled than initially appeared.   As previously noted, recent caselaw also supports intervention.  To avoid incentives for filing multiple precautionary pleadings early in the case, litigants should be encouraged to make good faith judgments early on that technical procedural relief is not necessary, and correspondingly be allowed to reassess those conclusions later in the case when, as here, doing so does not prejudice other parties or disrupt proceedings.  *See Apoliona*, 505 F.3d at 966 (amicus curiae ultimately decided it needed intervenor status, at a much later stage of proceedings than this case).

---

[4]     The rule that passage of time alone is not a bar is further illustrated by cases where any prejudice from intervention may decrease due to subsequent events. *See Sanford v. Memberworks, Inc.,* 483 F.3d 956, 965 (9th Cir. 2007) (remand for new hearing on merits results in fresh opportunity for intervention which was previously denied).

13. Because the State's motion to intervene satisfies all of the Fed.R.Civ.P. 24(a)(2) elements, the Court should grant the State intervention as-of-right in the Katie John Case.

### D. The State Also Qualifies for Permissive Intervention.

14. Permissive intervention is available upon timely motion to a person who "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). Because the State and the Federal Defendants assert that the Federal Defendants were not required to assert FRWRs in waters upstream or downstream of conservation system units or appurtenant to Alaska Native allotments, the State raises at least those questions in common with the questions already at issue in the Katie John Case. The motion is timely for the reasons stated above. Thus the State is eligible for permissive intervention.

15. Whether to grant permissive intervention to an applicant presenting a common question is a matter of judicial disctetion involving a flexible and non-exclusive set of factors generally less demanding than the factors considered for intervention as a matter of right. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-11 (9th Cir. 2002) (holding that, unlike with intervention as-of-right, a "significant protectable interest" is unnecessary for permissive intervention, which instead involves weighing the applicant's interest in the case and ability to contribute to its resolution, perhaps by presenting views not otherwise presented, the public importance of the case, and whether intervention would unduly prejudice other parties). Except as just noted, the information relevant to applying these factors largely parallels the information needed to apply the Rule 24(a)(2) intervention-as-of-right elements fully discussed above, so that information already provided above and its application to permissive intervention

will not be repeated. *Id.*, 313 F.3d at 1111. In the context of permissive intervention, the factors are applied in an even more flexible fashion – only minimum showings are required. *Id.*

16.   Policy considerations may also appropriately be factored into the permissive intervention analysis. *Union Elec. Co.*, 64 F.3d at 1158 n.1 & 1165. ANILCA sets up a bifurcated scheme for the regulation of subsistence hunting and fishing with the Federal Defendants and the State playing interrelated and overlapping roles. *See* June 29, 2007 Order (Doc. 130) at 7. Because of this relationship, sound implementation of ANICLA calls for both governments to have full participation rights in cases arising under ANILCA where both will be directly impacted by the result. *Id.* This consideration further supports a grant of permissive intervention in this case.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the State intervention in the Katie John Case. A proposed order granting intervention is attached.

Respectfully submitted this 16th day of May, 2008.

TALIS J. COLBERG
ATTORNEY GENERAL

/s/ Michael W. Sewright
Michael W. Sewright
Assistant Attorney General
Alaska Bar No. 7510090
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5257
Fax: (907) 279-2834
Email: mike.sewright@alaska.gov
Co-counsel for Plaintiff State of Alaska

/s/ William P. Horn
WILLIAM P. HORN, D.C. Bar No.: 375666
JAMES H. LISTER, D.C. Bar No. 447878
Birch, Horton, Bittner & Cherot, P.C.
1155 Connecticut Avenue, Suite 1200
Washington, D.C. 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
Email: whorn@dc.bhb.com;
jlister@dc.bhb.com
Co-counsel for Plaintiff State of Alaska

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on May 16th, 2008, a copy of the foregoing **STATE OF ALASKA'S MOTION TO INTERVENE IN KATIE JOHN v. UNITED STATES** (together with **Exhibits and Proposed Order**) was served electronically, on the following:

    Robert T. Anderson
    Randolph H. Barnhouse
    Carol H. Daniel
    Steven A. Daugherty
    Dean K. Dunsmore
    Gregory L. Fisher
    Phillip E. Katzen
    Heather R. Kendall-Miller
    James H. Lister
    Michael W. Sewright
    William F. Sherman

    /s/ William P. Horn
    William P. Horn